# Exhibit H

1:22-cv-1183


ETHICS & LEGAL COMPLIANCE
LAW DEPARTMENT

UNITED STATES POSTAL SERVICE

**OFFICE OF THE GENERAL COUNSEL**
HEADQUARTERS, WASHINGTON, DC

IN RE, APPEAL OF CASE NO.
2022-FPRO-00906

APPEAL NO. 2022-APP-00100

ATTORNEY TRAM T. PHAM
ON BEHALF OF GENERAL COUNSEL THOMAS J. MARSHALL

OPINION AND ORDER

After careful consideration, this office is affirming in part and reversing in part the action of Marthea Hodge, Government Information Specialist, on FOIA request 2022-FPRO-00906.

I. STATEMENT OF FACTS

1. By letter dated February 7, 2022, the requester submitted a request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, for the following:

   a. All records concerning the "Privacy Act Statement" contained on USPS's webform through which members of the public may order rapid antigen COVID-19 tests (https://special.usps.com/testkits). The records requested include, but are not limited to, those that reflect USPS's decision to depart from using its default "Privacy Act notice" that is "for personal information collected online" (which is published at https://about.usps.com/who/legal/privacy-policy/full-privacypolicy.htm) and instead to use a "Privacy Act Statement" that says USPS may, without consent, disclose information it obtains about the public through the COVID-19 test webform to "labor organizations as required by applicable law."
   b. All records concerning USPS's disclosure to any labor organization of information it obtained through the COVID-19 test webform.

2. By letter dated February 8, 2022, Ms. Hodge sent the requester a letter seeking clarification as to the scope of the request including information on a specific department, geographic area of interest, or a particular timeframe.

3. The requester subsequently limited its response to the following offices and locations: "USPS Headquarters; Washington, DC; The office of USPS's Senior Agency Official for Privacy; The Office of the General Counsel; The PMG's office." The requester also specified that it requested "communications – including emails, memos, and updates to policy – to and from the chief officers and subordinates of the Privacy and Records Management Office sent between April 26, 2021 and January 18, 2022 with the key words, 'privacy act statement,' 'privacy act,' 'labor organization,' and the phrase 'to labor organizations as required by applicable law.'"

4. By letter dated February 25, 2022, Ms. Hodge informed the requester that there were no responsive records.

5. By letter dated March 15, 2022, the requester appealed. First, the requester asserted that the Postal Service failed to respond to its request for expedited processing as required under 39 C.F.R. § 265.5(c)(3). Second, it argued that the Postal Service erroneously interpreted the FOIA request.

## II. APPLICABLE LAW

Congress enacted the FOIA to "'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *Dep't of the Air Force v. Rose*, 425 U.S. 352 (1976). Congress balanced this objective by recognizing that "legitimate governmental and private interests could be harmed by release of certain types of information." *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 621 (1982). The FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions." *Milner v. Dep't of the Navy*, 562 U.S. 562, 562 (2011). In addition, other laws allow the Postal Service to withhold certain categories of records and information. *See* 39 U.S.C. § 410(c).

## III. LEGAL ANALYSIS

### *i. Decision for Expedited Review*

The requester "appeal[ed] the fact that Ms. Hodge did not respond to its request for expedited treatment of its FOIA request." However, the request for expedited processing is moot as the Postal Service provided a complete response on February 25, 2022 – when it informed the requester that there were no responsive records. *See Atkins v. Dep't of Just.*, 946 F.2d 1563 (D.C. Cir. 1991) (holding that the issue of whether an agency complied with FOIA's time limitations in responding to a request was moot because the agency responded to the request).

