UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICANS FOR FAIR TREATMENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-1183 (RCL) |
| | ) | |
| UNITED STATES POSTAL SERVICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND JUDGMENT ON THE PLEADINGS**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

PAUL CIRINO, D.C. Bar #1684555
Assistant United States Attorney
Civil Division
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C.  20530
Telephone: (202) 252-2529
paul.cirino@usdoj.gov

*Counsel for Defendants*

Dated:  July 29, 2022

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

APPLICABLE LEGAL STANDARDS ..................................................................................... 3

I.      RULE 12(c) – JUDGMENT ON THE PLEADINGS ..................................................... 3

II.     RULE 56 – SUMMARY JUDGMENT ........................................................................... 4

ARGUMENT ............................................................................................................................ 5

I.      THE POSTAL SERVICE IS ENTITLED TO SUMMARY JUDGMENT WITH
        RESPECT TO PLAINTIFF'S FOIA CLAIMS. ............................................................ 5

        A.    The Postal Service Conducted Reasonable Searches. ............................................ 5

        B.    The Postal Service Properly Withheld Information Pursuant to Exemption 5. ........ 8

              1.   The Postal Service Properly Withheld Deliberative, Pre-Decisional
                   Communications Pursuant to the Deliberative Process Privilege. ................. 9

              2.   The Postal Service Appropriately Withheld Attorney-Client
                   Communications Pursuant to the Attorney-Client Privilege. ..................... 11

        C.    The Postal Service Properly Withheld Employee Mobile Phone Numbers and
              Email Addresses Pursuant to Exemption 6. ......................................................... 12

        D.    The Postal Service Complied with FOIA's Foreseeable Harm Requirement. ........ 14

        E.    The Postal Service Complied with FOIA's Segregability Requirement. ............... 15

II.     THE POSTAL SERVICE IS ENTITLED TO JUDGMENT ON THE PLEADINGS
        WITH RESPECT TO PLAINTIFF'S CLAIMS THAT THE AGENCY ACTED
        *ULTRA VIRES*. ........................................................................................................... 16

        A.    Jurisdiction and a Cause of Action Under the APA Is Unavailable. ..................... 17

        B.    USPS Is Entitled to Judgment on the Pleadings on the *Ultra Vires* Claim. ............ 18

              1.   The Statutory Preclusion of Review Is Express. ........................................ 18

              2.   Plaintiff Could Have Raised Its Arguments in Its FOIA Appeal. ................. 19

              3.   Plaintiff Failed to Show That the Postal Service Acted in Excess of Its
                   Delegated Powers and Contrary to a "Clear and Mandatory"
                   Statutory Prohibition. ................................................................................ 19

        CONCLUSION ..................................................................................................................... 23

# TABLE OF AUTHORITES

**Cases**                                                                    **Page(s)**

*Amadis v. Dep't of State*,
   971 F.3d 364 (D.C. Cir. 2020) ............................................................. 14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................... 4

*Armstrong v. Exec. Off. of the President*,
   97 F.3d 575 (D.C. Cir. 1996) .............................................................. 15

*Beck v. Dep't of Just.*,
   997 F.2d 1489 (D.C. Cir. 1993) .......................................................... 13

*Brown v. Dep't of Just.*,
   724 F. Supp. 2d 126 (D.D.C. 2010) ...................................................... 7

*Campaign Legal Ctr. v. Dep't of Just.*,
   34 F.4th 14 (D.C. Cir. 2022) ......................................................... 10-11

*Canning v. Dep't of Just.*,
   567 F. Supp. 2d 104 (D.D.C. 2008) .................................................... 15

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................... 4

*Chang v. Dep't of Navy*,
   314 F. Supp. 2d 35 (D.D.C. 2004) ...................................................... 13

*Changji Esquel Textile Co. Ltd. v. Raimundo*,
   No. 21-5219, --- F.4th ---, 2022 WL 2813243 (D.C. Cir. July 19, 2022) ....................... 18, 22

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ............................................................ 10

*DCH Reg'l Med. Ctr. v. Azar*,
   925 F.3d 503 (D.C. Cir. 2019) ............................................................ 18

*Defs. of Wildlife v. Dep't of Interior*,
   314 F. Supp. 2d 1 (D.D.C. 2004) .......................................................... 6

*Defs. of Wildlife v. U.S. Border Patrol*,
   623 F. Supp. 2d 83 (D.D.C. 2009) ....................................................... 6

*Dep't of State v. Wash. Post Co.*,
   456 U.S. 595 (1982) ......................................................................... 13

*Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.*
   933 F.3d 751 (D.C. Cir. 2019) ............................................................. 4

*Fed. Express Corp. v. Dep't of Com.*,
　No. 20-5337, --- F.4th ---, ---, 2022 WL 2582364 (D.C. Cir. July 8, 2022) ......................... 18

*Fisher v. United States*,
　425 U.S. 391 (1976) ................................................................................................ 11

*Founding Church of Scientology v. NSA*,
　610 F.2d 824 (D.C. Cir. 1979) ................................................................................. 7

*Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*,
　762 F. Supp. 2d 123 (D.D.C. 2011) ....................................................................... 4-5

*Greenberg v. Dep't of Treasury*,
　10 F. Supp. 2d 3 (D.D.C. 1998) .............................................................................. 6

*Griffith v. FLRA*,
　842 F.2d 487 (D.C. Cir. 1988) ................................................................................. 18

*In re County of Erie*,
　473 F.3d 413 (2d Cir. 2007) ................................................................................. 11-12

*In re Lindsey*,
　148 F.3d 1100 (D.C. Cir. 1998) .............................................................................. 11

