UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICANS FOR FAIR TREATMENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-1183 (RCL) |
| | ) | |
| UNITED STATES POSTAL SERVICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF JANINE CASTORINA

I, Janine Castorina, make the following Declaration in lieu of affidavit in accordance with the provisions of 28 U.S.C. § 1746.  I understand that my declaration may be introduced into the record of the above captioned action, or any other grievance, administrative proceeding, or suit pending in a court of law.

1.      I am over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration.

2.      I currently hold the position of Chief Privacy and Records Management Officer for the United States Postal Service.  Prior to holding my current position, I was an Attorney in the Postal Service's Commercial and Appellate Litigation section from October 2011 to March 2016.

3.      In my official capacity as Chief Privacy and Records Management Officer, I am responsible for establishing Postal Service policies relating to information disclosure, privacy, and records management; ensuring compliance with privacy and records statutes, regulations, and policies; and providing oversight and supervision of the Postal Service Privacy and Records Management Office ("PRMO"), which, *inter alia*, receives, tracks, and advises postal officials

on how to respond to FOIA requests.  My responsibilities also include managing and

coordinating the Postal Service's response to certain litigation arising under the FOIA including

the present complaint.

4.      As the Chief Privacy and Records Management Officer, it is my responsibility,

and that of my group within the Postal Service, to assist internal stakeholders with responses to

FOIA requests and to help those stakeholders understand and navigate the FOIA exemptions.

**The FOIA Request and Administrative Process**

5.      By letter dated February 7, 2022, Plaintiff submitted a request under the Freedom

of Information Act (FOIA), 5 U.S.C. § 552, for the following:

> a.      All records concerning the "Privacy Act Statement" contained on
> USPS's webform through which members of the public may order rapid antigen
> COVID-19 tests (https://special.usps.com/testkits). The records requested include,
> but are not limited to, those that reflect USPS's decision to depart from using its
> default "Privacy Act notice" that is "for personal information collected online"
> (which is published at https://about.usps.com/who/legal/privacy-policy/full-
> privacypolicy.htm) and instead to use a "Privacy Act Statement" that says USPS
> may, without consent, disclose information it obtains about the public through the
> COVID-19 test webform to "labor organizations as required by applicable law."
>
> b.      All records concerning USPS's disclosure to any labor
> organization of information it obtained through the COVID-19 test webform.

*See* Complaint ("Compl."), Ex. A, ECF No. 1.  The Postal Service hereinafter refers to each

request as "Item #1" and "Item #2," respectively.

6.      Between February 8, 2022, and February 11, 2022, Plaintiff and Marthea Hodge,

a Senior Government Information Specialist employed by the Postal Service, exchanged

communications discussing the scope of the FOIA request.

7.      By letter dated February 25, 2022, Ms. Hodge issued an initial decision.  In this

decision, Ms. Hodge informed Plaintiff that as to Item #1, there were no responsive records

reflecting a decision by the Postal Service to substitute a Privacy Notice with a Privacy Act

Statement because no such decision was made.  As to Item #2 of the request, Ms. Hodge

informed Plaintiff that Labor Relations conducted a search and found no responsive records.  *See*

Compl., Ex. D, ECF No. 1.

8.      By letter dated March 15, 2022, Plaintiff appealed the initial decision to the

General Counsel of the Postal Service's appellate authority.  *See* Compl., Ex. F, ECF No. 1.

Plaintiff asserted that the Postal Service failed to respond to its request for expedited processing

as required under 39 C.F.R. § 265.5(c)(3).  *Id*.  It further argued that the Postal Service

erroneously interpreted Item #1 and should have discovered responsive records as to Item #2 of

the FOIA request because records must exist.  *Id*.

9.      By letter dated April 6, 2022, the Postal Service issued an administrative decision

on the appeal – affirming in part and reversing in part the initial decision on the FOIA request.  A

true and accurate copy of the Postal Service's response to the appeal is attached as Exhibit 1 to

this declaration.

10.     In the appeal, the appellate authority for the General Counsel determined that a

search was necessary for records related to the specified Privacy Act Statement.  Such a search

was conducted, and records produced, subject to appropriate redactions pursuant to Exemptions

5, 6, and 3, in conjunction with 39 U.S.C. section 410(c)(2).  *See* Exhibit 1.

11.     The appellate authority for the General Counsel also concluded that the Postal

Service conducted an adequate search for records related to union disclosures.  *See* Exhibit 1.

12.     On April 28, 2022, Plaintiff filed the instant suit.  *See* ECF No. 1.

**The Postal Service's Response to Item #1**

13.     The Postal Service initially determined that there were no records responsive to

the portion of Item #1 alleging that the agency "depart[ed] from using its default 'Privacy Act

3

notice' that is 'for personal information collected online' (which is published at

https://about.usps.com/who/legal/privacy-policy/full-privacypolicy.htm) and instead to use a

'Privacy Act Statement' that says USPS may, without consent, disclose information it obtains

about the public through the COVID-19 test webform to 'labor organizations as required by

applicable law.'"

14.     The Postal Service's initial determination that there were no responsive records

was based on the Postal Service's understanding that the Privacy Notice arises from the E-

Government Act, while the Privacy Act Statement arises from the Privacy Act of 1974.  Because

the Privacy Notice and Privacy Act Statement arise from separate statutes with separate

purposes, there was no decision by the Postal Service to "depart" from a "default" notice.

15.     On appeal, the Postal Service determined that an additional search was warranted

because the scope of the FOIA request was not specifically narrowed to a purported decision

"from using [a] default 'Privacy Act notice.'"

16.     An additional search was conducted by the PRMO because all Privacy Act

Statements originate in this office.  The PRMO drafts all such statements for the Postal Service.

As to the Statement at issue, there were three staff members, including myself, within the PRMO

involved in creating the language.  Each staff member conducted a search of their emails.  This

search was reasonably calculated to reveal responsive records because the drafting of the Privacy

Act Statement was done entirely over email by the three staff members.  The search revealed

nine pages of responsive records which consisted of several emails among the Postal Service

staff members involved in creating the Statement.  These emails reflect the agency's internal

discussions in crafting the language of the Statement.  The nine pages were provided to the

requester with appropriate redactions pursuant to Exemptions 5, 6, and 3, in conjunction with 39

U.S.C. § 410(c)(2), as discussed in further detail below.

