# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AMERICANS FOR FAIR TREATMENT,

       Plaintiff,

v.

UNITED STATES POSTAL SERVICE, *et al.*

       Defendants.

**No. 1:22-cv-1183-RCL**

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND JUDGMENT ON THE PLEADINGS AND IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

David R. Dorey
DC Attorney I.D. No. 1015586
Email: drdorey@fairnesscenter.org
Tessa E. Shurr (*pro hac vice*)
Pa. Attorney I.D. No. 330733
Email: teshurr@fairnesscenter.org
THE FAIRNESS CENTER
500 North Third Street, Suite 600B
Harrisburg, Pennsylvania 17101
Telephone: 844.293.1001
Facsimile: 717.307.3424

*Attorneys for Plaintiff AFFT*

# TABLE OF CONTENTS

Table of Authorities...............................................................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT.........................................................1

BACKGROUND AND PROCEDURAL HISTORY ...............................................................3

LEGAL STANDARDS..............................................................................................................4

    I.   Summary Judgment .........................................................................................................4

    II.  Judgment on the Pleadings .............................................................................................6

ARGUMENT...............................................................................................................................6

    I.   AFFT Is Entitled to Judgment on Its FOIA Claims And USPS is Not ..........................6

        A.   USPS Expressly Admits That It Wrongly Withheld Information from AFFT and Relied on Inapplicable FOIA Exemptions.............................................................................6

        B.   USPS's Summary Judgment Motion and Records Production Demonstrate It Withheld Responsive Records from AFFT..................................................................................8

        C.   USPS's Searches Were Inadequate ........................................................................10

        D.   USPS Failed to Demonstrate Foreseeable Harm ...................................................13

        E.   USPS Misapplied FOIA Exemption 5 ....................................................................16

            1. USPS Misapplied the Attorney-Client Privilege...........................................17

            2. USPS Misapplied the Deliberative Process Privilege ...................................21

               a. USPS's records are not predecisional. ....................................................22

               b. USPS has not demonstrated that its records are deliberative.........................23

        F.   USPS Failed to Meet its Segregability Burden ......................................................24

    II.  USPS's FOIA Regulations Violate the Administrative Procedure Act........................26

        A.   Defendants are Subject to the Administrative Procedure Act when Carrying out Government Functions........................................................................................26

        B.   Defendants Violated the Administrative Procedure Act.........................................29

    III. USPS's FOIA Regulations Are *Ultra Vires*.............................................................36

    IV. AFFT Is Entitled to Counsel Fees and Costs..............................................................38

    V.  USPS's Withholding of Records from AFFT Was Arbitrary and Capricious.............39

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Advancement Project v. DHS,*
    549 F. Supp. 3d 128 (D.D.C. 2021) ................................................................................ 22

*Aid Ass'n Lutherans v. USPS,*
    321 F.3d 1166 (D.C. Cir. 2003) ...................................................................................... 36

*Am. Oversight v. GSA,*
    311 F. Supp. 3d 327 (D.D.C. 2018) ................................................................................ 19

*\*Am. Oversight v. USPS, No. CV 20-2580*
    (RC), 2021 WL 4355401 (D.D.C. Sept. 23, 2021) ............................................... 17–18, 18

*Amalgamated Transit Union v. Skinner,*
    894 F.2d 1362 (D.C. Cir. 1990) ...................................................................................... 30

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) .......................................................................................................... 5

*Bartko v. DOJ,*
    167 F. Supp. 3d 55 (D.D.C. 2016) .................................................................................. 12

*Bean Dredging, LLC v. United States,*
    773 F. Supp. 2d 63 (D.D.C. 2011) .................................................................................. 39

*Bloche v. DoD,*
    474 F. Supp. 3d 296 (D.D.C. 2020) ................................................................................ 16

*Bloche v. DoD,*
    414 F. Supp. 3d 6 (D.D.C. 2019) .................................................................................... 17

*Campaign Legal Ctr. v. DOJ,*
    34 F.4th 14 (D.C. Cir. 2022) .......................................................................................... 21

*Campbell v. DOJ,*
    164 F.3d 20 (D.C. Cir. 1998) ...................................................................................... 5, 11

*Canadian Com. Corp. v. Dep't Air Force,*
    514 F.3d 37 (D.C. Cir. 2008) .......................................................................................... 29

*Carter Chevrolet Agency, Inc. v. USPS,*
    19 F. Supp. 2d 1246 (W.D. Okla. 1997) ........................................................................ 27

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) .......................................................................................................... 5

*Changji Esquel Textile Co. Ltd. v. Raimundo,*
    No. 21-5219, __ F.4th __, 2022 WL 2813243 (D.C. Cir. July 19, 2022) ......................... 36

*Chelsea Neighborhood Ass'ns v. USPS,*
  516 F.2d 378 (2d Cir. 1975) ............................................................................ 27

*Citizens Resp. & Ethics v. DOJ,*
  538 F. Supp. 3d 124 (D.D.C. 2021) ......................................................... 16, 17

*Citizens Resp. & Ethics,*
  955 F. Supp. 2d 4 (D.D.C. 2013) .................................................................... 20

*Coastal States Gas Corp. v. DOE,*
  617 F.2d 854 (D.C. Cir. 1980) ......................................................................... 25

*Concepcion v. CBP,*
  767 F. Supp. 2d 141 (D.D.C. 2011) ......................................................... 12–13

*Concept Automation, Inc. v. USPS,*
  887 F. Supp. 6 (D.D.C. 1995) .................................................................... 26–27

*Court. Sussman v. U.S. Marshals Serv.,*
  494 F.3d 1106 (D.C. Cir. 2007) ...................................................................... 25

*Ctr. Investigative Reporting v. CBP,*
  436 F. Supp. 3d 90 (D.D.C. 2019) .................................................................. 13

*Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.,*
  933 F.3d 751 (D.C. Cir. 2019) ........................................................................... 6

*DOJ v. Tax Analysts,*
  492 U.S. 136 (1989) ........................................................................................ 16

*DOJ v. Reps. Comm. Freedom Press*
  489 U.S. 749 (1989) ................................................................................... 27–28

*ERG Transit Sys. (USA), Inc. v. Wash. Metro. Area Transit Auth.,*
  593 F. Supp. 2d 249 (D.D.C. 2009) ................................................................ 29

*Fed. Trade Comm'n v. Boehringer Ingelheim Pharm. Inc.,*
  180 F. Supp. 3d 1 (D.D.C. 2016) .................................................................... 17

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,*
  529 U.S. 120 (2000) ........................................................................................ 28

*Gellman v. DHS,*
  No. 16-CV-635 (CRC), 2020 WL 1323896 (D.D.C. Mar. 20, 2020) ................ 8

*Gold Anti-Trust Action Comm., Inc. v. Bd. Governors Fed. Reserve Sys.,*
  762 F. Supp. 2d 123 (D.D.C. 2011) .................................................................. 5

*Grand Canyon Tr. v. Bernhardt,*
  947 F.3d 94 (D.C. Cir. 2020) .......................................................................... 38

*Griffith v. FLRA,*
    842 F.2d 487 (D.C. Cir. 1988) ........................................................................ 37

*Hardy v. ATF,*
    243 F. Supp. 3d 155 (D.D.C. 2017) .......................................................... 23, 24

*Heffernan v. Azar,*
    317 F. Supp. 3d 94 (D.D.C. 2018) ................................................................. 22

*Heggestad v. DOJ,*
    182 F. Supp. 2d 1 (D.D.C. 2000) .................................................................. 32

*Hornbeck Offshore Transp., LLC v. U.S. Coast Guard,*
    424 Supp. 2d 37 ............................................................................................ 30

*\*In re Sealed Case,*
    737 F.2d 94 (D.C. Cir. 1984) ......................................................................... 21

*Jud. Watch, Inc. v. Treasury,*
    802 F. Supp. 2d 185 (D.D.C. 2011) ............................................................. 23

*\*Jud. Watch, Inc. v. DOC,*
    375 F. Supp. 3d 93 (D.D.C. 2019) ............................................................... 13

*Jud. Watch, Inc. v. FBI,*
    522 F.3d 364 (D.C. Cir. 2008) ...................................................................... 7, 8

*Jud. Watch, Inc. v. DOC,*
    34 F. Supp. 2d 28 (D.D.C. 1998) ................................................................. 40

*\*Kay v. FCC,*
    884 F. Supp. 1 (D.D.C. 1995) ................................................................. 31, 35

*Klayman v. Jud. Watch, Inc.,*
    No. 06-670(CKK)(AK), 2008 WL 11394175 (D.D.C. May 5, 2008) ............. 19

*Landry v. FDIC,*
    204 F.3d 1125 (D.C. Cir. 2000) ................................................................... 33

*Larson v. State,*
    565 F.3d 857 (D.C. Cir. 2009) ...................................................................... 16

*Levinthal v. FEC,*
    219 F. Supp. 3d 1 (D.D.C. 2016) ................................................................. 24

*Loftin v. Bande,*
    258 F.R.D. 31 (D.D.C. 2009) ....................................................................... 20

*Lukas v. FCC,*
    No. 19-0464, 2020 WL 1065700 (D.D.C. Mar. 4, 2020) .............................. 35

*Martin v. Albany Bus. J., Inc.*,
   780 F. Supp. 927 (N.D.N.Y. 1992) ................................................................. 33

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ......................................................................................... 4

*McGehee v. CIA*,
   697 F.2d 1095 (D.C. Cir. 1983) ..................................................................... 10

*\*Mead Data Cent., Inc. v. Dep't Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) .................................................................. 21, 24

*\*Mobley v. CIA*,
   806 F.3d 568 (D.C. Cir. 2015) ....................................................................... 12

*\*Morley v. CIA*,
   508 F.3d 1108 (D.C. Cir. 2007) ......................................................... 11–12, 12

*N. Air Cargo v. USPS*,
   674 F.3d 852 (D.C. Cir. 2012) ....................................................................... 36

*Nat'l Ass'n Postal Supervisors v. USPS*,
   26 F.4th 960 (D.C. Cir. 2022) ........................................................................ 37

*Nat'l Easter Seal Soc'y Crippled Child. & Adults v. USPS*,
   656 F.2d 754 (D.C. Cir. 1981) ....................................................................... 27

*Nat'l Retired Tchrs. Ass'n v. USPS*,
   593 F.2d 1360 (D.C. Cir. 1979) ..................................................................... 27

*Nat'l Sec. Archive v. CIA*,
   752 F.3d 460 (D.C. Cir. 2014) ....................................................................... 25

*New Orleans Workers' Ctr. Racial Just. v. ICE*,
   373 F. Supp. 3d 16 (D.D.C. 2019) ................................................................. 15

*New York v. Trump*,
   490 F. Supp. 3d 225 (D.D.C. 2020) ............................................................... 37

*\*Oglesby v. U.S. Dep't Army*,
   920 F.2d 57 (D.C. Cir. 1990) ............................................................ 11, 12, 31, 32

*Petroleum Info. Corp. v. DOI*,
   976 F.2d 1429 (D.C. Cir. 1992) ....................................................................... 5

*Prasad v. George Wash. U.*,
   323 F.R.D. 88 (D.D.C. 2017) ......................................................................... 19

*\*Pub. Citizen, Inc. v. HUD*,
   No. 1:19-CV-00915 (CJN), 2020 WL 1479517 (D.D.C. Mar. 26, 2020) ................ 8–9, 10

*Reps. Comm. Freedom Press v. FBI,
  3 F.4th 350 (D.C. Cir. 2021) ............................................................ 14, 15, 21, 22, 23

