UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICANS FOR FAIR TREATMENT, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-1183 (RCL) |
| | ) | |
| UNITED STATES POSTAL SERVICE, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK,
Chief, Civil Division

MICHAEL E. YOHANNAN
Pennsylvania Bar No. 307575
Special Assistant United States Attorney
601 D St., N.W.
Washington, D.C.  20530
(202) 815-8969
Michael.Yohannan@usdoj.gov

*Counsel for Defendant*

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................ii
TABLE OF AUTHORITIES……………………………………………………………….iii
INTRODUCTION .......................................................................................................... 1
ARGUMENT .................................................................................................................. 5

I.  The Postal Service Conducted Reasonable Searches........................................ 5

II.  The Postal Service Properly Withheld Information Under Exemption 5 ..................... 12

   A. Attorney-Client Privilege................................................................................ 12
   B. Deliberative Process Privilege ........................................................................ 15
   C. Foreseeable Harm.......................................................................................... 18
   D. Segregability .................................................................................................. 19

III.  The Postal Service and the Claims at Issue are Not Subject to Judicial Review Under the Administrative Procedure Act. .................................................................................. 20

IV.  The Postal Service Did Not Act *Ultra Vires* of its Statutory Authority. ........................ 24

   A. The Postal Service Lawfully Delegated Authority to Decide its FOIA Appeals to its General Counsel................................................................................................ 30

V.  Plaintiff is Not Eligible For Nor Entitled To Attorney Fees and Costs. ........................ 32

CONCLUSION............................................................................................................... 35

# Table of Authorities

**Cases**

*Aid Ass'n for Lutherans v. U.S. Postal Serv.*,
    321 F.3d 1166 (D.C. Cir. 2003) ............................................................................... 21

*Airline Pilots Ass'n, Int'l v. U.S. Postal Serv.*,
    No. 03-2384, 2004 WL 5050900 (D.D.C. June 24, 2004) .................................... 23

*Alexander v. FBI*,
    186 F.R.D. 154 (D.D.C. 1999) ................................................................................ 14

*Am. Oversight v. United States Dep't of Just.*,
    401 F. Supp. 3d 16 (D.D.C. 2019) .......................................................................... 33

*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*,
    541 F. Supp. 2d 95 (D.D.C. 2008) .......................................................................... 22

*Ancient Coin Collectors Guild v. U.S. Dep't of State*,
    641 F.3d 504 (D.C. Cir. 2011) ................................................................................ 12

*Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.*,
    370 F. Supp. 3d 116 (D.D.C. 2019) ........................................................................ 14

*Barnhart v. Sigmon Coal Co.*,
    534 U.S. 438 (2002) ................................................................................................ 26

*Brehm v. Dep't of Defense*,
    593 F. Supp. 2d 49 (D.D.C. 2009) ............................................................................ 7

*BuzzFeed Inc. v. U.S. Dep't of Just.*,
    No. 18-2370, 2022 WL 1101767 (D.D.C. Apr. 13, 2022) ..................................... 34

*Carter Chevrolet Agency, Inc. v. U.S. Postal Serv.*,
    19 F.Supp. 2d 1246 (W.D. Okla. 1997) .................................................................. 22

*Cause of Action Inst. v. Exp.-Imp. Bank of the United States*,
    521 F. Supp. 3d 64 (D.D.C. 2021) .......................................................................... 28

*Changji Esquel Textile Co. v. Raimondo*,
    40 F.4th 716 (D.C. Cir. 2022) ............................................................................ 24-25

*Chelsea Neighborhood Associations v. U.S. Postal Serv.*,
    516 F.2d 378 (2d Cir. 1975) ...................................................................................... 3

*City of Clarksville, Tennessee v. FERC*,
    888 F.3d 477 (D.C. Cir. 2018) ................................................................................ 27

*CNA Fin. Corp. v. Donovan*,
    830 F.2d 1132 (D.C. Cir. 1987) .............................................................................. 24

*Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*,
   161 F. Supp. 3d 120 (D.D.C. 2016) ...................................................... 18

*Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*,
   241 F. Supp. 3d 14 (D.D.C. 2017) ........................................................ 8

*Cotton v. Heyman*,
   63 F.3d 1115 (D.C. Cir. 1995) ............................................................ 34

*Crooker v. Dep't of State*,
    628 F.2d 9 (D.C. Cir. 1980) ............................................................ 8-9

*DiBacco v. U.S. Army*,
   795 F.3d 178–95 (D.C. Cir. 2015) ........................................................ 5

*Dillon v. Dep't of Just.*,
    444 F.Supp. 3d 67 (D.D.C. 2020) ....................................................... 12

*Drake v. FAA*,
   291 F.3d 59 (D.C. Cir. 2002) ............................................................. 31

*Eagle Tr. Fund v. United States Postal Serv.*,
   365 F. Supp. 3d 57–66 (D.D.C. 2019) .................................................... 20

*Elec. Priv. Info. Ctr. v. DOJ*,
   511 F. Supp. 2d 56 (D.D.C. 2007) ....................................................... 15

*Elec. Priv. Info. Ctr. v. IRS*,
   910 F.3d 1232 (D.C. Cir. 2018) ....................................................... 9, 23

*Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*,
   87 F. Supp. 3d 223 (D.D.C. 2015) ....................................................... 33

*Elgabrowny v. CIA*,
   No. 17-0066, 2019 WL 1440345 (D.D.C. Mar. 31, 2019) ................................... 7

*Fed. Express Corp. v. United States Dep't of Com.*,
   39 F.4th 756 (D.C. Cir. 2022) .......................................................... 25

*Ferguson v. United States Postal Serv.*,
   No. 19-1689, 2019 WL 5102929 (D.D.C. Oct. 11, 2019) .................................. 21

*Francis v. United States Dep't of Just.*,
   267 F. Supp. 3d 9 (D.D.C. 2017) ......................................................... 5

*Gamboa v. Exec. Off. for United States Att'ys*,
   65 F. Supp. 3d 157 (D.D.C. 2014) ...................................................... 6-7

*Gov't Accountability Project v. U.S. Dep't of Homeland Sec.*,
   No. 17-2518, 2020 WL 4931932 (D.D.C. June 2, 2020) ................................... 33

*Heckler v. Chaney,*
   470 U.S. 821 (1985) ........................................................................ 31-32

*In re Sealed Case,*
   121 F.3d 729 (D.C. Cir. 1997) ........................................................... 15

*Jama v. Immigr. & Customs Enf't,*
   543 U.S. 335 (2005) ........................................................................... 29

*Jones v. Carson,*
   No. 15-310, 2018 WL 11410070 (D.D.C. May 30, 2018) ................... 28

*Jud. Watch, Inc. v. Dep't of Def.,*
   715 F.3d 937 (D.C. Cir. 2013) ............................................................7

*Jud. Watch, Inc. v. U.S. Dep't of State,*
   557 F. Supp. 3d 52 (D.D.C. 2021) ..................................................... 18

*Jud. Watch, Inc. v. U.S. Dep't of Treasury,*
   802 F. Supp. 2d 185 (D.D.C. 2011) ...................................................14

*Lukas v. FCC,*
   No. 19-465, 2020 WL 1065700 (D.D.C. Mar. 5, 2020) ................. 30-31

*Manning v. DOJ,*
   234 F. Supp. 3d 26 (D.D.C. 2017) ................................................. 7, 8

*Martin v. Albany Bus. J., Inc.,*
   780 F. Supp. 927 (N.D.N.Y. 1992) ................................................... 28

*McGehee v. CIA,*
   697 F.2d 1095 (D.C. Cir. 1983) ................................................... 10-11

*Military Audit Project v. Casey,*
   656 F.2d 724 (D.C. Cir. 1981) .......................................................7, 33

*Mittleman v. Postal Regul. Comm'n,*
   757 F.3d 300 (D.C. Cir. 2014) .................................................... 20, 21

*N. Air Cargo v. United States Postal Sev.,*
   674 F.3d 852 (D.C. Cir. 2012) ........................................................... 21

*Nat'l Ass'n of Crim. Def. Laws. v. DOJ,*
   No. 04-0697, 2006 WL 666938 (D.D.C. Mar. 15, 2006) ................... 10

*Nat'l Ass'n of Postal Supervisors v. United States Postal Serv.,*
   26 F.4th 960 (D.C. Cir. 2022) .................................................... 20, 24

*Nat'l Fed'n of Fed. Emps. v. United States,*
   905 F.2d 400 (D.C. Cir. 1990) ........................................................... 32

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975) ................................................................................ 15, 17

*Air Courier Conf. of Am. v. Am. Postal Workers Union AFL-CIO of the Postal Service."*
498 U.S. 517 (1991) ...................................................................................... 20

*Oglesby v. U.S. Dep't of the Army*,
920 F.2d 57, 68 (D.C. Cir. 1990) ..................................................................... 5

*Passmore v. U.S. Dep't of Justice*,
245 F. Supp. 3d 191 (D.D.C. 2017) ................................................................ 20

*Prop. of the People, Inc. v. Off. of Mgmt. & Budget*,
330 F. Supp. 3d 373 (D.D.C. 2018) ................................................................ 16

*Public Citizen v. Dep't of State*,
276 F.3d 643 (D.C. Cir. 2010) ........................................................................ 11

*Reese Bros. v. U.S. Postal Serv.*,
905 F. Supp. 2d 223 (D.D.C. 2012) ............................................................ 21-22

*Reinhard v. Dep't of Homeland Sec.*,
No. 18-1449, 2019 WL 3037827 (D.D.C. July 11, 2019) ............................... 15, 16

