**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMERICANS FOR FAIR TREATMENT,** | |
| *Plaintiff,* | |
| **v.** | Case No. 1:22-cv-1183-RCL |
| **UNITED STATES POSTAL SERVICE**, *et al.*, | |
| *Defendants.* | |

## MEMORANDUM OPINION

This case concerns a Freedom of Information Act ("FOIA") request by plaintiff Americans

for Fair Treatment ("AFFT"), a nonprofit organization focused on public-sector employees and

their rights surrounding union membership, for information from the defendant United States

Postal Service ("USPS" or "the agency") related to the website USPS created for the distribution

of free COVID-19 test kits. Before the Court are USPS's partial motion to dismiss, ECF No. 24,

USPS's motion for summary judgment and for judgment on the pleading, ECF No. 14, and AFFT's

cross-motion for summary judgment, ECF No. 18. For the reasons that follow, the Court will

**GRANT** USPS's partial motion to dismiss, **GRANT** in part and **DENY** in part USPS's motion

for summary judgment, and **GRANT** in part and **DENY WITH PREJUDICE** in part and

**WITHOUT PREJUDICE** in part AFFT's cross-motion for summary judgment.

### I.   BACKGROUND

#### A.  AFFT's FOIA Request

On February 7, 2022, AFFT submitted a FOIA request to USPS for the following:

> 1. All records concerning the "Privacy Act Statement"
>    contained on USPS's webform through which members of
>    the public may order rapid antigen COVID-19 tests
>    (https://special.usps.com/testkits). The records requested

1

include, but are not limited to, those that reflect USPS's decision to depart from using its default "Privacy Act notice" that is "for personal information collected online" (which is published at https://about.usps.com/who/legal/privacy-policy/full-privacypolicy.htm) and instead to use a "Privacy Act Statement" that says USPS may, without consent, disclose information it obtains about the public through the COVID-19 test webform to "labor organizations as required by applicable law."

2. All records concerning USPS's disclosure to any labor organization of information it obtained through the COVID-19 test webform.

FOIA Request at 1, Ex. A to Compl., ECF No. 1-1. USPS refers to the two paragraphs of AFFT's request as "Item #1" and "Item #2," respectively, and the Court will do the same.

USPS originally replied to AFFT's request with a letter calling that request "very broad in scope" and informing AFFT that USPS would "take no further action and incur no chargeable costs to you unless we hear back from you" with a reformulated request, such as one limited "to a specific department or geographic area of interest or to a particular timeframe." Initial FOIA Decision Letter at PDF p. 17, Ex. 4 to First Decl. of Elisabeth Kines Messenger, ECF No. 18-2. AFFT apparently corresponded with a FOIA officer at USPS to narrow the scope of the request in some way, though the record does not indicate how. Decl. of Janine Castorina ("Castorina Decl.") ¶ 6, ECF No. 14-2. USPS then sent a further letter informing AFFT that there were "no responsive records" to either part of the FOIA request. Second FOIA Decision Letter at 1, Ex. D to Compl., ECF No. 1-4. Specifically, the letter stated that Item #1 "appears to compare the Privacy Act Statement, contained on the" test kit website, "with the Postal Service's general Privacy Policy contained on its website," and explained that "Privacy Act Statements and Privacy Policies are separate and distinct with different purposes," and thus "[t]here was no decision to substitute one for the other." *Id.* Furthermore, the letter stated with respect to Item #2 that "Labor Relations was contacted to locate [responsive] records" and that "[a]fter the search was completed it was

determined no records have been released to any labor organizations," and thus "there are no records responsive to your request." *Id.*

AFFT administratively appealed that decision to USPS's General Counsel, who affirmed in part and reversed in part. Gen. Counsel Op., Ex. H to Compl., ECF No. 1-8. The General Counsel held that USPS did not initially conduct an adequate search with respect to Item #1 of AFFT's request, because the "request was not only limited to a purported decision to depart from the Privacy Act Notice language," but that USPS did conduct an adequate search with respect to Item #2. *Id.* at 2–4.

Pursuant to the General Counsel's decision, USPS conducted a search with respect to Item #1 of AFFT's FOIA request. After that search, USPS produced nine pages of responsive records, comprising five email chains with extensive redactions pursuant to FOIA Exemptions 3, 5, and 6. *See* FOIA Response at PDF pp. 17–25, Ex. 1 to Decl. of Janine Castorina, ECF No. 14-2. Specifically, with respect to Exemption 5, which incorporates various privileges, USPS invoked the deliberative process and attorney-client privileges but did not delineate which of the two applied to which Exemption 5 withholdings. *Id.* USPS still did not produce any records in response to Item #2, claiming again that its search turned up no responsive records. Castorina Decl. ¶ 26.

## B. Proceedings in this Court

AFFT filed suit in this Court on April 28, 2022 against USPS, as well as the Postmaster General and USPS General Counsel in their official capacities (together, "USPS"). *See* Compl., ECF No. 1. The complaint asserted four counts: (1) violation of FOIA by withholding responsive, non-exempt records, *id.* ¶¶ 54–60; (2) violation of FOIA by failing to conduct an adequate search, *id.* ¶¶ 61–68; (3) arbitrary and capricious or contrary-to-law action in violation of the APA by

failing to allow an appeal to the head of the agency himself, *id.* ¶¶ 69–75; and (4) *ultra vires* action by failing to allow an appeal to the head of the agency himself, *id.* ¶¶ 76–80.

USPS filed its motion for summary judgment and for judgment on the pleadings on July 29, 2022. ECF No. 14. AFFT filed its combined opposition and cross-motion for summary judgment on September 2, 2022. ECF No. 18. USPS filed its combined reply in support of its own motion and reply to AFFT's motion on October 26, 2022. ECF No. 22. AFFT filed its combined reply in support of its own motion and opposition to USPS's motion on November 18, 2022. ECF No. 26. The motions for summary judgment and for judgment on the pleadings are now ripe for review.