Moreover, FOIA provides that "[a] district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request." 5 U.S.C. § 552(a)(6)(E)(iv). Accordingly, once an agency fully processes a request at the administrative level, a request for expedited processing is moot. *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 296 (D.D.C. 2013); *see also Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 538 F. Supp. 3d 124, 148 (D.D.C. 2021) (concluding that a request for judicial review of a denial of expeditated processing was moot because the agency provided a complete response to the request); *Sabra v. U.S. Customs & Border Prot.,* 2021 WL 796166, at *4 (D.D.C. 2021) (stating that even if an agency failed to timely respond to a request for expedited processing, "that alone does not warrant judgment in [the requester's] favor."); *Jud. Watch, Inc. v. U.S. Naval Observatory*, 160 F. Supp. 2d 111, 112 (D.D.C. 2001) (even though the agency failed to timely respond to a request for expedited processing, concluding that the court lacked subject matter jurisdiction over the claim "because defendant has since provided a complete response to the request for records[.]"). Further, the requester effectively received expedited processing of its request because it received a response in nine working days. The Postal Service received the request on February 8, 2022. Thereafter, the requester received a letter requesting clarification which tolled the time for the Postal Service to respond until receipt of the requester's response. The Postal Service received a response on February 11, 2022. The Postal Service then responded to the FOIA request on February 25, 2022.

Under these circumstances, the Postal Service need not consider the request for expedited processing.

### *ii. Interpretation of the Request*

The requester asserts that the Postal Service misconstrued Item #1 of the FOIA request as it compared the "the 'Privacy Act Statement' on the COVID-19 webform with USPS's "general Privacy Policy.'" However, it appears that this is an appropriate interpretation of a portion of the request. The requester itself asserts that it sought "documents concerning the 'Privacy Act Statement' used on the COVID-19 webform, including but not limited to USPS's decision to depart from its normal 'Privacy Act notice' (the latter of which makes no mention of disclosure of documents to labor organizations)."

As the Postal Service previously informed the requester, the statements and notices are separate and distinct with different purposes and underlying legal bases. The Privacy Act Notice ("Notice") reflects the Postal Service's policy to voluntarily incorporate the E-Government Act's provision concerning public notice of the agency's data collection from its public websites into its policies, even though it is not subject to the Act. *See Kuzma v. U.S. Postal Service*, 798 F.2d 29, 31 (2d Cir. 1986) (concluding that the Postal Service is not subject to the Paperwork Reduction Act ("PRA")); *Shane v. Buck*, 658 F. Supp. 908, 915 (D. Utah 1985) (same); *see also* S. Rep. 107-174 (2002) (stating that the E-Government Act of 2002 was meant to complement the PRA and stating that the definitions in the PRA would apply in the E-Government Act including the definition of what constitutes an "agency" and "independent regulatory agency" which does not include the Postal Service). On the other hand, the Privacy Act Statement ("Statement") is separate and distinct from the Notice. The Statement reflects compliance with the Privacy Act of 1974. Notably, in comparing the Notice and Statement, the requester demonstrates this point. It shows that the language of the Statement specifically distinguishes rights under the Privacy Act while the Notice is provided for data collected on the Postal Service's public website*, see* www.usps.com/privacypolicy. This discussion about when a Privacy Act Statement would be provided reinforces the fact that there are two distinct matters at play – the Statement is not the same thing as the Notice. If they were one and the same, including a link to the Notice would be superfluous and redundant. Contrary to the requester's speculative assertions, there was no decision to substitute one for the other because they are based on separate and distinct laws with separate and distinct purposes. Accordingly, there are no records related to any alleged decision to depart from the Notice language because there was no such decision. "[W]hen an agency does not possess or control the records a requester seeks, the agency's non-disclosure does not violate FOIA because it has not 'withheld' anything." *Francis v. United States Dep't of Just.*, 267 F. Supp. 3d 9, 12 (D.D.C. 2017), *aff'd sub nom.*, 2018 WL 3526259 (D.C. Cir. 2018) (citing *DiBacco v. U.S. Army*, 795 F.3d 178, 192 (D.C. Cir. 2015); *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150 (1980)).

Nevertheless, the requester is correct that its request was not only limited to a purported decision to depart from the Privacy Act Notice language. As such, the Postal Service conducted an additional search for other responsive records related to the specified Privacy Act Statement. Such records were found and are enclosed herein with appropriate redactions pursuant to Exemption 5 as well as Exemption 6 and Exemption 3, in conjunction with 39 U.S.C. § 410(c)(2).

*iii. Adequacy of the Search*

With regard to Item #2, the requester maintains that the search was inadequate. Upon further information, the Postal Service searched for responsive records in several departments including Information Technology, Corporate Information Security, and Labor Relations. Contrary to the requester's assertions, the Postal Service conducted an adequate search of records. That search yielded no results.