*In re Sealed Case*,
　737 F.2d 94–99 (D.C. Cir. 1984) ............................................................................ 11

*Jud. Watch, Inc. v. Dep't of Def.*,
　847 F.3d 735 (D.C. Cir. 2017) ................................................................................. 11

*Jud. Watch, Inc. v. Dep't of Just.*,
　365 F.3d 1108 (D.C. Cir. 2004) ............................................................................... 9

*Jud. Watch, Inc. v. Rossotti*,
　285 F. Supp. 2d 17 (D.D.C. 2003) .......................................................................... 5

*Konah v. District of Columbia*,
　915 F. Supp. 2d 7 (D.D.C. 2013) ............................................................................ 4

*Kowalczyk v. Dep't of Just.*,
　73 F.3d 386 (D.C. Cir. 1996) ................................................................................... 6

*Lepelletier v. Fed. Deposit Ins. Corp.*,
　164 F.3d 37 (D.C. Cir. 1999) ................................................................................... 13

*Lukas v. FCC*,
　Civ. A. No. 19-0475 (RCL), 2020 WL 1065700 (D.D.C. Mar. 5, 2020) ......................... 21, 22

*Marks v. Dep't of Just.*,
　578 F.2d 261 (9th Cir. 1978) ................................................................................... 6

*Matsushita Elec. Indus. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................... 4

*Mead Data Cent., Inc. v. Dep't of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ............................................................. 15

*Mittleman v. Postal Regul. Comm'n*,
    757 F.3d 300 (D.C. Cir. 2014) ............................................................. 17

*Nat'l Ass'n of Home Builders v. Norton*,
    309 F.3d 26 (D.C. Cir. 2002) ............................................................... 10

*Nat'l Ass'n. of Retired Fed. Emps. v. Horner*,
    879 F.2d 873 (D.C. Cir. 1989) ............................................................. 14

*Nat'l Sec. Archive v. CIA*,
    752 F.3d 460 (D.C. Cir. 2014) ......................................................... 9, 10

*New York v. Trump*,
    490 F. Supp. 3d 225 (D.D.C. 2020) ..................................................... 17

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ............................................................................... 9

*Noel v. Olds*,
    149 F.2d 13, n.7 (D.C. Cir. 1945) ......................................................... 4

*Oglesby v. Dep't of Army*,
    920 F.2d 57 (D.C. Cir. 1990) ............................................................... 6

*Pub. Emps. for Env't Resp. v. EPA*,
    211 F. Supp. 3d 227 (D.D.C. 2016) ..................................................... 11

*Rockwell Int'l Corp. v. Dep't of Just.*,
    235 F.3d 598 (D.C. Cir. 2001) ............................................................... 9

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ......................................................... 5, 7

*Schrecker v. Dep't of Just.*,
    349 F.3d 657 (D.C. Cir. 2003) ............................................................... 6

*Sears, Roebuck & Co. v. U.S. Postal Serv.*,
    844 F.3d 260 (D.C. Cir. 2016) ............................................................. 17

*Shurtleff v. EPA*,
    991 F. Supp. 2d 1 (D.D.C. 2013) ......................................................... 14

*Steinberg v. Dep't of Just.*,
    23 F.3d 548 (D.C. Cir. 1994) ............................................................... 7

iv

*Students Against Genocide v. Dep't. of State*,
    257 F.3d 828 (D.C. Cir. 2001) ................................................................ 5

*Sussman v. U.S. Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007) ............................................................. 16

*Terry v. Reno*,
    101 F.3d 1412 (D.C. Cir. 1996) ........................................................... 3-4

*Truitt v. Dep't of State*,
    897 F.2d 540 (D.C. Cir. 1990) ................................................................ 6

*U.S. Telecom Ass'n v. FCC*,
    359 F.3d 554 (D.C. Cir. 2004) .............................................................. 21

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) .................................................................... 11, 12

*Valencia-Lucena v. U.S. Coast Guard*,
    180 F.3d 321 (D.C. Cir. 1999) ................................................................ 6

*Weisberg v. Dep't of Just*,
    705 F.2d 1344 (D.C. Cir. 1983) .............................................................. 5

*Weisberg v. Dep't of Just.*,
    627 F.2d 365 (D.C. Cir. 1980) ................................................................ 7

*Weisberg v. Dep't of Just.*,
    745 F.2d 1476 (D.C. Cir. 1984) .............................................................. 6

**Statutes**

5 U.S.C. § 552(a)(6)(A)(i)(III)(aa) .................................................. 19, 20, 21

5 U.S.C. § 552(a)(8)(A)(i)(I) ................................................................ 14

5 U.S.C. § 552(b) ................................................................................ 15

5 U.S.C. § 552(b)(3) ....................................................................... 2, 12

5 U.S.C. § 552(b)(5) ........................................................................ 2, 9

5 U.S.C. § 552(b)(6) .......................................................................... 13

5 U.S.C. §§ 701-706 ...................................................................... 3, 16

39 U.S.C. § 410(a) .................................................................. 2, 12, 17, 18

39 U.S.C. § 410(c)(2) .......................................................................... 2

**Regulations**

39 C.F.R. § 265.8 ...................................................................... 20, 21, 22

**Rules**

Fed. R. Civ. P. 12(c) ........................................................................................... 1, 3, 4

Fed. R. Civ. P. 12(h)(3) ........................................................................................... 17

Fed. R. Civ. P. 56 ...................................................................................................... 1

Fed. R. Civ. P. 56(a) ................................................................................................. 4

Fed. R. Civ. P. 56(c)(1)(A) ....................................................................................... 5

Pursuant to Federal Rules of Civil Procedure ("Rule") 12(c) and 56, Defendants United

States Postal Service (the "Postal Service" or the "Agency"), Postmaster General Louis DeJoy,

and General Counsel Thomas J. Marshall respectfully submit this Memorandum of Law in

Support of Defendants' Motion for Summary Judgment and Judgment on the Pleadings.