### *Redactions Reflected in Postal Service Response to Item #1*

### *Internal Deliberations About the Privacy Act Statement*

17.     As set forth in the attached *Vaughn* Index (Exhibit 2), the substance and subject

line of each email was redacted pursuant to Exemption (b)(5) under the deliberative process

privilege and the attorney-client privilege.

18.     **Exemption 5 / Deliberative Process.**  The responsive records are emails

reflecting internal staff communications between myself, subordinates and colleagues concerning

drafts of the Privacy Act Statement and placement on the test kit webpage.  The communications

include discussions about what language should be used in the Privacy Act Statement, which

would appear on the live testing of the webpage before the webpage was finalized.  The redacted

communications are pre-decisional because they occurred before any final actions were taken

relating to the COVID-19 test kit webpage in which the Privacy Act Statement appears.  These

internal discussions also are deliberative because they consist of drafts and proposed edits to the

Privacy Act Statement and discussions related to those drafts in connection with the testing of

the webpage.  The draft language differs from final Privacy Act Statement, which appears on the

test-kit webpage.  The Postal Service regards these internal discussions regarding policy matters

as confidential and has not disclosed them to any individuals outside the Law Department.

19.     Disclosure of these deliberative, pre-decisional communications would constrain

the day-to-day discussions amongst Postal Service staff who would not freely share their ideas

and proposals because they would feel inhibited from effectively communicating with one

another.  Accordingly, disclosing internal agency deliberations would diminish the overall

quality of the Postal Service's decision-making process by exposing preliminary discussions and drafts concerning the appropriate language to be used in the Privacy Act Statement.  Moreover, disclosure of these internal deliberations also could confuse the public because, as here, the draft versions of the Privacy Act Statement differ from the final version of the Privacy Act Statement.

20.    **Exemption 5 / Attorney-Client Privilege.**  The PRMO's Office falls within the Postal Service's Law Department with myself, as an attorney, overseeing and advising on matters within PRMO's purview and directing my staff appropriately to ensure the agency's compliance with various laws.  The primary area of expertise for this office, in addition to the FOIA, is advising on the Privacy Act, including its requirements for Privacy Act Statements, where they must be placed and what they must say.  The emails between my staff and myself rendering legal advice to our clients are covered by Exemption 5 because they are discussions within the Postal Service Law Department regarding the application of the law – in this instance, application of The Privacy Act's requirements to the COVD-19 test kit webpage.  The emails between and among myself, my staff and internal clients (including, for example, Heather L. Dyer, the Chief Information Security Officer and Kimberly Workinger, the Postal Services' Manager of Digital Brand Marketing), represents the Postal Service Law Department's advice on the Privacy Act and its application to the instant circumstances.  As a result, these documents contain the product of confidential legal discussions among government attorneys and an agency client which are protected under Exemption 5.

### *Postal Service Employees' Mobile Phone Numbers and Email Addresses*

21.    As noted in the attached *Vaughn* Index, Postal Service employee mobile phone numbers and postal email addresses were redacted under Exemption (b)(6) because the

information pertained to specific individuals and disclosure of this information would constitute an unwarranted invasion of personal privacy.

22.     **Exemption 6:** Under Exemption 6, the Postal Service may withhold "personnel files and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  This exemption covers all records and information about an individual and is not limited to intimate details or highly personal information.  *DOS v. Wash. Post Co.*, 456 U.S. 595, 600-602 (1982).  The personal privacy interests protected under Exemption 6 include, but are not limited to, an individual's interest in avoiding embarrassment, harassment, retaliation, annoyance or other adverse effect that would result from the public disclosure of the information pertaining to the individual. *Judicial Watch, Inc. v. DOS*, 875 F. Supp. 2d 37, 46 (D.D.C. 2012) (collecting cases).  Records revealing work email addresses and work cell phone numbers qualify as personnel records under Exemption 6.  *Id.* at 47; *see also Smith v. Dep't of Treasury*, 2020 WL 376641, at *4 (D.D.C. 2020) ("Disclosing the numbers for work cell phones, which employees maintain in their homes and on their person, could subject them to the type of harassment exemption 6 was designed to prevent, and therefore the court finds that the Treasury employees maintain a privacy interest in protecting their work cell phone numbers."); *Competitive Enter. Inst. v. EPA*, 12 F. Supp. 3d 100, 123 (D.D.C. 2014) (noting that Federal employees "have a powerful privacy interest in their work email addresses while they are employed"); *Shurtleff v. United States v. EPA*, 991 F. Supp. 2d 1, 18 (D.D.C. 2013) (concluding that Exemption 6 protected official employee email addresses and there was no significant public interest in disclosure).

23.     Under Exemption 6, a requester may overcome an individual's privacy interest only if the requester shows that the requester seeks to advance a public interest and disclosure of

the records will advance that public interest.  *Nat'l Archives & Records Admin. v. Favish*, 541

U.S. 157, 172 (2004).  The only public interest cognizable under Exemption 6 is the extent to

which public disclosure of the record or information would significantly contribute to public

understanding of the federal government's operations or activities.  *Id.*  Under Exemption 6, even

a very slight privacy interest by an individual may be enough "to outweigh a negligible or non-

existent public interest."  *DOD v. FLRA*, 510 U.S. 487, 497, 500 (1994).

24.     Employee email addresses and mobile phone numbers fall within the scope of

Exemption 6 as information that identifies specific individuals.  The Postal Service balanced the

privacy interests of the employees implicated in the responsive information against any public

interest in disclosure.  These employees have privacy interests in their work email addresses and

mobile phone numbers.  Disclosure of this information could subject employees to unwarranted

harassment.  Employees would be subjected to unwanted phone calls while on and off duty.

Mobile phones, unlike an office line, travels to and from an employee's home.  Similarly,

disclosing employee email addresses would subject them to unsolicited emails that have nothing

to do with their daily responsibilities such as phishing schemes and spam messages.  Revealing

this information would not serve the core purpose of FOIA by shedding light on the operations or

activities of the Postal Service.  Thus, the privacy interests at stake far outweigh any *de minimis*

public interest in disclosure.