Reps. Comm. Freedom Press v. CBP
  567 F. Supp. 3d 97 (D.D.C. 2021) ................................................................. 16

Role Models Am., Inc. v. Brownlee,
  353 F.3d 962 (D.C. Cir. 2004) ...................................................................... 39

Sai v. TSA,
  315 F. Supp. 3d 218 (D.D.C. 2018) ............................................................... 5

Sai v. TSA,
  466 F. Supp. 3d 35 (D.D.C. 2020) ............................................................... 11

Shapiro v. DOJ,
  40 F.4th 609 (D.C. Cir. 2022) ....................................................................... 5

*Stand Up for California! v. DOI,
  994 F.3d 616 (D.C. Cir. 2021) ................................................................ 32–33

Stolt-Nielsen Transp. Grp. Ltd. v. United States,
  534 F.3d 728 (D.C. Cir. 2008) ...................................................................... 24

Students Against Genocide v. State,
  257 F.3d 828 (D.C. Cir. 2001) ................................................................. 5, 6, 7

Tax Analysts v. IRS,
  117 F.3d 607 (D.C. Cir. 1997) ................................................................ 28–29

Terry v. Reno,
  101 F.3d 1412 (D.C. Cir. 1996) ..................................................................... 6

U.S. Fish & Wildlife Servs. v. Sierra Club,
  141 S. Ct. 777 (2021) ................................................................................. 22

U.S. Telecom Ass'n v. FCC,
  359 F.3d 554 (D.C. Cir. 2004) ...................................................................... 31

Valencia-Lucena v. U.S. Coast Guard,
  180 F.3d 321 (D.C. Cir. 1999) ...................................................................... 11

Weisberg v. DOJ,
  627 F.2d 365 (D.C. Cir. 1980) ...................................................................... 11

Weisberg v. DOJ,
  705 F.2d 1344 (D.C. Cir. 1983) ...................................................................... 5

White Coat Waste Project v. Dep't Veterans Affs.,
  404 F. Supp. 3d 87 (D.D.C. 2019) ................................................................. 21

*Williams v. Brennan,*
  285 F. Supp. 3d 1 (D.D.C. 2017) ........................................................................ 30

**Statutes**

5 U.S.C. 706 ................................................................................................... 28, 29

5 U.S.C. § 552 ................................................................................................. *passim*

5 U.S.C. § 552a .............................................................................................. 27, 28

5 U.S.C. § 552b .................................................................................................... 27

5 U.S.C. § 553 ...................................................................................................... 28

28 U.S.C. § 2412 .................................................................................................. 38

39 C.F.R. § 265.8 ............................................................................... 29, 31, 32, 36

39 C.F.R. § 266.2 ............................................................................................ 19, 20

39 U.S.C. § 203 .................................................................................................... 30

39 U.S.C. § 204 .................................................................................................... 30

39 U.S.C. § 401 .................................................................................................... 26

39 U.S.C. § 410 ................................................................................... 7, 26, 27, 36

47 C.F.R. § 0.461 ................................................................................................. 35

**Other Authorities**

*Fact Sheet: The Biden Administration Announces Americans Can Order Additional Free At-Home, Rapid COVID-19 Tests at COVIDTests.gov,* White House Briefing Room (May 17, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/05/17/fact-sheet-the-biden-administration-announces-americans-can-order-additional-free-at-home-rapid-covid-19-tests-at-covidtests-gov/ [https://perma.cc/WJR7-2NH6].....................................................................1

Krys Murphy, *Have You Lost Your Attachments in Outlook?* (May 21, 2021), https://www.enterprisetimes.co.uk/2021/05/21/have-you-lost-your-attachments-in-outlook/ [https://perma.cc/X5R2-PLE6] ........................................................................9

Public Papers of the Presidents of the United States: Lyndon B. Johnson (Washington, D.C.: United States Government Printing Office, 1967), 2:699.......................................................2

USPS, *Guide to Privacy, the Freedom of Information Act, and Records Management, Handbook AS-353* at 1-4.2.4 (p. 3) (Feb. 2019) https://about.usps.com/ handbooks/as353.pdf [https://perma.cc/ HH5T-JQPJ]...........................................................................................................19

USPS, https://special.usps.com/testkits (last visited Sept. 2, 2022) ..........................................3

Cong. Rep. 92-1419 (Sept. 20, 1972)...........................................................................34

Sen Rep. No. 93-854 (May 16, 1974) ...........................................................................35

120 Cong. Rec. S9310-9343 (1974) ...........................................................................35

120 Cong. Rec. H1787-H1803 (1974)...........................................................................35

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant United States Postal Service ("USPS") published in tiny print on the very bottom of its public webform through which Americans could request free at-home COVID-19 tests a "Privacy Act Statement." This "Privacy Act Statement" said that USPS may, without Americans' consent, disclose their personal information—which includes their names, street addresses, and email addresses—to labor unions. That unconsented-to union disclosure does not appear in USPS's general "Privacy Act notice," which is what USPS uses in the ordinary course "for personal information collected online." Observing this clear and unusual discrepancy, and USPS's affirmative choice to depart from its usual practice, Plaintiff Americans for Fair Treatment ("AFFT") submitted an expedited FOIA request to USPS in which it asked for all records concerning the "Privacy Act Statement" and all records concerning USPS's disclosure to labor unions of Americans' personal information it obtained through the COVID-19 webform. AFFT sought this information from USPS so it may educate the public about USPS's actions with respect to the personal information of over seventy million American households that have requested COVID-19 tests from USPS.[1]

USPS initially responded to AFFT's FOIA request by claiming it had no responsive records. Observing that USPS's answer was entirely implausible, AFFT submitted an administrative appeal to USPS's general counsel as required by USPS's FOIA regulations. The general counsel, by and through a designated subordinate who purported to have final authority to decide that appeal, reversed in part USPS's initial decision, ordered a new search be conducted, and released to AFFT just five responsive records. USPS almost entirely redacted these records—they disclose none of the

---

[1] *Fact Sheet: The Biden Administration Announces Americans Can Order Additional Free At-Home, Rapid COVID-19 Tests at COVIDTests.gov*, White House Briefing Room (May 17, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/05/17/fact-sheet-the-biden-administration-announces-americans-can-order-additional-free-at-home-rapid-covid-19-tests-at-covidtests-gov/ [https://perma.cc/WJR7-2NH6].

substantive information AFFT is seeking, and they show on their faces that USPS has failed to conduct a FOIA-compliant search. And USPS's *Vaughn* Index submitted in this litigation matter further confirms the inadequacy of the search USPS performed and the illegality of its withholding information from AFFT pursuant to alleged FOIA exemptions.

Accordingly, AFFT's lawsuit seeks judicial intervention to require USPS to conduct searches for responsive records in compliance with FOIA and to produce to AFFT unredacted records—for reasons including that USPS has not and cannot demonstrate that releasing these records would cause it foreseeable harm. AFFT also seeks a declaration that USPS's FOIA regulations (and USPS's response to AFFT's administrative appeal in this matter) violate the Administrative Procedure Act and are *ultra vires* to the extent they purport to vest authority to decide FOIA administrative appeals in someone who is not the head of USPS. AFFT further seeks counsel fees and costs to which it is entitled, and for the Court to find that USPS's actions with respect to AFFT's FOIA request were arbitrary and capricious.

When signing into law the initial iteration of FOIA in 1966, President Johnson explained: "A democracy works best when the people have all the information that the security of the nation permits. No one should be able to pull curtains of secrecy around decisions which can be revealed without injury to the public interest."[2] USPS has neither lived up to the spirit of these words nor the letter of the law they described. This lawsuit seeks to vindicate both and to help chart a new path for USPS's compliance with its transparency obligations to the American people.

---

[2] Public Papers of the Presidents of the United States: Lyndon B. Johnson (Washington, D.C.: United States Government Printing Office, 1967), 2:699, quoted in H.R. Rep. No. 104–795, at 8 (1996).

## BACKGROUND AND PROCEDURAL HISTORY

This lawsuit is the result of USPS's deficient responses to a FOIA request submitted by AFFT. *See generally* Compl., ECF No. 1. On its website, USPS published a webform where members of the American public can provide their personal information and thereby request free COVID-19 test kits. Declaration of Elisabeth Kines Messenger ("KM Decl.") ¶ 3. At the bottom of the webform was a "Privacy Act Statement" that substantially differed from the standard "Privacy Act notice" generally used by USPS "for personal information collected online."[3] KM Decl. ¶ 4. AFFT set out to learn why USPS opted to depart from the "Privacy Act notice" on its COVID-19 webform, and whether it has disclosed the personal information obtained through it to labor unions, so that it could educate the public about it; accordingly, on February 7, 2022, submitted a FOIA request to USPS. KM Decl. ¶ 5. The following day, USPS claimed that AFFT's request was "very broad" and that USPS needed "more definitive information" before it could process AFFT's request. KM Decl. ¶ 6. AFFT assisted USPS to narrow the scope of its request and was informed by USPS on February 25, 2022, that there were "no responsive records" to AFFT's request. *See* ECF No. 14-2 ("Castorina Decl.") ¶¶ 6–7.

Disappointed with USPS's response, AFFT administratively appealed USPS's determination to USPS's general counsel, as required by USPS's FOIA regulations, on March 15, 2022. Castorina Decl. ¶ 8; KM Decl. ¶ 7. In that administrative appeal, AFFT pointed out that USPS had changed the "Privacy Act Statement" on its COVID-19 webform between February 7 and March 15, 2022. KM Decl. ¶ 8.

---

[3] USPS apparently shut down its COVID-19 test webform on September 2, 2022, the same day this memorandum was filed. *See* USPS, https://special.usps.com/testkits (last visited Sept. 2, 2022) ("This program is not currently accepting orders for free at-home COVID-19 tests. . . . *Test ordering through this program has been suspended effective September 2, 2022.*") (emphasis in original).

On April 6, 2022, USPS's general counsel, by and through attorney Tram T. Pham, responded to AFFT's administrative appeal with a letter and an opinion and order partly reversing USPS's determination. Castorina Decl. ¶ 9. Upon the general counsel's designee's partial reversal, USPS conducted an additional search and allegedly located five records responsive to AFFT's FOIA request, all of which are emails that have been almost fully redacted supposedly pursuant to FOIA exemptions. Castorina Decl. ¶ 10 & Ex. 1, at ECF pp. 17–25.

On April 28, 2022, AFFT sued USPS to compel a complete response to AFFT's FOIA request that is consistent with USPS's FOIA obligations, and sued all defendants to have USPS's FOIA regulations (and USPS's response to AFFT's administrative FOIA appeal) declared unlawful and set aside because they violate the Administrative Procedure Act ("APA") and are *ultra vires*. AFFT seeks to recover counsel fees and costs pursuant to 5 U.S.C. § 552(a)(4)I(i) and the Equal Access to Justice Act; and to have USPS's conduct in respect to AFFT's FOIA request declared arbitrary and capricious. Castorina Decl. ¶ 12; Compl. at Prayer for Relief.

Defendants filed their Answer to AFFT's Complaint on June 8, 2022. ECF No. 10. This Court then ordered Defendants to produce a *Vaughn* index and a Motion for Summary Judgment, ECF No. 11, and Defendants did so on July 29, 2022. ECF Nos. 14–14-4. AFFT now files its Cross-Motion for Summary Judgment and opposes Defendants' Motion for Summary Judgment.