*Reps. Comm. for Freedom of the Press v. U.S. Customs and Border Patrol*,
567 F. Supp. 3d 399 (D.C. Cir. 2017) ............................................................. 18

*Republic of Sudan v. Harrison*,
139 S. Ct. 1048 (2019) ................................................................................... 28

*Reyes v. United States Nat'l Archives & Recs. Admin.*,
356 F. Supp. 3d 155 (D.D.C. 2018) ................................................................ 32

*Robinson v. Shell Oil Co.*,
519 U.S. 337 (1997) ...................................................................................... 26

*Rotkiske v. Klemm*,
140 S. Ct. 355 (2019) .................................................................................... 29

*Russello v. United States*,
464 U.S. 16 (1983) ........................................................................................ 28

*Shapiro v. United States Dep't of Just.*,
40 F.4th 609 (D.C. Cir. 2022) .......................................................................... 5

*Sharp v. Rosa Mexicano, D.C., LLC*,
496 F. Supp. 2d 93 (D.D.C. 2007) ................................................................... 30

*Skull Valley Band of Goshute Indians v. Kempthorne*,
No. 04-339, 2007 WL 915211 (D.D.C. Mar. 26, 2007) ..................................... 15

*Sussman v. U.S. Marshals Serv.,*
  494 F.3d 1106 (D.C. Cir. 2007) .......................................... 20

*Taylor Energy Co. v. U.S. Dep't of Interior,*
  271 F. Supp. 3d 73 (D.D.C. 2017) ...................................... 20

*Concept Automation, Inc. v. U.S. Postal Serv.*
  887 F. Supp. 6 (D.D.C. 1995) ............................................ 22

*Thomas v. Off. of U.S. Att'y for E. Dist. of N.Y.,*
  171 F.R.D. 53 (E.D.N.Y. 1997) .......................................... 12

*Tri-State Hosp. Supply Corp. v. United States,*
  226 F.R.D. 118 (D.D.C. 2005) ............................................. 8

*Trotter v. Ctr. for Medicare and Medicaid Servs.,*
  No. 19-2008, 2022 WL 951377 (D.D.C. Mar. 30, 2022) ............................ 33-35

*Tuchinsky v. Selective Service System,*
  418 F.2d 155 (7th Cir. 1969) ............................................ 10

*ViroPharma Inc. v. Dep't of Health & Hum. Servs.,*
  839 F. Supp. 2d 184 (D.D.C. 2012) ..................................... 15

*Wallick v. Agric. Mktg. Serv.,*
  281 F.Supp. 3d 56 (D.D.C. 2017) ........................................ 12

*Watkins L. & Advoc., PLLC v. United States Dep't of Veterans Affs.,*
  412 F. Supp. 3d 98 (D.D.C. 2019) ....................................... 14

*Wiesner v. FBI,*
  668 F. Supp. 2d 164 (D.D.C. 2009) ..................................... 10

*Wilbur v. Cent. Intelligence Agency,*
  355 F.3d 675 (D.C. Cir. 2004) ......................................... 6-7

*Zelaya v. UNICCO Serv. Co.,*
  682 F.Supp. 2d 28 (D.D.C. 2010) ....................................... 14

**Statutes**

5 U.S.C. § 552 ........................................ 18, 26-27, 31- 33, 35

5 U.S.C. § 701 ........................................................... 31

5 U.S.C. §§ 701-706 ....................................................... 4

39 U.S.C. § 401 .......................................................... 22

39 U.S.C. § 410 .................................................. 20-24, 34

**Regulations**

39 C.F.R. Part 261 ................................................................................... 30

39 C.F.R. § 265(a) ................................................................................. 10

39 C.F.R. § 265.3 .............................................................................11, 30

39 C.F.R. § 265.8 ................................................................................... 28

**Federal Register Notices**

40 Fed. Reg. 7331-32 (Feb. 19, 1975) ...................................................... 30

70 Fed. Reg. 22518 (April 29, 2005) ......................................................... 3

## INTRODUCTION

Defendants United States Postal Service (the "Postal Service" or the "Agency"), Postmaster General Louis DeJoy, and General Counsel Thomas J. Marshall Defendant, the United States Postal Service ("Postal Service"), respectfully submits this memorandum in opposition to Plaintiffs' Cross-Motion for Summary Judgment and Reply in Support of Defendant's Motion for Summary Judgment and Judgment on the Pleadings.

Plaintiff's lawsuit challenges the Postal Service' response to a request made under the Freedom of Information Act ("FOIA") that was partially premised on Plaintiff's misplaced assumption about the records exist at the Postal Service. By letter dated February 7, 2022, Plaintiff submitted a FOIA request for the following:

1. All records concerning the "Privacy Act Statement" contained on Postal Service's webform through which members of the public may order rapid antigen COVID-19 tests (https://special.usps.com/testkits). The records requested include, but are not limited to, those that reflect Postal Service's decision to depart from using its default "Privacy Act notice" that is "for personal information collected online" (which is published at https://about.usps.com/who/legal/privacy-policy/full-privacypolicy.htm) and instead to use a "Privacy Act Statement" that says Postal Service may, without consent, disclose information it obtains about the public through the COVID-19 test webform to "labor organizations as required by applicable law."

2. All records concerning Postal Service's disclosure to any labor organization of information it obtained through the COVID-19 test webform.

*See* Compl.[1] Ex. A. The Postal Service has referred to the numbered requests as "Item 1" and "Item 2." Castorina Decl. ¶ 5[2].

---

[1]     Citations to "Compl." refer to the Complaint, filed on April 28, 2022. ECF No. 1.

[2]     Citations to "Castorina Decl." refer to the Declaration of Janine Castorina, dated July 29, 2022. ECF 14-2.

Plaintiff's FOIA request noted Plaintiff's concern that personal data collected by Postal

Service on the online application form for rapid COVID tests ("COVID-19 webform") was being

disclosed improperly to labor organizations. *See* Compl. Ex A, ECF 1-1 pp. 2-3 ("[Plaintiff] seeks

to learn and educate the public about why Postal Service would provide sensitive information that

is covered by the Privacy Act to labor organizations and the extent to which it has done so.").

Plaintiff's FOIA request and its administrative appeal of the Postal Service's initial response to its

FOIA request note that the Privacy Act Statement on the COVID-19 webform ("Privacy

Statement") was different from a separate notice to the public on the Postal Service's Privacy

Policy Webpage ("Full Privacy Policy").[3] *See* Compl. Ex. A at 2; Ex E at 3; Ex. F at 2-3.  Plaintiff

noted that the Full Privacy Policy webpage does not reference labor organizations as possible

recipients of personal information, unlike the Privacy Statement.  Plaintiff's FOIA request sought

two categories of documents. First, it sought records concerning the Privacy Statement on the

COVID-19 webform including, but not limited to, records that explained a Postal Service

"decision" not to use the language on the Full Privacy Policy webpage in the Privacy Statement

on the COVID-19 test webform.[4]  The second category of information requested was any records

---

[3]    Full   Privacy   Policy   https://about.usps.com/who/legal/privacy-policy/full-privacy-policy.htm (last visited Oct. 26, 2022).

[4]    In its FOIA request and its administrative appeal, Plaintiff identifies the relevant language on the Full Privacy Policy webpage as a paragraph that starts with "Privacy Act notice." To avoid confusion, Defendant will refer to this as the privacy language on the Full Privacy Policy webpage. Defendant does not dispute that the privacy language that Plaintiff compared with the Privacy Statement on the COVID-19 webform begins with the phrase "Privacy Act notice."  As stated in Defendant's opening brief, the Postal Service understands that the "privacy notice" that Plaintiff identified on the Full Privacy Policy webpage was published pursuant to the E-Government Act, unlike the Privacy Statement, which is published pursuant to the Privacy Act. *See* ECF 14-1 at 14, n.1.

concerning Postal Service disclosure of information collected on the COVID-19 webform to labor organizations.  *See* Compl. Ex. A

Plaintiff's FOIA request, and the instant lawsuit both appear to be predicated on its misplaced beliefs that the language on the Full Privacy Policy webpage must be related in some way to the Privacy Statement for the COVID-19 webform. Plaintiffs are also misplaced in their belief that the reference to labor organizations in the Privacy Statement refers to a new legal basis or requirement to share personal data with labor organizations.  In fact, the reference to "labor organizations" on the Privacy Statement for the COVID-19 webform reflects one of the potentially applicable routine uses for the personal information collected on that form and other Postal Service forms.[5]  Plaintiff's insistence that the Privacy Statement on the COVID-19 webform could not have been drafted without consideration of the language on the Full Privacy Policy webpage is mistaken.  Whatever basis Plaintiff might have had for that assumption at one point should have been dispelled months ago since the Postal Service stated clearly in its decision on Plaintiff's administrative FOIA appeal that the language on the Privacy Policy webpage played no role in the drafting of the Privacy Act statement on the COVID-19 webform. *See* Compl. Ex. H, at 4 ("[T]here are no records relating to any alleged decision to depart from the [Full Privacy Policy] language because there was no such decision.").