While the summary judgment briefing was still underway, USPS additionally filed a motion to dismiss Counts III and IV of the complaint for lack of subject-matter jurisdiction. ECF No. 24. AFFT filed its opposition to that motion on December 2, 2022, ECF No. 27, and USPS filed its reply on December 22, 2022, ECF No. 29. The partial motion to dismiss is also ripe for review.

## II.   LEGAL STANDARDS

### A. FOIA and its Exemptions

FOIA provides a mechanism for members of the public to obtain government records. The statute "mandates a strong presumption in favor of disclosure," *ACLU v. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (internal quotation marks and citation omitted), and "agencies may withhold only those documents or portions thereof that fall under one of nine delineated statutory exemptions," *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 845 (D.C. Cir. 2010) (citing 5 U.S. C. § 552(b)). Furthermore, under the FOIA Improvement Act, Pub. L. No. 114-185, 130 Stat. 538 (2016), an amendment to the statute that Congress enacted in 2016, the requested agency may only

withhold information if it "reasonably foresees that disclosure would harm an interest protected by" the relevant exemption, 5 U.S.C. § 552(a)(8)(A)(i)(I).

In this case, USPS invoked FOIA Exemptions 3, 5, and 6.

Exemption 3 applies to information "specifically exempted from disclosure by statute (other than [5 U.S.C. § 552b]) if that statute (A)(i) requires that matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the enactment of the OPEN FOIA Act of 2009, specifically cites to" the statutory subsection containing Exemption 3. *Id.* § 552(b)(3).

Exemption 5 covers "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." *Id.* § 552(b)(5).

Exemption 6 extends to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* § 552(b)(6).

**B. Motions to Dismiss for Lack of Subject-Matter Jurisdiction and Article III Standing**

Under Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." A motion styled as one under Rule 12(h)(3) is treated in the same way as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Murray v. Amalgamated Transit Union*, 206 F. Supp. 3d 202, 207 (D.D.C. 2016). A court considering such a motion must take all the well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Doe v. Wash. Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 361 (D.D.C. 2020).

"However, those factual allegations receive closer scrutiny than they do in the Rule 12(b)(6) context," and the court "may look to documents outside of the complaint in order to evaluate whether or not it has jurisdiction to entertain a claim." *Id.* (internal quotation marks and citations omitted).

One way a court might lack subject-matter jurisdiction is if a plaintiff lacks Article III standing. *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). The plaintiff bears the burden of establishing standing by demonstrating (1) a concrete injury in fact that is (2) traceable to the complained-of conduct and (3) redressable by the relief sought. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Furthermore, "[i]n a case of this sort, where the plaintiffs seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing," *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011), and "a threatened injury must be 'certainly impending' or there has to be a 'substantial risk that the harm will occur,'" *Union of Concerned Scientists v. Dep't of Energy*, 998 F.3d 926, 929 (D.C. Cir. 2021) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

### C. Motions for Judgment on the Pleadings

A party to a civil action may also move under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." "A motion pursuant to rule 12(c) is appropriately granted when, at the close of the pleadings, no material issue of fact remains to be resolved, and the movant is clearly entitled to judgment as a matter of law." *McNamara v. Picken*, 866 F. Supp. 2d 10, 14 (D.D.C. 2012) (internal quotation marks, citation, and brackets omitted).

### D. Motions for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court evaluating a summary judgment motion must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Arthridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 629 (D.C. Cir. 2010) (internal quotation marks and citation omitted). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). "An agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of claimed exemptions." *ACLU v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011). "Typically it does so by affidavit," *id.*, and by submitting "*Vaughn* indices describing the withheld documents and explaining why the withheld information fell under the claimed exemptions." *Larson*, 565 F.3d at 862.[1] "Summary judgment is warranted on the basis of agency affidavits [and the *Vaughn* index] when the affidavits [and/or the *Vaughn* index] describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Id.* (internal quotation marks omitted) (quoting *Miller v. Casey*, 730

---

[1] A *Vaughn* index is a table, common in FOIA cases, "describing the withheld documents and explaining why the withheld information fell under the claimed exemptions." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)).

F.2d 773, 776 (D.C. Cir. 1984)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. C.I.A.*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (citations omitted).

However, "[b]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). The Court must also determine whether the agency has shown "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). If the Court finds it necessary "in order to make a responsible de novo determination on the claims of exemption," it may, in its discretion, conduct *in camera* review of the records at issue. *Carter v. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987); *see* 5 U.S.C. § 552(a)(4)(B).

### III.   DISCUSSION

The Court will begin with USPS's motion to dismiss Counts III and IV of the complaint, concluding that AFFT lacks standing to pursue those claims, and thus the Court lacks subject-matter jurisdiction to entertain them. The Court will then turn to the cross-motions for summary judgment, concluding that each party is entitled to summary judgment in part. Specifically, USPS has not adequately explained its search; and while USPS has met its burden of showing that FOIA Exemption 5 applies to some (but not all) of its withholdings, it has not met its burden of showing that disclosure of any of its withholdings would cause reasonably foreseeable harm. Finally, the Court will consider the appropriate remedy given the shortcomings in USPS's explanations of its search and withholdings, concluding that USPS must conduct an additional search and submit a new *Vaughn* index and supporting affidavit adequately explaining its search and withholdings.

### A. The Court Lacks Subject-Matter Jurisdiction over Counts III and IV

USPS moves to dismiss Counts III and IV of the complaint for lack of subject-matter jurisdiction on the ground that AFFT lacks standing to bring those claims. As a part of the same filing as its summary judgment motion, USPS also moves for judgment on the pleadings on those same counts. As to both Counts, AFFT asks for injunctive and declaratory relief because USPS does not procedurally permit an appeal to the head of the agency upon an adverse decision by the agency's general counsel, which it argues the text of FOIA requires. The Court agrees with USPS that AFFT lacks standing to pursue these claims and will thus grant the partial motion to dismiss and deny the motion for judgment on the pleadings as moot.