> [Where an] agency determines that it does not possess any records responsive to a FOIA request, it bears the burden of demonstrating the adequacy of its search. The agency meets its burden if it shows that 'it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'

*Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) (citing *Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017); *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "An agency's search is judged by the individual circumstances of each case. The central question is whether the search itself was reasonable, regardless of the results." *Francis*, 267 F. Supp. 3d at 12 (citations omitted). However, "[t]here is no requirement that an agency search every record system." *Oglesby*, 920 F.2d at 68 (citations omitted). "If an agency has made a *prima facie* showing of the adequacy of its search, '[t]he

plaintiff may then provide 'countervailing evidence' as to the adequacy of the agency's search[.]'" *Wright v. Admin. for Child. & Fams.*, 2016 WL 5922293, at *5 (D.D.C. 2016) (citing *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003)).

Here, the Postal Service conducted a reasonable search for records. The Postal Service searched for records within three departments: Information Technology, Corporate Information Security, and Labor Relations. The Information Technology and Corporate Information Security departments ran the Test-Kit program while Labor Relations is the department that handles all matters concerning labor organizations. In this instance, the relevant officials in Information Technology and Corporate Information Security ran a search through their functions and found nothing responsive. The relevant Labor Relations officials also conducted a search of the department's records and found nothing responsive. "A search can be adequate even if an agency does not locate the requested records." *Gamboa v. Exec. Off. for United States Att'ys*, 65 F. Supp. 3d 157, 164 (D.D.C. 2014) (citing *Boyd v. Criminal Division of the U.S. Dep't of Justice,* 475 F.3d 381, 391 (D.C. Cir. 2007)).

Nonetheless, the requester asserts that "[i]t is implausible that USPS went through the exercise of departing from its 'Privacy Act notice' to say that the public's information submitted . . . can be disclosed to labor organizations, but that USPS has in fact not done that exact thing." Considering the misunderstanding with regard to the law underlying the Notice and Statement, their confusion here is not surprising. Moreover, "FOIA is not a wishing well; it only requires a reasonable search for records an agency actually has." *DiBacco*, 795 F.3d at 190. The requester's legal misunderstandings, in addition to their speculative and conclusory statements, are irrelevant. An "agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. Cent. Intelligence Agency,* 355 F.3d 675, 678 (D.C. Cir. 2004) (citing *Iturralde,* 315 F.3d at 314; *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1201 (D.C. Cir. 1991)); *see also DiBacco*, 795 F.3d at 190–91 (rejecting the requester's assertion that records must exist because it was mere speculation that secret meetings occurred, and the cited news articles presented no evidence whatsoever that such meetings occurred)*; Boyd,* 475 F.3d at 391 ("[T]he fact that a particular document was not found does not demonstrate the inadequacy of a search."); *Oglesby*, 920 F.2d at 68 n.13 (rejecting the requester's assertion that responsive records must exist because there was no proof that they existed and the requester's own conviction was pure speculation); *Ancient Coin Collectors Guild v. U.S. Dep't of State,* 641 F.3d 504, 514 (D.C. Cir. 2011) (finding that a search yielding "only a few emails ... is not enough to render its search inadequate, even supposing that any reasonable observer would find this result unexpected"); *Media Rsch. Ctr. v. U.S. Dep't of Just.,* 818 F. Supp. 2d 131, 138 (D.D.C. 2011) (rejecting the requester's argument as "simply conjecture" where it argued that certain documents must have existed because there were meetings that occurred during the relevant timeframe).

The Postal Service searched for records where it might reasonably expect to find responsive information and records. In this case, it is highly unlikely that any information exists outside of Information Technology, Corporate Information Security, and Labor Relations. The requester presented no evidence to the contrary. The Postal Service is not then required to search every record system for records that do not exist. *See, e.g., SafeCard Servs., Inc.*, 926 F.2d at 1201 (noting that the agency's "failure to make hopeless and wasteful efforts to locate copies that would never have been created in the normal course is not a ground for reversal[.]"). Under these circumstances, the Postal Service met its obligations under the FOIA.

## IV. Conclusion

For the foregoing reasons, Ms. Hodge's action is affirmed in part and reversed in part. To the extent it is reversed, the responsive records are attached herein.

For the General Counsel,


Tram T. Pham
Attorney
Ethics & Legal Compliance