## **INTRODUCTION**

This case involves Plaintiff's Freedom of Information Act claims based on requests for

agency records pertaining to a Privacy Act Statement that the Postal Service included on an

agency website for the public to use to order rapid antigen COVID-19 tests for delivery through

the Postal Service.  Plaintiff also challenges the Postal Service's regulations as *ultra vires*

because they delegate adjudication of FOIA administrative appeals from the Postmaster General

to the General Counsel.  Plaintiff's claims are meritless.

The Postal Service is entitled to summary judgment with respect to Plaintiff's two FOIA

requests, one involving the Privacy Act Statement and another relating to communications with

labor organizations.  The Agency conducted reasonable searches in the locations where

responsive records were likely to be found as to both requests.  The Postal Service produced nine

pages of emails and withheld segregable attorney-client communications, deliberative material,

and contact information of Postal Service employees.  The Agency's reliance on these

exemptions was appropriate.

Plaintiff's *ultra vires* claims should be rejected for several reasons.  As an initial matter,

the Postal Service is not subject to the Administrative Procedure Act ("APA"), and so that claim

should be dismissed for lack of subject matter jurisdiction.  On the merits, Plaintiff has failed to

demonstrate, among other things, that the Postal Service acted in excess of its delegated powers

and contrary to a specific prohibition in the statute that is clear and mandatory.  Plaintiff has not

cited any Agency action that contravened any statutory or regulatory provision.  Defendants are

entitled to judgment on the pleadings regarding this claim.

For these reasons, as discussed more fully below, the Court should grant this motion,

enter summary judgment in favor of Defendants as to the FOIA claims and enter judgment on the

pleadings in favor of Defendants as to the claims alleging *ultra vires* action.

## **BACKGROUND**

By letter dated February 7, 2022, Plaintiff submitted a FOIA request for the following:

> 1.  All records concerning the "Privacy Act Statement" contained on
> USPS's webform through which members of the public may order rapid antigen
> COVID-19 tests (https://special.usps.com/testkits).  The records requested
> include, but are not limited to, those that reflect USPS's decision to depart from
> using its default "Privacy Act notice" that is "for personal information collected
> online" (which is published at https://about.usps.com/who/legal/privacy-
> policy/full-privacypolicy.htm) and instead to use a "Privacy Act Statement" that
> says USPS may, without consent, disclose information it obtains about the public
> through the COVID-19 test webform to "labor organizations as required by
> applicable law."

> 2.  All records concerning USPS's disclosure to any labor
> organization of information it obtained through the COVID-19 test webform.

*See* Compl.[1] Ex. A.  The Postal Service has referred to the numbered requests as "Item #1" and

"Item #2."  Castorina Decl.[2] ¶ 5.

With respect to Item #1, the Postal Service's Privacy and Records Management Office

conducted searches for responsive records and produce nine pages of emails with redactions

based on Exemptions 3 (along with 39 U.S.C. § 410(c)(2), 5, and 6, 5 U.S.C. § 552(b)(3), (5),

(6).  Castorina Decl. ¶ 16 & Exhibit 1 (redacted pages attached).

---

[1]   Citations to "Compl." refer to the Complaint, filed on April 28, 2022.  ECF No. 1.

[2]   Citations to "Castorina Decl." refer to the Declaration of Janine Castorina, dated July 29,
2022, submitted herewith.

With respect to Item #2, the offices in the Postal Service in which any responsive records were likely to be found conduced searches for responsive records, including the Privacy and Records Management Office, the Information Technology Department, the Corporate Information Security Department, and the Labor Relations Department. *Id.* ¶ 27. No responsive records were identified based on these searches and an Agency employee familiar with the agency and its records attests that no other places besides the ones that have been searched are likely to contain responsive records. *Id.*

On April 28, 2022, Plaintiff commenced this action by filing the Complaint. ECF No. 1. In Counts One and Two, the pleading asserts separate claims under FOIA, alleging that the Postal Service wrongfully withheld records and failed to conduct an adequate search in response to Plaintiff's requests. Compl. ¶¶ 54-69. In Count Three, Plaintiff alleges that Defendants violated the APA, 5 U.S.C. §§ 701-706, because its regulations "are in excess of statutory authority, or limitations, or short of statutory right to the extent they place the authority to adjudicate FOIA administrative appeals in a person(s) who is not the head of USPS." *Id.* ¶ 73. Count IV asserts Plaintiff's claim that the Postal Service's regulations are *ultra vires* because they "misconstrue" FOIA to "allow a person(s) who is not the head of [the Postal Service] to adjudicate FOIA appeals," among other reasons. *Id.* ¶ 78. Plaintiff seeks declaratory and injunctive relief, as well as an award of attorneys' fees and other litigation costs. *Id.* at 17-18.

## APPLICABLE LEGAL STANDARDS

### I. RULE 12(c) – JUDGMENT ON THE PLEADINGS

Under Federal Rule of Civil Procedure ("Rule") 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." To prevail, a movant must show, at the close of the pleadings, that no issue of material fact remains to be resolved, and that the movant is entitled to judgment as a matter of law. *See Terry v. Reno*,

101 F.3d 1412, 1423 (D.C. Cir. 1996); *Konah v. District of Columbia*, 915 F. Supp. 2d 7, 18 (D.D.C. 2013).

"Because Rule 12(c) provides judicial resolution at an early stage of a case, the party seeking judgment on the pleadings shoulders a heavy burden of justification." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.* 933 F.3d 751, 760 (D.C. Cir. 2019). The movant must demonstrate that it is entitled to judgment in its favor even accepting as true all well-pleaded facts in the opponent's pleading and even accepting as false all the movant's contested assertions. *Id.* at 760–61. Accordingly, "[i]f material questions of fact are presented by the pleadings, the remedy by motion for judgment on the pleadings under Rule 12(c) is not available." *Id.* at 761 (quoting *Noel v. Olds*, 149 F.2d 13, 14, n.7 (D.C. Cir. 1945)).