### Segregation of Non-Exempt Information

25.     The Postal Service carefully reviewed the nine pages of responsive records

discussed above and withheld from disclosure only information that was exempt under

Exemptions 5, 6, and 3 in conjunction with 39 U.S.C. § 410(c)(2).  A line-by-line review of the

records showed that some non-exempt information could be segregated for release such as dates,

employee names, titles, and office addresses.  All reasonably segregable, non-exempt information from these records has been disclosed to Plaintiff.

**The Postal Service's Response to Item #2 of the FOIA Request**

26.     The Postal Service found no responsive records to Item #2 of the FOIA request but determined that there was an adequate search.  The Postal Service conducted a search in several departments including the PRMO, Information Technology ("IT"), Corporate Information Security ("CISO"), and Labor Relations.  As mentioned, the PRMO handles initial FOIA responses and advice on the Privacy Act – which would include disclosures made pursuant to routine uses under the Privacy Act.  IT and CISO ran the COVID-19 test kit program. Labor Relations handles all matters concerning labor organizations.  These are the departments most likely to have responsive records.

27.     My staff and I conducted a search for responsive records.  Ms. Dyer directed her office to search for responsive records.  Garret Hoyt, Vice President of Technology Applications, also had his office conduct a search.  Ray Donahue, Managing Counsel of Labor Law, worked with Labor Relations to conduct a search as well.  None of these searches resulted in records responsive to Item #2.  It is highly unlikely that any other department or office would have responsive records as PRMO, CISO, IT, and Labor Relations are the only Postal Service offices handling matters related to disclosures to labor organizations of information obtained through the COVID-19 test kit webpage.  At the time of the search, the Postal Service did not disclose any information obtained from the COVID-19 test kit webpage to any labor organization.  Thus, the Postal Service found no responsive records to Item #2 of the FOIA request.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

declaration is true and correct.  Executed in Washington, D.C., on July 29, 2022.

Janine
Castorina

Digitally signed by
Janine Castorina
Date: 2022.07.29
14:40:23 -04'00'

Janine Castorina

# EXHIBIT 1



## OFFICE OF THE GENERAL COUNSEL
### HEADQUARTERS, WASHINGTON, DC

IN RE, APPEAL OF CASE NO.
2022-FPRO-00906

APPEAL NO. 2022-APP-00100

ATTORNEY TRAM T. PHAM
ON BEHALF OF GENERAL COUNSEL THOMAS J. MARSHALL

### OPINION AND ORDER

After careful consideration, this office is affirming in part and reversing in part the action of Marthea Hodge, Government Information Specialist, on FOIA request 2022-FPRO-00906.

I.     STATEMENT OF FACTS

1. By letter dated February 7, 2022, the requester submitted a request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, for the following:

   a. All records concerning the "Privacy Act Statement" contained on USPS's webform through which members of the public may order rapid antigen COVID-19 tests (https://special.usps.com/testkits). The records requested include, but are not limited to, those that reflect USPS's decision to depart from using its default "Privacy Act notice" that is "for personal information collected online" (which is published at https://about.usps.com/who/legal/privacy-policy/full-privacypolicy.htm) and instead to use a "Privacy Act Statement" that says USPS may, without consent, disclose information it obtains about the public through the COVID-19 test webform to "labor organizations as required by applicable law."
   b. All records concerning USPS's disclosure to any labor organization of information it obtained through the COVID-19 test webform.

2. By letter dated February 8, 2022, Ms. Hodge sent the requester a letter seeking clarification as to the scope of the request including information on a specific department, geographic area of interest, or a particular timeframe.

3. The requester subsequently limited its response to the following offices and locations: "USPS Headquarters; Washington, DC; The office of USPS's Senior Agency Official for Privacy; The Office of the General Counsel; The PMG's office." The requester also specified that it requested "communications – including emails, memos, and updates to policy – to and from the chief officers and subordinates of the Privacy and Records Management Office sent between April 26, 2021 and January 18, 2022 with the key words, 'privacy act statement,' 'privacy act,' 'labor organization,' and the phrase 'to labor organizations as required by applicable law.'"

4. By letter dated February 25, 2022, Ms. Hodge informed the requester that there were no responsive records.

5. By letter dated March 15, 2022, the requester appealed. First, the requester asserted that the Postal Service failed to respond to its request for expedited processing as required under 39 C.F.R. § 265.5(c)(3). Second, it argued that the Postal Service erroneously interpreted the FOIA request.

II.     APPLICABLE LAW

Congress enacted the FOIA to "'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'"  *Dep't of the Air Force v. Rose*, 425 U.S. 352 (1976). Congress balanced this objective by recognizing that "legitimate governmental and private interests could be harmed by release of certain types of information."  *Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 621 (1982).  The FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions."  *Milner v. Dep't of the Navy*, 562 U.S. 562, 562 (2011).  In addition, other laws allow the Postal Service to withhold certain categories of records and information.  *See* 39 U.S.C. § 410(c).

III.    LEGAL ANALYSIS

i.      *Decision for Expedited Review*

The requester "appeal[ed] the fact that Ms. Hodge did not respond to its request for expedited treatment of its FOIA request."  However, the request for expedited processing is moot as the Postal Service provided a complete response on February 25, 2022 – when it informed the requester that there were no responsive records.  *See Atkins v. Dep't of Just.*, 946 F.2d 1563 (D.C. Cir. 1991) (holding that the issue of whether an agency complied with FOIA's time limitations in responding to a request was moot because the agency responded to the request).

Moreover, FOIA provides that "[a] district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request."  5 U.S.C. § 552(a)(6)(E)(iv).  Accordingly, once an agency fully processes a request at the administrative level, a request for expedited processing is moot.  *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 296 (D.D.C. 2013); *see also Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 538 F. Supp. 3d 124, 148 (D.D.C. 2021) (concluding that a request for judicial review of a denial of expedited processing was moot because the agency provided a complete response to the request); *Sabra v. U.S. Customs & Border Prot.,* 2021 WL 796166, at *4 (D.D.C. 2021) (stating that even if an agency failed to timely respond to a request for expedited processing, "that alone does not warrant judgment in [the requester's] favor."); *Jud. Watch, Inc. v. U.S. Naval Observatory*, 160 F. Supp. 2d 111, 112 (D.D.C. 2001) (even though the agency failed to timely respond to a request for expedited processing, concluding that the court lacked subject matter jurisdiction over the claim "because defendant has since provided a complete response to the request for records[.]").  Further, the requester effectively received expedited processing of its request because it received a response in nine working days.  The Postal Service received the request on February 8, 2022.  Thereafter, the requester received a letter requesting clarification which tolled the time for the Postal Service to respond until receipt of the requester's response.  The Postal Service received a response on February 11, 2022.  The Postal Service then responded to the FOIA request on February 25, 2022.