## LEGAL STANDARDS

### I.   SUMMARY JUDGMENT

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must show that the dispute is genuine and material

to the case. A "genuine issue" means a factual dispute can affect the substantive outcome of the case and is supported by admissible evidence that a reasonable trier of fact could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The burden on the moving party may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

FOIA cases are typically and appropriately decided on motions for summary judgment. *Gold Anti-Trust Action Comm., Inc. v. Bd. Governors Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C. 2011) (Huvelle, J.). In a FOIA action, summary judgment may not be entered in favor of the government unless the agency "shows[s] that there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requester." *Weisberg v. DOJ*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). "Summary judgment is inappropriate if a review of the record raises substantial doubt as to the search's adequacy, particularly in view of well defined requests and positive indications of overlooked materials." *Shapiro v. DOJ*, 40 F.4th 609, 613 (D.C. Cir. 2022). To meet its burden, the agency must establish that it has fully met its statutory obligations, including that it conducted an adequate search, that any information it withheld is proper under one or more of FOIA's enumerated exemptions, and that disclosure of the withheld information would harm an exemption-protected interest. *Sai v. TSA*, 315 F. Supp. 3d 218, 241 (D.D.C. 2018) (Moss, J.); *Campbell v. DOJ*, 164 F.3d 20, 30 (D.C. Cir. 1998); 5 U.S.C. § 552(a)(4)(B), (8)(A)(i)(I). The agency must also show that each document responsive to the FOIA request either has been produced, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. State*, 257 F.3d 828, 833 (D.C. Cir. 2001).

"When an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption, summary judgment in favor of the FOIA plaintiff is appropriate." *Petroleum Info. Corp. v. DOI*, 976 F.2d 1429, 1433 (D.C. Cir. 1992).

## II.   JUDGMENT ON THE PLEADINGS

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." To prevail, a movant must show, at the close of the pleadings, that no issue of material fact remains to be resolved, and that the movant is entitled to judgment as a matter of law. *See Terry v. Reno*, 101 F.3d 1412, 1423 (D.C. Cir. 1996).

"Because Rule 12(c) provides judicial resolution at an early stage of a case, the party seeking judgment on the pleadings shoulders a heavy burden of justification." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.*, 933 F.3d 751, 760 (D.C. Cir. 2019). The movant must demonstrate that it is entitled to judgment in its favor even accepting as true all well-pleaded facts in the opponent's pleading and even accepting as false all the movant's contested assertions. *Id.* at 760–61. Accordingly, "[i]f material questions of fact are presented by the pleadings, the remedy by motion for judgment on the pleadings under Rule 12(c) is not available." *Id.* at 761 (cleaned up).

## ARGUMENT

## I.   AFFT IS ENTITLED TO JUDGMENT ON ITS FOIA CLAIMS AND USPS IS NOT

USPS has the burden to show that every record that is responsive to AFFT'S FOIA request either has been produced, is unidentifiable, or is exempt from disclosure. *See Students Against Genocide*, 257 F.3d at 833. USPS has not done this—and it cannot—because it demonstrably failed to produce all responsive records, did not conduct an adequate search for records in the first place, and improperly relied on FOIA exemptions to withhold information that it was required to disclose.

### A.   USPS Expressly Admits That It Wrongly Withheld Information from AFFT and Relied on Inapplicable FOIA Exemptions

USPS's summary judgment brief concedes that it improperly relied on FOIA exemptions to justify redacting emails it produced to AFFT. ECF No. 14-1 ("Defs.' Mem. Law") at 8, n.4 & 12,

n.5. USPS first admits that its application of Exemption 5 to withhold subject lines from emails was inappropriate. *See id.* at 8, n.4 ("The Agency no longer intends to withhold this information and discloses that the subject lines are 'Re: 810' (Pages 1–5) and 'Re: Privacy Statement Updated' (Pages 7–9)."). AFFT specifically pointed out the problem with this in its complaint. Compl. ¶ 40. USPS accordingly has admitted that it made **fifteen** redactions to the five records it produced in violation of FOIA. *See* Castorina Decl. at 17–25.

USPS next admits that it incorrectly relied on FOIA Exemption 3, 5 U.S.C. § 552(b)(3), and the Postal Reorganization Act, 39 U.S.C. § 410(c)(2), to redact email addresses and mobile telephone numbers of federal employees from the records it produced. *See* Defs.' Mem. Law at 12, n.5 ("The Postal Service . . . also withheld the email addresses and mobile telephone numbers pursuant to Exemption 3 . . . . The Postal Service is not relying on Exemption 3 as a basis for such withholdings in this motion."). AFFT also pointed out this problem in its complaint. Compl. ¶ 39.[4] USPS therefore admits that it supplied **twenty-eight** faulty justifications for redacting information in the five records it produced. *See* Castorina Decl. at 17–25.

AFFT is accordingly entitled to judgment that USPS improperly relied on Exemption 5 to withhold information, and that it inappropriately relied on Exemption 3 and 39 U.S.C. § 410(c)(2) as a justification for withholding information. AFFT is entitled to have the five records re-produced by USPS without these forty-three unlawful redactions and justifications. *And see Jud. Watch, Inc. v. FBI*, 522 F.3d 364, 370 (D.C. Cir. 2008) ("Under the amended FOIA, a plaintiff has substantially prevailed if the complainant has obtained relief through . . . a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.") (cleaned up).

---

[4] AFFT does not contest that USPS had discretion to withhold email addresses and mobile telephone numbers of USPS employees solely pursuant to FOIA Exemption 6 and does not challenge its exercise of that discretion. *See* Compl. ¶ 39 & n.4.

**B.      USPS's Summary Judgment Motion and Records Production Demonstrate It Withheld Responsive Records from AFFT**

USPS produced just five records in response to AFFT's FOIA request. Castorina Decl. at 17–25. But each one of these records is an email chain, and each email in the chain involves at least two individuals (sender and recipient(s)). *Id.* USPS failed to produce the earlier emails in each chain as well as all the versions of each email (which are separate records). *Cf. Gellman v. DHS*, No. 16-CV-635 (CRC), 2020 WL 1323896, at *3 (D.D.C. Mar. 20, 2020) (Cooper, J.) (DOJ's Office of Information Policy "has always maintained that each email in a chain is a distinct record"). Take the first record USPS produced, for example. Castorina Decl. at 17. This is an email chain comprised of three emails involving Janine Castorina, Christopher Gillespie, and Christopher Lind. And USPS has produced only Christopher Gillespie's record of the chain. *See id.* (top left). Accordingly, there are eight corresponding records that clearly exist from the face of this one record alone that USPS didn't produce.[5] Applying this analysis to the remainder of the records USPS produced shows there are at least thirty-four[6] additional records USPS failed to produce, for a total of ***forty-two***. USPS accordingly failed to produce eighty-nine percent of the responsive records that are revealed on the face of its record production alone.

Nor is this a ticky-tacky criticism. Failing to disclose underlying emails elides evidence of any document that may have been attached to them (because once an email becomes a sub-part of a chain, it no longer indicates if anything was attached to that email). *Pub. Citizen, Inc. v. HUD*, No. 1:19-CV-00915 (CJN), 2020 WL 1479517, at *3 (D.D.C. Mar. 26, 2020) (Nichols, J.) ("For example, while an e-mail chain itself might be a single record, attached documents may qualify as separate

---

[5] These are Ms. Castorina's, Mr. Gillespie's, and Mr. Lind's records of the 7:27 a.m. email; Ms. Castorina's, Mr. Gillespie's, and Mr. Lind's records of the 8:34 a.m. email; and Ms. Castorina's and Mr. Lind's records of the 8:57 a.m. email.

[6] The second record has eight related unproduced emails; the third record has fourteen; the fourth record has nine; and the fifth record has three.

'records.'"); Krys Murphy, *Have You Lost Your Attachments in Outlook?* (May 21, 2021),

https://www.enterprisetimes.co.uk/2021/05/21/have-you-lost-your-attachments-in-outlook/

[https://perma.cc/X5R2-PLE6] ("Once you have created these conversations when you look at a

top-level message you cannot see any attachments in that trail.").

 Further, underlying correspondence in an email chain is not static and can be edited by the

sender of a follow-on reply email. *E.g.*, Leo A. Notenbloom, *How Do I Edit a Reply*, https://askleo.

com/how-do-i-edit-a-reply/ [https://perma.cc/A6BB-K7X9] ("What most people don't realize is

that everything in your new message's body — both the original message and anything you type in

reply — is editable. *You can edit your reply, and you can edit the original message you're replying to*.") (emphasis

in original). Without USPS disclosing the underlying emails and all their various versions, AFFT has

no ability to see what differences may exist between them.

 And USPS's summary judgment motion discloses, for the first time, that there are additional

records responsive to AFFT's FOIA request that USPS failed to produce—various versions of its

COVID test kit webpage and comments thereto. *See* Defs.' Mem. Law at 10–11 (revealing the

existence of "drafts and comments [that] appeared on the live testing of the webpage before the

webpage was finalized"); Castorina Decl. Ex. 2, at ECF pp. 27, 29, 31, 33, 35–36 (referencing the

"live testing of the COVID-19 test kit webpage" and explaining that the "webpage was in the testing

phase at the time of this communication"). Nor has USPS produced any document that evidences

the final form of its Privacy Act Statement, despite relying on supposed differences between that

and information in earlier documents to withhold from AFFT information in those documents. *See*

Section III.E.2.a, *infra*.

 Finally, a historical review of the Privacy Act Statement on USPS's COVID-19 webform

reveals there are additional records responsive to AFFT's FOIA request that USPS failed to

produce. AFFT pointed out in its administrative appeal that USPS published at least two different

versions of the Privacy Act Statement. KM Decl. ¶¶ 8–9. USPS changed its published Privacy Act

Statement after AFFT submitted its FOIA request. *Id.*; *see also* Section I.D, *infra* (detailing such

change). Despite that, USPS's second search for responsive records in response to AFFT's

administrative appeal (which could not have happened earlier than March 15, 2022 (the date of

AFFT's appeal)), failed to identify or produce any records related to its revision of the Privacy Act

Statement. *Cf. McGehee v. CIA*, 697 F.2d 1095, 1101 (D.C. Cir. 1983) ("In other words, a temporal

limit pertaining to FOIA searches (such as the 'time-of-request cut-off' policy that is at issue in this

case) is only valid when the limitation is consistent with the agency's duty to take *reasonable* steps to

ferret out requested documents.") (emphasis in original).

All the foregoing is a violation of FOIA. AFFT is entitled to judgment that USPS has failed

to produce records that are revealed by its own production exist, it expressly admits exist, or its own

website makes clear exist, and requiring USPS to produce these records.

### C.     USPS's Searches Were Inadequate

USPS's searches for records in response to AFFT's FOIA request were inadequate and

violated FOIA for at least five reasons.

**First**, Janine Castorina's declaration states that, in response to AFFT's first request, USPS

searched the emails of "three staff members" because, she says, those were the only three individuals

"involved in creating the language" of the Privacy Act Statement (presumably, although USPS does

not specify, these are Janine Castorina, Christopher Gillespie, and Christopher Lind). Castorina

Decl. ¶ 16 & Ex. 1, at ECF pp. 17–22. But the records USPS produced show that at least three more

individuals were involved in the Privacy Act Statement; but USPS failed to search their records. *See

id.* Ex. 1, at ECF pp. 23–25 (showing that Kimberly Workinger, Christopher Karpenko, and Heather

Dyer were also involved). As the D.C. Circuit has explained: "However, if a review of the record

raises substantial doubt, particularly in view of well defined requests and positive indications of

overlooked materials, summary judgment is inappropriate." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999); *see also Campbell,* 164 F.3d at 28 ("Here, the FBI started with the reasonable assumption that only a CRS review would be necessary, but that assumption became untenable once the FBI discovered information suggesting the existence of documents that it could not locate without expanding the scope of its search."); *Sai v. TSA*, 466 F. Supp. 3d 35, 54 (D.D.C. 2020) (Moss, J.) ("That email shows that it was forwarded to 'TSA ExecSec Mail,' presumably an address belonging to the TSA Office of the Executive Secretariat. This email belies Defendant's assertion that the document released to Sai was not responsive to their FOIA request and did not require the agency to explore whether the Office of the Executive Secretariat might have additional, responsive records."). USPS is not entitled to summary judgment as to the adequacy of its searches when the very records it produced are evidence that those searches were inadequate.