On April 28, 2022, Plaintiff commenced this action by filing the Complaint.  ECF No. 1. In Counts One and Two, the pleading asserts separate claims under FOIA, alleging that the Postal

---

[5]      In 2005, the Postal Service published a notice pursuant to 5 U.S.C. § 552a(3)(4) that included a list of routine uses that would permit disclosure of information contained in certain Postal Service systems of records.  One of the listed routine uses is: "Disclosure to labor organizations.  As required by applicable law . . . when needed by that organization to perform its duties as the collective bargaining representative of Postal Service employees in a bargaining unit." 70 Fed. Reg. 22518 (Apr. 29, 2005).  This is a "standard routine use" that applies to multiple Postal Service systems of records.  *Id.*

Service wrongfully withheld records and failed to conduct an adequate search in response to Plaintiff's requests.  Compl. ¶¶ 54-69.  In Count Three, Plaintiff alleges that Defendants violated the APA, 5 U.S.C. §§ 701-706, because its regulations "are in excess of statutory authority, or limitations, or short of statutory right to the extent they place the authority to adjudicate FOIA administrative appeals in a person(s) who is not the head of Postal Service."  *Id.* ¶ 73.  Count IV asserts Plaintiff's claim that the Postal Service's regulations are *ultra vires* because they "misconstrue" FOIA to "allow a person(s) who is not the head of [the Postal Service] to adjudicate FOIA appeals," among other reasons.  *Id.* ¶ 78.  Plaintiff seeks declaratory and injunctive relief, as well as an award of attorneys' fees and other litigation costs.  *Id.* at 17-18.  On July 29, 2022, Defendants moved for summary judgment and judgment on the pleadings. ECF No.14.  Plaintiff filed their response and cross motion for summary judgment on September 2, 2022. ECF Nos. 17, 18.

Plaintiff's claims regarding the FOIA search and claimed exemptions are without merit because the Postal Service conducted a reasonable search for information about the Privacy Statement on the COVID-19 webform.  Unsurprisingly, because Plaintiff requested documents related to the development of this legal notice, most responsive documents reflected agency consultations with an attorney who also serves as the Postal Service's Chief Privacy and Records Management Officer ("Privacy Officer").  Defendant has adequately justified its redactions of the responsive documents.  Plaintiff's argument that the Postal Service's FOIA regulation is *ultra vires* is without merit.  They cite no authority in support of their untenable proposition that FOIA requires that the United States Postmaster General himself must decide all Postal Service FOIA appeals and should have personally responded to their FOIA request at issue in this case.

**ARGUMENT**

**I.    The Postal Service Conducted Reasonable Searches.**

Plaintiff asserts that the Postal Service failed to conduct an adequate search for records and makes conclusory assertions that responsive records have been improperly withheld.  ECF 18 ("Pl. Mem.") at 6-13.  Contrary to Plaintiff's assertions, the Postal Service conducted an adequate search for records and produced responsive, non-exempt records.  To demonstrate an adequate search,

> [A]n 'agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested,' which it can do by submitting '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'

*Shapiro v. Dep't of Just.,* 40 F.4th 609, 612–13 (D.C. Cir. 2022) (citing *Reps. Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017)); *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  "In a FOIA case, a district court is not tasked with uncovering 'whether there might exist any other documents possibly responsive to the request,' but instead, asks only whether 'the *search* for [the requested] documents was *adequate*.'" *Id*. at 13 (citing *In re Clinton*, 973 F.3d 106, 116 (D.C. Cir. 2020) (alteration in original) (quoting *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984))).  "An agency's search is judged by the individual circumstances of each case.  The central question is whether the search itself was reasonable, regardless of the results." *Francis v. Dep't of Just.*, 267 F. Supp. 3d 9, 12 (D.D.C. 2017), *aff'd*, No. 17-5233, 2018 WL 3526259 (D.C. Cir. June 20, 2018) (citations omitted); *see also DiBacco v. U.S. Army*, 795 F.3d 178, 194–95 (D.C. Cir. 2015) ("[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request.").  There is no requirement that an agency search every record system. *Oglesby*, 920 F.2d at 68 (citations omitted).

Here, there was a good faith effort to conduct a search of all responsive records where they might reasonably be found. As to item 1 of Plaintiff's FOIA request, the Postal Service's Privacy and Records Management Office ("Privacy Office") searched for responsive records. Castorina Decl. ¶ 16. The Privacy Office drafts all Privacy Act Statements for the Postal Service. *Id*. Each of the three staff members involved in drafting the Privacy Act Statement searched for responsive records in their emails. *Id*. Contrary to Plaintiff's claims, no other individuals were involved in the creation of the statement. Drafts of the Privacy Statement were circulated exclusively via email by the three staff members in the Privacy Office. *Id*. As a result of these searches, the Postal Services identified nine pages of responsive records which were produced with redactions. *Id*.

As to item 2 of Plaintiff's FOIA request, the Postal Service conducted a search in the departments most likely to have records pertaining to disclosures made to labor organizations as required by law and pursuant to the relevant routine use of the Privacy Act. *Id*. ¶¶ 26-27. These offices were the Privacy Office, the Information Technology Department, the Corporate Information Security Department, and the Labor Relations Department. *Id*. ¶ 26. It is highly unlikely that any other department or office would have responsive records as the offices' searched are the only Postal Service offices handling matters related to disclosures to labor organizations of information obtained through the COVID-19 webform. *Id*. ¶ 27. These offices found no responsive records. *Id*.

The Postal Service's search methods were reasonably expected to produce the requested information. Responsive records were found as to item 1 which were produced with appropriate redactions. However, no responsive records were found as to item 2. A "search can be adequate even if an agency does not locate the requested records." *Gamboa v. Exec. Off. for U.S. Att'ys*, 65 F. Supp. 3d 157, 164 (D.D.C. 2014) (cleaned up); *see also Wilbur v. CIA*, 355 F.3d 675, 678

(D.C. Cir. 2004) (an "agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records."); *Brehm v. Dep't of Def.*, 593 F. Supp. 2d 49, 50 (D.D.C. 2009) (finding a search adequate based on, *inter alia*, the declarant's "conclusion that 'it is unlikely that other CIA directorates would possess records responsive to Plaintiff's request'").

Nonetheless, Plaintiff asserts that the searches must be inadequate because Ms. Castorina's declaration failed to provide all the detail it wanted and certain documents it wrongly believes exist.  Pl. Mem. at 11-12; *cf.* Castorina Decl. ¶¶ 13-16, 26-27.  In fact, Ms. Castorina's declaration provides specific, non-conclusory details specifying the search methods used and exemptions applied.[6]  A court can rely on a declaration that is "'relatively detailed and non-conclusory,' and if it describes 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not controverted by either contrary evidence in the record nor by evidence of agency bad faith[.]'"  *Manning v. Dep't of Just.,* 234 F. Supp. 3d 26, 32 (D.D.C. 2017) (citing *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C. Cir. 1991); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *Jud. Watch, Inc. v. Dep't of Def.*, 715 F.3d 937, 940–41 (D.C. Cir. 2013)).  Absent any evidence of bad faith, Ms. Castorina's declaration is entitled to a presumption of good faith.  A plaintiff must rebut that presumption with evidence and cannot do so "through 'purely speculative claims[.]'"  *Elgabrowny v. CIA*, No. 17-0066, 2019 WL 1440345, at *7 (D.D.C. Mar. 31, 2019) (citation omitted).  "The court must give 'substantial weight' to agency declarations

---

[6]     Plaintiff does not dispute that Exemption 6 applies to postal employee email addresses and mobile phone numbers.  Pl. Mem. at 7 n.4.  That issue should be treated as conceded.

absent contrary evidence or evidence of bad faith." *Manning*, 234 F. Supp. 3d at 34 (citing *Jud. Watch*, 715 F.3d at 940–41; *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). Such is the case here. Plaintiff fails to show any evidence of bad faith conduct and, instead, relies on assumptions of missing documents and conclusory statements insinuating that there is such conduct. That is insufficient to overcome the substantial weight that should be accorded to Ms. Castorina's declaration. *See Shapiro,* 40 F.4th at 613 (declarations are accorded "'a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'").

Yet, Plaintiff insists that the Postal Service must have withheld responsive records or otherwise failed to conduct an adequate search because (1) individual emails from email chains were not provided, Pl. Mem. at 8; (2) there could be attachments to those emails, *id.* at 8-9; (3) the Postal Service did not produce records showing "various versions of its COVID test kit webpage and comments thereto," *id*. at 9; and (4) the Postal Service "changed its published Privacy Act Statement," *Id*. at 9-10. Taking each in turn, none bear weight.

First, the Postal Service is not required to provide duplicates of emails. "FOIA does not require agencies to produce duplicate records." *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y,* 241 F. Supp. 3d 14, 22–23 (D.D.C. 2017) (citing *Jett v. FBI*, 139 F. Supp. 3d 352, 365 (D.D.C. 2015) ("The statute is not a discovery tool that requires agencies to produce every conceivable copy in the possession of every governmental custodian."); *Defs. of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 10 (D.D.C. 2004) ("[I]t would be illogical and wasteful to require an agency to produce multiple copies of the exact same document."); *Crooker v. Dep't of State*, 628 F.2d 9, 11 (D.C. Cir. 1980) (*per curiam*) ("Where the records have already been furnished, it is abusive and a dissipation of agency and court resources to make and process a second claim"));

*see, e.g., Shapiro*, 40 F.4th at 614 ("[O]ur FOIA precedent, under which an agency's search need only be 'reasonably expected to produce the information requested,' does not require what the government represents would be a redundant search of individual electronic surveillance files.").

Second, there are no attachments to any of the emails produced.  Emails with attachments would not be duplicative and would have been produced.  There were none.  Plaintiff merely speculates and provides no evidence that the Postal Service would otherwise release emails without their attachments.