A plaintiff challenging an agency's procedures for the administrative adjudication of FOIA requests may show that "a threatened injury [is] 'certainly impending' or there [is] a 'substantial risk that the harm will occur,'" *Union of Concerned Scientists*, 998 F.3d at 929 (quoting *Susan B. Anthony List*, 573 U.S. at 158), by showing that it is likely the plaintiff will encounter the allegedly deficient FOIA procedure again in the future. For example, the plaintiff might show that it has another FOIA request pending before the agency, *see Cause of Action Inst. v. Dep't of Just.*, 999 F.3d 696, 704 (D.C. Cir. 2021), or that it frequently files FOIA requests with the agency, *see Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 88, 91, 96 n.53 (D.C. Cir. 1986).

USPS argues that AFFT cannot demonstrate a concrete past, present, or future harm sufficient for purposes of standing stemming from the unavailability of an appeal personally to the head of the agency. *See* Mot. to Dismiss at 4–7, ECF No. 24. AFFT responds that the inability to appeal is a cognizable procedural injury and that it is likely to suffer that injury in the future because it currently has another FOIA request pending before USPS. *See* Pl.'s Opp'n to Mot. to Dismiss at 2–7, ECF No. 27. USPS is correct in substantial part: Although AFFT alleges what

9

could in theory be a cognizable *past harm*, the relief it now seeks on its procedural claims is prospective, and it does not allege a sufficient risk of *future harm* to support standing to seek that relief.

Contrary to USPS's argument, since AFFT alleges a procedural injury, it is under no obligation to demonstrate that the outcome of its FOIA appeal would have been any different *here* had the Postmaster General adjudicated that appeal himself. Once plaintiffs alleging procedural injuries demonstrate that an "agency action threatens their concrete interest," they "need not demonstrate that but for the procedural violation the agency action would have been different." *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014). "Rather, if the plaintiffs can demonstrate a causal relationship between the final agency action and the alleged injuries, the court will assume the causal relationship between the procedural defect and the final agency action." *Id.* (internal quotation marks, citation, and brackets omitted). So, if AFFT wanted to appeal the adverse FOIA decision to the Postmaster General himself and was unable to because of USPS's FOIA regulations, that could in itself be a procedural injury sufficient to support standing if past harm were sufficient.

But AFFT seeks prospective relief on its procedural claims, and that requires a substantial risk of future harm. To be sure, the Circuit has held that the pendency of other FOIA requests before the same agency may entail a sufficiently substantial risk of future harm to supply standing to pursue injunctive relief concerning that agency's FOIA procedures. *See Cause of Action Inst.*, 999 F.3d at 704. But "[s]tanding is assessed 'at the time the action commences.'" *Adv. Mgmt. Tech., Inc. v. FAA*, 211 F.3d 633, 636 (D.C. Cir. 2000) (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000)). Here, AFFT filed its second FOIA request on September 2, 2022—over three months after commencing this action. Third Decl. of

Elisabeth Kines Messenger ¶ 3, ECF No. 27-1. Accordingly, that request is irrelevant for purposes of assessing standing. Moreover, the complaint does not allege any other facts suggesting a likelihood of future harm, such as a pattern of filing frequent FOIA requests with USPS. *Cf. Better Gov't Ass'n*, 780 F.2d at 88, 91, 96 n.53. AFFT therefore has not demonstrated that "a threatened injury [is] 'certainly impending' or there [is] a 'substantial risk that the harm will occur.'" *Union of Concerned Scientists*, 998 F.3d at 929 (quoting *Susan B. Anthony List*, 573 U.S. at 158).

Because AFFT cannot establish a substantial risk of future harm from USPS's FOIA regulations as of the time the action commenced, it lacks standing to pursue its challenges to those regulations, and consequently, the Court lacks subject-matter jurisdiction over those claims. The Court will therefore grant USPS's motion to dismiss Counts III and IV and deny its motion for judgment on the pleadings as moot.

### B. USPS Has Not Adequately Explained its Search

The first issue in the cross-motions for summary judgment for the Court to consider is the adequacy of USPS's searches with respect to both items of AFFT's FOIA request. USPS broadly defends the adequacy of those searches on the ground that the Court must afford its explanation of them a presumption of good faith. Defs.' S.J. Mem. at 5–8, ECF No. 14-1. AFFT responds by poking a number of holes in that explanation, primarily by noting certain details that are lacking and by pointing out potential trails USPS did not follow that became apparent either through the documents USPS did disclose or through its filings over the course of this litigation. Pls.' S.J. Mem. at 6–13, ECF No. 18-1. The Court agrees with AFFT in part. USPS's explanation of its searches omits key details that the applicable case law requires. The agency also did not search the records of three employees who were obviously involved in placing the Privacy Act Statement on the COVID-19 test kit website. Finally, USPS does not adequately explain why it apparently failed

to search for certain documents that likely existed at the time it conducted its new search after AFFT's administrative appeal. The remainder of AFFT's adequacy arguments are unavailing.

"In order to obtain summary judgment" where a FOIA plaintiff alleges an inadequate search, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. "A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." *Id.* "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). An agency's explanation to that effect is entitled to a presumption of good faith. *Defs. of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004). "However, if a review of the record raises substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials, . . . summary judgment is inappropriate." *Valencia-Lucena*, 180 F.3d at 326 (internal quotation marks and citation omitted).

USPS has not met that standard here. First, as AFFT argues, *see* Pls.' S.J. Mem. at 11–12, the supporting agency affidavit does not include all of the necessary information. Janine Castorina, USPS's Chief Privacy and Records Management Officer and head of the Postal Service Privacy and Records Management Office ("PRMO"), explains in her declaration that as to Item #1, "[e]ach staff member" "involved in creating the language" of the Privacy Act Statement "conducted a

search of their emails," because "the drafting . . . was done entirely over email by the three staff members." Castorina Decl. ¶ 16. That statement is "reasonably detailed" as far as it goes, and it sets forth "the type of search performed." *Oglesby*, 920 F.2d at 68. However, Castorina does not "set[] forth the search terms" those employees used. *Id*; *see* Castorina Decl. ¶¶ 13–16. And in her explanation of the search with respect to Item #2, Castorina discloses neither the "search terms" nor the "type of search performed." *Oglesby*, 920 F.2d at 68; *see* Castorina Decl. ¶¶ 26–27.