## II.      RULE 56 – SUMMARY JUDGMENT

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must show that the dispute is genuine and material to the case. A "genuine issue" is one whose factual dispute can affect the substantive outcome of the case and is supported by admissible evidence that a reasonably trier of fact could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The burden on the moving party may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

FOIA cases are typically and appropriately decided on motions for summary judgment. *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d

123, 130 (D.D.C. 2011).  In a FOIA action, an agency that moves for summary judgment "bears the burden of showing that there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requester."  *Weisberg v. Dep't of Just*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).  An agency can meet its burden by submitting declarations or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  Summary judgment is justified in a FOIA lawsuit once the agency demonstrates that no material facts are in dispute and, if applicable, that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure.  *Students Against Genocide v. Dep't. of Stat*e, 257 F.3d 828, 833 (D.C. Cir. 2001).

## ARGUMENT

In response to Plaintiff's FOIA requests seeking records regarding a "Privacy Act Statement" on the Postal Service's webpage for ordering rapid antigen COVID-19 tests and the Postal Service's disclosure to labor organizations of information that it obtained from the public via that website, the Postal Service conducted reasonable searches and produced the non-exempt portions of responsive records as well as the exempt portions for which it could foresee no harm.

## I.   THE POSTAL SERVICE IS ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S FOIA CLAIMS.

### A.   The Postal Service Conducted Reasonable Searches.

Under FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents."  *Weisberg*, 705 F.2d at 1351.  A search is not inadequate merely because it failed to "uncover[] every document extant."  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see also Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (noting that "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured").  It is appropriate for an agency to search for responsive records in

accordance with the manner in which its records systems are indexed. *Greenberg v. Dep't of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998).

Where agency affidavits assert that a reasonable search was conducted, the agency is entitled to a presumption of good faith. *Defs. of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004). "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request if responsive documents are likely to be located in one place. *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996); *Marks v. Dep't of Just.*, 578 F.2d 261, 263 (9th Cir. 1978). Nor does the FOIA require that an agency search every record system. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

"To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). However, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The process of conducting an adequate search for documents requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and it is "hardly an area in which the courts should attempt to micromanage the executive branch." *Schrecker v. Dep't of Just.*, 349 F.3d 657, 662 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

"[T]he sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" for summary judgment in the agency's favor to be inappropriate based on the adequacy of the search.  *Weisberg v. Dep't of Just.*, 627 F.2d 365, 370 (D.C. Cir. 1980) (quoting *Founding Church of Scientology v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979)).  A plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents." *Brown v. Dep't of Just.*, 724 F. Supp. 2d 126, 129 (D.D.C. 2010) (quoting *SafeCard Servs.*, 926 F.2d at 1200); *accord Steinberg v. Dep't of Just.*, 23 F.3d 548, 552 (D.C. Cir. 1994) (a plaintiff's "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them").

In this case, the Postal Service's searches were reasonably calculated to identify each of the categories of documents requested by Plaintiff.  In response to Item #1, which sought records concerning a "Privacy Act Statement" on the Agency's webform for public requests for rapid antigen COVID-19 tests, the Postal Service's Privacy and Records Management Office searched for responsive records.  This was the relevant office to search for responsive records because it drafts all Privacy Act Statements for the Postal Service.  Castorina Decl. ¶ 16.  Specifically, each of the three staff members involved in drafting the Privacy Act Statement searched for responsive records in their emails.  *Id.*  A search limited to the office's emails was appropriate because drafts of the Privacy Act Statement were circulated exclusively via email by the three staff members.  *Id.*  As a result of these searches, the Postal Service identified nine pages of responsive records.[3]  *Id.* ¶ 16 & Exhibit 1 (redacted documents attached).

---

[3]      The Postal Service initially determined that there were no records responsive to Item #1 because the Agency understood that the Privacy Notice arises from the E-Government Act, while the Privacy Act Statement arises from the Privacy Act of 1974.  Because the Privacy Notice and

The Postal Service also conducted a reasonable search for records concerning the agency's "disclosure to any labor organization of information it obtained through the COVID-19 test webform," as requested in Item #2.  The Postal Service charged each office that participated in the creation and administration of the test kit webpage with searching for responsive records. These offices were the Privacy and Records Management Office, the Information Technology Department, the Corporate Information Security Department, and the Labor Relations Department. *Id.* ¶ 27.  Because no other offices were involved with the test kit webpage, it is highly unlikely that any other Postal Service department or office would have responsive records because the four offices that searches for records are the only offices handling matters related to disclosures to labor organizations or information obtained through the COVID-19 test kit webpage. *Id.*

**B.**   <u>**The Postal Service Properly Withheld Information Pursuant to Exemption 5.**</u>

In response to Item #1 of Plaintiff's FOIA request, the Postal Service produced portions of nine pages of emails, withholding segregable portions of nine pages of emails reflecting deliberative, pre-decisional communications regarding the draft Privacy Statement that was to be used on the COVID-19 test kit webpage.  As to the same nine pages, the Postal Service withheld attorney-client communications pursuant to Exemption 5 and the attorney-client privilege.[4]

---

Privacy Act Statement arise from separate statutes with separate purposes, there was no decision by the Postal Service to "depart" from a "default" notice, and so there would be no records responsive to Item #1 because it was based on erroneous legal premises.  Castorina Decl. ¶¶ 13-14.