Under these circumstances, the Postal Service need not consider the request for expedited processing.

ii.     *Interpretation of the Request*

The requester asserts that the Postal Service misconstrued Item #1 of the FOIA request as it compared the "the 'Privacy Act Statement' on the COVID-19 webform with USPS's "general Privacy Policy.'"  However, it appears that this is an appropriate interpretation of a portion of the request.  The requester itself asserts that it sought "documents concerning the 'Privacy Act Statement' used on the COVID-19 webform, including but not limited to USPS's decision to depart from its normal 'Privacy Act notice' (the latter of which makes no mention of disclosure of documents to labor organizations)."

As the Postal Service previously informed the requester, the statements and notices are separate and distinct with different purposes and underlying legal bases.  The Privacy Act Notice ("Notice") reflects the Postal Service's policy to voluntarily incorporate the E-Government Act's provision concerning public notice of the agency's data collection from its public websites into its policies, even though it is not subject to the Act.  *See Kuzma v. U.S. Postal Service*, 798 F.2d 29, 31 (2d Cir. 1986) (concluding that the Postal Service is not subject to the Paperwork Reduction Act ("PRA")); *Shane v. Buck*, 658 F. Supp. 908, 915 (D. Utah 1985) (same); *see also* S. Rep. 107-174 (2002) (stating that the E-Government Act of 2002 was meant to complement the PRA and stating that the definitions in the PRA would apply in the E-Government Act including the definition of what constitutes an "agency" and "independent regulatory agency" which does not include the Postal Service).  On the other hand, the Privacy Act Statement ("Statement") is separate and distinct from the Notice.  The Statement reflects compliance with the Privacy Act of 1974.  Notably, in comparing the Notice and Statement, the requester demonstrates this point.  It shows that the language of the Statement specifically distinguishes rights under the Privacy Act while the Notice is provided for data collected on the Postal Service's public website*, see* www.usps.com/privacypolicy.  This discussion about when a Privacy Act Statement would be provided reinforces the fact that there are two distinct matters at play – the Statement is not the same thing as the Notice.  If they were one and the same, including a link to the Notice would be superfluous and redundant.  Contrary to the requester's speculative assertions, there was no decision to substitute one for the other because they are based on separate and distinct laws with separate and distinct purposes.  Accordingly, there are no records related to any alleged decision to depart from the Notice language because there was no such decision.  "[W]hen an agency does not possess or control the records a requester seeks, the agency's non-disclosure does not violate FOIA because it has not 'withheld' anything."  *Francis v. United States Dep't of Just.*, 267 F. Supp. 3d 9, 12 (D.D.C. 2017), *aff'd sub nom.*, 2018 WL 3526259 (D.C. Cir. 2018) (citing *DiBacco v. U.S. Army*, 795 F.3d 178, 192 (D.C. Cir. 2015); *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150 (1980)).

Nevertheless, the requester is correct that its request was not only limited to a purported decision to depart from the Privacy Act Notice language.  As such, the Postal Service conducted an additional search for other responsive records related to the specified Privacy Act Statement.  Such records were found and are enclosed herein with appropriate redactions pursuant to Exemption 5 as well as Exemption 6 and Exemption 3, in conjunction with 39 U.S.C. § 410(c)(2).

  *iii.*  *Adequacy of the Search*

With regard to Item #2, the requester maintains that the search was inadequate.  Upon further information, the Postal Service searched for responsive records in several departments including Information Technology, Corporate Information Security, and Labor Relations.  Contrary to the requester's assertions, the Postal Service conducted an adequate search of records.  That search yielded no results.

> [Where an] agency determines that it does not possess any records responsive to a FOIA request, it bears the burden of demonstrating the adequacy of its search.  The agency meets its burden if it shows that 'it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'

*Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) (citing *Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017); *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  "An agency's search is judged by the individual circumstances of each case.  The central question is whether the search itself was reasonable, regardless of the results."  *Francis*, 267 F. Supp. 3d at 12 (citations omitted).  However, "[t]here is no requirement that an agency search every record system."  *Oglesby*, 920 F.2d at 68 (citations omitted).  "If an agency has made a *prima facie* showing of the adequacy of its search, '[t]he

plaintiff may then provide 'countervailing evidence' as to the adequacy of the agency's search[.]'" *Wright v. Admin. for Child. & Fams.*, 2016 WL 5922293, at *5 (D.D.C. 2016) (citing *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003)).

Here, the Postal Service conducted a reasonable search for records. The Postal Service searched for records within three departments: Information Technology, Corporate Information Security, and Labor Relations. The Information Technology and Corporate Information Security departments ran the Test-Kit program while Labor Relations is the department that handles all matters concerning labor organizations. In this instance, the relevant officials in Information Technology and Corporate Information Security ran a search through their functions and found nothing responsive. The relevant Labor Relations officials also conducted a search of the department's records and found nothing responsive. "A search can be adequate even if an agency does not locate the requested records." *Gamboa v. Exec. Off. for United States Att'ys*, 65 F. Supp. 3d 157, 164 (D.D.C. 2014) (citing *Boyd v. Criminal Division of the U.S. Dep't of Justice,* 475 F.3d 381, 391 (D.C. Cir. 2007)).