**Second**, USPS has failed to meet its burden of demonstrating that the searches it conducted were adequate. *See Valencia-Lucena*, 180 F.3d at 325 (USPS must "demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents") (cleaned up). To meet that burden, USPS had to produce a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby v. U.S. Dep't Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Weisberg v. DOJ*, 627 F.2d 365, 371 (D.C. Cir. 1980) ("[T]he agency affidavits now before us do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide enough information to enable Weisberg to challenge the procedures utilized."). Janine Castorina's declaration does not come close to meeting this standard. It does not discuss what types of searches were performed, of what files, by whom, or what search terms were used. *See generally* Castorina Decl. Ex. 2. It makes no effort to provide "information about the search strategies of the components charged with responding" to AFFT's requests. *Morley v. CIA*, 508 F.3d

1108, 1122 (D.C. Cir. 2007). And it fails to "provide any indication of what each directorate's search specifically yielded." *Id.* USPS has therefore failed to "afford [AFFT] an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." *Oglesby*, 920 F.2d at 68.

**Third**, USPS has failed to explain why it conducted searches (however inadequate) of only four of its offices: Privacy and Records Management Office ("PRMO"), Corporate Information Security ("CISO"), Information Technology ("IT"), and Labor Relations. USPS relies on its own *ipse dixit* conclusions that these are the "departments **most likely** to have responsive records" and that it is "highly unlikely that any other department or office would have responsive records." Castorina Decl. ¶¶ 26–27 (emphasis added). These conclusory allegations are insufficient to meet USPS's summary judgment burden. *See, e.g.*, *Mobley v. CIA*, 806 F.3d 568, 582 (D.C. Cir. 2015) ("Had the FBI only searched the record systems '**most likely**' to contain responsive records, its search would be inadequate.") (emphasis added); *compare Morley*, 508 F.3d at 1121 ("Dorn provides little more than conclusory adjectives and does not provide sufficient detail for the court itself to determine the search's adequacy."), *with Bartko v. DOJ*, 167 F. Supp. 3d 55, 64 (D.D.C. 2016) (Boasberg, J.) (government's affidavit sufficient because it "incanted the 'magic words' concerning the adequacy of the search—namely, the assertion that USPIS searched <u>all</u> locations likely to contain responsive documents.") (emphasis in original).

**Fourth**, as to the search of the PRMO that USPS did vaguely describe a bit, USPS says that it searched only the emails of three staff members because "drafting of the Privacy Act Statement was done entirely over email." Castorina Decl. ¶ 16. But without conducting a search for documents beyond emails and finding no records, this contention is conclusory and speculative. Other relevant documents that may well exist include calendar entries, handwritten notes, and electronic notes— none of which USPS apparently looked for. *Concepcion v. CBP*, 767 F. Supp. 2d 141, 146 (D.D.C.

2011) (Urbina, J.) ("Because CBP may not limit its search to only one record system if there are others that are likely to turn up the information requested, and because CBP has not demonstrate[d] that responsive documents would not reasonably be found in other record systems or that it searched any other potential sources but found no responsive records, the court determines that CBP has not demonstrated that its search was adequate.") (cleaned up).

*Fifth*, USPS's searches were inadequate because its summary judgment papers say, and the documents it has produced indicate, that additional responsive records exist but have not been produced. *See* Sections I.A–B, *supra*. An adequate search would have turned these records up and USPS would have produced them to AFFT in the first instance; yet it did not.

AFFT is entitled to judgment that USPS's searches for records in response to its FOIA request were inadequate.

### D.    USPS Failed to Demonstrate Foreseeable Harm

Turning next to the five records USPS did choose to produce, USPS cannot rely on any FOIA exemption to withhold responsive information in those records from AFFT unless it affirmatively demonstrates that disclosing that information would reasonably harm an exemption-protected interest or is prohibited by law. *Jud. Watch, Inc. v. DOC*, 375 F. Supp. 3d 93, 97–98 (D.D.C. 2019) (Sullivan, J.); *see also* 5 U.S.C. § 552(a)(8)(A)(i). USPS did not say that releasing the information it has withheld from AFFT is prohibited by law (*see generally* Castorina Decl. Ex. 2); accordingly, the only question is whether USPS has demonstrated foreseeable harm. It has not.

Congress inserted the "foreseeable harm" requirement into FOIA to prevent agencies from overusing FOIA exemptions—especially Exemption 5—to withhold releasable information and records based on mere "speculative or abstract fears." *Ctr. Investigative Reporting v. CBP*, 436 F. Supp. 3d 90, 104–06 (D.D.C. 2019) (Howell, J.) (quoting Barack Obama, Memorandum on the Freedom of Information Act, 74 Fed. Reg. 4683, 4683 (Jan. 21, 2009)). To avoid disclosure, the agency must

provide a "focused and concrete" explanation of the specific, identifiable harms to relevant

protected interests that disclosure would cause and articulate "the link between the specified harm

and specific information contained in the material withheld." *Reps. Comm. Freedom Press v. FBI*, 3

F.4th 350, 369 (D.C. Cir. 2021).

USPS's explanation does not even begin to approach this standard. Not only did USPS fail

to describe the requisite link between the withheld information and harm, it did not even allege that

any harm would result from disclosing the information it claims is protected by the attorney-client

privilege of Exemption 5. Castorina Decl. Ex. 2, at ECF pp. 27, 29, 31, 34, 36. It alleged harm only

when discussing only the deliberative process privilege of Exemption 5. Castorina Decl. Ex. 2, at

ECF pp. 27, 29, 31, 33, 35. Each time when doing so, USPS's description of alleged harm was a

vague, boilerplate explanation—that releasing the information would have a "chilling effect on the

agency's decision-making process," would "lower the overall quality of those processes," and would

"cause public confusion." *Id.* at ECF pp. 27, 29, 31, 33, 35. These rote, generalized assertions are not

"specific" and do not attempt to link the supposed harm to the release of the information.

The D.C. Circuit recently rejected as "scanty" a similar explanation of harm offered by the

FBI, which was in fact ***more specific*** than USPS's explanation here and even attempted to articulate

a causal link between disclosure and foreseeable harm. FBI said:

> Disclosure . . . would have an inhibiting effect upon agency
> decisionmaking . . . because it would chill full and frank discussions
> between agency personnel and decision makers . . . . If agency
> personnel know that their preliminary impressions . . . would be
> released . . . they would be less candid and more circumspect in
> expressing their thoughts, which would impede the fulsome discussion
> . . . necessary to reach a well-reasoned decision.

*Reps. Comm. Freedom Press*, 3 F.4th at 370. Just like the FBI's failed explanation there, USPS here has

alleged that disclosure would "inhibit" staff communication and cause them not to "freely share

their ideas." Castorina Decl. ¶ 19. But the D.C. Circuit faulted and found non-compliant with FOIA

exactly such explanations because they are insufficiently "focused and concrete," do not explain why disclosing the information would, "in the specific context of the agency action at issue, actually impede those same agency deliberations moving forward," and are "perfunctory." *Id.* at 370–71 ("A perfunctory statement that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information between senior leaders within and outside of the agency will not suffice.") (cleaned up).

Moreover, USPS's supposition that it would "confuse the public" to release "draft versions of the Privacy Act Statement [that] differ from the final version of the Privacy Act Statement" is unconvincing. USPS's reasoning taken to its end is that all drafts are protected from disclosure by FOIA, which is obviously wrong. *See New Orleans Workers' Ctr. Racial Just. v. ICE*, 373 F. Supp. 3d 16, 53 (D.D.C. 2019) (Walton, J.) ("The fact that documents are drafts and contain edits does not, alone, qualify them for protection under the deliberative process privilege.") (cleaned up). Further, USPS's so-called concern that multiple versions of the Privacy Act Statement would "confuse" people is not credible because USPS itself published on its webform multiple versions of the Privacy Act Statement. *See* KM Decl. ¶ 8–9 (describing that the Privacy Act Statement published on USPS's webform substantively changed after AFFT submitted its FOIA request). In addition to those two versions, USPS has also published a different privacy statement—the "Privacy Act notice"—which is remarkably similar to the "Privacy Act Statement" both in name and substance, with slight differences. *See* KM Decl. ¶¶ 4, 8–9. And that is why AFFT sought records from USPS under FOIA in the first place. KM Decl. ¶ 5.

AFFT is entitled to judgment that USPS has failed to articulate any foreseeable harm that would result from disclosing the information it withheld, and thus USPS must disclose all responsive

records to AFFT without redacting any information pursuant to Exemption 5.[7] *Reps. Comm. Freedom Press v. CBP*, 567 F. Supp. 3d 97, 110, 131 (D.D.C. 2021) (McFadden, J.).

## E.       USPS Misapplied FOIA Exemption 5

USPS misapplied FOIA Exemption 5 to withhold information it should have produced to AFFT. FOIA's exemptions must be given a "narrow compass," *DOJ v. Tax Analysts*, 492 U.S. 136, 151 (1989), and an agency's affidavits in support of withholding information pursuant to an exemption must "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, are not controverted by either contrary evidence in the record nor by evidence of agency bad faith," *Larson v. State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (internal citations omitted). "When summary judgment turns upon applicability of a FOIA exemption, the court must 'ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempted from disclosure.'" *Citizens Resp. & Ethics v. DOJ*, 538 F. Supp. 3d 124, 131–32 (D.D.C. 2021) (Berman Jackson, J.) (citing *Assassination Archives & Rsch. Cent. v. CIA*, 334 F.3d 53, 57 (D.C. Cir. 2013)).

Exemption 5 exempts from disclosure based on privilege "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency . . . ." 5 U.S.C. § 552(b)(5). This includes the deliberative process privilege and the attorney-client privilege. *Bloche v. DoD*, 474 F. Supp. 3d 296, 302 (D.D.C. 2020) (Contreras, J.).

USPS has from the outset entirely failed to meet its burden with respect to Exemption 5 because it claims that ***both*** the attorney-client privilege and the deliberative process privilege apply to each and every bit of the information it redacted from the records its produced. *Compare Bloche v.*

---

[7] USPS may appropriately redact information pursuant to Exemption 6. *See* Section I.A, n.2, *supra.*

*DoD*, 414 F. Supp. 3d 6, 47 (D.D.C. 2019) (Contreras, J.) ("Because neither Army's declarations nor its Vaughn Index adequately indicate which privilege applies to which portions of the document, it has not in fact sufficiently demonstrated that its withholdings are proper pursuant solely to the deliberative process privilege.") *and id.* ("[T]he problem stems from the language that Army invokes and the manner in which it claims both privileges without any particularity as to which privilege applies to which portions of the document."), *with* Castorina Decl. Ex. 2, at ECF pp. 27–37 (claiming without specificity that the attorney-client privilege and the deliberative process privilege cover all material redacted pursuant to Exemption 5). And it has misapplied both privileges individually as discussed below.