Third, Plaintiff claims that there are responsive records because the Postal Service failed to produce records showing "various versions of its COVID test kit webpage and comments thereto." Pl. Mem. at 17.  Plaintiff waived this argument as it failed raise this matter in its administrative appeal and thus, failed to administratively exhaust its claim.  *See, generally,* Compl. Ex. F (FOIA Appeal).  "A FOIA requester must complete the 'statutory administrative appeal process, allowing the agency to complete its disclosure process *before* courts step in." *Elec. Priv. Info. Ctr. v. IRS,* 910 F.3d 1232, 1238 (D.C. Cir. 2018) (citation omitted) (emphasis in original). Plaintiff failed to raise this issue in its administrative appeal, preventing the Postal Service from giving it due consideration under FOIA.  Plaintiff is barred from raising this claim at this juncture.[7]

Plaintiff's claim is also an improper expansion of its FOIA request.  Plaintiff's FOIA request did not include a request for records related to different versions of the Covid-19 test kit

---

[7]     Plaintiff also asserts that the Postal Service did not produce "the final form of its Privacy Act Statement," Pl. Mem. at 9.  Plaintiff fails to acknowledge that it does have a copy.  A copy was available to the public via the COVID-19 test kit webpage.  That site has since been removed due to the suspension of the distribution of free COVID-19 tests through the Postal Service. Regardless, Plaintiff admits that it has a copy in its FOIA request and administrative appeal—the latter quotes the statement in full.  *See generally* Compl. Exs. A, F.  Plaintiff also did not raise this issue in its administrative appeal, failing to exhaust its administrative remedies as required under the FOIA.

webpage and related comments.  Indeed, the request concerns the "Privacy Act Statement" and certain disclosures to labor relations.  *See, generally,* Compl. Ex. A.  Plaintiff cannot now claim that there was an improper withholding of records beyond the scope of its FOIA request.  *See Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just.*, Civ. A. No. 04-0697, 2006 WL 666938, at *2 (D.D.C. Mar. 15, 2006) (concluding that the plaintiff's attempt to change the scope of the request during litigation resulted in a request that was "substantially different from the original one and therefore is beyond the scope of this litigation" and that the plaintiff's recourse was to submit a new request at the administrative level*); see also Wiesner v. FBI*, 668 F. Supp. 2d 164, 171–72 (D.D.C. 2009), *aff'd,* 2010 WL 3734097 (D.C. Cir. Sept. 2010) (concluding that the agency "had no obligation to conduct a new search based on the additional terms submitted by the plaintiff in its April 13, 2006 appeal letter; indeed, 'it would be untenable to hold that, as the FOIA litigation proceeds, a plaintiff, by continually adding new requests . . . could command a priority based on the date of the initial requests.'").

Lastly, Plaintiff argues that the Postal Service did not search for documents related to a change that Plaintiff believes the Postal Service made to the Privacy Statement between the time Plaintiff submitted its FOIA request and its FOIA appeal.  Pl. Mem. at 15.  A FOIA request is always subject to a "cut-off" date. There is no obligation to respond to a FOIA request with agency records generated subsequent to the cut-off date. *Tuchinsky v. Selective Serv. Sys.*, 418 F.2d 155, 158-59 (7th Cir. 1969). Agencies should give requesters notice of the "cut-off" dates they use, particularly the earlier ones. *See McGehee v. CIA*, 697 F.2d 1095, 1100-05 (D.C. Cir. 1983), *vacated on other grounds*, 711 F.2d 1076 (D.C. Cir. 1983). Such notice can be given by promulgating a specific regulation addressing this point.  The Postal Service's cut-off date includes records within the Postal Service's possession as of the date of the search. 39 C.F.R. § 265.4(a). A

date-of-search cut-off ensures that any records will be captured by the agency's search, resulting in the processing of records that would be included through a search conducted with a more restrictive date-of-request cut-off. *See Pub. Citizen v. Dep't of State*, 276 F.3d 643, 644 (D.C. Cir. 2010); *see also McGehee*, 697 F.2d at 1104. Should Plaintiff wish to determine what, if any, records were created after the Postal Service's final response through the end of the appeal period, they may submit another FOIA to do so. The Postal Service has stated that, on or around March 17, 2022, the three members of the Privacy Office who were involved with the creation of the Privacy Statement searched their emails for records related to the creation of the Privacy Statement and released with redactions the only responsive records that they found. Castorina Decl. ¶ 16; Supp. Castorina Decl. ¶ 3.[8]

Alternatively, Plaintiff's request for documents about a revision to the Privacy Act statement is an improper expansion of its FOIA request. The Postal Service was not required to search for a different category of documents based on new requests in Plaintiff's administrative FOIA appeal. *See Wiesner* at 171–72 (concluding that the agency "had no obligation to conduct a new search based on the additional terms submitted by the plaintiff in its April 13, 2006 appeal letter). Moreover, a requester cannot expand the scope of a FOIA request on an administrative appeal. The proper recourse is to submit a new FOIA request for additional records in accordance with the Postal Service's procedural regulations found in 39 C.F.R. § 265.3. Otherwise, a requester's right of access for information outside the scope of the original request is not a proper subject matter for an administrative appeal. *See, e.g., Thomas v. Off. of U.S. Att'y for E. Dist. of N.Y.*, 171 F.R.D. 53, 55 (E.D.N.Y. 1997) (stating that "[s]ince [the requester] did not request the

---

[8]     Citations to "Supp. Castorina Decl." refer to the Supplemental Declaration of Janine Castorina, dated October 26, 2022. ECF 22-1.

documents regarding the clubs and bars in his underlying FOIA application, it was appropriately not addressed on administrative appeal[.]"); *see also Dillon v. Dep't of Just.,* 444 F. Supp. 3d 67, 85 (D.D.C. 2020) (noting that the agency's "duty to 'interpret FOIA requests liberally and reasonably' does not require it to 'extend the meaning of the request to include things' that the requester did not seek."); *Wallick v. Agric. Mktg. Serv.,* 281 F. Supp. 3d 56, 68 (D.D.C. 2017) ("Agencies must interpret FOIA requests liberally and reasonably, but they need not extend the meaning of the request to include things not asked for.").

At best, Plaintiff's arguments speculate that other records must exist without any evidence demonstrating as much. This cannot defeat summary judgment. *See Ancient Coin Collectors Guild v. Dep't of State,* 641 F.3d 504, 514 (D.C. Cir. 2011) (finding that a search yielding "only a few emails . . . is not enough to render its search inadequate, even supposing that any reasonable observer would find this result unexpected"). Under these circumstances, the Postal Service conducted an adequate search for records.

**II.**     The Postal Service Properly Withheld Information Under Exemption 5

    **A.     Attorney-Client Privilege**

Plaintiff's attempts to challenge the Postal Service's invocation of attorney-client privilege are unconvincing. Contrary to Plaintiff's assertions, Defendant never took the position that "any communication between the [Privacy Officer] and colleagues is attorney-client privileged simply because the [Privacy Officer] happens to be an attorney." Pl. Mem. at 26. Rather, the Postal Service clearly states that the Privacy Officer's communications are covered by attorney-client privilege both because the Privacy Officer is an attorney *and* because she and her colleagues who work in the Postal Service Law Department were considering an issue relevant to Postal Service'

compliance with the Privacy Act, specifically the wording of the Privacy Act statement. Castorina Decl. ¶ 20; Supp. Castorina Decl. ¶ 5, Ex. A (Revised *Vaughn* Index).[9]

Plaintiff further asserts that the Postal Service "makes no mention as to the decisionmaking authority of the office or person issuing the disputed records or their place in any chain of command." Pl. Mem. at 26.   That is baseless.  The record is clear that emails on pages USPS_1 through USPS_5 were sent to and from the Privacy Office staff, which is responsible for making legal determinations as to the adequacy of Privacy Act statements, and that the Privacy Office is led by Janine Castorina, the Privacy Officer and a licensed attorney. *See* Castorina Decl. at ¶20; Supp. Castorina Decl. ¶ 2.  Also, despite the information provided on the *Vaughn* Index, Plaintiff claims that it lacks sufficient information about the job titles and responsibilities of the Postal Service employees on the withheld emails. *See* Pl. Mem. at 26.   Again, Plaintiff is wrong.  Ms. Castorina's supplemental declaration provides further information that explains that the information withheld under Exemption 5 based on attorney-client privilege were messages between Ms. Castorina and two other members of the Privacy Office who she supervises. Supp. Castorina Decl. ¶ 2.  Ms. Castorina explains that her office is located in the Postal Service Law Department and is responsible for providing legal advice on compliance with the Privacy Act. *Id.* at ¶ 3.