Moreover, as AFFT points out, *see* Pl.'s S.J. Mem. at 10–11, the documents themselves show why Castorina's assertion that "[a]s to the Statement at issue, there were three staff members, including [her]self, within the PRMO involved in creating the language," Decl. ¶ 16, is an insufficient explanation of the scope of the search. The redacted email chains and the *Vaughn* index both indicate that the email exchanges over the Privacy Act Statement involved six different staff members: Castorina, Christopher Gillespie, Christopher Lind, Christopher Karpenko, Kimberly Workinger, and Heather Dyer. *See* FOIA Production at PDF pp. 17–25; *Vaughn* Index at PDF pp. 27–37, Ex. 2 to Castorina Decl., ECF No. 14-2. Castorina clarifies in her supplemental declaration that it was she, Gillespie, and Lind, all legal personnel, who searched their records, and that "[i]nternal clients, including Heather Dyer, Vice President of the Corporate Information Security Office . . . , Christopher Karpenko, Executive Director of Brand Marketing, and Kimberly Workinger, Digital Brand Marketing Manager, called [her] to request legal advice to ensure that the COVID-19 rapid test webform was compliant with the Privacy Act." Supp. Decl. of Janine Castorina ("Supp. Castorina Decl.") ¶ 4, ECF No. 22-1.

Nowhere does Castorina attempt to explain why USPS did not search Dyer's, Karpenko's, or Workinger's records. *See generally* Castorina Decl.; Supp. Castorina Decl. USPS's only response to this argument in its reply is that, "[c]ontrary to Plaintiff's claims, no other individuals

were involved in the creation of the statement." Defs.' S.J. Reply at 6, ECF No. 22. But Item #1 of AFFT's FOIA request does not merely ask for the drafting history of the statement—it asks for "[a]ll records concerning the 'Privacy Act Statement.'" FOIA Request at 1.[2] And given that Dyer, Karpenko, and Workinger were included on email chains concerning the statement, it seems highly likely that they would have at least some records "concerning" that statement, even if they were not personally responsible for drafting it. In other words, those their inclusion on some of the emails are "positive indications of overlooked materials" that make summary judgment for USPS inappropriate. *Valencia-Lucena*, 180 F.3d at 326 (quotation marks and citation omitted).

Finally, AFFT observes, and USPS does not dispute, that "USPS changed its published Privacy Act Statement after AFFT submitted its FOIA request" but before AFFT's administrative appeal and the new search that the decision on that appeal prompted, and that USPS apparently did not search for records related to that change. *See* Pl.'s S.J. Mem. at 9–10; Defs.' S.J. Reply at 10–11. USPS's response is to defend the permissibility under FOIA of its "cut-off date" for records to be searched, which is set by regulation at "the date of the search." 39 C.F.R. § 265.4(a); *see* Defs.' S.J. Reply at 10–11. But the permissibility of using such a cut-off is beside the point, because the record here demonstrates that "the date of the search" with respect to Item #1 was after AFFT's administrative appeal, and thus necessarily after the Privacy Act Statement was changed. Castorina's declaration explicitly states that USPS's "initial determination that there were no responsive records was based on" an interpretation of the request indicating that there *could be* no responsive records—in other words, there initially was no search—and that USPS then conducted "[a]n additional search," which was really the first search with respect to Item #1, after AFFT's

---

[2] As noted above, AFFT and USPS apparently agreed to narrow the scope of the request in some unspecified fashion before USPS issued its decision. *See* Castorina Decl. ¶ 6. But there is no indication in the record that that agreement had anything to do with which specific employees' records would be searched.

administrative appeal. Castorina Decl. ¶¶ 14, 16. Nowhere does USPS explain why it apparently did not look for all documents available on the date of that "additional search." *Id.*

That being said, three of AFFT's arguments in its summary judgment brief go too far.

First, AFFT faults USPS for failing to disclose each email in every chain individually, on grounds that emails sent later in the chain would have omitted any attachments sent earlier and might have edited the text of earlier emails. *See* Pl.'s S.J. Mem. at 8–9. An attachment to an email may be a responsive document within the meaning of FOIA. *See, e.g., Brady Ctr. to Prevent Gun Violence v. Dep't of Just.*, 410 F. Supp. 3d 225, 235 (D.D.C. 2019). And it is theoretically possible that someone later in an email chain could edit their records of earlier emails. But here there is no "positive indication[]" in the record that any of the emails had attachments or that earlier responses were doctored by later recipients in the email chain, and so the Court must afford USPS a presumption of good faith in its search. *Valencia-Lucena*, 180 F.3d at 326 (quotation marks and citation omitted).

Second, AFFT contends that Castorina's declaration discloses for the first time the existence of "various versions of its COVID test kit webpage and comments thereto," and that USPS should have produced those records. Pl.'s S.J. Mem. at 9. But AFFT's FOIA request was not that broad. Rather, it was limited to the "Privacy Act Statement" and disclosures to labor unions. FOIA Request at 1. AFFT does not explain why all versions of the webpage and comments thereto would be responsive to its FOIA request as originally formulated, and AFFT may not now broaden its request during the course of litigation. *See Nat'l Ass'n of Def. Lawyers v. Dep't of Just.*, No. 04-cv-697-PLF, 2006 WL 666938, at *2 (D.D.C. Mar. 15, 2006).

Third, AFFT generally criticizes Castorina's explanations of the offices searched and the decision to search only emails as vague and conclusory. *See* Pl.'s S.J. Mem. at 12–13. Not so.