[4]   The Postal Service redacted the subject line in the emails produced to Plaintiff pursuant to Exemption 5 and the deliberative process privilege, as well as Exemption 3 and the Postal Reorganization Act.  The Agency no longer intends to withhold this information and discloses that the subject lines are "Re: 810" (Pages 1-5) and "Re: Privacy Statement Updated" (Pages 7-9).  *See* Castorina Decl. Ex. 2 (*Vaughn* Index).

These withholdings were proper.  Exemption 5 allows an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5). This exemption shields documents of the type that would be privileged in the civil discovery context, including materials protected by the attorney-client privilege and the executive deliberative process privilege.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598, 601 (D.C. Cir. 2001).

### 1. The Postal Service Properly Withheld Deliberative, Pre-Decisional Communications Pursuant to the Deliberative Process Privilege.

When Congress enacted FOIA Exemption 5 and protected "inter-agency or intra-agency memorandums or letters that would not be available" in litigation with an agency, 5 U.S.C. § 552(b)(5), it had the deliberative process privilege "specifically in mind."  *Sears*, 421 U.S. at 150.  That well-established privilege "protect[s] the 'decision making processes of government agencies'" by withholding "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  *Id.*

FOIA's exemption of documents covered by the deliberative process privilege serves several important purposes.  Protecting internal agency deliberations from disclosure "encourage[s] the candid and frank exchange of ideas in the agency's decisionmaking process," which, in turn, improves "the quality of administrative decisions."  *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014); *see also Sears*, 421 U.S. at 150-51.  The withholding of deliberative materials also "protect[s] against confusing the issues and misleading the public" by preventing the release of documents containing "rationales for a course of action which were not

9

in fact the ultimate reasons for the agency's action." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). The exemption and underlying privilege thereby ensure that agency officials are "judged by what they decided, not for matters they considered before making up their minds." *Nat'l Sec. Archive*, 752 F.3d at 462.

The deliberative process privilege covers communications that are "pre-decisional" and "deliberative." *Id.* at 463. To be pre-decisional, the communication "must have occurred before any final agency decision on the relevant matter." *Id.* To qualify as deliberative, the communication must be "intended to facilitate or assist development of the agency's final position on the relevant issue." *Id.*; *see also Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002) ("Material is deliberative if it reflects the give-and-take of the consultative process.").

The emails at issue reflect internal staff communications among the Postal Service's Chief Privacy and Records Management Officer with her subordinates and colleagues concerning iterations of the Privacy Act Statement and placement on the test kit webpage. Castorina Decl. ¶ 18. The deliberative material includes drafts of the statement showing edits made by participants in the discussion, as well as discussion about the suggested comments. These drafts and comments appeared on the live testing of the webpage before the webpage was finalized. *Id.* The redacted communications are necessarily pre-decisional because they took place prior to any the Postal Service's final decision to include a Privacy Act Statement on the COVID-19 test kit webpage, which was in the testing phase at the time of the communications. *Id.* ¶ 18 & Ex. 2 (*Vaughn* Index). *See Campaign Legal Ctr. v. Dep't of Just.*, 34 F.4th 14, 24 (D.C. Cir. 2022) (holding that a draft letter and related email communications were deliberative because 'they reflect the give-and-take of the consultative process' underlying the formulation of

the letter and its proposed policy justifications.") (quoting *Jud. Watch, Inc. v. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017)).

These internal communications are deliberative because they comprise drafts of the Privacy Act Statement and discussions related thereto in connection to testing the webpage. Castorina Decl. ¶ 18.  The drafts differ from the final Privacy Act Statement that appears on the test-kit webpage.  *Id.*

### 2. The Postal Service Appropriately Withheld Attorney-Client Communications Under the Attorney-Client Privilege.

The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services.  *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Fisher v. United States*, 425 U.S. 391, 403 (1976); *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984).  The privilege applies to communications between agency counsel and agency officials and employees who are their clients.  *See, e.g.*, *In re Lindsey*, 148 F.3d 1100, 1104-05 (D.C. Cir. 1998) (per curiam).  Importantly, "[w]ithout protections for attorney-client communications, agency officials might not share information with their counsel in the first place, and would consequently be deprived of sound legal advice," and "[t]his very policy concern grounds FOIA's Exemption 5."  *Pub. Emps. for Env't Resp. v. EPA*, 211 F. Supp. 3d 227, 230 (D.D.C. 2016).  "Exemption 5 is intended to protect the quality of agency decision-making by preventing the disclosure requirement of the FOIA from cutting off the flow of information to agency decision-makers.  Certainly this covers professional advice on legal questions that bear on those decisions."  *Id.* at 231; *see also In re County of Erie*, 473 F.3d 413, 418, 422 (2d Cir. 2007) ("Access to legal advice by officials responsible for formulating, implementing and monitoring governmental policy is fundamental to 'promot[ing] broader public interests in the observance of

law and administration of justice,') (holding that documents "sent for the predominant purpose of soliciting or rendering legal advice" are covered by the attorney-client privilege) (quoting *Upjohn*, 449 U.S. at 389).