Nonetheless, the requester asserts that "[i]t is implausible that USPS went through the exercise of departing from its 'Privacy Act notice' to say that the public's information submitted . . . can be disclosed to labor organizations, but that USPS has in fact not done that exact thing." Considering the misunderstanding with regard to the law underlying the Notice and Statement, their confusion here is not surprising. Moreover, "FOIA is not a wishing well; it only requires a reasonable search for records an agency actually has." *DiBacco*, 795 F.3d at 190. The requester's legal misunderstandings, in addition to their speculative and conclusory statements, are irrelevant. An "agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. Cent. Intelligence Agency,* 355 F.3d 675, 678 (D.C. Cir. 2004) (citing *Iturralde,* 315 F.3d at 314; *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1201 (D.C. Cir. 1991)); *see also DiBacco*, 795 F.3d at 190–91 (rejecting the requester's assertion that records must exist because it was mere speculation that secret meetings occurred, and the cited news articles presented no evidence whatsoever that such meetings occurred)*; Boyd,* 475 F.3d at 391 ("[T]he fact that a particular document was not found does not demonstrate the inadequacy of a search."); *Oglesby*, 920 F.2d at 68 n.13 (rejecting the requester's assertion that responsive records must exist because there was no proof that they existed and the requester's own conviction was pure speculation); *Ancient Coin Collectors Guild v. U.S. Dep't of State,* 641 F.3d 504, 514 (D.C. Cir. 2011) (finding that a search yielding "only a few emails ... is not enough to render its search inadequate, even supposing that any reasonable observer would find this result unexpected"); *Media Rsch. Ctr. v. U.S. Dep't of Just.,* 818 F. Supp. 2d 131, 138 (D.D.C. 2011) (rejecting the requester's argument as "simply conjecture" where it argued that certain documents must have existed because there were meetings that occurred during the relevant timeframe).

The Postal Service searched for records where it might reasonably expect to find responsive information and records. In this case, it is highly unlikely that any information exists outside of Information Technology, Corporate Information Security, and Labor Relations. The requester presented no evidence to the contrary. The Postal Service is not then required to search every record system for records that do not exist. *See, e.g., SafeCard Servs., Inc.*, 926 F.2d at 1201 (noting that the agency's "failure to make hopeless and wasteful efforts to locate copies that would never have been created in the normal course is not a ground for reversal[.]"). Under these circumstances, the Postal Service met its obligations under the FOIA.

IV.   CONCLUSION

For the foregoing reasons, Ms. Hodge's action is affirmed in part and reversed in part. To the extent it is reversed, the responsive records are attached herein.

For the General Counsel,

Tram Pham

Digitally signed by Tram Pham
Date: 2022.04.06 11:53:13
-04'00'

Tram T. Pham
Attorney
Ethics & Legal Compliance

## Gillespie, Christopher P - Washington, DC

**From:** Castorina, Janine - Washington, DC
**Sent:** Monday, January 10, 2022 8:57 AM
**To:** Gillespie, Christopher P - Washington, DC
**Cc:** Lind, Christopher W - Washington, DC
**Subject:** Re: (b) (5)

**(b) (5)**

Sent from my iPhone

On Jan 10, 2022, at 8:34 AM, Gillespie, Christopher P - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6) wrote:

**(b) (5)**

**From:** Castorina, Janine - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Sent:** Monday, January 10, 2022 7:27 AM
**To:** Gillespie, Christopher P - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6) Lind, Christopher W - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Subject:** (b) (5)

**(b) (5)**

Janine Castorina
Chief Privacy and Records Officer
United States Postal Service
475 L'Enfant Plaza, SW
Washington DC, 20260
(b) (6)
202.268.2049 fax

**Gillespie, Christopher P - Washington, DC**

| | |
|---|---|
| **From:** | Castorina, Janine - Washington, DC |
| **Sent:** | Monday, January 10, 2022 4:43 PM |
| **To:** | Gillespie, Christopher P - Washington, DC; Lind, Christopher W - Washington, DC |
| **Subject:** | RE: (b) (5) |

(b) (5)

Janine Castorina
Chief Privacy and Records Officer
United States Postal Service
475 L'Enfant Plaza, SW
Washington DC, 20260
(b) (6)
202.268.2049 fax

**From:** Gillespie, Christopher P - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Sent:** Monday, January 10, 2022 4:15 PM
**To:** Castorina, Janine - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6) Lind, Christopher W - Washington, DC
(b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Subject:** RE: (b) (5)

(b) (5)

**From:** Castorina, Janine - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Sent:** Monday, January 10, 2022 7:27 AM
**To:** Gillespie, Christopher P - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6) ; Lind, Christopher W - Washington, DC
(b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Subject:** (b) (5)

(b) (5)

Janine Castorina
Chief Privacy and Records Officer
United States Postal Service
475 L'Enfant Plaza, SW
Washington DC, 20260
(b) (6)
202.268.2049 fax

**Gillespie, Christopher P - Washington, DC**

| | |
|---|---|
| **From:** | Castorina, Janine - Washington, DC |
| **Sent:** | Tuesday, January 11, 2022 9:14 AM |
| **To:** | Gillespie, Christopher P - Washington, DC; Lind, Christopher W - Washington, DC |
| **Subject:** | RE: (b) (5) |

 (b) (5)

Janine Castorina
Chief Privacy and Records Officer
United States Postal Service
475 L'Enfant Plaza, SW
Washington DC, 20260
(b) (6)
202.268.2049 fax

**From:** Gillespie, Christopher P - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Sent:** Tuesday, January 11, 2022 9:05 AM
**To:** Castorina, Janine - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6); Lind, Christopher W - Washington, DC
(b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Subject:** RE: (b) (5)

Good morning Janine,

 (b) (5)

**From:** Castorina, Janine - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Sent:** Tuesday, January 11, 2022 8:48 AM
**To:** Gillespie, Christopher P - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6); Lind, Christopher W - Washington, DC
(b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Subject:** RE: (b) (5)

(b) (5)

Janine Castorina
Chief Privacy and Records Officer
United States Postal Service
475 L'Enfant Plaza, SW
Washington DC, 20260
(b) (6)
202.268.2049 fax

**From:** Gillespie, Christopher P - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Sent:** Monday, January 10, 2022 4:15 PM
**To:** Castorina, Janine - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6) Lind, Christopher W - Washington, DC
(b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Subject:** RE: (b) (5)

(b) (5)

**From:** Castorina, Janine - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Sent:** Monday, January 10, 2022 7:27 AM
**To:** Gillespie, Christopher P - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6); Lind, Christopher W - Washington, DC
(b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Subject:** (b) (5)

(b) (5)

Janine Castorina
Chief Privacy and Records Officer
United States Postal Service
475 L'Enfant Plaza, SW
Washington DC, 20260
(b) (6)

2

202.268.2049 fax

| | |
|---|---|
| **From:** | Workinger, Kimberly B - Washington, DC |
| **To:** | Castorina, Janine - Washington, DC; Karpenko, Christopher J - Washington, DC |
| **Subject:** | RE: (b) (5) |
| **Date:** | Tuesday, January 11, 2022 9:29:51 AM |
| **Attachments:** | image001.png |

Thank you Janine!