1.   USPS Misapplied the Attorney-Client Privilege

Attorney-client privilege "protects confidential communications from clients to their attorneys [when] made for the purpose of securing legal advice or services" and from attorneys to their clients when "the lawyer's communication rested in significant and inseparable part on the client's confidential disclosure." *Citizens Resp. & Ethics*, 538 F. Supp. 3d 124, 131–32, 35 (D.D.C. 2021) (Berman Jackson, J.). The attorney-client privilege does not protect the disclosure of the underlying facts by those who communicated with the attorney—only the disclosure of their communications. *FTC v. Boehringer Ingelheim Pharm. Inc.*, 180 F. Supp. 3d 1, 34 (D.D.C. 2016) (Harvey, M.J.). USPS may not rely on the attorney-client privilege to withhold information from AFFT because USPS has misapplied that privilege in four significant ways.

***First***, USPS failed to provide the threshold information required to even be allowed to assert the attorney-client privilege. *See Am. Oversight v. USPS*, No. CV 20-2580 (RC), 2021 WL 4355401, at *8 (D.D.C. Sept. 23, 2021) (Contreras, J.) ("[T]he agency must describe the nature of the decisionmaking authority vested in the office or person issuing the disputed document(s), and the positions in the chain of command of the parties to the documents.") (cleaned up). USPS makes no

mention as to the decisionmaking authority of the office or person issuing the disputed records or their place in any chain of command. *See generally* Castorina Decl. Ex. 2. Of the six parties to the five records USPS produced—Janine Castorina, Heather Dyer, Christopher Gillespie, Christopher Karpenko, Christopher Lind, and Kimberly Workinger—USPS identified job titles for only four, identified the associated office for only the three PRMO employees, and said nothing about anyone's position in the chain of command or what decisionmaking authority they have. *See* Castorina Decl. ¶¶ 2, 20 & Ex. 2, at ECF pp. 33, 35 (identifying Janine Castorina as "an attorney and Chief Privacy and Records Management Officer" ("CPRMO") and Christopher Karpenko as "Executive Director of Brand Marketing" and identifying "Heather L. Dyer, the Chief Information Security Officer[,] and Kimberly Workinger, the Postal Services' Manager of Digital Brand Marketing," as "internal clients")[8]. And USPS only describes the remaining two as generally "within the [PRMO]." *See* Castorina Decl. ¶¶ 2, 20 & Ex. 2, at ECF p. 30. Further, USPS appears to have contradicted its own description of Heather Dyer's job title. *Compare id.* Ex. 2, at ECF p. 35 (identifying Dyer as "Vice President of the Corporate Information Security Office), *with id.* ¶ 20 (identifying Dyer as "Chief Information Security Officer). This is not close to meeting USPS's burden.

**Second**, USPS incorrectly argues that any communication between the CPRMO and colleagues is attorney-client privileged simply because the CPRMO happens to be an attorney. *See id.* ¶ 20 (asserting attorney-client privilege over communications in which Janine Castorina participated because she is "an attorney that overse[es] and advis[es] on matters within PRMO's purview"). That is clearly wrong—a communication is not attorney-client privileged merely because it involves an attorney. *Prasad v. George Wash. U.*, 323 F.R.D. 88, 97 (D.D.C. 2017) (Harvey, M.J.); *see also Klayman v.*

---

[8] Likewise, USPS describes the role of PRMO as "receiv[ing], track[ing], and advis[ing] postal officials on how to respond to FOIA requests," Castorina Decl. ¶ 3, and that it generally "falls within the Postal Service's Law Department." *Id.* ¶ 20.

*Jud. Watch, Inc.*, No. 06-670(CKK)(AK), 2008 WL 11394175, at *1 (D.D.C. May 5, 2008) (Kay, J.)

("The possession of a law degree and admission to the bar is not enough to establish a person as an

attorney for purposes of determining whether the attorney-client privilege applies.").

Following USPS's logic that the attorney-client privilege attaches to communications

involving anyone who happens to be an attorney, an agency could insulate all manner of records

from FOIA disclosure by filling non-attorney roles with people admitted to a bar. On the contrary,

USPS must show that the information it has withheld involved the PRMO "not only [] functioning

as an advisor" but also giving "predominantly legal" advice in the withheld documents. *See Am.*

*Oversight v. GSA*, 311 F. Supp. 3d 327, 342 (D.D.C. 2018) (Howell, J). And USPS has offered

nothing to show the initial predicate that the CPRMO is both authorized to and does provide legal

advice. Instead, USPS ambiguously described the CPRMO as an "attorney [that] oversee[s] and

advis[es] on matters within PRMO's purview and direct[s] [her] staff . . . to ensure the agency's

compliance with various laws." Castorina Decl. ¶ 20. This vague description is consistent with the

fact that USPS likely **cannot** show that the CPRMO acts in any capacity as an attorney—it appears

that the CPRMO is not even authorized to provide legal advice. *See* 39 C.F.R. § 266.2 (2017) ("The

Chief Privacy and Records Management Officer, as administrator of Postal Service Privacy Act

policy, serves as Secretary of the [Data Integrity] Board and performs the administrative functions of

the Board."); *see also* Castorina Decl. Ex. 2, at ECF p. 28 (referring to Janine Castorina as the

CPRMO **and** separately also an attorney); USPS, *Guide to Privacy, the Freedom of Information Act, and*

*Records Management, Handbook AS*-353 at 1-4.2.4 (p. 3) (Feb. 2019) https://about.usps.com/

handbooks/as353.pdf [https://perma.cc/ HH5T-JQPJ] (describing the six functions of the Chief

Privacy Officer, none of which include providing legal advice).[9] Without the threshold authorization to provide legal advice, and then specific information establishing that advice was "predominately" legal, USPS cannot establish any attorney-client privilege applicable to the redacted records it produced.[10]

*Third*, USPS failed to identify a client involved in three of the five withheld communications. Without a client, there can be no attorney-client privilege. *Loftin v. Bande*, 258 F.R.D. 31, 36 (D.D.C. 2009) (Bates, J.) ("Attorney-client privilege protects confidential communications between a client and an attorney . . . ."). USPS claims that the so-called clients at issue are Christopher Karpenko, Kimberly Workinger, and Heather Dyer. Castorina Decl. Ex. 2, at p. 34 ("Janine Castorina, the [CPRMO] and attorney within the USPS's Law Department, was communicating with Christopher Karpenko, Kimberly Workinger, and Heather Dyer, as agency clients, to answer their request for legal advice."). But these "clients" are not copied on the first three records USPS produced. Castorina Decl. Ex. 2, at ECF pp. 27–33 (three email chains amongst Janine Castorina, Christopher Gillespie, and Christopher Lind); *see also id.* Ex. 2, at ECF pp. 28, 30, 32 ("Christopher Gillepsie and Christopher Lind acted and communicated at the direction of Janine Castorina . . . ."). The attorney-client privilege accordingly cannot apply to those records.

---

[9] Janine Castorina formerly practiced law as "an Attorney in the Postal Service's Commercial and Appellate Litigation section from October 2011 to March 2016." Castorina Decl. ¶ 2. It appears she is no longer practicing as an attorney in her new role as CPRMO. *Id.*

[10] When an agency lawyer serves in a "mixed capacity," involving legal and non-legal responsibilities, his or her communications will be protected only "to the extent that they involve his or her professional, legal capacity." *Citizens Resp. & Ethics*, 955 F. Supp. 2d 4, 20–21 (D.D.C. 2013) (Boasberg, J.). To support a claim of attorney-client privilege, an agency is required to, in its *Vaughn* index, show that the records "involved the provision of specifically legal advice or that they were intended to be confidential and were kept confidential." An agency's explanations must be specific to each record rather than generic, boilerplate language. *Carlson v. U.S. Postal Serv.*, 2017 WL, at *18 (citing *Wiener v. FBI*, 943 F.2d 972, 978–79 (9th Cir. 1991)).

**Fourth**, USPS has failed to demonstrate that any of the withheld communications "rest on confidential information obtained from the client." *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984). The first in time email USPS produced is from January 10, 2022, at 7:27 a.m., and is only involving PRMO employees. Castorina Decl. Ex. 1, at ECF p. 17. Other PRMO-only emails were sent that day at 8:34 a.m., 8:57 a.m., 4:15 p.m., and 4:43 p.m. *Id.* at ECF pp. 17–22.  The next communication between a PRMO employee and someone who might potentially be a "client" was sent on January 11, 2022, at 7:15 a.m. *Id.* at ECF p. 24. If the January 10 emails "rest[ed] on confidential information obtained from a client," USPS has failed to produce any record of how that confidential information was obtained or any explanation of why it has produced no record of it. Nor does USPS say that the January 11 email correspondence with a "client" contained confidential information that became the basis of legal advice. And an important corollary to this point is that the attorney-client privilege only "permits nondisclosure of an attorney's opinion or advice in order to protect the secrecy of the underlying facts." *Mead Data Cent., Inc. v. Dep't Air Force*, 566 F.2d 242, 254 n.28 (D.C. Cir. 1977). Lacking any underlying facts to protect, the attorney-client privilege cannot apply.

### 2.   USPS Misapplied the Deliberative Process Privilege

The deliberative process privilege is to be construed as narrowly as consistent with efficient Government operation. *White Coat Waste Project v. Dep't Veterans Affs.*, 404 F. Supp. 3d 87, 97 (D.D.C. 2019) (Sullivan, J.). Only documents that are **both** predecisional and deliberative may be protected under the deliberative process privilege. *Campaign Legal Ctr. v. DOJ*, 34 F.4th 14, 23 (D.C. Cir. 2022). Factual information is not protected by the privilege—"agencies must disclose portions of predecisional and deliberative documents that contain factual information that does not 'inevitably reveal the government's deliberations.'" *Reps. Comm. Freedom Press*, 3 F.4th at 366. As a guide to sorting factual information from "deliberative policy judgments," courts look to whether a statement is a fact or an opinion. *Id.*

21

a. USPS's records are not predecisional.

A predecisional document is one that was "generated before the agency's final decision on a matter." *Id.* at 362. "[E]ven if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Advancement Project v. U.S. DHS*, 549 F. Supp. 3d 128, 138 (D.D.C. 2021) (Contreras, J.); *see also U.S. Fish & Wildlife Servs. v. Sierra Club*, 141 S. Ct. 777, 786 (2021) (a draft document loses its privileged status when an agency "treats the document as its final view on the matter"). An agency has the burden to demonstrate that drafts have not been subsequently adopted and therefore remain within the scope of the deliberative process privilege. *See, e.g.*, *Heffernan v. Azar*, 317 F. Supp. 3d 94, 125 (D.D.C. 2018) (Walton, J.).

USPS asserted the deliberative process privilege to withhold almost the entire substance of emails related to its preparation of the Privacy Act Statement. *See generally* Castorina Decl. Ex. 2. But it reproduced the same, boilerplate justification for asserting the privilege as to each: that the emails involved USPS's "on-going iterative decision-making process." *See id.* Ex. 2, at ECF pp. 27, 29, 31, 33, 35. USPS only addresses the predecisional status of the records at the time they were created; it has failed to provide this Court enough information to determine whether the record or portions thereof have lost their predecisional status. *See id.* USPS does not even mention whether any portions of the emails had been adopted as final. *See id; see also* Section II.F, *infra* (discussing USPS's failure to segregate portions of discussions of the Privacy Act Statement that became final from those that did not); *Sierra Club*, 141 S. Ct. at 788 (A document is not predecisional when "an agency has hidden a functionally final decision in draft form.").