---

[9]     Citations to "Supp. Castorina Decl." refer to the Supplemental Declaration of Janine Castorina, dated October 26, 2022. ECF 22-1.  As stated in Ms. Castorina's Supplemental Declaration, the Postal Service is no longer withholding certain portions of pages USPS_7 through USPS_9. Supp. Castorina Decl. ¶ 12.  The Postal Service has provided a Revised *Vaughn* Index that reflects the basis of the withholdings in light of its determination that some of the previously withheld information can be produced. *Id.* at Ex. A.  The Postal Service is no longer withholding under Exemption 5 on the basis of attorney-client privilege the emails on pages USPS_7 through USP_9. *Id.*

Plaintiff's third unconvincing argument on this topic is its claim to not know why the Postal Service claims attorney-client privilege over emails between members of the Privacy Office. *See* Pl. Mem. at 28 (claiming that the Postal Service "failed to identify a client" in emails among only Privacy Office staff). "In the FOIA context, the agency is often the 'client' and the agency's lawyers are the 'attorneys' for purposes of the attorney-client privilege." *Watkins L. & Advoc., PLLC v. Dep't of Veterans Affs.,* 412 F. Supp. 3d 98, 112 (D.D.C. 2019). In practice, the privilege is exercised through an agency's employees. "Courts in this Circuit have routinely held that attorney-client privilege applies to employees at varying levels of seniority in an agency or corporation." *Jud. Watch, Inc. v. Dep't of Treasury*, 802 F. Supp. 2d 185, 203 (D.D.C. 2011) (citing *Jud. Watch, Inc. v. Dep't of Army,* 466 F. Supp. 2d 112, 121 (D.D.C. 2006) (stating attorney-client privilege "applies to confidential communications made to an attorney by both high-level agency personnel and lower-echelon employees"). The attorney-client privilege can apply to communications of a non-attorney who is acting as an agent of the attorney. *See Zelaya v. UNICCO Serv. Co.,* 682 F.Supp. 2d 28, 38-39 (D.D.C. 2010) (Lamberth, J.) (stating that attorney-client privilege can attach to subordinates of an attorney such as paralegal or other person "acting as the agent of a duly qualified attorney"). This would include the communications between Ms. Castorina and her staff. *See* Castorina Sup. Decl. ¶4; Ex. A (Revised *Vaughn* Index). Defendant's *Vaughn* Index states that these emails "contain[] the product of confidential legal discussions amongst government counsel and supporting staff" in response to requests to the Privacy Office for legal advice. *Id.* The two members of the Privacy Office staff other than Ms. Castorina on the emails on pages USPS_1 through USPS_5 "acted and communicated at the direction of [Ms. Castorina]…to answer the agency clients' request for legal advice." *Id.*

14

Notably, some of the responsive emails also contain draft Privacy Act Statements. Supp. Castorina Decl. ¶ 6.  Drafts made at the instigation of a client who sought legal advice can be protected.  *See Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.,* 370 F. Supp. 3d 116, 135 (D.D.C. 2019) (concluding that the attorney-client privilege applied to a draft memorandum because it was made at the request of an internal agency client who sought legal advice); *Elec. Priv. Info. Ctr. v. Dep't of Just.,* 511 F. Supp. 2d 56, 70 (D.D.C. 2007) (concluding, in part, that drafts from the Office of Legal Counsel were protected by the attorney-client privilege); *Skull Valley Band of Goshute Indians v. Kempthorne,* No. 04-339, 2007 WL 915211, at *14 n.8 (D.D.C. Mar. 26, 2007) (concluding that the agency properly withheld drafts under the attorney-client privilege); *see also Alexander v. FBI*, 186 F.R.D. 154, 162 (D.D.C. 1999). Here, the draft Privacy Act statements were created in response to a request to the Privacy Office for guidance on Privacy Act compliance.

Accordingly, Defendant properly invoked the attorney-client privilege in this case.

B.   **Deliberative Process Privilege**

Plaintiff cites no authority in support its proposition that the Postal Service cannot assert the deliberative process privilege on email communications about the development of a legal notice to the public such as the Privacy Statement that is the subject of the withheld emails. Deliberative process privilege "is designed to protect the decisionmaking processes of government agencies." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975) (cleaned up).  It allows agencies to "withhold documents and other materials that would reveal advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *In re Sealed Case,* 121 F.3d 729, 737 (D.C. Cir. 1997).

Application of the requirements recognize that "Exemption 5 was intended to protect not simply deliberative *material,* but also the deliberative *process* of agencies."  *ViroPharma Inc. v.*

*Dep't of Health & Hum. Servs*., 839 F. Supp. 2d 184, 193 (D.D.C. 2012) (citing *Montrose*

*Chemical Corp. v. Train,* 491 F.2d 63, 71 (D.C. Cir. 1974)) (emphasis in original).

> Courts "'focus less on the nature of the materials sought and more on the effect of
> the materials' release: the key question in [such] cases [is] whether the disclosure
> of materials would expose an agency's decisionmaking process in such a way as to
> discourage candid discussion within the agency and thereby undermine the
> agency's ability to perform its functions."

*Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 330 F. Supp. 3d 373, 382 (D.D.C. 2018)

(citing *Dudman Commc'ns v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).

Indeed, the privilege "protects not only communications which are themselves deliberative in

nature, but all communications which, if revealed, would expose to public view the deliberative

process of an agency." *Reinhard v. Dep't of Homeland Sec.*, No. 18-1449, 2019 WL 3037827, at

*6 (D.D.C. July 11, 2019) (citing *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir.

1982); *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1539 (D.C. Cir. 1993) (stating that privilege

"serves to protect the deliberative process itself, not merely documents containing deliberative

material")).  Here, the Postal Service represents that there were two deliberative processes at issue.

With regard to pages USPS_1 through USPS_5, the deliberative process was the drafting of a

Privacy Act statement for the COVID-19 test webform. Castorina Sup. Decl. Ex. A (Revised

*Vaughn* Index).  With regard to pages USPS_8 and USPS_9, the deliberative process was

compliance with the Privacy Act and the effect of those compliance efforts on the testing of the

website that hosted the COVID-19 webform. *Id.*

Plaintiff's arguments simply do not factor in the information that the Postal Service

provided on its *Vaughn* Index.  Plaintiff claims that the withheld emails are not predecisional

because the Postal Service failed to identify which of the emails represented a final decision and

which contained factual information versus opinion.  *See* Pl. Mem. at 30.  First, the Postal Service

is not required to identify what final decisions resulted from each draft, but it has adequately described the predecisional and deliberative nature of the emails withheld.  *See, e.g., Reinhard,* 2019 WL 3037827, at *5 (concluding that it was enough for an agency to identify a "decisionmaking process to which the documents contributed, rather than a specific final action" and noting that the D.C. Circuit has repeatedly held that such an explanation suffices) (citations omitted).  Indeed, Defendant's Revised *Vaughn* Index substantially addresses these concerns by providing more information about the emails between the Privacy Officer and her staff.  Those emails, which are bates stamped USPS_1 through USPS_5 "reflect[] discussions amongst staff members of [the Privacy Office] concerning drafts of the Privacy Statement and revisions made thereto." Supp. Castorina Decl. Ex. A (Revised *Vaughn* Index).  Deliberative process privilege may be applied to documents "which reflect the agency's group thinking in the process of working out its policy[.]" *NLRB,* 421 U.S. at 153.  Here, the *Vaughn* Index specifies that the Privacy Statement under discussion "had not yet been finalized" and the webpage where it would be published "was in the testing phase."  *See* Revised *Vaughn* Index.  The withheld portions of emails between the Privacy Officer and Postal Service staff who do not work in her office, pertain to a deliberation about when the COVID-19 webform would be tested before it was approved for use by the public.  *Id.*  As such, they were deliberative in discussing non-final positions on when the webform would be tested and pertained to a decision of when to test the webform. *See* Supp. Castorina Decl. ¶ 7.

Plaintiff also repeats its assertion that the *Vaughn* Index does not identify the decisionmaker and the decision being deliberated in the documents.  Plaintiff is again incorrect.  The Privacy Officer's declarations state clearly that she is the Postal Service employee who oversees and supervises the Privacy Office.  Castorina Decl. ¶ 3; Supp. Castorina Decl. ¶ 2.  In her

role, the Privacy Officer provides advice concerning Privacy Act matters including drafting and approving Privacy Act Statements.  Castorina Sup. Decl. ¶ 2.  In any case, the Postal Service is not required to specify every staff member's position as a categorical rule.  *See Competitive Enter.,* 161 F. Supp. 3d 120, 131 (D.D.C. 2016) (rejecting the plaintiff's argument that the agency was required "to specify the individuals who 'received, reviewed or authored' the drafts and [] to explain 'what their respective positions are in the decisional hierarchy'" because there "is no categorical rule that an agency must provide such detail to assert the deliberative process privilege."). The Postal Service's justifications for withholding the emails at issue were based on their predecisional nature, specifically because the emails on pages USPS_1 through USPS_5 discussed and circulated a draft legal notice that had not been published yet.  The withheld portions of USPS_7 and USPS_8 pertained to a decision about when to test the COVID-19 webform. Accordingly, the Postal Service properly withheld these documents as deliberative.

### C.    Foreseeable Harm

The Postal Service satisfied FOIA's requirement that, for each withholding, it "reasonably foresees that disclosure would harm an interest protected by [the] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I).  An agency's foreseeable harm assessment is appropriate where the agency states that disclosure would cause officials to "believe that every edit or comment they propose in a draft document may be released to the public, thus curbing the candid exchange of ideas between Department officials and curtailing creativity in the compilation and explanation of Department policy."). *Jud. Watch, Inc. v. Dep't of State*, 557 F. Supp. 3d 52, 62 (D.D.C. 2021).  Moreover, an agency establishes the foreseeable harm of disclosure when it articulates a "fairly non-generalized description of the risk" that the disclosure that disclosure of attorney-client communications would undermine agency officials' ability to confidentially consult with agency attorneys. *Reps. Comm.,* 567 F. Supp. 3d at 120.  The Postal Service's declarations explain that, with respect to each

withholding, it was reasonably foreseeable that disclosure of the withheld information would harm an interest protected by the exemption relied upon.

The Postal Service represents that disclosure of the withheld information would hamper the day-to-day discussions amongst staff who could not freely share their ideas and proposals as they would be inhibited from effectively communicating with one another.  Castorina Decl. ¶ 19; Supp. Castorina. Decl. ¶ 8.  Disclosing internal agency deliberations would lower the overall quality of the Postal Service's decision-making process by exposing preliminary discussions and drafts.  *Id* at ¶ 9 & Ex. A (Revised *Vaughn* Index).  Disclosure would further chill communications amongst employees and officials because their discussions about draft materials would be released. Supp. Castorina. Decl. ¶ 8.  They would not candidly speak their minds and express their opinions and thoughts because disclosing draft materials could reveal changes in position or statements that are not public.  *Id* at ¶ 9.  This would harm the Postal Service's ability to elicit full, honest, and objective insight, comment and advice from its employees. Supp. Castorina. Decl. ¶ 8.