Castorina explains that the search with respect to Item #1 "was conducted by the PRMO because all Privacy Act Statements originate in this office." Castorina Decl. ¶ 16. She explains that the search with respect to Item #2 spanned "PRMO, Information Technology ('IT'), Corporate Information Security ('CISO'), and Labor Relations," because "PRMO handles initial FOIA responses and advice on the Privacy Act," "IT and CISO ran the COVID-19 test kit program," and "Labor Relations handles all matters concerning labor organizations"—thus, "[t]hese are the departments most likely to have responsive records." *Id.* ¶ 26. That is all FOIA requires. *See Oglesby*, 920 F.2d at 68 (emphasis added) (holding that the agency must "aver[] that all files *likely* to contain responsive materials (if such records exist) were searched"). And AFFT does not give the Court any reason to doubt Castorina's statement with respect to Item #1 that "the drafting . . . was done entirely over email." Castorina Decl. ¶ 16. The Court will therefore afford that statement a presumption of good faith.

In sum, then, USPS fails to explain the adequacy of its search in three ways and three ways only. First, the supporting affidavits do not "set[] forth the search terms" used for either item of the request or "the type of search performed" with respect to Item #2. *Oglesby*, 920 F.2d at 68. Second, USPS did not search the records of three employees who had some interaction about the Privacy Act Statement with the attorneys who were drafting it. Third, USPS apparently did not search for records of the revised Privacy Act Statement that must have existed at the time of its eventual search, despite its own regulations requiring it to search all documents in existence on the date of the search. USPS is entitled to summary judgment on the adequacy of its search beyond those three points. The Court will discuss the proper remedy for the shortcomings in USPS's explanations below. *See infra* Part III.D.

### C. USPS Has Not Adequately Explained Its Exemption 5 Withholdings

The other main issue in the cross-motions for summary judgment is the propriety of USPS's withholdings under FOIA Exemption 5.[3] The parties dispute whether USPS has met its burden of establishing that (1) the deliberative process and attorney-client privileges actually apply to those withholdings, (2) reasonably foreseeable harm would result from disclosure of those withholdings, and (3) USPS properly segregated non-exempt information from exempt information in each document. The Court concludes that USPS has carried its burden with respect to the applicability of the deliberative process privilege in full and the attorney-client privilege in part. However, the Court further concludes that USPS has not carried its foreseeable harm burden with respect to any of its Exemption 5 withholdings. Accordingly, the Court need not consider segregability at this stage.

#### 1. Applicability of the claimed privileges

As an initial matter, as AFFT rightly notes, *see* Pl.'s S.J. Mem. at 16–17, USPS has failed in this case to delineate its deliberative process privilege withholdings from its attorney-client privilege withholdings. USPS therefore has not given the Court enough information to determine which withholdings are proper and which are not, to the extent that the privileges do not perfectly overlap. *See Bloche v. Dep't of Def.*, 414 F. Supp. 3d 6, 49 (D.D.C. 2019). But as explained below, *see infra* Part III.D, the Court will order USPS to produce a new *Vaughn* index and supporting affidavit that more adequately explains its withholdings. Accordingly, at this stage, the Court will consider the explanation given for each application of each privilege on its own terms and will

---

[3] As noted above, USPS also withheld certain information pursuant to FOIA Exemptions 3 and 6. However, USPS now explains that its Exemption 3 withholdings are more properly conceptualized under Exemption 6, *see* Defs.' S.J. Mem. at 12 & n.5, and AFFT does not challenge the Exemption 6 withholdings in this case, *see* Pl.'s S.J. Mem. at 16 n.7. Accordingly, the Court will discuss only the Exemption 5 withholdings.

order USPS to make clear in those new materials which privilege applies to which redactions. *Cf.*

*Bloche*, 414 F. Supp. 3d at 49.

> *(i)   USPS has adequately explained its deliberative process privilege withholdings*

The deliberative process "privilege may only be invoked for documents that are both [1]

predecisional and [2] deliberative." *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th

350, 362 (D.C. Cir. 2021). "Documents are 'predecisional' if they were generated before the

agency's final decision on the matter." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct.

777, 786 (2021). A document is not predecisional if "the agency treats the document as its final

view on the matter." *Id.* To be deliberative, a "document must be a direct part of the deliberative

process in that it makes recommendations or expresses opinions on legal or policy matters."

*Vaughn*, 523 F.2d at 1144. "Purely factual material usually cannot be withheld under Exemption

5 unless it reflects an exercise of discretion and judgment calls." *Ancient Coin Collectors Guild v.*

*Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (internal quotation marks and citation omitted).

USPS has established that all its deliberative process privilege withholdings in this case

are predecisional. USPS argues that "[t]he redacted communications are necessarily pre-decisional

because they took place prior to [] the Postal Service's final decision to include a Privacy Act

Statement on the COVID-19 test kit webpage, which was in the testing phase at the time of the

communications." Defs.' S.J. Mem. at 10. AFFT responds that USPS "has failed to provide this

Court enough information to determine whether the record or portions thereof have lost their

predecisional status." Pl.'s S.J. Mem. at 22. That gives USPS's submissions too little credit.

Castorina states in her declaration that "[t]he redacted communications . . . occurred before any

final actions were taken relating to the COVID-19 test kit webpage in which the Privacy Act

Statement appears" and that "[t]he draft language differs from the final Privacy Act Statement,

which appears on the test-kit webpage." Castorina Decl. ¶ 18; *see also Vaughn* Index at PDF pp. 27, 29, 31, 33, 35. Those statements are accorded the presumption of regularity and there are no indications that the statements should be treated otherwise.