The Postal Service withheld portions of the nine emails reflecting attorney-client communications.  All the withheld communications involve the Postal Service's Chief Privacy and Records Management Officer, an attorney in the Postal Service's Law Department, with her staff providing advice on the Privacy Act of 1974, including requirements for the content of Privacy Act Statements and their location on the webpage.  Castorina Decl. ¶ 20 & Exhibits 1-2. These communications reflect legal advice rendered to the Postal Service's Executive Director of Brand Marketing, Manager of Digital Brand Marketing, and Vice President of Corporate Information Security Office.  *Id.*  These internal discussions are protected by the attorney-client privilege because they reflect advice concerning the application of the Privacy Act's requirements to the COVID-19 test kit webpage.  *Id.*  The Postal Service treats these communications as confidential communications among its Law Department employees, and the communications have not been released to individuals outside the Law Department.  *Id.*

### C.     The Postal Service Properly Withheld Employee Mobile Phone Numbers and Email Addresses Pursuant to Exemption 6.

The Postal Service also withheld the mobile phone numbers and email addresses of agency employees on the nine pages of emails.  These withholdings were based on FOIA Exemption 6.[5]

---

[5]      In response to Plaintiff's request, the Postal Service also withheld the email addresses and mobile telephone numbers pursuant to Exemption 3, 5 U.S.C. § 552(b)(3), and the Postal Reorganization Act, 39 U.S.C. § 410(c)(2).  The Postal Service is not relying on Exemption 3 as a basis for such withholdings in this motion.

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  The term "similar files" is broadly construed and includes "[g]overnment records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual.").  Here, the Postal Service searched the email folders of employees who were involved or potentially involved in communications responsive to Item #1.  The Agency withheld personal contact information of the Postal Service employees referenced in those emails.

In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004). "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47; *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993).  "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck*, 997 F.2d at 1492.

Here, the employees' email addresses and mobile phone numbers are appropriately withheld under Exemption 6.  These employees have privacy interests in their work email addresses and mobile phone numbers.  Castorina Decl. ¶ 24.  Public disclosure of this

information would subject employees to unwarranted harassment.  *Id.*  Employees would be subjected to unwanted phone calls while on and off duty, as mobile phones, unlike an office line, travels to and from an employee's home.  *Id.*  Similarly, disclosing employee email addresses would subject them to unsolicited emails that have nothing to do with their daily responsibilities such as phishing schemes and spam messages.  *Id.*.

On the other side of the scale, Plaintiff cannot identify any public interest that could outweigh the employees' substantial interest in the nondisclosure of their contact information. The email addresses and mobile telephone numbers of the Law Department employees involved in reviewing the Privacy Act Statement at issue will not provide any meaningful information about how the Postal Service is discharging its statutory duties.  *Shurtleff v. EPA*, 991 F. Supp. 2d 1, 18-19 (D.D.C. 2013) (concluding that redacted email addresses for agency employees was appropriate under Exemption 6).  Indeed, it is difficult to imagine how email and addresses and cellphone numbers would shed any light on the government's operations.  If there is no public interest in the disclosure of certain information, "something, even a modest privacy interest, outweighs nothing every time."  *Nat'l Ass'n. of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).

For these reasons, the substantial privacy interests at stake far outweigh any *de minimis* public interest in disclosure.

### D. The Postal Service Complied with FOIA's Foreseeable Harm Requirement.

Defendant satisfied FOIA's requirement that, for each withholding, they "reasonably foresee[] that disclosure would harm an interest protected by [the] exemption."  5 U.S.C. § 552(a)(8)(A)(i)(I); *Amadis v. Dep't of State*, 971 F.3d 364, 370-71 (D.C. Cir. 2020).  The agency declaration explains that, with respect to each withholding, it was reasonably foreseeable

that disclosure of the withheld information would harm an interest protected by the exemption relied upon.

With respect to the information withheld pursuant to Exemption 5 and the deliberative process privilege, disclosure of such information would hamper the day-to-day discussions amongst staff who could not freely share their ideas and proposals as they would be inhibited from effectively communicating with one another.  Castorina Decl. ¶ 19.  Accordingly, disclosing internal agency deliberations would lower the overall quality of the Postal Service's decision-making process by exposing preliminary discussions and drafts concerning the appropriate language to be used in the Privacy Act Statement.  *Id.*  Moreover, disclosure would also confuse the public because draft versions of the Privacy Act Statement do not reflect the final Privacy Act Statement.  *Id.*  Accordingly, the Postal Service satisfied the foreseeable harm requirement regarding these withholdings.

### E.  The Postal Service Complied with FOIA's Segregability Requirement.

Under the FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information subject to FOIA must be disclosed after redaction of the exempt information.  5 U.S.C. § 552(b).  Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions."  *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008).  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be

overcome by some "quantum of evidence" by the requester.  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

In response to Plaintiff's request, Defendant conducted a line-by-line review of the responsive records to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.  Castorina Decl. ¶ 25.  Based on the line-by-line review, all non-exempt information was segregated and non-exempt portions were released.  *Id.*  The Postal Service did not withhold any non-exempt information on the ground that it was not segregable.  *Id.*  The Court should therefore conclude that the Postal Service complied with its duty to segregate exempt from non-exempt information.

*      *      *

For the above reasons, the Postal Service is entitled to summary judgment as to Plaintiff's FOIA claims as set forth in Counts One and Two of the Complaint.

## II.    THE POSTAL SERVICE IS ENTITLED TO JUDGMENT ON THE PLEADINGS WITH RESPECT TO PLAINTIFF'S CLAIMS THAT THE AGENCY ACTED *ULTRA VIRES.*

Plaintiff asserts two claims regarding its allegation that unspecified Postal Service "regulations" are unlawful "to the extent they place the authority to adjudicate administrative appeals in a person(s) who is not the head of USPS."  Compl. ¶ 72.  Plaintiff alleges that these regulations are *ultra vires* because "they patently misconstrue FOIA to allow a person who is not the head of USPS to adjudicate FOIA appeals."  *Id.* ¶ 78.  Plaintiff asserts a claim under the APA, 5 U.S.C. §§ 701-706, and a claim based on the concept of "*ultra vires* action."  *Id.* ¶¶ 69-80.  Plaintiff argues that the Court should set aside the Postal Service's decision concerning Plaintiff's FOIA appeal on these grounds.  *Id.* ¶¶ 75, 80.