## Kimberly Workinger

**USPS.com** | Manager | Digital Brand Marketing
Office: (202) 268-7971|
(b) (6)

---

**From:** Castorina, Janine - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Sent:** Tuesday, January 11, 2022 9:29 AM
**To:** Karpenko, Christopher J - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6) Workinger,
Kimberly B - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Subject:** FW: (b) (5)

FYI

Janine Castorina
Chief Privacy and Records Officer
United States Postal Service
475 L'Enfant Plaza, SW
Washington DC, 20260
(b) (6)
202.268.2049 fax

---

**From:** Castorina, Janine - Washington, DC
**Sent:** Tuesday, January 11, 2022 9:16 AM
**To:** Dyer, Heather L - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Subject:** RE: (b) (5)

(b) (5)



Janine Castorina
Chief Privacy and Records Officer
United States Postal Service
475 L'Enfant Plaza, SW
Washington DC, 20260
(b) (6)
202.268.2049 fax

**From:** Dyer, Heather L - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Sent:** Tuesday, January 11, 2022 7:15 AM
**To:** Castorina, Janine - Washington, DC (b)(3); 39 U.S.C. 410(c)(2); (b)(6)
**Subject:** (b) (5)

Janine-

(b) (5)

Thanks

Heather L Dyer
A/ Chief Information Security Officer VP
(b) (6)

**From:** Castorina, Janine - Washington, DC
**To:** Dyer, Heather L - Washington, DC
**Subject:** Re: (b) (5)
**Date:** Tuesday, January 11, 2022 7:37:20 AM

(b) (5)

Sent from my iPhone

On Jan 11, 2022, at 7:15 AM, Dyer, Heather L - Washington, DC
(b)(3); 39 U.S.C. 410(c)(2); (b)(6) wrote:

Janine-

(b) (5)

Thanks

Heather L Dyer
A/ Chief Information Security Officer VP
(b) (6)

# EXHIBIT 2

*Vaughn* Index / United States Postal Service
*Americans for Fair Treatment v. USPS, et al.*, Civil Action No. 22-1183 (RCL) (D.D.C.)

| No. | Bates-Stamp | Date | Time | From | To | Subject | Exemption |
|-----|-------------|------|------|------|-----|---------|-----------|
| USPS 1 | USPS_1 | 01/10/2022 | 8:57 a.m. | Janine Castorina | Christopher Gillespie; Christopher Lind | Re: 810 | **Internal discussions:**<br><u>**Exemption 5 – Deliberative Process Privilege**</u><br>1. The deliberative process involved in this email is USPS's on-going iterative decision-making process related to its draft Privacy Statement that was to be used on the live testing of the COVID-19 test kit webpage.<br>2. The email at issue reflects USPS's strategy, amongst staff members of the Privacy and Records Management Office, concerning the draft Privacy Statement and the Statement's relationship to a System of Record and the COVID-19 test kit webpage.<br>3. The information withheld does not reflect the final determination of USPS.  It is pre-decisional and deliberative because the decision-making process was on-going at the time of the email.  The Privacy Statement had not yet been finalized for purposes of the final COVID-19 test kit webpage.  The webpage was in the testing phase at the time of this communication.<br>4. Release would have a chilling effect on the agency's decision-making processes, thereby lower the overall quality of those processes, and cause public confusion about the agency's final Privacy Statement which is not reflected in the email.<br><br><u>**Exemption 5 – Attorney Client Privilege**</u><br>1. The email arises from agency clients' request for legal advice concerning the application of the Privacy Act, including its requirements for Privacy Statements, to the COVID-19 test kit webpage. |

*Vaughn* Index / United States Postal Service
*Americans for Fair Treatment v. USPS, et al.*, Civil Action No. 22-1183 (RCL) (D.D.C.)

| No. | Bates-Stamp | Date | Time | From | To | Subject | Exemption |
|---|---|---|---|---|---|---|---|
| | | | | | | | 2. The USPS employees involved in the communication are within the Privacy and Records Management Office of the USPS Law Department. Christopher Gillespie and Christopher Lind acted and communicated at the direction of Janine Castorina, the Chief Privacy and Records Management Officer and attorney within the USPS's Law Department, to answer the agency clients' request for legal advice. <br> 3. The email is related to the application of the Privacy Act, including its Privacy Statement requirements, to the COVID-19 test kit webpage. <br> 4. The email contains the product of confidential legal discussions amongst government counsel and supporting staff in response to agency clients' request for legal advice. <br><br> **Employee email addresses and mobile phone numbers: Exemption 6** <br> 1. The email contains employee email addresses and mobile phone numbers which constitute similar files. <br> 2. Employees have a privacy interest in their postal email addresses and mobile phone numbers because disclosure would subject them to unwarranted harassment such as unwanted phone calls and emails from the public while employees are on and off duty.  Employees would also be subjected to phishing schemes and spam messages. <br> 3. There is no significant public interest in disclosure. Employee email addresses and mobile phone |

*Vaughn* Index / United States Postal Service
*Americans for Fair Treatment v. USPS, et al.*, Civil Action No. 22-1183 (RCL) (D.D.C.)