Moreover, USPS's redaction of nearly all the emails' contents suggests that USPS believes either all of the content is opinion and none of it is factual information, *see Reps. Comm. Freedom Press*, 3 F.4th at 366 (factual information is not exempt from disclosure, but opinions are exempt), or that

the factual information is not reasonably segregable from the responsive record, *see id.* ("[A]gencies must disclose portions of predecisional and deliberative documents that contain factual information that does not 'inevitably reveal the government's deliberations.'"). AFFT and this Court are left to speculate what is USPS's position because USPS failed to distinguish at all between fact and opinion, and it only offered a mere conclusory statement ("All reasonably segregable, non-exempt information from these records has been disclosed to Plaintiff." Castorina Decl. ¶ 25) to support its position that the non-exempt information is not reasonably segregable. *See Jud. Watch, Inc. v. Treasury*, 802 F. Supp. 2d 185, 198 (D.D.C. 2011) (Howell, J.) ("[T]he agency must provide a reasonably detailed justification rather than conclusory statements to support its claim that the non-exempt material in a document is not reasonably segregable.") (cleaned up); *see also* Section II.F (explaining that USPS failed to meet its segregability burden).

  b.  USPS has not demonstrated that its records are deliberative.

A deliberative document is one that was "prepared to help the agency formulate its position" and "reflects the give-and-take of the consultative process." *Reps. Comm. Freedom Press*, 3 F.4th at 362. To show that a document is deliberative, an agency must show, "for each contested document withheld in part or in full":

> (1) what deliberative process is involved, (2) the role played by the documents in issue in the course of that process, and (3) the nature of the decisionmaking authority vested in the office or person issuing the disputed documents, and the positions in the chain of command of the parties to the documents.

*Hardy v. ATF*, 243 F. Supp. 3d 155, 168 (D.D.C. 2017) (Howell, J.).

USPS has failed to meet its burden because it has not identified "the nature of the decisionmaking authority vested in the office or person issuing the disputed documents." *See id.*; *see also* Section II.E.1 (analyzing USPS's failure to identify who possess decisionmaking authority). Nor has USPS identified "the positions in the chain of command of the parties to the documents." *See*

*Hardy*, 243 F. Supp. 3d at 168; *see also* Section II.E.1 (discussing USPS's failure to identify the parties to the emails).

### F.     USPS Failed to Meet its Segregability Burden

FOIA requires USPS to produce "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt . . . ." 5 U.S.C. § 552(b). "The focus of the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material. It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent.*, 566 F.2d at 260. Further, "[a]n agency must provide a detailed justification and not just make conclusory statements to support its segregability determination." *Levinthal v. FEC*, 219 F. Supp. 3d 1, 9 (D.D.C. 2016) (Mehta, J.) (cleaned up) (citing *Mead Data Cent. Inc.*, 566 F.2d at 261).

But USPS has not provided any detailed justification for why information in the documents it disclosed is not segregable; instead, it relies on only the boilerplate legal conclusion: "All reasonably segregable, non-exempt information from these records has been disclosed to Plaintiff." Castorina Decl. ¶ 25. And the only factual information USPS provided to support its legal conclusion is the claim that staff conducted a "line-by-line review of the records." *Id.* That is plainly insufficient. *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008).

> In the record before the district court, specifically the government's Vaughn Index, the government's only justification for withholding the agreements in the face of the redaction of identifying information is a conclusory affidavit by a Division official declaring that a Division paralegal had "reviewed each page line-by-line to assure himself that he was withholding from disclosure only information exempt pursuant to the Act." The Division's conclusion on a matter of law is not sufficient support for a court to conclude that the self-serving conclusion is the correct one.

In addition, USPS's unadorned legal conclusion is suspect in view of its summary judgment motion and the record before this Court. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) ("Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material. The quantum of evidence required to overcome that presumption is not clear.") (cleaned up). USPS would lead the Court to believe that everything of substance in the documents it produced is subject to Exemption 5. *See* Vaughn Index, Castorina Decl. Ex. 2, at ECF pp. 27–37; Section II.E.2.a, *supra* (explaining why this cannot be true). Yet USPS failed to produce **any** document that reflects its final decision with respect to the Privacy Act Statement. *Compare* Castorina Decl. ¶ 18 ("The draft language differs from the final Privacy Act Statement, which appears on the test-kit webpage."). USPS at once would thus like this Court to think that: (1) there is no document that is, or reflects, the final Privacy Act Statement; (2) there was a final Privacy Act Statement; and (3) everything in the documents USPS produced differs so remarkably from the final Privacy Act Statement that it is protectable under Exemption 5 and non-segregable, *viz.*, not in any way incorporated into the final Privacy Act Statement. *See Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 866 (D.C. Cir. 1980) ("Finally, even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public."). Not all of those things can be true at the same time.

Nor can USPS credibly contend that no final policy emerged from its discussions with respect to the Privacy Act Statement—this is not a case where there is "no final agency document because a draft died on the vine." *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014). USPS created a final Privacy Act Statement and the only logical conclusion to be drawn is that there is segregable information in USPS's records that formally or informally became part of it. It strains all

credibility for USPS to allege that **none** of the discussions about the Privacy Act Statement ultimately became or are reflected in USPS's final policy.

AFFT is entitled to judgment that USPS failed to comply with its segregability obligations, and, to the extent that USPS is permitted to withhold any information from AFFT pursuant to Exemption 5, this Court should order all reasonably segregable information be produced.

## II.   USPS's FOIA Regulations Violate the Administrative Procedure Act

### A.   Defendants are Subject to the Administrative Procedure Act when Carrying out Government Functions

Defendants attempt to escape judicial review of USPS's FOIA regulations by claiming in a single short paragraph that USPS is "exempted . . . from APA review." Defs.' Mem. Law at 17. Defendants support this facile argument with 39 U.S.C. § 410(a), which precludes APA review of "the exercise of the powers of the Postal Service" (but noting there are "limited exceptions not applicable here" that Defendants don't explain). *Id.* Defendants' argument is without merit for four reasons.

**First**, although 39 U.S.C. § 410(a) exempts USPS from APA review of its "exercise of the powers of the Postal Service," USPS's compliance with its FOIA obligations is not such an exercise. The "powers of the Postal Service," which are set forth in 39 U.S.C. § 401, are generally aimed at allowing USPS to operate more like a business, and do not mention its FOIA or its other governmental duties. *See Concept Automation, Inc. v. USPS*, 887 F. Supp. 6, 10 (D.D.C. 1995) (Jackson, J.) (explaining the interplay between § 401 and § 410(a): "[A]t least one other case . . . clearly recognized the change Congress had wrought by the Postal Reorganization Act in the nature of the organization to which it was entrusting delivery of the mail, and forcefully suggested that, **in its purely business decisions**, the Postal Service was to be left largely alone") (emphasis added) (citing *Nat'l Easter Seal Soc'y Crippled Child. & Adults v. USPS*, 656 F.2d 754 (D.C. Cir. 1981)). When USPS is

engaged in government activity—such as complying with FOIA or the Privacy Act—its business activity APA exception in § 410(a) does not apply and APA review of its conduct is available. *E.g.*, *Carter Chevrolet Agency, Inc. v. USPS*, 19 F. Supp. 2d 1246, 1249 (W.D. Okla. 1997) ("The Court agrees that when the USPS acts as a private entity, it is exempt from those laws such as the Competition in Contracting Act, but when the USPS engages in activities as a government entity such as promulgating legally effective rules and regulations to govern its conduct, it should not be shielded by section 410(a)."); *Chelsea Neighborhood Ass'ns v. USPS*, 516 F.2d 378, 385 (2d Cir. 1975) (§ 410(a) does not exempt USPS from NEPA: "While Congress has made the Service less like a government agency and more like a private business, the Service is still a hybrid; it does furnish an essential public service and has public functions and responsibilities.").

**Second**, this result is further confirmed by the structure of 39 U.S.C. § 410. Section 410(a) explains that "[e]xcept as provided by subsection (b) of this section" APA review is unavailable as to USPS. And § 410(b) sets forth "provisions" that notwithstanding § 410(a) "shall apply to the Postal Service." Those provisions include among others the FOIA (5 U.S.C. § 552), the Privacy Act (5 U.S.C. § 552a), and the Government in the Sunshine Act (5 U.S.C. § 552b). 39 U.S.C. § 410(b)(1); *Nat'l Easter Seal Soc.*, 656 F.2d at 766–67 (D.C. Cir. 1981) ("Section 410(b), which lists the exceptions to section 410(a) that is, those federal laws to which the USPS is subject includes the provisions of chapter 5 of title 5 that pertain to public information, 5 U.S.C. § 552 (1976), records about individuals, *id.* § 552a, and open meetings, *id.* § 552b."). It would make no sense, and would violate the statute, to apply the § 410(a) APA exemption to the express § 410(b) exclusions from § 410(a).

**Third**, Defendants' position that USPS is altogether exempt from APA review cannot be squared with the fact that FOIA is part of the APA.[11] *DOJ v. Reps. Comm. Freedom Press*, 489 U.S. 749,

---

[11] USPS previously relied on the fact that Congress has made it subject at "numerous points" to portions of the APA to successfully argue that the APA review is generally unavailable. *Nat'l Retired*

754 (1989) ("The statute known as the FOIA is actually a part of the Administrative Procedure Act (APA)."). It is impermissible to read USPS's FOIA obligations in a vacuum from the rest of the APA in which it sits. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole.") (cleaned up). Defendants' contrary position is effectively that USPS gets to take a red pen to FOIA (and the other statutes listed in § 410(b) to which it is obligated) and cross out anything that references or relies on other parts of the APA. Accordingly, for example, USPS could publish a schedule of FOIA fees or a regulation about expedited processing of FOIA requests without "notice and receipt of public comment" (*compare* 5 U.S.C. § 552(a)(4)(A)(i), (6)(E)(i), *with* 5 U.S.C. § 553, 706(2)(D)), and could exempt itself from arbitrary and capricious review of improper withholding of records (*compare* 5 U.S.C. § 552(a)(4)(F)(i), *with* 5 U.S.C. 706(2)(A)). Similarly, in fulfilling its Privacy Act obligations to "promulgate rules, in accordance with the requirements (including general notice) of section 553 of this title," 5 U.S.C. § 552a(f), USPS could strike all the words after "promulgate rules," not comply with APA section 553 in promulgating those rules, and be entirely insulated from any judicial review under section 706(2)(D). Indeed, USPS's position seems to be that it can interpret FOIA however it wants with no judicial review available if that review would in any way reference or rely on other sections of the APA (which, to be sure, is a problem AFFT seeks to rectify with this lawsuit). That view is entirely foreclosed by D.C. Circuit precedent which requires the interpretation of FOIA be uniform governmentwide. *Tax Analysts v. IRS*, 117 F.3d 607, 613 (D.C. Cir. 1997) ("It is true that we will not defer to an agency's

---

*Tchrs. Ass'n v. USPS*, 593 F.2d 1360, 1365 n.21 (D.C. Cir. 1979) ("USPS finds further support in the numerous points in the Act at which Congress expressly made portions of the APA applicable, an effort that would have been superfluous if the APA applied in any event.").

view of FOIA's meaning. No one federal agency administers FOIA. The meaning of FOIA should be the same no matter which agency is asked to produce its records.") (cleaned up).