Moreover, the Postal Service represents that disclosure would also confuse the public because draft versions of the Privacy Act Statement do not reflect the Privacy Act Statement that was published on the COVID-19 webform.  Castorina Decl. ¶ 19; Supp. Castorina. Decl. Ex. A. (Revised *Vaughn* Index).  Accordingly, the Postal Service satisfied the foreseeable harm requirement regarding these withholdings concerning drafts of the Privacy Act Statement.

### D.    Segregability

Plaintiff contends that the segregability portion of the Postal Service's declaration "relies only on the boilerplate legal conclusion." Pl. Mem. at 32.  Plaintiff's argument lacks merit.  The Postal Service represents that it conducted a line-by-line review of the responsive records and released any reasonably segregable non-exempt information including portions of two emails that were previously withheld. *See* Supp. Castorina. Decl. ¶¶11-12. The Court has accepted similar

language as sufficient in concluding that an agency has met its segregability obligation. *See*, *e.g.*, *Taylor Energy Co. v. Dep't of Interior*, 271 F. Supp. 3d 73, 97 (D.D.C. 2017) (agencies "met their segregability burdens by submitting attestations of their respective declarants that documents were reviewed 'on a page by page, line-by-line basis' and no further segregation would be possible."); *Passmore v. Dep't of Just.*, 245 F. Supp. 3d 191, 205 (D.D.C. 2017) (concluding that agency released all reasonably segregable information based on the Court's review of the record and declarant's representations that " '[a]ll documents responsive to plaintiff's [FOIA] request were processed to achieve maximum disclosure'" and "'[n]o reasonable segregable, nonexempt portions [of these records] have been withheld from plaintiff' "). Moreover, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). The Postal Service is entitled to such a presumption based on its line-by-line review and its efforts to date to release reasonably segregable material.

III. **The Postal Service and the Claims at Issue are Not Subject to Judicial Review Under the Administrative Procedure Act.**

Plaintiff's effort to apply the APA to this FOIA matter rests on an improper limitation of the scope of 39 U.S.C. § 410(a) ("Section 410(a)") and an incorrect interpretation of the phrase "powers of the Postal Service." Pl. Mem. at 26. Contrary to Plaintiff's misinformed assertions, the APA does not apply to the Postal Service. Congress expressly exempted the Postal Service from specific provisions of the APA including Chapter 5 (Administrative Procedure) and Chapter 7 (Judicial Review). 39 U.S.C. § 410(c)(2). Chapter 7 of title 5 of the U.S. Code is the part of the APA that provides a cause of action for judicial review and where Congress has declared that the judicial review chapter "shall not apply," it has precluded a court from examining an

entity's actions under the APA. *Mittleman v. Postal Regul. Comm'n*, 757 F.3d 300, 304 (D.C. Cir. 2014).

Here, the Supreme Court stated: "There is no ambiguity in the text of 39 U.S. § 410(a). That section of the Postal Reorganization Act provides that the judicial review provisions of the [APA] do not apply to the exercise of the powers of the Postal Service." *Air Courier Conf. of Am. v. Am. Postal Workers Union*, 498 U.S. 517, 531 (1991) (concurring, Stevens, Marshall, Blackmun). The D.C. Circuit has repeatedly stated that "the actions of the Postal Service are expressly 'exempt from review under the Administrative Procedure Act (APA).'" *Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 26 F.4th 960, 970 (D.C. Cir. 2022); *see also Eagle Tr. Fund v. U.S. Postal Serv.*, 365 F. Supp. 3d 57, 65–66 (D.D.C. 2019), *aff'd*, 811 F. App'x 669 (D.C. Cir. 2020) ("[T]he D.C. Circuit has long considered that statutory provision to be a broad exemption that shields Postal Service determinations from the auspices of APA review[.]"); *Mittleman*, 757 F.3d at 305 ("[T]he Postal Service is exempt from review under the Administrative Procedure Act. . . .Other circuits have reached similar conclusions regarding the effect of § 410(a)."); *N. Air Cargo v. U.S. Postal Sev.*, 674 F.3d 852, 858 (D.C. Cir. 2012) (stating that the Postal Service is exempt from review under the APA); *Aid Ass'n for Lutherans v. U.S. Postal Serv.,* 321 F.3d 1166, 1172 (D.C. Cir. 2003) ("There is no doubt that § 410(a) exempts the Postal Service from the strictures of the APA in cases involving the APA's procedural requirements."); *Ferguson v. U.S. Postal Serv.,* No. 19-1689, 2019 WL 5102929, at *3 (D.D.C. October 11, 2019) ("[T]he Postal Reorganization Act of 1970 exempts the Postal Service from APA review[.]"); *Reese Bros. v. U.S. Postal Serv.*, 905 F. Supp. 2d 223, 253 (D.D.C. 2012) (collecting cases) ("[T]he Court agrees with the other courts that have concluded that Congress clearly intended to preclude

arbitrary and capricious judicial review of the substance of Postal Service regulations, policies and procedures.")

There is nothing to suggest that the phrase "powers of the Postal Service" in Section 410(a) is somehow limited to the so-called business-like aspects of the Postal Service, and in fact, it is not. *See, e.g., Am. Postal Workers Union v. U.S. Postal Serv.,* 541 F. Supp. 2d 95, 96 (D.D.C. 2008) (concluding that the Federal Advisory Committee Act did not apply to the Postal Service under Section 410(a) and rejecting plaintiff's argument that the Act applied because it did not deal with "public or Federal contracts, property, works, officers, employees, budgets, or funds."). Moreover, Congress delineated what powers the Postal Service possesses.  39 U.S.C. § 401, *et seq*. In relevant part, the Postal Service has the power to "to adopt, amend, and repeal such rules and regulations, not inconsistent with this title, as may be necessary in the execution of its functions under this title and such other functions as may be assigned to the Postal Service under any provisions of law outside of this title [Title 39]."  39 U.S.C. § 410(2).  In establishing the Postal Service, Congress also intended that the Postal Service could "appoint and promote officers and employees and vest them with such powers and duties as it deems necessary."  H.R. Rep. 91-1104 (1970).

Nonetheless, Plaintiff cites to various cases to support its contention that Section 410(a) is limited to business related matters.  Those cases are inapplicable and run contrary to Plaintiff's position that the APA only applies to business matters.  For instance, Plaintiff cites to *Concept Automation, Inc. v. U.S. Postal Serv.,* 887 F. Supp. 6, 9 (D.D.C. 1995), but that case had little to no discussion concerning 39 U.S.C. § 410(a) and focused specifically on judicial review of procurement matters.  Plaintiff also relies on two cases outside of this jurisdiction to support its arguments but those cases are neither binding nor apposite. For instance, Plaintiff cites to *Carter*

*Chevrolet Agency, Inc. v. U.S. Postal Serv.,* 19 F.Supp. 2d 1246, 1248 (W.D. Okla. 1997), but this case concerned APA review in the context of whether the Postal Service violated its own procurement regulations.  Plaintiff further cites to *Chelsea Neighborhood Ass'ns v. U.S. Postal Service,* 516 F.2d 378, 384 (2d Cir. 1975), which is also distinguishable as it concerns the National Environmental Policy Act of 1969 which, unlike FOIA, "does not require specific results in particular situations. It merely establishes a 'reordering of priorities, so that environmental costs and benefits will assume their proper place along with other considerations.'"  Plaintiff also conflates the lack of APA review with total lack of accountability or judicial review.  That is not the case.  As discussed below, non-APA or *ultra vires* review is available in certain instances, and FOIA itself provides mechanisms to prevent improper withholdings of information.[10]

Plaintiff goes to extremes in its attempt to show that APA review is available.  It hyperbolically asserts that the Postal Service could "disclose anyone's information to anybody in response to a FOIA request without judicial review or remedy," Pl. Mem. at 29, notwithstanding the fact that other federal statutes exist to protect information such as the Privacy Act and FOIA itself has protections for personal information (e.g., Exemption 6) and information obtained from other entities such as private corporations (e.g., Exemption 4 and Exemption 3, in conjunction with 39 U.S.C. § 410(c)(2)).[11]  Based on well-established precent, the Postal Service is exempt from Chapter 5 (Administrative Procedure) and Chapter 7 (Judicial Review) of the APA in this matter.

---

[10]     Notably, where there is an adequate remedy, APA review is foreclosed in any event.  *See Elec. Priv. Info. Ctr. v. IRS*, 910 F.3d 1232, 1244 (D.C. Cir. 2018) ("'The APA provides a cause of action only if "there is no other adequate remedy in a court.' Applying the 'same genre' standard, we have expressed 'little doubt that FOIA offers an 'adequate remedy' within the meaning of section 704.'").

[11]     Plaintiff also raises the matter of reverse-FOIA claims in support of its position. Pl. Mem. Law at 37.  As of the date of this filing, there are no such claims against the Postal Service.  Such

IV.     **The Postal Service Did Not Act *Ultra Vires* of its Stautory Authority.**

Plaintiff asserts that the Postal Service acted *ultra vires* of its statutory authority under

FOIA by delegating authority to its General Counsel and his designees to make determinations on

FOIA appeals.  Pl. Mem. at 29-30, 38.  However, Plaintiff fails to establish an *ultra vires* claim as

the Postal Service acted well within its authority.