USPS has also established that all its deliberative process privilege withholdings in this case are deliberative. USPS argues that the emails "are deliberative because they comprise drafts of the Privacy Act Statement and discussions related thereto in connection to testing the webpage." Defs.' S.J. Mem. at 11. AFFT responds that USPS "has not identified 'the nature' of the decisionmaking authority vested in the office or person issuing the disputed documents.'" Pl.'s S.J. Mem. at 23–24 (quoting *Hardy v. ATF*, 243 F. Supp. 3d 155, 168 (D.D.C. 2017)). But that again mischaracterizes USPS's submissions. The emails are between Castorina, who states she is "responsible for establishing Postal Services policies relating to information disclosure, privacy, and record management," Castorina Decl. ¶ 3, and her "subordinates and colleagues" who were discussing "drafts of the Privacy Act Statement and placement on the test kit webpage," *id.* ¶ 18. The affidavit could hardly be more specific about the decision-making authority or chain of command. AFFT also argues that USPS has not met its burden of establishing that the information withheld is not purely factual. *See* Pl.'s Mem. at 22–23. But Castorina explains that the emails "consist of drafts and proposed edits to the Privacy Act Statement and discussions related to those drafts in connection with the testing of the webpage," Castorina Decl. ¶ 18—information that by its nature involves legal judgment calls and cannot be purely factual in nature—and there is no indication in the record that would lead the Court to doubt that explanation.

The Court therefore concludes that USPS has met its burden of demonstrating that the deliberative process privilege applies to its withholdings under that privilege in all five of the redacted email chains.

*(ii) USPS has adequately explained only some of its attorney-client privilege withholdings*

"The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services," as well as "communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'" *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)). "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." *Id.* "Moreover, the privilege is not lost because an attorney consults other attorneys about the subject matter of the communication." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 253 n.24 (D.C. Cir. 1997).

Here, USPS has adequately established that the attorney-client privilege applies to at least two of the five redacted email chains, specifically those listed in the *Vaughn* index as USPS-4 and USPS-5. Those emails are between Castorina and her "agency clients," Workinger, Karpenko, and Dyer, and they "contain[] the product of confidential legal discussion amongst government counsel and agency clients." *Vaughn* Index at PDF pp. 33–36. It thus appears from the explanations USPS has given, which the Court has no reason to doubt, that the redacted portions are "confidential communications from clients to their attorneys made for the purpose of securing legal advice or services," or "communications from attorneys to their clients" that "'rest on confidential information obtained from the client.'" *Tax Analysts v. IRS*, 117 F.3d at 618 (quoting *In re Sealed Case*, 737 F.2d at 99).

AFFT argues that "USPS failed to provide the threshold information required to even be allowed to assert the attorney-client privilege." Pl.'s S.J. Mem. at 17. In support of this contention, AFFT cites *Am. Oversight v. USPS*, No. 20-cv-2580-RC, 2021 WL 4355401, at *8 (D.D.C. Sept. 23, 2021) (internal quotation marks and citation omitted), for the proposition that an agency

asserting that privilege must explain "the nature of the decisionmaking authority vested in the office or person issuing the disputed document(s), and the positions in the chain of command of the parties to the documents." But even setting aside the fact that the cited passage concerns the deliberative process privilege, Castorina's declarations explain enough about the chain of command and the parties' positions for the Court to determine that attorney-client privilege's applicability. She explains her own position at USPS and identifies the others as her "subordinates and colleagues," including "Heather L. Dyer, the Chief Information Security Officer and Kimberly Workinger, the Postal Service's Manager of Digital Brand Marketing." *Id.* ¶ 20. She further explains that Gillespie and Lind are her subordinates. Supp. Castorina Decl. ¶ 2.

However, at least some of the information in the three other redacted email chains, which are between attorneys and/or legal personnel only, does not appear to rest on confidential client communications. The first three email chains all involve only Castorina, Gillespie, and Lind, attorneys and/or support staff who worked together "to answer the agency clients' request for legal advice." *Vaughn* Index at PDF p. 28. Neither the *Vaughn* index nor either of Castorina's declarations explains the extent to which the emails between Castorina, Gillespie, and Lind rested on confidential communications from their agency clients. Rather, the *Vaughn* index simply states that the email chains "*arise*[] *from* agency clients' request for legal advice concerning the application of the Privacy Act, including its requirements for Privacy Statements, to the COVID-19 test kit webpage." *Id.* at PDF pp. 27–32 (emphasis added). Arising from a request for legal advice is not the same thing as resting on a confidential communication. For example, an abstract discussion of the Privacy Act's requirements would not necessarily reveal client communications. Were it otherwise, there would be no need for the attorney work-product doctrine, a separate privilege, also incorporated by Exemption 5, that "protects documents that were prepared in

anticipation of litigation by an attorney or an attorney's agent." *Jud. Watch, Inc. v. Dep't of Just.*, 391 F. Supp. 3d 43, 50 (D.D.C. 2019).

The Court therefore concludes that USPS has met its burden of demonstrating that the attorney-client privilege applies to all of its withholdings under that privilege in the email chains it labels USPS-4 and USPS-5, but to at most some of its withholdings under that privilege in in those marked USPS-1, USPS-2, and USPS-3.

### 2. Reasonably foreseeable harm

As explained above, USPS has shown that the relevant privilege applies to the portions of its Exemption 5 withholdings that rest on the deliberative process privilege and some, but not all, portions that rest on the attorney-client privilege. But that is not the end of the matter. Under the FOIA Improvement Act, USPS must also demonstrate that that it is "reasonably foresee[able] that disclosure" of those portions of the documents "would harm an interest protected by" Exemption 5. 5 U.S.C. § 552(a)(8)(A)(i)(I). The Court concludes that USPS has not met that burden as to either category of Exemption 5 withholdings.

#### (i) USPS's foreseeable harm justifications for its deliberative process privilege withholdings are insufficiently specific

With respect to its deliberative process privilege withholdings, USPS offers two foreseeable harm justifications: that disclosure would (1) chill internal agency discussions and (2) cause public confusion. Neither explanation is sufficient.