A. **Jurisdiction and a Cause of Action Under the APA Is Unavailable.**

The Court should dismiss Count Three of the Complaint because Congress has expressly

exempted the Postal Service's actions from APA review, with limited exceptions not applicable

here.  *See* 39 U.S.C. § 410(a) (stating that, with certain exceptions, "no Federal law dealing with

public or Federal contracts, property, works, officers, employees, budgets, or funds, including

the provisions of chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Postal

Service"); *see also Mittleman v. Postal Regul. Comm'n*, 757 F.3d 300, 305 (D.C. Cir. 2014)

("[T]he Postal Service is exempt from review under the [APA]." (internal quotation marks and

citations omitted)).

The D.C. Circuit has established that "non-statutory" review may be available "for

certain Postal Service decisions, notwithstanding the preclusion of APA review under 39 U.S.C.

§ 410(a)."  *Mittleman*, 757 F.3d at 307.  But that review is limited: "It is available only to

determine whether the agency has acted *ultra vires*—that is, whether it has exceeded its statutory

authority."  *Id.* (internal quotation marks and citations omitted); *see also New York v. Trump*,

490 F. Supp. 3d 225, 240 (D.D.C. 2020) ("'The scope of Non-APA review is narrow . . . [and] is

available only to determine whether the agency has acted ultra vires—that is whether it has

exceeded its statutory authority.'") (quoting *Sears, Roebuck & Co. v. U.S. Postal Serv.*, 844 F.3d

260, 265 (D.C. Cir. 2016)).

Accordingly, Plaintiff's claim alleging that the Postal Service acted *ultra vires* is

reviewable, but not under the APA.  The Court should therefore enter judgment on the pleadings

in Defendants' favor with respect to Count Three of the Complaint because the Court lacks

subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3) ("If the Court determines at any time that it

lacks subject matter jurisdiction, the court must dismiss the action.").

**B.** <u>**USPS Is Entitled to Judgment on the Pleadings on the *Ultra Vires* Claim.**</u>

To prevail on an *ultra vires* claim, the plaintiff must establish three things: "(i) the statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Changji Esquel Textile Co. Ltd. v. Raimundo*, No. 21-5219, --- F.4th ---, 2022 WL 2813243, at *3 (D. C. Cir. July 19, 2022) (quoting *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509 (D.C. Cir. 2019)). The D.C. Circuit has held that the third element is "especially demanding." *Id.* (citing *Fed. Express Corp. v. Dep't of Com.*, No. 20-5337, --- F.4th ---, ---, 2022 WL 2582364, at *5 (D.C. Cir. July 8, 2022)) ("Only error that is patently a misconstruction of the Act, that disregards a specific and unambiguous statutory directive, or that violates some specific command of a statute will support relief.") (cleaned up).  In other words, an agency violates a "clear and mandatory" statutory command only when the error is "so extreme that one may view it as jurisdictional or nearly so." *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988).

Here, Defendants are entitled to judgment on the pleadings because Plaintiff has failed to satisfy any of these three required elements.

### 1. The Statutory Preclusion of Review Is Express.

First, the statutory preclusion of review under the Postal Reorganization Act is express, not implied.  As discussed above, 39 U.S.C. § 410(a) expressly precludes APA review of claims against the Postal Service "dealing with . . . officers [and] employees."  Plaintiff's claim plainly takes issue with the General Counsel as the officer who is charged with adjudicating FOIA appeals.  Plaintiff argues—without identifying any regulations—that the Postmaster General (and not the General Counsel or their designee) is the only official who can legally adjudicate FOIA appeals.  The referenced provision of the Postal Reorganization Act expressly precludes

judicial review of Plaintiff's claim under the APA.  Plaintiff, therefore, cannot satisfy the first

required element of an *ultra vires* claim.

### 2.    Plaintiff Could Have Raised Its Arguments in Its FOIA Appeal.

Plaintiff also cannot satisfy the second element because it plainly has an alternative

procedure to raise its arguments concerning which official must adjudicate FOIA appeals.

Specifically, Plaintiff had an opportunity in its FOIA appeal to raise the argument that the Postal

Service's regulations were inconsistent with the statute, and that only the Postmaster General, as

the "head of the agency" could adjudicate Plaintiff's appeal.  Plaintiff, however, declined to raise

that issue in its appeal.  Compl. Ex. F.

### 3.    Plaintiff Failed to Show That the Postal Service Acted in Excess of Its Delegated Powers and Contrary to a "Clear and Mandatory" Statutory Prohibition.

Finally, and most compellingly, Plaintiff cannot meet the "especially demanding"

standard to show that the Postal Service "plainly act[ed] in excess of its delegated powers and

contrary to a specific prohibition in the statute that is clear and mandatory."  The Complaint

alleges that the Postal Service's "regulations" are *ultra vires* because they are inconsistent with

FOIA.  Plaintiff interprets the statute as meaning that only the head of the relevant agency—in

this case, the Postmaster General—must adjudicate FOIA appeals, and that no other Postal

Official may do so.  Plaintiff relies exclusively on 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa), which

provides as follows:

> (6)(A)  Each agency, upon any request for records made under paragraph (1),  (2),
> or (3) of this subsection, shall—
>
> (i)      determine within 20 days (excepting Saturdays, Sundays, and legal
>          public holidays) after the receipt of any such request whether to
>          comply with such request and shall immediately notify the person
>          making such request of—
>
> *      *      *

> (III)   in the case of an adverse determination—
>
> > (aa)   the right of such person to appeal to the head of the agency, within a period determined by the head of the agency that is not less than 90 days after the date of such adverse determination.