| No. | Bates-Stamp | Date | Time | From | To | Subject | Exemption |
|---|---|---|---|---|---|---|---|
| | | | | | | | numbers do not shed light on the operations and activities of the USPS. |
| USPS 2 | USPS_2 – USPS_3 | 01/10/2022 | 4:43 p.m. | Janine Castorina | Christopher Gillespie; Christopher Lind | RE: 810 | **Internal discussions:**<br>**Exemption 5 – Deliberative Process Privilege**<br>1. The deliberative process involved in this email is USPS's on-going iterative decision-making process related to its draft Privacy Statement that was to be used on the live testing of the COVID-19 test kit webpage.<br>2. The email at issue reflects discussions, amongst staff members of the Privacy and Records Management Office within the USPS Law Department, concerning the first draft of the Privacy Statement and the language to be used in therein.<br>3. The information withheld does not reflect the final determination of USPS.  It is pre-decisional and deliberative because the decision-making process was on-going at the time of the email.  The Privacy Statement had not yet been finalized for purposes of the final COVID-19 test kit webpage.  The webpage was in the testing phase at the time of this communication.<br>4. Release would have a chilling effect on the agency's decision-making processes, thereby lower the overall quality of those processes, and cause public confusion about the agency's final Privacy Statement which is not reflected in the email.<br><br>**Exemption 5 – Attorney Client Privilege**<br>1. The email arises from agency clients' request for legal advice concerning the application of the |

*Vaughn* Index / United States Postal Service
*Americans for Fair Treatment v. USPS, et al.*, Civil Action No. 22-1183 (RCL) (D.D.C.)

| No. | Bates-Stamp | Date | Time | From | To | Subject | Exemption |
|-----|-------------|------|------|------|----|---------|-----------|
| | | | | | | | Privacy Act, including its requirements for Privacy Statements, to the COVID-19 test kit webpage.<br>2. The USPS employees involved in the communication are within the Privacy and Records Management Office of the USPS Law Department. Christopher Gillespie and Christopher Lind acted and communicated at the direction of Janine Castorina, the Chief Privacy and Records Management Officer and attorney within the USPS's Law Department, to answer the agency clients' request for legal advice.<br>3. The email is related to the application of the Privacy Act, including its Privacy Statement requirements, to the COVID-19 test kit webpage.<br>4. The email and subject line contain the product of confidential legal discussions amongst government counsel and supporting staff in response to agency clients' request for legal advice.<br><br>**Employee email addresses and mobile phone numbers:**<br>**Exemption 6**<br>1. The email contains employee email addresses and mobile phone numbers which constitute similar files.<br>2. Employees have a privacy interest in their postal email addresses and mobile phone numbers because disclosure would subject them to unwarranted harassment such as unwanted phone calls and emails from the public while employees are on and off duty.  Employees would also be subjected to phishing schemes and spam messages. |

*Vaughn* Index / United States Postal Service
*Americans for Fair Treatment v. USPS, et al.*, Civil Action No. 22-1183 (RCL) (D.D.C.)

| No. | Bates-Stamp | Date | Time | From | To | Subject | Exemption |
|---|---|---|---|---|---|---|---|
| | | | | | | | 3.  There is no significant public interest in disclosure. Employee email addresses and mobile phone numbers do not shed light on the operations and activities of the USPS. |
| USPS 3 | USPS_4 – USPS_6 | 01/11/2022 | 9:14 a.m. | Janine Castorina | Christopher Gillespie; Christopher Lind | RE: 810 | **Internal discussions:** <br> **Exemption 5 – Deliberative Process Privilege** <br> 1.  The deliberative process involved in this email is USPS's on-going iterative decision-making process related to its draft Privacy Statement that was to be used on the live testing of the COVID-19 test kit webpage. <br> 2.  The email at issue reflects discussions, amongst staff members of USPS's Privacy and Records Management Office, concerning drafts of the Privacy Statement and revisions made thereto. <br> 3.  The information withheld does not reflect the final determination of USPS.  It is pre-decisional and deliberative because the decision-making process was on-going at the time of the email.  The Privacy Statement had not yet been finalized for purposes of the final COVID-19 test kit webpage.  The webpage was in the testing phase at the time of this communication. <br> 4.  Release would have a chilling effect on the agency's decision-making processes, thereby lower the overall quality of those processes, and cause public confusion about the agency's final Privacy Statement which is not reflected in the email. <br><br> **Exemption 5 – Attorney Client Privilege** <br> 1.  The email arises from agency clients' request for legal advice concerning the application of the |

*Vaughn* Index / United States Postal Service
*Americans for Fair Treatment v. USPS, et al.*, Civil Action No. 22-1183 (RCL) (D.D.C.)

| No. | Bates-Stamp | Date | Time | From | To | Subject | Exemption |
|-----|-------------|------|------|------|-----|---------|-----------|
|     |             |      |      |      |     |         | Privacy Act, including its requirements for Privacy Statements, to the COVID-19 test kit webpage. <br> 2. The USPS employees involved in the communication are within the Privacy and Records Management Office of the USPS Law Department. Christopher Gillespie and Christopher Lind acted and communicated at the direction of Janine Castorina, the Chief Privacy and Records Management Officer and attorney within the USPS's Law Department, to answer the agency clients' request for legal advice. <br> 3. The email is related to the application of the Privacy Act, including its Privacy Statement requirements, to the COVID-19 test kit webpage. <br> 4. The email contains the product of confidential legal discussions amongst government counsel and supporting staff in response to agency clients' request for legal advice. <br><br> **Employee email addresses and mobile phone numbers:** <br> <u>**Exemption 6**</u> <br> 1. The email contains employee email addresses and mobile phone numbers which constitute similar files. <br> 2. Employees have a privacy interest in their postal email addresses and mobile phone numbers because disclosure would subject them to unwarranted harassment such as unwanted phone calls and emails from the public while employees are on and off duty.  Employees would also be subjected to phishing schemes and spam messages. |

*Vaughn* Index / United States Postal Service
*Americans for Fair Treatment v. USPS, et al.*, Civil Action No. 22-1183 (RCL) (D.D.C.)