**Fourth**, Defendants' position that USPS is insulated from all APA review in the FOIA context and otherwise is incompatible with the reverse FOIA cause of action—in which "[a] person whose information is about to be disclosed pursuant to a FOIA request may file a 'reverse-FOIA action' and seek to enjoin the Government from disclosing it." *Canadian Com. Corp. v. Dep't Air Force*, 514 F.3d 37, 39 (D.C. Cir. 2008). Reverse FOIA does not arise from the FOIA itself but rather from *other* sections of the APA. *See ERG Transit Sys. (USA), Inc. v. Wash. Metro. Area Transit Auth.*, 593 F. Supp. 2d 249, 252 (D.D.C. 2009) (Collyer, J.) ("Reverse FOIA cases are deemed informal agency adjudications, and thus are reviewable under Section 706 of the APA.") (cleaned up). Defendants' position that USPS is not subject to APA review, taken to its logical end, is apparently that USPS is exempt from the reverse FOIA cause of action and so it may disclose anyone's information to anybody in response to a FOIA request without judicial review or remedy. That cannot be the law.

AFFT is entitled to judgment that Defendants are subject to APA review when carrying out USPS's governmental duties, such as complying with FOIA.

## B.    Defendants Violated the Administrative Procedure Act

The APA requires a court to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). USPS's FOIA regulations purport to vest all decisionmaking authority for administrative appeals of FOIA matters in the USPS "General Counsel or his or her designee." 39 C.F.R. § 265.8(b) ("The decision of the General Counsel or his or her designee constitutes the final decision of the Postal Service on the issue being appealed."). But FOIA gives a "right" to any person who receives an "adverse determination" of a FOIA request in the first instance to "appeal to the head of the

agency." 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa). The head of USPS is the postmaster general. 39 U.S.C. § 203; *see also Williams v. Brennan*, 285 F. Supp. 3d 1, 7 (D.D.C. 2017) (Moss, J.) (referring to the postmaster general as "the head of the Postal Service"). And the USPS general counsel is appointed by, subordinate to, and serves at the pleasure of the postmaster general. 39 U.S.C. § 204. Because USPS's regulations purport to give all decisionmaking authority, and in a totally unreviewable way, to a person(s) who is not the postmaster general, they are in violation of FOIA and have hampered AFFT's "right" to obtain adjudication of its administrative appeal by the postmaster general. 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa). The regulations accordingly violate the APA because they are arbitrary and capricious, an abuse of discretion, otherwise not in accordance with FOIA, and are in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. *E.g., Hornbeck Offshore Transp., LLC v. U.S. Coast Guard*, 424 F. Supp. 2d 37, 52 (Kollar-Kotelly, J.) ("The Agency's failure to recognize the plain language and meaning of 46 U.S.C. § 3703a(e) ensured that it gave ENERGY 8701 an incorrect phase-out date of January 1, 2005. Such an action was arbitrary, capricious, and otherwise not in accordance with the law, in violation of the APA."); *Amalgamated Transit Union v. Skinner*, 894 F.2d 1362, 1364 (D.C. Cir. 1990) ("Where Congress prescribes the form in which an agency may exercise its authority, however, we cannot elevate the goals of an agency's action, however reasonable, over that prescribed form.").

Defendants first contend that FOIA doesn't actually require that administrative appeals be adjudicated by the head of the agency, only that they have to be "direct[ed]" to the head of the agency. Defs.' Mem. Law at 20. That, of course, makes no sense—FOIA does not contain the word "directed," and the relevant statutory provision establishes a right "to appeal to the head of the agency." 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa). Where an agency requires an appeal be directed is of no

moment; what matters is who ultimately decides.[12] *See Kay v. FCC*, 884 F. Supp. 1, 2 (D.D.C. 1995)

(Richey, J.)

> FCC's . . . letter specified that the Plaintiff could file an application for review with the FCC's General Counsel, and further expressly identified the regulation governing submission of such applications, 47 C.F.R. § 0.461(i). Under that provision, while the General Counsel exercises certain advisory and administrative functions with respect to the review process, including acting as recipient of the agency's FOIA administrative appeals, **the substantive decision remains in the hands of the Commission**.

*Id.* at 2 (emphasis added); *see also id.* n.2 ("Thus, there is little question that, under the relevant

regulations set forth in the FCC's response letter, the Commission itself exercises the ultimate

decisionmaking authority on administrative appeal."). Indeed, the D.C. Circuit itself has made clear

that the head of the agency is the proper decisionmaker of FOIA administrative appeals. *Oglesby v.*

*U.S. Dep't Army*, 920 F.2d 57, 71 (D.C. Cir. 1990) ("**Once the head of the agency has made a**

**determination on appeal** or the twenty-day statutory deadline for the appeal decision has passed,

he may bring suit in federal district court pursuant to 5 U.S.C. § 552(a)(4)(B).") (emphasis added).

Defendants next contend that USPS has appropriately "delegated to its General Counsel (or

the General Counsel's designee) the responsibility for adjudicating appeals." Defs.' Mem. Law at 21.

Defendants rely on *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004) for the

unremarkable proposition that "[w]hen a statute delegates authority to a federal officer or agency,

subdelegation to a subordinate federal officer or agency is presumptively permissible absent

affirmative evidence of contrary congressional intent." Defendants' argument fails for two reasons.

---

[12] Defendants' position that FOIA requires administrative appeals to be directed to the head of the agency is ironic because USPS's FOIA regulations require that FOIA administrative appeals be directed to USPS's general counsel, not the postmaster general. 39 C.F.R. § 265.8(a) ("Requesters may appeal adverse decisions . . . by mail to the General Counsel . . . or by email to *foiaappeal@usps.gov*.").

*First*, USPS's regulations do not show a <u>delegation</u> of authority to USPS's general counsel or otherwise to decide FOIA administrative appeals; instead, by their very words, they show a <u>designation</u>. 39 C.F.R. § 265.8(b)(1) ("The decision of the General Counsel or his or her **designee** constitutes the final decision of the Postal Service on the issue being appealed.") (emphasis added). As applied in this case, the general counsel's "designee," Tram T. Pham, purported to decide AFFT's administrative appeal and make it USPS's "final decision." Castorina Decl. Ex. 1, at ECF pp. 12–16. If USPS's regulations were a delegation, then the postmaster general would retain the authority to make final decisions, to review and revise the decisions of his delegated subordinates, and to supervise and direct those subordinates' actions. *Heggestad v. DOJ*, 182 F. Supp. 2d 1, 9–10 (D.D.C. 2000) (Hogan, J.) (cleaned up) ("As a general proposition of administrative agency law, the head of an administrative agency has the power to review and revise acts of subordinates where, as here, the powers in question are vested in the subordinate under the supervision and direction of the superior or the power to administer is vested in the superior."); *Id.* ("Moreover, it is well established that the head of an agency retains the authority to make final decisions for the agency even if he or she delegates the authority to make these decisions to his or her subordinates. Thus, the fact that a subordinate was authorized to take certain actions does not deprive his superiors of their authority to make final decisions for the agency in certain cases.") (cleaned up). But the postmaster general does not retain that authority under the express terms of USPS's regulation, thus demonstrating that they are a complete designation (indeed, dereliction) that is at odds with FOIA. 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa) (establishing a "right" "to appeal to the head of the agency," not to his designate or anyone else); *Oglesby*, 920 F.2d at 71 ("Once the head of the agency has made a determination on appeal . . . .").

*Second*, even if there was a delegation of authority in USPS's regulations, the structure and history of FOIA show that is impermissible. *Stand Up for California! v. DOI*, 994 F.3d 616, 622 (D.C.

Cir. 2021) ("[A] statute may foreclose redelegation when its text, fairly read in light of the statutory purpose, evinces a congressional desire to render a function or duty exclusive and non-redelegable.") (emphasis added). Congress carefully drafted FOIA by identifying with significant particularity certain individuals who are assigned to carry out specific duties (while leaving other duties unassigned). Congress tasked the "head of the agency" with doing five things. 5 U.S.C. § 552(a)(6)(A)(i)(III) (adjudicating administrative appeals); 552(g) (preparing and making available an electronic "reference material or guide for requesting records or information from the agency"); 552(j)(2)(B) (becoming "appropriately informed" of agency performance); 552(j)(2)(C) (receiving recommendations about adjustments needed to improve implementation); 552(j)(2)(D) (being the conduit for a report to the Attorney General on agency performance). It required that each agency "designate a Chief FOIA Officer who shall be a senior official of such agency (at the Assistant Secretary or equivalent level)" and gave that senior official significant tasks to carry out (including keeping the "head of the agency" informed about agency performance, recommending adjustments to improve implementation to the "head of the agency," and transmitting a report to the Attorney General "through the head of the agency." 5 U.S.C. § 552(j)–(l). It even established "FOIA Public Liaisons" in each agency and specified their particular duties and reporting structure. *Id.* § 552(a)(6)(A)(i)(II), (a)(6)(B)(ii), (l). By Defendants' theory, any or all of these very specific statutory commands can be ignored and the relevant duties delegated and sub-delegated (really, in their view, designated and sub-designated) ad infinitum so that the "head of the agency," the Chief FOIA Officer, and the FOIA Public Liaisons actually need to do nothing at all. That is manifestly contrary to Congressional intent.[13]

---

[13] This issue should be colored by the fact that the deliberative process privilege may only be delegated by the head of an agency to a "high level subordinate/delegate, and only so long as the delegation is accompanied by guidelines on the use of the privilege." *Martin v. Albany Bus. J., Inc.*, 780 F. Supp. 927, 934 (N.D.N.Y. 1992). "In other words, limiting the agency head's ability to randomly

This issue is particularly acute in the context of FOIA administrative appeals. The relevant legislative history shows that Congress was aware of a problem with the initial iteration of FOIA because it did not specify that administrative appeals were required or how they had to work. The relevant House Report first broadly laid out the problem, explaining that the federal bureaucracy was woefully noncompliant with FOIA and only when political appointees or other relevant oversight became involved did anything change:

> The efficient operation of the [FOIA] has been hindered by 5 years of foot-dragging by the Federal bureaucracy. The widespread reluctance of the bureaucracy to honor the public's legal right to know has been obvious in parts of two administrations. This reluctance has been overcome in a few agencies by **continued pressure from appointed officials at the policymaking level** and in some other agencies through public hearings and other oversight activities by the Congress."

Cong. Rep. 92-1419 (Sept. 20, 1972), at 8–9 (emphasis added). The Report continued, in a section called "Secrecy Through Delay and Obfuscation," to specifically explain:

> Very few of the agencies make an effort to inform requesters that they can appeal the initial decision . . . . [I]n most agencies the regulations state that an initial refusal may be appealed **to a top official** in the agency, but the agencies seldom make a point of its appellate procedure in the letters denying the initial request.

*Id.* at 22 (emphasis added). Quoting that section of the House Report, the relevant Senate Report put a fine point on it and explained that it added to the draft bill "the requirement that upon an initial denial of a request for information the agency shall notify the person making the request of the right of such person to appeal to the head of the agency any adverse determination." S. Rep. No.

---

delegate authority ensures that the purpose behind the formal invocation requirement is not eviscerated by delegation." *Id.* ("The requirement that delegation be restricted to high-level subordinates ensures that the delegatee official has sufficient expertise in the agency's operations and functions" to be able to render a well-informed decision on whether to invoke the privilege in a given case."); *accord Landry v. FDIC*, 204 F.3d 1125, 1136 (D.C. Cir. 2000) (individual invoking deliberative process privilege must be of "sufficient rank to achieve the necessary deliberateness"). And recall that the general counsel's sub-delegee in this case inappropriately invoked this very privilege. *See* Section III.E.2, *supra*.