> *Ultra vires* or non-APA review is available in certain circumstances.  Such judicial review:
>
> 'is available when an agency acts *ultra vires*,' or outside of the authority Congress
> granted.  Review for *ultra vires* acts rests on the longstanding principle that if an
> agency action is 'unauthorized by the statute under which [the agency] assumes to
> act,' the agency has 'violate[d] the law' and 'the courts generally have jurisdiction
> to grant relief.'

*Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 26 F.4th 960, 970 (D.C. Cir. 2022) (citations

omitted).  To prevail on an *ultra vires* claim, a plaintiff must establish the following: "'(i) the

statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure

for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers

and contrary to a specific prohibition in the statute that is clear and mandatory.'"  *Changji Esquel*

*Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022) (citation omitted).[12]

---

claims typically arise when "a corporation or other business entity [is] required to report various
and sundry data on its policies, operations, or products– [and] seeks to prevent the agency that
collected the information from revealing it to a third party in response to the latter's FOIA request."
*CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1134 n.1 (D.C. Cir. 1987).  The Postal Service
generally protects commercial information obtained from third parties and such parties may
intervene in a matter where a requester seeks its information.  *See, e.g., Airline Pilots Ass'n, Int'l
v. U.S. Postal Serv.,* No. 03-2384, 2004 WL 5050900, at *1 (D.D.C. June 24, 2004) (intervening
in a FOIA matter in support of the Postal Service's position).  Contrary to Plaintiff's contention,
there are legal mechanisms in place to protect information as much as there are requirements to
disclosure certain information.

[12]     "[U]*ltra vires* review imposes the same demanding standard in all cases, including those
where only APA review is foreclosed*." Fed. Express Corp. v. Dep't of Com.,* 39 F.4th 756, 766
(D.C. Cir. 2022) (citations omitted).

> The last requirement "is especially demanding. 'Only error that is patently a
> misconstruction of the Act, that disregards a specific and unambiguous statutory
> directive, or that violates some specific command of a statute will support relief.'
> In other words, an agency violates a 'clear and mandatory' statutory command only
> when the error is 'so extreme that one may view it as jurisdictional or nearly so.'"

*Id.* (citations omitted); *see also Fed. Express Corp. v. Dep't of Com.,* 39 F.4th 756, 766 (D.C. Cir. 2022) ("To be ruled *ultra vires,* the challenged action must 'contravene[ ] a clear and specific statutory mandate[,]' and the statutory construction adopted by an agency will be held 'impermissible' only if it is 'utterly unreasonable[.]"). Agency action must "go beyond mere legal or factual error." *Fed. Express Corp.,* 39 F.4th at 764 (citing *Oestereich v. Selective Serv. Sys. Loc. Board No. 11*, 393 U.S. 233, 238 (1968)). Accordingly, this judicial review is "confined to 'extreme' agency error where the agency has 'stepped so plainly beyond the bounds of [its statutory authority], or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court[.]" *Id.*

> An *"ultra vires* challenge, in other words, is 'essentially a Hail Mary pass[.]' . . .
> That demanding standard is necessary because *ultra vires* review seeks the
> intervention of an equity court where Congress has not authorized statutory judicial
> review, on the assumption that Congress has not 'barred judicial comparison of
> agency action with plain statutory commands[.]' Because nonstatutory review of
> agency action rests on that narrow presumption, challengers must show more than
> the type of routine error in "statutory interpretation or challenged findings of fact"
> that would apply if Congress had allowed APA review."

*Id.* at 765 (internal citations omitted).

### A.   The Postal Service Acted Comfortably Within Its Delegated Powers.

Regardless of whether Plaintiff meets the first two elements of an *ultra vires* claim, it cannot meet the last. It cannot show that the Postal Service plainly acted in excess of its delegated powers and contrary to a specific prohibition in FOIA that is clear and mandatory. The Postal Service acted within the scope of its statutory authority under FOIA which provides, in relevant part:

Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall—

    (i)    determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of—

        (I)    such determination and the reasons therefor;

        (II)    the right of such person to seek assistance from the FOIA Public Liaison of the agency; and

        (III)    in the case of an adverse determination—

            (aa) the right of such person to appeal to the head of the agency, within a period determined by the head of the agency that is not less than 90 days after the date of such adverse determination; and

            (bb) the right of such person to seek dispute resolution services from the FOIA Public Liaison of the agency or the Office of Government Information Services; and

    (ii)    make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection.

5 U.S.C. § 552(a)(6)(A)(i)-(ii). In interpreting this statutory provision, Supreme Court admonishes that courts must "begin with the language of the statute. The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.' The inquiry ceases 'if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 450 (2002) (citing *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340 (1997); *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 240 (1989)); *see also City of Clarksville v. FERC*, 888 F.3d 477, 482 (D.C. Cir. 2018) ("In addressing a question of statutory interpretation, we begin with the text."). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the

specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341 (citations omitted).

Here, a plain reading of Section 552(a)(6)(A) shows that FOIA is unambiguous in its requirement that an agency make determinations of FOIA appeals. The section is comprised of two separate clauses, each starting with the phrase: "Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall . . ." Clause (i) concerns an agency's initial response to a FOIA request with a notification requirement to inform a requester of the agency's decision and the requester's right to appeal that decision. The only time that the phrase "head of the agency" appears is with respect to clause (i) which requires that requesters be given notification that informs them, in relevant part, that they may "appeal to the head of the agency." Notably, clause (i) only refers to an "agency" making certain decisions including whether to comply with a FOIA request and whether to toll the time to respond. Clause (i) is followed by a semicolon to indicate an additional requirement in clause (ii). Clause (ii) makes no reference to the "head of the agency." Rather, a plain reading of the provision provides that "[e]ach agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall . . . make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal[.]" 5 U.S.C. § 552(a)(6)(A)(ii).

A proper interpretation of FOIA shows that it does not require the "head of the agency" to make determinations on administrative appeals. It simply states that the "agency" shall do so. The term "agency" itself does not include the head of an agency. *See* 5 U.S.C. § 552(f)(1) (stating that "agency" includes "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory

agency[.]").  FOIA in its express terms gives an agency discretion as to whom within the agency can make determinations on administrative appeals.  An agency can only act through its employees.  *See Jones v. Carson*, No. 15-310, 2018 WL 11410070, at *19 (D.D.C. March 30, 2018) ("Agencies, like corporations, can act only through their agents or representatives[.]"); *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 128 (D.D.C. 2005) ("An agency can only act through its employees[.]").  As such, Congress noted that the Postal Service could "appoint and promote officers and employees and best them with such powers and duties as it deems necessary."  H.R. Rep. 91-1104 (1970).  The Postal Service chose to do so through its General Counsel and his designees.  39 C.F.R. § 265.8.

Had Congress intended the "head of the agency" to make all determinations on administrative appeals, it would have expressly done so.  It is a well settled principle of statutory interpretation that "'Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another.'"  *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1058 (2019) (citing *Dep't of Homeland Sec. v. MacLean*, 135 S. Ct. 913, 919 (2015)); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").  Congress intentionally omitted reference to the "head of the agency" in Clause (ii) of Section 552(a)(6)(A).  Importantly, Section 552(a)(6)(A), read as a whole, does not require the head of the agency to make any decisions.  It left to the "agency" to make certain decisions including deciding FOIA administrative appeals.[13]

---

[13]     Plaintiff claims that its position is bolstered by the fact that the deliberative process privilege can only be delegated by the head of the agency. Pl. Mem. at 41, n.13. There is no support

Still, Plaintiff asks this Court to insert a requirement where none exists by citing to inapplicable cases and quoting congressional reports out of context.  None speak to the provision at issue.  "'It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'  To do so 'is not a construction of a statute, but, in effect, an enlargement of it by the court.'"  *Rotkiske v. Klemm*, 140 S. Ct. 355, 360–61 (2019) (citing A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 94 (2012); *Nichols v. United States*, 578 U.S. 104-109 (2016) (quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926))); *see, e.g., Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005) (where the petitioner attempted to import a term from one clause into other clauses within the same statutory provision, the Supreme Court rejected the argument because it would add a limitation that did not exist and noting that the Court would not "lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest.").

Based on the foregoing, Plaintiff's *ultra vires* claim must fail, and judgment granted in favor of the Postal Service.

---

for such a position.  Plaintiff cites to a New York case involving invocation of the informant's privilege in discovery that is wholly inapplicable here.  *See Martin v. Albany Bus. J., Inc.,* 780 F. Supp. 927, 933 (N.D.N.Y. 1992) (discussing the informant's privilege and work product privilege in discovery).  Nor does this jurisdiction make such a requirement in FOIA matters.  Indeed, records between subordinates and superiors can be protected, and agencies can invoke the privilege with respect to records with other agencies.  *See, e.g., Cause of Action Inst. v. Exp.-Imp. Bank of the U.S.*, 521 F. Supp. 3d 64, 82 (D.D.C. 2021) (noting that a document from a subordinate to a superior is likely predecisional and deliberative and concluding that the Export-Import Bank of the United States properly invoked the privilege as to records with the Executive Office of the President of the United States).

### B.      The Postal Service Lawfully Delegated Authority to Decide its FOIA Appeals to its General Counsel

Plaintiff asserts that the Postal Service violated the APA by delegating certain authority to its General Counsel and his designees. Pl. Mot. at 29-30.   That is not the case. Since 1975, Postal Service regulations have provided that the Postal Service General Counsel "decides timely appeals authorized by 39 C.F.R. Parts 261 and 262.  *See* 40 Fed. Reg. 7331-32 (Feb. 19, 1975) (publishing notice of an amended to 39 C.F.R. 265.3 delegating responsibility for deciding FOIA appeals to the General Counsel).  Plaintiff's position that FOIA requires the Postmaster General to spend his time reviewing the hundred, if not thousands of the Postal Services' FOIA appeals, is misplaced and extreme.  There is nothing in FOIA that imposes this burden on a head of any agency.