"In the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'— not 'could'—adversely impair internal deliberations." *Reporters Committee*, 3 F.4th at 369–70. The agency may not simply rely on "boilerplate and generic assertions that release of any deliberative material would necessarily chill internal discussions." *Id.* at 370. Rather, it must give

"a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.*

Castorina summarizes the first justification for USPS's deliberative process privilege withholdings as follows:

> Disclosure of these deliberative, pre-decisional communications would constrain the day-to-day discussions amongst Postal Service staff who would not freely share their ideas and proposals because they would feel inhibited from effectively communicating with one another. Accordingly, disclosing internal agency deliberations would diminish the overall quality of the Postal Service's decision-making process by exposing preliminary discussions and drafts concerning the appropriate language to be used in the Privacy Act Statement.

Castorina Decl. ¶ 19. Every single entry in the *Vaughn* index repeats that justification in no more specific form. *See Vaughn* Index at PDF pp. 27, 29, 31, 33–36.

That justification is insufficiently specific to carry USPS's burden under the FOIA Improvement Act. It is virtually indistinguishable from similarly boilerplate justifications this Court has found insufficient in two recent cases. *See Nat'l Pub. Radio v. Dep't of Homeland Security* ("*NPR*"), No. 20-cv-2468-RCL, 2022 WL 4534730, at *7–8 (D.D.C. Sept. 28, 2022); *Project on Gov't Oversight v. Dep't of Homeland Security, Office of Civ. Rights & Civ. Liberties* ("*POGO*"), No. 18-cv-2051-RCL, 2023 WL 2139380, at *9 (D.D.C. Feb. 21, 2023). In those cases, the Court concluded that the Department of Homeland Security failed to meet its foreseeable harm burden by offering the following explanation:

> Court-ordered disclosure of the information would severely undermine the Department's ability to efficiently and effectively investigate allegations of civil rights or civil liberties violations, and for its investigators and decision-makers at various points of the decisional process . . . to offer uninhibited opinions and recommendations on the matters at issue. Without the continued assurance of confidentiality, CRCL's expert consultants would not

> provide the Department with the meaningful information it needs to
> properly investigate civil rights complaints. Maintaining the
> confidentiality of these types of pre-decisional and deliberative
> communications is critical for the Department to carry out its
> mission.

*NPR*, 2022 WL 4534730, at *7; *see also POGO*, 2023 WL 2139380, at *9.

Castorina's explanation is also no more meaningfully specific than one the Circuit rejected

in *Reporters Committee*:

> Disclosure of [material containing or prepared in connection with
> the formulation of opinions, advice, evaluations, deliberations,
> policies, proposals, conclusions, or recommendations] would have
> an inhibiting effect upon agency decisionmaking and the
> development of policy because it would chill full and frank
> discussions between agency personnel and decision makers
> regarding a decision. If agency personnel know that their
> preliminary impressions, opinions, evaluations, or comments would
> be released to the general public, they would be less candid and more
> circumspect in expressing their thoughts, which would impede the
> fulsome discussion of issues necessary to reach a well-reasoned
> decision.

3 F.4th at 370. The only significant difference is that Castorina's explanation mentions USPS and

the Privacy Statement.

As this Court explained in *NPR*, "[t]he fatal flaw" with such a justification "is that it is

essentially a restatement of 'the generic rationale for the deliberative process privilege itself.'"

2022 WL 4534730, at *8 (quoting *Reporters Committee*, 3 F.4th at 370). An agency cannot carry

its burden simply by turning that generic rationale "into a game of 'Mad Libs' and fill[ing] in the

blanks with the name of the agency and the things that it does," as USPS attempts to do here. *Id.*

Accordingly, the Court cannot accept USPS's first foreseeable harm justification for its

deliberative process privilege withholdings.

As for the second justification, Castorina states that "disclosure of these internal

deliberations also could confuse the public because, as here, the draft versions of the Privacy Act

Statement differ from the final version of the Privacy Act Statement." Castorina Decl. ¶ 19. Courts have recognized guarding against public confusion as one of the interests protected by the deliberative process privilege. *See, e.g.*, *Huthnance v. District of Columbia*, 268 F.R.D. 120, 122 (D.D.C. 2010). However, under the FOIA Improvement Act, an agency must demonstrate in each case "a specific link between the specified harm—public confusion—and the nature of the withheld documents." *Pub. Empls. for Envt'l Resp. v. Dep't of Homeland Security*, 575 F. Supp. 3d 34, 51 (D.D.C. 2021). So, for example, in *Reporters Committee*, the Circuit rejected a justification that disclosure "would potentially confuse the public about the reasons for" the agency's actions, 3 F.4th at 371, while the court in *Public Employees for Environmental Responsibility* accepted the far more specific justification that disclosure of certain Federal Emergency Management Agency documents would "prematurely reveal[] threats and hazards . . . and may result in members of the public taking action on potential threats and hazards where no action is warranted," 575 F. Supp. 3d at 51 (quotation marks and citation omitted).

While the public confusion justification here is not quite as vague as the one that the Circuit rejected in *Reporters Committee*, it is still insufficiently specific to carry the agency's burden. If stating simply that a draft version "differ[s] from the final version" of a policy or statement, Castorina Decl. ¶ 19, were enough to show reasonably foreseeable harm, agencies would never need to provide a situation-specific reason for withholding a nonfinal draft. USPS's explanation here does not provide a "specific link between the specified harm . . . and the nature of the withheld documents." *Pub. Empls. for Envt'l Responsibility*, 575 F. Supp. 3d at 51. Neither Castorina's affidavit nor the *Vaughn* index states, for example, that the differences are substantive in nature, nor why, in concrete terms, a misconception about the precise language of a privacy statement on

a website that, as AFFT points out, the agency itself changed at least once, would be harmful. *See* Pl.'s S.J. Mem. at 15; First Decl. of Elizabeth Kines Messenger ¶¶ 8–9, ECF No. 18-2.

For these reasons, USPS has not carried its burden of establishing that it is "reasonably foresee[able] that disclosure" of its deliberative process privilege withholdings "would harm an interest protected by" that privilege. 5 U.S.C. § 552(a)(8)(A)(i)(I).