5 U.S.C. § 552(a)(6)(A)(i)(III)(aa).

This provision addresses to whom a requester must direct an appeal. The statute does not speak to which official at the agency must adjudicate an appeal. And contrary to Plaintiff's interpretation, the statute does not prohibit the head of an agency from delegating the responsibility to adjudicate the appeal to another official within the agency. Plaintiff has plainly misinterpreted this provision to mean that only the "head of the agency" must adjudicate all the administrative appeals.

Not only has Plaintiff misconstrued the relevant FOIA provision, but it fails to specify any "regulations" that are even remotely inconsistent with the statutory text. The most relevant Postal Service regulation is 39 C.F.R. § 265.8(b), titled "Adjudication of Appeals," which provides as follows:

> (b)   Adjudication of appeals.
>
> > (1)   The decision of the General Counsel or his or her designee constitutes the final decision of the Postal Service on the issue being appealed. The General Counsel will give prompt consideration to an appeal for expedited processing of a request. All other decisions normally will be made within 20 working days from the time of the receipt by the General Counsel. The 20-day response period may be extended by the General Counsel, or his or her designee, for a period not to exceed an additional 10 working days when reasonably necessary to permit the proper consideration of an appeal, under one or more of the unusual circumstances set forth in paragraph (a)(5) of this section. The aggregate number of additional working days utilized, however, may not exceed 10 working days.
>
> > (2)   An appeal ordinarily will not be adjudicated if the request becomes a matter of FOIA litigation.

>    (3)    On receipt of any appeal, the General Counsel, or his or her
>           designee, must take appropriate action to ensure compliance with
>           applicable classification rules.

39 C.F.R. § 265.8(b).

Even a cursory comparison of the statute and the regulation makes clear that the two are not inconsistent because they address different aspects of the FOIA process.  The statute requires that a requester who receives an adverse decision has the right "to appeal to the head of the agency."  5 U.S.C. § 552(a)(6)(A)(i)(III)(aa).  In contrast, 39 C.F.R. § 265.8(b) addresses various aspects of how the General Counsel will adjudicate a requester's appeal.  This regulation reflects that the Postal Service has delegated to its General Counsel (or the General Counsel's designee) the responsibility for adjudicating appeals.  Indeed, "[w]hen a statute delegates authority to a federal officer or agency, subdelegation to a subordinate federal officer or agency is presumptively permissible absent affirmative evidence of a contrary congressional intent."  *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004).  Plaintiff has failed to identify any statutory or regulatory provision that prohibits such a delegation here.  That failure dooms Plaintiff's *ultra vires* claim.

Further, Plaintiff's misguided interpretation of FOIA has previously been rejected by this Court.  In *Lukas v. FCC*, Civ. A. No. 19-0465 (RCL), 2020 WL 1065700, at *4 (D.D.C. Mar. 5, 2020), the Court noted that FOIA gives a "requester the right to appeal an adverse decision 'to the head of the agency.'"  The Court's analysis is instructive here:

>    It would, however, defy logic to say that the head of an agency may not delegate
>    the authority to handle appeals.  The FCC is led by a multi-member commission,
>    and these commissioners cannot be expected to review every FOIA appeal
>    individually.  No reasonable person would ever expect the Secretary of State to
>    spend his or her time pouring over FOIA appeals—it is expected that he or she
>    will delegate that authority to another person or group within the State

> Department.  Delegation is inherently reasonable, and [the plaintiff] can cite no
> case law that holds otherwise.

*Id.*

The same reasoning applies here, where the Postmaster General, as the chief executive officer of the Postal Service, is charged with managing and directing the day-to-day operations of the Agency and its more than 31,000 post offices, more than 500,000 career employees, and $77 billion budget.  The Postmaster General does not have sufficient time to independently review all the Agency's FOIA appeals, and it made sense for the Postal Service to have delegated that responsibility to the General Counsel, as reflected in 39 C.F.R. § 265.8.  The Postal Service's decision to delegate authority to the General Counsel "ensures (at least in theory) that all appeals are decided efficiently after being afforded full and fair consideration." *Lukas*, 2020 WL 1065700 at *4.

At bottom, Plaintiff has not shown (and cannot show) that the Postal Service acted outside its statutory authority because there is no FOIA provision precluding the "head of the agency" from delegating to another agency official the responsibility to adjudicate administrative appeals and, in any event, the Agency appropriately delegated that responsibility to the General Counsel by regulation.  Plaintiff therefore has failed to demonstrate that "the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory."  *Changji Esquel Textile,* 2022 WL 2813243, at *3.

*     *     *

Because Plaintiff has failed to satisfy any of the three mandatory elements to establish a claim for *ultra vires* action, Defendants are entitled to judgment on the pleadings with respect to Count Four of the Complaint.

## CONCLUSION

For the reasons set forth above, the Court should grant this motion, dismiss Count Three of the Complaint for lack of subject matter jurisdiction and enter summary judgment in favor of Defendants as to all remaining claims.

Dated:  July 29, 2022                          Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

_____/s/ Paul Cirino_____
PAUL CIRINO, D.C. Bar #1684555
Assistant United States Attorney
Civil Division
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C.  20530
Telephone: (202) 252-2529
paul.cirino@usdoj.gov

*Counsel for Defendants*