| No. | Bates-Stamp | Date | Time | From | To | Subject | Exemption |
|-----|-------------|------|------|------|-----|---------|-----------|
| | | | | | | | 3. There is no significant public interest in disclosure. Employee email addresses and mobile phone numbers do not shed light on the operations and activities of the USPS. |
| USPS 4 | USPS_7 – USPS_8 | 01/11/2022 | 9:29 a.m. | Kimberly Workinger | Janine Castorina; Christopher Karpenko | RE: Privacy Statement Updated | **Internal discussions:** <br> **<u>Exemption 5 – Deliberative Process Privilege</u>** <br> 1. The deliberative process involved in this email is USPS's on-going iterative decision-making process related to its draft Privacy Statement that was to be used on the live testing of the COVID-19 test kit webpage. <br> 2. The email at issue reflects USPS's discussions, amongst Janine Castorina of the Privacy and Records Management Office, Christopher Karpenko, Executive Director of Brand Marketing, Kimberly Workinger, Manager of Digital Brand Marketing, and Heather Dyer, Vice President of Corporate Information Security Office, concerning the draft Privacy Statement and the live testing of the COVID-19 test kit webpage. <br> 3. The information withheld does not reflect the final determination of USPS. It is pre-decisional and deliberative because the decision-making process was on-going at the time of the email. The Privacy Statement had not yet been finalized for purposes of the final COVID-19 test kit webpage. The webpage was in the testing phase at the time of this communication. <br> 4. Release would have a chilling effect on the agency's decision-making processes, thereby lower the overall quality of those processes, and cause public |

*Vaughn* Index / United States Postal Service
*Americans for Fair Treatment v. USPS, et al.*, Civil Action No. 22-1183 (RCL) (D.D.C.)

| No. | Bates-Stamp | Date | Time | From | To | Subject | Exemption |
|-----|-------------|------|------|------|-----|---------|-----------|
|     |             |      |      |      |     |         | confusion about the agency's final Privacy Statement which is not reflected in the email. <br><br> **Exemption 5 – Attorney Client Privilege** <br> 1. The email arises from agency clients' request for legal advice concerning the application of the Privacy Act, including its requirements for Privacy Statements, to the COVID-19 test kit webpage. <br> 2. Janine Castorina, the Chief Privacy and Records Management Officer and attorney within the USPS's Law Department, was communicating with Christopher Karpenko, Kimberly Workinger, and Heather Dyer, as agency clients, to answer their request for legal advice. <br> 3. The email is related to the application of the Privacy Act, including its Privacy Statement requirements, to the COVID-19 test kit webpage. <br> 4. The email contains the product of confidential legal discussions amongst government counsel and agency clients. <br><br> **Employee email addresses and mobile phone numbers: Exemption 6** <br> 1. The email contains employee email addresses and mobile phone numbers which constitute similar files. <br> 2. Employees have a privacy interest in their postal email addresses and mobile phone numbers because disclosure would subject them to unwarranted harassment such as unwanted phone calls and emails from the public while employees are on and off |

*Vaughn* Index / United States Postal Service
*Americans for Fair Treatment v. USPS, et al.*, Civil Action No. 22-1183 (RCL) (D.D.C.)

| No. | Bates-Stamp | Date | Time | From | To | Subject | Exemption |
|---|---|---|---|---|---|---|---|
| | | | | | | | duty.  Employees would also be subjected to phishing schemes and spam messages. <br> 3.  There is no significant public interest in disclosure.  Employee email addresses and mobile phone numbers do not shed light on the operations and activities of the USPS. |
| USPS 5 | USPS_9 | 01/11/2022 | 7:37 a.m. | Janine Castorina | Heather Dyer | Re: Privacy Statement Updated | **Internal discussions:** <br> **<u>Exemption 5 – Deliberative Process Privilege</u>** <br> 1.  The deliberative process involved in this email is USPS's on-going iterative decision-making process related to its draft Privacy Statement that was to be used on the live testing of the COVID-19 test kit webpage. <br> 2.  The email at issue reflects USPS's discussions, between Janine Castorina, an attorney and Chief Privacy and Records Management Officer for the Privacy and Records Management Office, and Heather Dyer, Vice President of the Corporate Information Security Office, concerning the status of the COVID-19 test kit webpage and the draft Privacy Statement. <br> 3.  The information withheld does not reflect the final determination of USPS.  It is pre-decisional and deliberative because the decision-making process was on-going at the time of the email.  The Privacy Statement had not yet been finalized for purposes of the final COVID-19 test kit webpage.  The webpage was in the testing phase at the time of this communication. <br> 4.  Release would have a chilling effect on the agency's decision-making processes, thereby lower the overall quality of those processes, and cause public |

*Vaughn* Index / United States Postal Service
*Americans for Fair Treatment v. USPS, et al.*, Civil Action No. 22-1183 (RCL) (D.D.C.)

| No. | Bates-Stamp | Date | Time | From | To | Subject | Exemption |
|---|---|---|---|---|---|---|---|
| | | | | | | | confusion about the agency's final Privacy Statement which is not reflected in the email.<br><br>**Exemption 5 – Attorney Client Privilege**<br>1. The email arises from agency clients' request for legal advice concerning the application of the Privacy Act, including its requirements for Privacy Statements, to the COVID-19 test kit webpage.<br>2. The USPS employees involved in the communication are within the Privacy and Records Management Office of the USPS Law Department and the Corporate Information Security Office. Heather Dyer sought Janine Castorina's legal advice concerning the Privacy Statement for the live testing of COVID-19 test kit webpage.<br>3. The email is related to the application of the Privacy Act, including its Privacy Statement requirements, to the COVID-19 test kit webpage.<br>4. The email contains the product of confidential legal discussions amongst government counsel and supporting staff in response to agency clients' request for legal advice.<br><br>**Employee email addresses and mobile phone numbers:**<br>**Exemption 6**<br>1. The email contains employee email addresses and mobile phone numbers which constitute similar files.<br>2. Employees have a privacy interest in their postal email addresses and mobile phone numbers because disclosure would subject them to unwarranted harassment such as unwanted phone calls and emails |

*Vaughn* Index / United States Postal Service
*Americans for Fair Treatment v. USPS, et al.*, Civil Action No. 22-1183 (RCL) (D.D.C.)

| No. | Bates-Stamp | Date | Time | From | To | Subject | Exemption |
|-----|-------------|------|------|------|-----|---------|-----------|
|     |             |      |      |      |     |         | from the public while employees are on and off duty.  Employees would also be subjected to phishing schemes and spam messages.<br>3.  There is no significant public interest in disclosure.  Employee email addresses and mobile phone numbers do not shed light on the operations and activities of the USPS. |