93-854 (May 16, 1974), at 180 (cleaned up).[14] That part of the draft became the final text of the

enacted FOIA amendments of 1974. *See* S. Rep. No. 93-854 (May 16, 1974), at 187, 190 (proposed

amendment); 5 U.S.C. § 552(a)(6)(A)(i) (1974) (reflecting adoption of the 1974 amendment); 5

U.S.C. § 552(a)(6)(A)(i)(III)(aa) (2016) (current statute). To avoid the manifest problems of leaving

FOIA appeals in the hands of unaccountable bureaucrats, Congress took those appeals away from

them and vested them in the political head(s) of each agency. 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa). Any

return of these appeals to the unelected bureaucracy, as here, violates Congressional intent and thus

the APA. AFFT is entitled to judgment that USPS's regulations, which purport to designate final

and unreviewable authority in career bureaucrats to decide FOIA appeals, violate the APA and shall

be set aside.[15] And Defendants' request for judgment on the pleadings must be denied.

---

[14] Other subsequent parts of the legislative history support this view. For example, in debate over the bill, Senator Cranston explained: "Our Government and way of life thrive on free and open debate. The free flow of information is vital to sustenance of our freedoms. The control of access to information should not left solely in the hands of bureaucrats whose function it is to deny information." 120 Cong. Rec. S9310-9343 at 302 (1974) (statement of Sen. Cranston). Senator Chiles said: The past years' experience with the act has indicated that the fears of bureaucratic obstruction were in large part well founded and that but for firm guidance by the courts in the more than 200 cases litigation under the act, the public's right to know would still be little more than a wish. The bill before us today is the result of extensive hearings which pointed out a number of procedural shortcomings in administration of [FOIA]." 120 Cong. Rec. S9310-9343 at 318–19 (1974) (statement of Sen. Chiles). And Representative Thompson described the bill as: "This bill to make the [FOIA] a more viable weapon in the fight against secrecy excesses of the entrenched Government bureaucracy is an important start in that direction." Cong. Rec. 120 H1787-H1803 at 268 (1974) (statement of Rep. Thompson).

[15] AFFT is aware of this Court's unreported opinion in *Lukas v. FCC*, No. 19-0464, 2020 WL 1065700 (D.D.C. Mar. 4, 2020) (Lamberth, J.), which held that it would "defy logic to say that the head of the agency may not delegate the authority to handle appeals." *Id.* at *4; *see also* Defs.' Mem. Law at 21 (relying on *Lukas*). Very respectfully, this opinion is incorrect for the reasons of FOIA history and structure discussed in this brief that do not appear to have been raised in *Lukas*. Further, because "the substantive decision [on FOIA administrative appeals] remains in the hands of the Commission," *Kay*, 884 F. Supp. at 2, there was and is no delegation issue with respect to the FCC. *And see* 47 C.F.R. § 0.461(k)(1)(i) ("**The Commission** will make every effort to act on an application for review of an request for inspection of records within twenty business days after it is filed.") (emphasis added).

### III.     USPS's FOIA Regulations Are *Ultra Vires*

Defendants next seek to avoid *ultra vires* review of USPS's regulations, claiming that AFFT

cannot succeed in view of the familiar three-prong test recently discussed in *Changji Esquel Textile Co.*

*Ltd. v. Raimundo*, No. 21-5219, __ F.4th __, 2022 WL 2813243, at *3 (D.C. Cir. July 19, 2022). Defs.'

Mem. Law at 18. Defendants' argument rests most significantly on the first prong and their view

that because APA review of USPS actions is "express[ly]" precluded by 39 U.S.C. § 410(a), *ultra vires*

review is likewise precluded. *Id.* That argument fails because as explained above USPS is subject to

APA review when it is discharging its governmental duties. *See* Section II.A, *supra*. But it is also

wrong because the D.C. Circuit has expressly held that USPS is subject to *ultra vires* review

notwithstanding any APA preclusion of review conferred by § 410(a). *N. Air Cargo v. USPS*, 674

F.3d 852, 858 (D.C. Cir. 2012) ("We should note, preliminarily, that the Postal Service is exempt

from review under the Administrative Procedure Act, but its actions are reviewable to determine

whether it has acted in excess of its statutory authority."); *see also Aid Ass'n Lutherans v. USPS*, 321

F.3d. 1166, 1172 (D.C. Cir. 2003)

> The Postal Service first contends that 39 U.S.C. § 410(a) precludes
> judicial review here, because it explicitly exempts the Postal Service
> from the judicial review provisions of the APA . . . . The Postal Service
> claims that the well-established presumption favoring judicial review
> of administrative action is overcome here by the explicit terms of
> § 410(a). We disagree. The Postal Service assumes that any right that
> appellees have to judicial review must arise under the APA. This
> assumption is mistaken.

As to the second prong in *Changji*, Defendants say that AFFT had an "alternative procedure"

to raise its arguments that the postmaster general must adjudicate USPS FOIA appeals. Defs.' Mem.

Law at 19. But nothing in USPS's FOIA regulations permits this; any appeal is limited to a

discussion of USPS's failure to comply with a FOIA request in the first instance. *See generally* 39

C.F.R. § 265.8; § (a)(3) (requiring a "statement of the action, or failure to act, from which the appeal

is taken"). Nor is it plausible that a sub-designate of USPS's general counsel, such as Tram T. Pham

(as here), has any authority (and defendants claim none) to review the legality of USPS's previously promulgated FOIA regulations in the context of FOIA administrative appeals. Perhaps if the postmaster general were adjudicating these appeals this argument could carry some water; but he certainly is not, and Defendants are vigorously resisting any effort to make him be. And that is in part why we are here.

The third prong requires a violation of a "clear and mandatory" statutory command that is "so extreme that one may view it as jurisdictional or nearly so." *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988). As explained above, FOIA is "clear and mandatory" that FOIA administrative appeals be adjudicated by the "head of the agency," and that this language was expressly inserted into an amended FOIA to avoid the problem of unelected bureaucrats continuing to hide information from the public (as experienced here). *See* Section II.B, *supra*. Any designation of such bureaucrats to render final decisions on FOIA appeals violates the clear and mandatory direction of FOIA to the contrary and is indeed jurisdictional or nearly so. As the D.C. Circuit explained just this year to USPS:

> Finally, as noted above, the Postal Service's characterization of what constitutes a 'clear and mandatory' statutory provision that is reviewable for ultra vires acts is patently at odds with our governing precedent . . . . So long as a statutory provision plainly delineates the outer limits of agency authority and Congress has not expressly precluded judicial review, the provision may be susceptible to review for ultra vires acts that clearly violate its terms.

*Nat'l Ass'n Postal Supervisors v. USPS*, 26 F.4th 960, 971 (D.C. Cir. 2022); *see also id.* at 970 ("Review for ultra vires acts rests on the longstanding principle that if an agency action is unauthorized by the statute under which the agency assumes to act, the agency has violated the law and the courts generally have jurisdiction to grant relief.") (cleaned up); *New York v. Trump*, 490 F. Supp. 3d 225, 243 (D.D.C. 2020) (Sullivan, J.)

> While it is clear that Congress did not intend for the courts to micromanage the operations of the USPS, requiring the USPS to

comply with the statutory requirement that it obtain an advisory opinion from the PRC and provide for notice and comment prior to implementing 'a change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis' is not micro-managing; it is requiring the USPS to act within its statutory authority.

USPS's regulations in contravention of FOIA are *ultra vires*, and AFFT is entitled to judgment setting them aside (and Defendants are not entitled to judgment).

## IV.    AFFT IS ENTITLED TO COUNSEL FEES AND COSTS

FOIA allows this Court to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred . . . [when] the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A complainant has substantially prevailed when it has "obtained relief" either through: (1) "a judicial order, or an enforceable written agreement or consent decree"; or (2) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). As explained in Part I.A, *supra*, the second factor is satisfied because USPS unilaterally changed its position in its summary judgment brief with respect to a combined forty-three redactions and redaction justifications in the mere five records it produced. *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 96 (D.C. Cir. 2020) ("[A] plaintiff can prove fee eligibility by showing that its lawsuit substantially caused the government to release the requested documents before final judgment.") (cleaned up). And the first factor will also be satisfied because the Court should order substantial relief for AFFT in response to this motion—including ordering USPS to conduct new searches and produce unredacted records. *Id.* at 96 (AFFT will be eligible for fees because it will be able to "point[] to a favorable action by [this] court"); *see* Part I, *supra*.

AFFT is also entitled to counsel fees and costs with respect to its APA and *ultra vires* claims pursuant to the Equal Access to Justice Act. 28 U.S.C. § 2412(d)(1)(A)

> a court shall award to a prevailing party . . . fees and other expenses, in addition to any costs awarded . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action,

38

> brought by or against the United States in any court having jurisdiction
> of that action, unless the court finds that the position of the United
> States was substantially justified or that special circumstances make an
> award unjust.

Defendants' positions were not substantially justified that: (1) they are not subject to APA and *ultra vires* review when carrying out governmental functions; and (2) that USPS's regulations vesting the final authority to decide FOIA administrative appeals in a person who is not the head of USPS do not violate the APA and are not *utra vires*. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 967 (D.C. Cir. 2004) ("The government, however, must demonstrate the reasonableness not only of its litigation position, but also of the *agency's* actions . . . .") (emphasis in original); *and see* Parts II–III, *supra*. Nor are there any special circumstances that would make an award to AFFT in this case unjust.

## V.   USPS's WITHHOLDING OF RECORDS FROM AFFT WAS ARBITRARY AND CAPRICIOUS

FOIA requires:

> [w]henever the court orders the production of any agency records improperly withheld from the complainant and assesses against the United States reasonable attorney fees and other litigation costs, and the court additionally issues a written finding that the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding, the Special Counsel shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the officer or employee who was primarily responsible for the withholding.

U.S.C. § 552(a)(4)(F)(i). As set forth above, the Court should order USPS to produce records it improperly withheld from AFFT and assess counsel fees and costs against USPS. *See* Part IV, *supra*. The Court should further find that the circumstances surrounding USPS's withholding of records from AFFT raise serious questions about whether USPS employees acted arbitrarily and capriciously. *E.g.*, *Bean Dredging, LLC v. United States*, 773 F. Supp. 2d 63, 73 (D.D.C. 2011) (Kollar-Kotelly, J.)

An agency's decision may be said to be arbitrary or capricious if any of the following apply: (i) its explanation runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference of view or the product of agency expertise; (ii) the agency entirely failed to consider an important aspect of the problem or issue; (iii) the agency relied on factors which Congress did not intend the agency to consider; or (iv) the decision otherwise constitutes a clear error of judgment.

All four factors are present here. And this Court should not shy away from taking this rare step in view of USPS's avalanche of errors. *See Jud. Watch, Inc. v. DOC*, 34 F. Supp. 2d 28, 43 n.9 (D.D.C. 1998) (Lamberth, J.) ("[T]he Court finds merit in the view that the district courts should be more willing to refer disciplinary matters to the Office of Special Counsel when agencies act arbitrarily and capriciously in defiance of the FOIA."); *but see id.* ("However, the statute clearly envisions (although perhaps does not require) that such a referral come at the end of litigation, when the issues of attorney's fees and costs are normally addressed; for this reason, the Court declines to consider the appropriateness of such a referral at this time.").

\*      \*      \*

For the foregoing reasons AFFT's motion for summary judgment should be granted and Defendants' motion for summary judgment and judgment on the pleadings be denied.

Respectfully submitted,

September 2, 2022

/s/ David R. Dorey
David R. Dorey
DC Attorney I.D. No. 1015586
Email: drdorey@fairnesscenter.org
Tessa E. Shurr (*pro hac vice*)
Pa. Attorney I.D. No. 330733
Email: teshurr@fairnesscenter.org
THE FAIRNESS CENTER
500 North Third Street, Suite 600B
Harrisburg, Pennsylvania 17101
Telephone: 844.293.1001
Facsimile: 717.307.3424
*Attorneys for Plaintiff AFFT*