Moreover, Plaintiff's view that the heads of federal agencies must themselves decide FOIA administrative appeals is unreasonable and has been recognized as such. *See Lukas v. FCC*, No. 19-465, 2020 WL 1065700, at *4 (D.D.C. March 5, 2020), *aff'd,* No. 20-5082, 2020 WL 5904442 (D.C. Cir. Aug. 7, 2020) (Lamberth, J.) ("It is true that the statute gives a FOIA requester the right to appeal an adverse decision "to the head of the agency." 5 U.S.C. § 552(a)(6)(A)(III)(aa). It would, however, defy logic to say that the head of an agency may not delegate the authority to handle appeals. . . . No reasonable person would ever expect the Secretary of State to spend his or her time pouring over FOIA appeals—it is expected that he or she will delegate that authority to another person or group within the State Department.").[14]  For instance, the Postmaster General,

---

[14]      To the extent that Plaintiff argues that the Postal Service requires that appeals be made to the General Counsel instead of the "head of the agency," there is nothing that prohibits the "head of the agency" from delegating that responsibility to the General Counsel.  This is a reasonable interpretation of the relevant FOIA provision.  It is not the kind of "extreme agency error" that an *ultra vires* claim contemplates.  Plaintiff cites to no authority that prohibits the Postal Service from doing so.  Moreover, it is not a claim asserted in the complaint and cannot be asserted now. *See Sharp v. Rosa Mexicano, D.C., LLC,* 496 F. Supp. 2d 93, 97 n.3 (D.D.C. 2007) (stating that a plaintiff may not, through summary judgment briefs, raise new claims).

as the chief executive officer of the Postal Service, is charged with managing and directing the day-to-day operations of the organization and its more than 31,000 post offices, more than 500,000 career employees, and $77 billion budget.  There is no evidence that Congress intended for the Postmaster General to independently review all the Postal Service's FOIA appeals in addition to these responsibilities.  The same reasoning would apply to the head of any agency.  It would not be practical, for instance, for the Attorney General or the Secretary of Defense to review and decide all FOIA appeals.  Nothing in FOIA demonstrates this kind of congressional intent or dictates this result.  Plaintiff's view that the Court erred in *Lukas* by failing to adopt Plaintiff's views on the "history and structure" of the FOIA, is unconvincing.

Even assuming that APA review of this delegation is possible, Plaintiff's claim is barred under 5 U.S.C. § 701(a)(2) ("Section 701(a)(2)").  Section 701(a)(2) precludes judicial review when "agency action is committed to agency discretion by law."  *See Heckler v. Chaney*, 470 U.S. 821, 828 (1985) ("[B]efore any review at all may be had, a party must first clear the hurdle of § 701(a)."); *Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002) ("§ 701(a)(2) bars judicial review of agency action when the matter in dispute has been "committed to agency discretion by law.").

Even if FOIA provides for some criteria in determining the responsibility for making determinations on FOIA appeals, they are not judicially manageable.  "Agency" is defined as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President)."  5 U.S.C. § 552(f)(1).  This does not tell a court to whom within each agency should be delegated the responsibility to make certain FOIA decisions.  Accordingly, the issue not reviewable under the APA.  "As the Supreme Court has explained, if no judicially manageable standards are available for judging how and when an agency should

exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'" *Heckler*, 470 U.S. at 830.  Even where a statute provided more detail, this jurisdiction has found that certain matters must be committed to agency discretion.  *Nat'l Fed'n of Fed. Emps. v. United States*, 905 F.2d 400, 405 (D.C. Cir. 1990) (concluding that the plaintiff's claim under the Base Closure Act was not reviewable under the APA because the relevant provision of the Act did not provide for judicially manageable criteria as it would require the court to make determinations about the nation's military force structure and value of bases within that structure).

Plaintiff's argument that the Postmaster General cannot delegate authority to handle the Postal Service's FOIA appeals is absurd.  The Postal Service's FOIA regulation does not exceed statutory authority.

## V.      Plaintiff is Not Eligible For Nor Entitled To Attorney Fees and Costs.

To be eligible for attorney's fees and costs, a plaintiff must show that it substantially prevailed.  *Reyes v. Nat'l Archives & Recs. Admin.,* 356 F. Supp. 3d 155, 161 (D.D.C. 2018).[15] Under FOIA, "a complainant has substantially prevailed if [it] has obtained relief through either— (I) a judicial order ... or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).  Plaintiff predicates its position on the latter clause.

The Postal Service has not changed its position on all the exempt information on the responsive documents, nor did Plaintiff demonstrate that there was an inadequate search such that there could possibly be other responsive records.  Whether an agency makes a voluntary or unilateral change in position "reflects a [ ] practical consideration regarding whether a FOIA

---

[15]     If necessary, a separate briefing schedule should be issued to address the matter of 5 U.S.C. § 552(a)(4)(F)(i) and attorney's fees and costs.

plaintiff obtained the relief it wanted, in the form of the release of the requested information[.]" *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency,* 87 F. Supp. 3d 223, 230 (D.D.C. 2015).  Plaintiff did not obtain its requested relief from the Court.  It cannot be said that Plaintiff "substantially prevailed."

Even if the Postal Service made a reasoned determination to change course, such a change demonstrates that the Postal Service is acting reasonably to comply with its obligations under FOIA.  Indeed, "'it would work mischief in the future by creating a disincentive for an agency to reappraise its position, and when appropriate, release documents previously withheld. It would be unwise for us to punish flexibility, lest we provide the motivation for intransigence.'"  *Am. Oversight v. Dep't of Just.,* 401 F. Supp. 3d 16, 26 (D.D.C. 2019) (*Military Audit Project v. Casey*, 656 F.2d 724, 754 (D.C. Cir. 1981)).  "[C]ase after case in this jurisdiction has held that the focus should be on whether the agency admits and corrects error, not on the fact that it made a mistake in the first place." *Id*. (collecting cases).

Even if Plaintiff is eligible, it is not entitled to an award of fees and costs.  Courts consider four factors in making an entitlement determination: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents."  *Trotter v. Ctr. for Medicare & Medicaid Servs.*, No. 19-2008, 2022 WL 951377, at *2 (D.D.C. Mar. 30, 2022) (cleaned up).  "'[T]he 'failure to satisfy the fourth element [of an unreasonable withholding] may foreclose a claim for attorney fees' or costs.'"  *Gov't Accountability Project v. Dep't of Homeland Sec.,* Civ. A. No. 17-2518, 2020 WL 4931932, at *2 (D.D.C. June 2, 2020) (citations omitted).

There is no finding by this Court that the Postal Service unreasonably withheld information or records.  In considering the final factor, a court evaluates whether an agency "had a reasonable basis in law" for its position and whether it was "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Trotter*, 2022 WL 951377, at *5 *see also BuzzFeed Inc. v. Dep't of Just.,* No. 18-cv-2370, 2022 WL 1101767, at *5 (D.D.C. Apr. 13, 2022) ("[T]he circuit's test for reasonableness requires consideration of *both*[.]*"*) (emphasis in original).

As discussed, the Postal Service had a reasonable basis in law to withhold postal employee email address and mobile phone numbers pursuant to Exemption 6, which Plaintiff does not dispute, and it reasonably withheld intra-agency communications regarding the development of the Privacy Statement under Exemption 5.  Moreover, it conducted an adequate search for all responsive records where they might reasonably be found by conducting a search of the four offices likely to have records.  Further, there is no evidence whatsoever that the Postal Service acted "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." This is so, even if the Postal Service changed its position as to use of Exemption 3, in conjunction with 39 U.S.C. § 410(c)(2), and its withholding of some emails and the subject lines.  *See, e.g., Cotton v. Heyman*, 63 F.3d 1115, 1123 (D.C. Cir. 1995) (concluding that the agency's interpretation of FOIA was reasonable under the circumstances even though it was erroneous).  It demonstrates that the Postal Service is acting in good faith to comply with its obligations under FOIA.  *See, e.g., Trotter,* 2022 WL 951377, at *6 (concluding that the plaintiff was not entitled to attorney's fees because the agency did not act unreasonably nor was its behavior "'recalcitrant' or 'obdurate' when it was correct on the vast majority of its claims and the legal framework that was

the focus of this litigation.").  Under these circumstances, Plaintiff should not be found eligible

nor entitled to an award of fees and costs.[16]

## <u>CONCLUSION</u>

For all the reasons stated herein, Defendant respectfully requests that summary judgment

be granted in its favor as to all claims against the Postal Service.

Date: October 26, 2022                     Respectfully submitted,

                                           MATTHEW M. GRAVES, D.C. Bar #481052
                                           United States Attorney

                                           BRIAN P. HUDAK,
                                           Chief, Civil Division

                          By:    /s/*Michael E. Yohannan*
                                 MICHAEL E. YOHANNAN
                                 Pennsylvania Bar No. 307575
                                 Special Assistant United States Attorney
                                 601 D Street., N.W.
                                 Washington, D.C.  20530
                                 (202) 815-8969
                                 Michael.Yohannan@usdoj.gov

---

[16] Likewise, Plaintiff failed to establish the prerequisites to assert an argument or claim under 5 U.S.C. § 552(a)(4)(F)(i) absent any court action.