> ### (ii) USPS offers no foreseeable harm justification for its attorney-client privilege withholdings

Remarkably, USPS makes no attempt whatsoever in its summary judgment brief to offer a foreseeable harm justification for its attorney-client privilege withholdings, *see* Defs.' S.J. Mem. at 14–15, nor does it do so in its reply brief, even after AFFT points out that omission in its summary judgment brief, *see* Pl.'s S.J. Mem. at 14; Defs.' S.J. Reply at 18–19. The Court could therefore treat as conceded AFFT's argument that USPS has failed to establish that reasonably foreseeable harm would result from disclosure of its attorney-client privilege withholdings. *See Crisman v. Dep't of Just.*, 332 F. Supp. 3d 139, 149 (D.D.C. 2018). However, as discussed in the following section, the Court will grant USPS a second chance to give an appropriate explanation.

### D. The Appropriate Remedy

In sum, USPS has failed to carry its burden at summary judgment to explain the adequacy of its search and the propriety of its withholdings in the following ways:

- USPS's explanation of its search is partially inadequate because (1) the supporting affidavits do not set forth the search terms used for either item of the request or the type of search performed with respect to Item #2, (2) USPS did not search the records of three employees who had some interaction about the Privacy Statement with the attorneys who were drafting it, and (3) USPS does not explain why it failed to search for records of the revised Privacy Act Statement that likely existed at the time of its eventual search.

- USPS's explanation of its attorney-client privilege withholdings in the email chains marked as USPS-1, USPS-2, and USPS-3 is inadequate because it does not explain the extent to which those email chains, which are only between legal personnel, rest on confidential client communications.

- USPS does not offer a sufficiently specific foreseeable harm justification for its deliberative process privilege withholdings, nor any foreseeable harm justification for its attorney-client privilege withholdings.

It now remains to be decided what USPS must do to remedy those shortcomings.

First, as to the adequacy of the search, USPS will have to conduct an additional search in a manner consistent with this Memorandum Opinion. Specifically, the Court will order USPS to search the records of the three additional employees involved in the email chains marked as USPS-4 and USPS-5. The Court will also order USPS to search for records related to the change in the Privacy Act Statement that apparently occurred before the search prompted by the General Counsel's decision on appeal, or to explain why its "date of the search" cut-off regulation allows it exclude such records from the scope of its search. Finally, the Court will order USPS to provide a further explanation of its initial search laying out the search terms used with respect to both items of the FOIA request and the type of search performed with respect to Item #2.

Second, as to the withholdings, Court would be within its discretion to simply grant summary judgment for AFFT and order the agency to re-process its disclosures without any Exemption 5 withholdings. *Cf. NPR*, 2022 WL 4534730, at *10. But in cases "where [the plaintiff] has not questioned [the agency's] motives and where the matter is not particularly old or otherwise marked with the signs of dilatory behavior," courts will often afford agencies a "second chance" to explain their withholdings. *S. Alliance for Clean Energy v. Dep't of Energy*, 853 F. Supp. 2d 60, 79 (D.D.C. 2012). This is just such a case. The Court sees no indication that USPS has acted in bad faith, the case has been pending before the Court for less than a year, and USPS has

attempted to resolve the matter as promptly as possible, filing its motion for summary judgment within just a few months of commencement. Moreover, the shortcomings in USPS's explanation of the adequacy of its search foreclose the possibility of terminating the case from the Court's docket at this stage, and thus the "strong medicine," *id.*, of ordering immediate disclosure would do little to serve the interests of judicial economy. Accordingly, the Court will give USPS a second chance and allow it to file a new, more detailed *Vaughn* index and supporting affidavit. Those materials shall specify whether the deliberative process privilege, the attorney-client privilege, or both apply to each Exemption 5 redaction. *Cf. Bloche*, 414 F. Supp. 3d at 49.

Of course, further disputes may arise as USPS attempts to comply with this Memorandum Opinion and the accompanying Order. But once the agency has filed the appropriate materials in this Court and produced them to AFFT, the parties may file renewed motions for summary judgment.

## IV.   CONCLUSION

For the foregoing reasons, the Court will **GRANT** USPS's partial motion to dismiss, **DENY AS MOOT** USPS's motion for judgment on the pleadings, **GRANT** in part and **DENY** in part USPS's motion for summary judgment, and **GRANT** in part and **DENY WITH PREJUDICE** in part and **WITHOUT PREJUDICE** in part AFFT's cross-motion for summary judgment. In sum:

- AFFT lacks standing to challenge USPS's FOIA appeal procedures, and thus the Court lacks jurisdiction to hear Counts III and IV of the complaint.

- USPS's explanation of its search is partially inadequate because (1) the supporting affidavits do not set forth the search terms used for either item of the request or the type of search performed with respect to Item #2, (2) USPS did not search the records of three employees who had some interaction about the Privacy Statement with the attorneys who were drafting it, and (3) USPS does not explain why it

failed to search for records of the revised Privacy Act
Statement that likely existed at the time of its eventual
search. USPS's explanation of its search is adequate in all
other respects.

- USPS's explanation of the applicability of the attorney-
client privilege to the email chains marked as USPS-1,
USPS-2, and USPS-3 is inadequate because it does not
explain the extent to which those email chains, which are
only between legal personnel, rest on confidential client
communications.

- USPS's explanation of the applicability of the attorney-
client privilege to the email chains marked as USPS-4 and
USPS-5 and of the deliberative process privilege to all five
email chains is adequate.

- USPS does not offer a sufficiently specific foreseeable harm
justification for its deliberative process privilege
withholdings, nor any foreseeable harm justification for its
attorney-client privilege withholdings.

Accordingly, the Court will order USPS (1) to conduct an additional search, and give an adequate

justification for that search, in a manner consistent with this Memorandum Opinion; and (2) to file

a new *Vaughn* index and supporting affidavit explaining the propriety of its Exemption 5

withholdings. A separate Order shall issue this date.


Date: March **23**, 2023

Royce C. Lamberth
United States District Judge