UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICANS FOR FAIR TREATMENT,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>Defendant. | Civil Action No. 22-1183 (RCL) |

## <u>DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT</u>

Defendant, the United States Postal Service (the "Postal Service" or the "Agency"), by and through undersigned counsel, respectfully requests that this Court grant summary judgment in its favor on Plaintiff's claims against the Postal Service under the Freedom of Information Act ("FOIA"), because there are no material facts in dispute and Defendant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

In support of this motion the Court is referred to the enclosed memorandum, statement of material facts, the supplemental declaration of Janine Castorina, Chief Privacy and Records Officer, and proposed order.

\*   \*   \*

Dated: March 8, 2024
       Washington, DC

                   Respectfully submitted,

                   MATTHEW M. GRAVES, D.C. Bar. #481052
                   United States Attorney

                   BRIAN P. HUDAK
                   Chief, Civil Division


                   By: _____ */s/ Patricia King McBride* _____
                      PATRICIA KING MCBRIDE
                      Assistant United States Attorney
                      601 D Street, NW
                      Washington, DC 20530
                      (202) 252-7123

                   *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICANS FOR FAIR TREATMENT,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>                    Defendant. | Civil Action No. 22-1183 (RCL) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant the United States Postal Service (the "Postal Service" or the "Agency") submits this memorandum in support of its renewed motion for summary judgment.  Summary Judgment should be entered in Defendant's favor on all claims pursuant to Federal Rule of Civil Procedure ("Rule") 56.

**BACKGROUND AND FACTS**

**I.      Plaintiff's FOIA Request and the Postal Service's Response**

By letter dated February 7, 2022, Plaintiff Americans for Fair Treatment ("Plaintiff") submitted a Freedom of Information Act ("FOIA") request for the following:

1.      All records concerning the "Privacy Act Statement" contained on USPS's webform through which members of the public may order rapid antigen COVID-19 tests (https://special.usps.com/testkits). The records requested include, but are not limited to, those that reflect USPS's decision to depart from using its default "Privacy Act notice" that is "for personal information collected        online        (which        is        published        at https://about.usps.com/who/legal/privacypolicy/full-privacypolicy.htm) and instead to use a "Privacy Act Statement" that says the Postal Service may, without consent, disclose information it obtains about the public through the COVID-19 test webform to "labor organizations as required by applicable law."

      2.      All records concerning the Postal Service's disclosure to any labor organization of information it obtained through the COVID-19 test webform.

Compl. at Ex. A.

With respect to the first portion of Plaintiff's request ("Item No. 1"), the Postal Service's Privacy and Records Management Office conducted searches for responsive records and produce nine pages of emails with redactions based on Exemption 3 (along with 39 U.S.C. § 410(c)(2)), Exemption 5, and Exemption 6.[1] *See* ECF No, 14-1 at 9. With respect to the second portion of Plaintiff's request ("Item No. 2"), the offices within the Postal Service in which any responsive records were likely to be found conduced searches for responsive records, including the Privacy and Records Management Office, the Information Technology Department, the Corporate Information Security Department, and the Labor Relations Department. *Id*. No responsive records were identified based on these searches and an Agency employee familiar with the agency and its records attests that no other places besides the ones that have been searched are likely to contain responsive records. *Id*.

## II.     District Court Litigation

Plaintiff filed suit in this Court on April 28, 2022, against the Postal Service, as well as the Postmaster General and the Postal Service's General Counsel in their official capacities (together, "the Postal Service"). *See* Compl., ECF No. 1. The complaint asserted four counts: (1) violation of FOIA by withholding responsive, non-exempt records, *id.* 54-60; (2) violation of FOIA by failing to conduct an adequate search, *id* 61-68; (3) arbitrary and capricious or contrary-to-law action in violation of the APA by failing to allow an appeal to the head of the agency himself, *id.*

---

[1]     Plaintiff does not challenge the Postal Service's Exemption 6 withholdings. Pl. Mot. at 7 n.4.

69-75; and (4) *ultra vires* action by failing to allow an appeal to the head of the agency himself. *Id.* 76-80.

The Postal Service filed its motion for summary judgment and for judgment on the pleadings on July 29, 2022.  ECF No. 14.  Plaintiff filed its combined opposition and cross-motion for summary judgment on September 2, 2022.  ECF No. 18.  The Postal Service filed its combined reply in support of its own motion and reply to Plaintiff's motion on October 26, 2022. ECF No. 22. Plaintiff filed its combined reply in support of its own motion and opposition to the Postal Service's motion on November 18, 2022.  ECF No. 26.

While the summary judgment briefing was still underway, the Postal Service additionally filed a motion to dismiss Counts III and IV of the complaint for lack of subject-matter jurisdiction. ECF No. 24.  Plaintiff filed its opposition to that motion on December 2, 2022 (ECF No. 27) and the Postal Service filed its reply on December 22, 2022 (ECF No. 29).

The Court dismissed Counts III and IV pursuant to Defendant's motion to dismiss.  *See* ECF No. 30 ("Mem. Op.") at 11.  The Court granted in part and denied the Postal Service's motion for summary judgment.  Specifically, the Court denied Defendant's motion because the Postal Service did not adequately explain its search (*see* Mem. Op. at 11) as the agency's explanation of its searches omitted key details that the applicable case law requires.  *Id*.  The Court found that the agency did not search the records of three employees who were obviously involved in placing the Privacy Act Statement on the COVID-19 test kit website.  Finally, the Court found that the Postal Service did not adequately explain why it apparently failed to search for certain documents that likely existed at the time it conducted its new search after Plaintiff's administrative appeal.  *Id* at 12.  The Court further held that the Postal Service did not adequately explain its Exemption 5 withholdings, regarding attorney-client privilege in part and did not carry its foreseeable harm

burden with respect to any of its Exemption 5 withholdings in that the agency failed to delineate its deliberative process privilege withholdings from its attorney-client privilege withholdings. The Court did not consider segregability. *Id* at 17.

The Court ordered the Postal Service to (1) conduct an additional search and give an adequate justification for that search in a manner consistent with its Memorandum Opinion; and (2) to file a new *Vaughn* Index and supporting affidavit explaining the propriety of its Exemption 5 withholdings. *Id* at 29. Consistent with the Court's prior Memorandum Opinion and Order, the Postal Service has conducted an additional search that was adequate and, as detailed in its new *Vaughn* and supporting Declaration, it has explained the propriety of its Exemption 5 withholdings. As such, the Postal Service respectfully requests that the Court enter summary judgment in its favor for the reasons explained below.

## LEGAL STANDARDS

### I. <u>Summary Judgment Under Rule 56</u>

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248. A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson*, 477 U.S. 242, 247-48 (emphasis in original). The moving party may discharge this burden by "'showing' —that is point out to the [Court]—that there is an absence of evidence to support the non-moving party's case." *Sweats Fashion Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1563 (Fed. Cir. 1987); *see also Celotex*, 477 U.S. at 332.  Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings and must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Anderson*, 477 U.S. at 252.  Summary judgment is thus due if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [nonmovant]." *Id.*

## II.    Summary Judgment Standard in FOIA Cases

Courts generally and appropriately resolve FOIA cases on motions for summary judgment. *Customs & Int'l Trade Newsletter v. Customs & Border Prot.*, 588 F. Supp. 2d 51, 54 (D.D.C. 2008); *Russell v. FBI*, No. 03-0611, 2004 WL 5574164, at *2 (D.D.C.  Jan. 9, 2004); *see also Wheeler v. Dep't of Just.*, 403 F. Supp. 2d 1, 5 (D.D.C. 2005) ("Summary judgment is the routine vehicle by which most FOIA actions are resolved.").  Summary judgment should be granted when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)(c).  A material fact is any fact that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248.

An agency is entitled to summary judgment in a FOIA case if it demonstrates: (1) that it has conducted an adequate search for responsive records and (2) each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure. *See Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980).  To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations.  *See McGehee v. CIA*, 697 F.2d 1095, 1102

(D.C. Cir. 1983); *Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973); *Wheeler*, 403 F. Supp. 2d at 6.

## ARGUMENT

Defendant is entitled to summary judgment because it performed adequate searches reasonably designed to return responsive records and produced to Plaintiff any responsive, non-exempt records.  Defendant withheld from its productions only exempt information the release of which would foreseeably harm an interest protected by the FOIA.  Finally, Defendant satisfied FOIA's segregability requirement.  Thus, summary judgment in Defendant's favor is appropriate.

## I.   **Defendant Performed a Reasonable Search**

FOIA requires a responding agency to show that it has conducted a search reasonably devised to uncover the responsive records.  *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Where the agency has submitted reasonably detailed, nonconclusory affidavits, describing the scope of the search and why it was calculated to uncover all relevant documents, it has discharged its obligation under the FOIA.  *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  Notably, the agency is not required to conduct a perfect search, but only one that is "adequate." *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1985).

As indicated by the Court in its Memorandum Opinion dated March 23, 2024, the Postal Service's prior motion for summary judgment failed to explain the adequacy of its search in three ways and three ways only.  *See* Mem. Op. at 16.  First, the supporting affidavits did not "set[] forth the search terms" used for either item of the request or "the type of search performed" with respect to the second item in Plaintiff's request. *Id.*; *Oglesby,* 920 F.2d at 68.  Second, the Postal Service did not search the records of three employees who had some interaction about the Privacy Act Statement with the attorneys who were drafting it.  *Id*.  Third, the Postal Service did not search for records of the revised Privacy Act Statement that must have existed at the time of its eventual

search, despite its own regulations requiring it to search all documents in existence on the date of the search.  *Id*.

### A.     The Agency's Original Search

The Postal Service, in the Second Supplemental Declaration of Janine Castorina submitted herewith ("2d Supp. Castorina Decl.") and in the discussion below, has cured the deficiencies noted by the Court's Memorandum Opinion, by setting forth the search terms for the original search and delineating the type of search performed in the Postal Service's initial disclosure to Plaintiffs.  *See* Mem. Op. at 16.

### 1.     Item No. 1

In the original search for Item No. 1 of the FOIA request, the Postal Service did not use a date range. Instead, to maximize the scope of the search, the Postal Service used the email addresses for Janine Castorina, Christopher Lind, Christopher Gillespie, Kimberly Workinger, Christopher Karpenko, Heather Dyer, paired with the search term "Privacy Statement," and the full Privacy Statement itself, that was referenced in the request.  This search was done using the Postal Service's Information Catalog Program ("Catalog Program").  2d Supp. Castorina Decl. ¶ 3. The Postal Service's Catalog Program is the group within the Postal Service that has access to the email repository and that conducts the email searches for all requests.  *Id*.  That search returned no records.  *Id*.  Following this, each individual heretofore listed searched their individual Outlook inboxes using the search terms "810" or "Privacy Statement."  *Id*.  That search revealed the nine pages of responsive records, originally produced to Plaintiff, and that are at issue in this litigation. *Id*.

### 2.     Item No. 2

As to Item No. 2, Ray Donohue, Managing Counsel of Labor Law, who oversees all legal matters concerning labor organizations for the Postal Service, conducted a search through his own

files, which included emails and digital files.  2d Supp. Castorina Decl. ¶ 4.  Mr. Donohue does not keep paper files.  *Id*.  Mr. Donohue also assisted the search by contacting and requesting that Labor Relations, the Postal Service's department with direct union contact, conduct a search through their own files.  *Id*.  Labor Relations, for union management and responses to union inquiries, is split into four sections.  *Id*.  There is one section for each of the labor unions: the American Postal Workers Union, the National Association of Letter Carriers, the National Postal Mail Handlers Union, and the National Rural Letter Carrier's Association.  *Id*.  Each union has a different department head who tracks union requests.  *Id*.  That individual logs each union request and ensures that the requests are responded to, as required by law and the collective bargaining agreement.  *Id*.  These individuals maintain spreadsheets for their respective unions to track the union requests for information.  *Id*.  All four department heads searched their respective spreadsheets to determine if their respective union requested test-kit information.  *Id*. The search was conducted looking at all union requests for the year.  *Id*.  This search revealed no responsive records.  *Id*.

### B.    Supplemental Searches

The Postal Service conducted two additional searches in response to the Court's Memorandum Opinion and Order.  *See* Mem. Op. at 29.  These additional searches were reasonably calculated to identify records sought by Plaintiff, and in fact, the Postal Service located forty-one additional responsive documents, which were properly redacted and produced to Plaintiff.  2d Supp. Castorina Decl. ¶¶ 5, 6.

### 1.    Records of Christopher Karpenko, Heather Dyer and Kimberly Workinger

The Postal Service conducted a search for responsive records with respect to custodians Christopher Karpenko, Heather Dyer, and Kimberly Workinger.  2d Supp. Castorina Decl. ¶ 5. The Postal Service used the search terms from the Privacy Act Statement that Plaintiff's cited

without reference to a date range.  *Id*.  The Agency also searched its email archives using the term "Privacy Act Statement," to cull through the variety of statements drafted in order to isolate the one at issue.  *Id*. The Postal Service then used the records found as the base to conduct an additional Catalog Program search to determine if there were other responsive records. *Id*. The Postal Service located fourteen additional pages of responsive material.  *Id*.  Those records were redacted and produced to Plaintiff. *Id*.

<div align="center">2.   Revised Privacy Act Statement</div>

Consistent with the Court's Memorandum Opinion and Order, the Postal Service conducted an additional search for any records related to a revision of the Privacy Act Statement. *See* 2d Supp. Castorina Decl. ¶ 6.  In conducting this search, the Postal Service used the search terms "Privacy Concern" and "Test Kit Web Info" in conjunction with the respective email addresses Janine Castorina, Christopher Lind, Christopher Gillespie, Kimberly Workinger, Christopher Karpenko, Heather Dyer, Thomas Marshall, Peter Pastre, and Jeffrey Adams.  *Id*.

The Postal Service identified these search terms because it was possible to isolate the timing of the revised Privacy Act Statement. *Id*. at ¶ 7. On January 19, 2022, after the COVID-19 test kit webpage went live, a staffer for U.S. Senator Ron Wyden emailed a postal employee concerning two issues, one of which concerned immigration and enforcement by ICE.  *Id*.  This communication eventually made its way to Jeffrey Adams, Vice President of Corporate Communications, who then contacted the White House on January 25, 2022.  *Id*.  Thereafter, the White House expressed concerns with the Privacy Act Statement as it related to the issues raised by Senator Wyden's office.  *Id*.  Following this, internal discussions concerning any revision to the Privacy Act Statement were limited in time to January 26, 2022, to January 27, 2022, because the following day, the revised Privacy Act Statement was placed on the test-kit webpage. *Id*. Because the Postal Service knew the precise timing of when the revised Privacy Act Statement

was placed on its website, it was able to isolate some emails and use the appropriate terms to locate the email conversations concerning that revision. *Id*.

The search terms used were broad and specific enough to capture any responsive records that related to a revision of the Privacy Act Statement and reflected a term used in email subject lines, from responsive records the Postal Service located. *Id*. at ¶ 6. The email addresses used were targeted to capture individuals at the Postal Service who would be involved with any revision to the Privacy Act Statement. *Id*. Janine Castorina, Chris Lind, and Christopher Gillespie all work for the Privacy and Records Management Office and would be involved in the revision because that is the office that governs the Privacy Act Statements. *Id*. Kimberly Workinger, Christopher Karpenko, and Heather Dyer all jointly have control over the test-kit website and would therefore be involved in the revision, at least to the extent that they would be provided the revision to post on the website. *Id*. Jeffrey Adams is the Vice President of Corporate Communications and would be involved in the revision to the extent that it was the result of outside comments and concerns. *Id*. Peter Pastre is the Vice President of Government Relations and would be involved in the revision for the same reasons as Jeffrey Adamas. *Id*. Thomas Marshall is the General Counsel. *Id*. The Privacy and Records Management Office falls within the Law Department and therefore, the General Counsel would be copied on revisions, given the visibility of the test-kit initiative. *Id*. The search criteria used for this search differs from the prior searches because the discussion concerning the revision occurred separately from the creation of the Privacy Act Statement and occurred during a different timeframe. *Id*. This search resulted in the location of twenty-seven responsive documents. *Id*. Those documents were properly redacted and provided to the Plaintiff. *Id*.

The Postal Service has established that both its initial search, together with its two additional searches were reasonably calculated to identify each of the categories of documents requested by Plaintiff.  The Postal Service's search methods were reasonably expected to produce the requested information, and in fact did so. The Postal Service initially located only nine responsive records. The additional email searches revealed fourteen and twenty-seven responsive records, respectively.  The Postal Service also searched for records in locations where those records would be most likely be located, including the email repository for the original Privacy Act Statement and the revision, and in the records of the Chief of Labor Law and the Labor Relations department for records of any union request for information and subsequent response.  As a result, the Postal Service is entitled to summary judgment with respect to the reasonableness of its searches.

## II.   **Defendant Properly Applied FOIA Exemptions**

As explained below and as detailed in the accompanying Supplemental declaration of Janine Castorina, the Postal Service properly relied on various FOIA Exemptions to withhold certain information in response to Plaintiff's request.

FOIA "expressly recognizes . . .  that public disclosure is not always in the public interest and consequently provides that agency records may be withheld from disclosure under any one of the nine exemptions defined in 5 U.S.C. § 552(b)." *Baldridge v. Shapiro*, 455 U.S. 345, 352 (1982). The inclusion of these exemptions in the FOIA reflects Congress's intention to achieve "a workable balance between the right of the public to know and the need of the Government of keep information in confidence." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. 89 - 1497, 89th Cong., 2d Sess. 6 (1966)).  While these exemptions are to be "narrowly construed," *FBI v. Abramsom,* 456 U.S. 615, 630 (1982), courts must not fail to give "meaningful reach and application."  *John Doe Agency*, 493 U.S. at 152.

The locations of the withheld information in this case are identified on a *Vaughn* index by Bates number, document description, material withheld, and justification.  2d Supp. Castorina Decl. ¶ 18, Attach. A (*Vaughn* Index).  Once the Court determines that the agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot. *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *Muhammad v. Customs & Border Prot.*, 559 F. Supp. 2d 5, 7-8 (D.D.C. 2008). Such is the case here.

### A.      The Postal Service Appropriately Applied the Attorney-Client Privilege.[2]

Privileged    attorney-client   communications   were   appropriately   withheld.   The communications at issue relate to Ms. Castorina and her staff's legal advice concerning the COVID-19 test kit webpage's compliance under the Privacy Act.  Contrary to Plaintiff's assertions such communications are protected.

Matters subject to the attorney-client privilege are protected under Exemption 5.  *Hall & Assocs. v. EPA,* 956 F.3d 621, 624 (D.C. Cir. 2020).  The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services.  *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Fisher v. United States*, 425 U.S. 391, 403 (1976); *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984).  The privilege applies to communications between agency counsel and agency officials and employees who are their clients. *See, e.g.*, *In re Lindsey*, 148 F.3d 1100, 1104-

---

[2]      The Postal Service will not apply Exemption 5 to a portion of the email chain dated January 11, 2022.  The information withheld under Exemption 5 on pages USPS_1 through USPS_5 reflects discussions about compliance with the Privacy Act and the effects and timing of compliance.  *See* ECF 22-1 - Castorina Suppl. Decl. ¶ 5.  The information withheld under Exemption 5 on pages USPS_1 through USPS_5 reflect written drafts of a Privacy Act Statement with edits to drafts of the Statement as well as discussions of those drafts. Each iteration is different from the other and from the Privacy Act Statement published on the COVID-19 rapid test webform. Each draft pre-dates the Privacy Act Statement that was published to the public on the COVID-19 rapid test webform. *Id*. ¶ 6.

05 (D.C. Cir. 1998) (*per curiam*).   "Without protections for attorney-client communications, agency officials might not share information with their counsel in the first place, and would consequently be deprived of sound legal advice," and "[t]his very policy concern grounds FOIA's Exemption 5."  *Pub. Emps. for Env't Resp. v. EPA*, 211 F. Supp. 3d 227, 230 (D.D.C. 2016).  "Exemption 5 is intended to protect the quality of agency decision-making by preventing the disclosure requirement of the FOIA from cutting off the flow of information to agency decision-makers."  *Id*. at 231.

The Postal Service withheld portions of nine emails pursuant to Exemption 5 and the attorney-client communications privilege.  The communications at issue are between the Postal Service's Chief Privacy and Records Management Officer, Ms. Janine Castorina, an attorney in the Postal Service's Law Department, with her subordinates relating to compliance with the Privacy Act of 1974 ("Privacy Act") including requirements for the content of Privacy Act Statements and their location on the webpage.  2d Supp. Castorina Decl. ¶ 20, Exs. 1-2.  Ms. Castorina provides legal advice on Privacy Act matters including drafting and approving Privacy Act Statements.  *Id*. ¶ 2.  Internal clients reached out to Ms. Castorina for legal advice relating to compliance with the Privacy Act, with regard to the COVID-19 test kit webpage.  *Id*. ¶ 3.  In doing so, Ms. Castorina and her staff held verbal discussions with their internal clients to discuss any concerns and the nature of the request as it involved the Privacy Act's requirements including an appropriate Privacy Act Statement.  *Id*.  These discussions informed the process by which Ms. Castorina and her staff formulated the Privacy Act Statement for the COVID-19 test kit webpage.  *Id*.  Each draft reflects the substance and outcome of various verbal discussions between Ms. Castorina, Mr. Lind, and Mr. Gillespie, as well as their internal clients, to craft an appropriate Privacy Act Statement for the COVID-19 test kit website.  *Id*. ¶ 5.  The Postal Service treats these

communications as confidential, and the communications have not been released to individuals outside the Law Department.  *Id*. ¶ 20.

Notably, the responsive emails also contain draft Privacy Act Statements.  Drafts made at the instigation of a client who sought legal advice can be protected.  *See Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.,* 370 F. Supp. 3d 116, 135 (D.D.C. 2019) (concluding that the attorney-client privilege applied to a draft memorandum because it was made at the request of an internal agency client who sought legal advice); *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 511 F. Supp. 2d 56, 70 (D.D.C. 2007) (concluding, in part, that drafts from the Office of Legal Counsel were protected by the attorney-client privilege); *Skull Valley Band of Goshute Indians v. Kempthorne,* 2007 WL 915211, at 14 n.8 (D.D.C. 2007) (concluding that the agency properly withheld drafts under the attorney-client privilege); *see also Cause of Action Inst. v. Dep't of Just.*, 330 F. Supp. 3d 336, 350 (D.D.C. 2018) (stating that "'correspondence' and other documents that grow out of the attorney-client relationship are protected if they 'reveal the motive of the client in seeking representation.'"); *Alexander v. FBI*, 186 F.R.D. 154, 162 (D.D.C. 1999); *Alexander v. FBI*, 198 F.R.D. 306, 312 (D.D.C. 2000) ("Drafts of documents that are prepared with the assistance of counsel for release to a third party are protected under attorney-client privilege.")).

Thus, the Postal Service appropriately applied the attorney-client privilege.

### B.     The Postal Service Appropriately Applied the Deliberative Process Privilege to the Email Correspondence.

The Postal Service appropriately withheld deliberative and pre-decisional information. The information withheld reflects the give-and-take process amongst Ms. Castorina and her staff in crafting a Privacy Act Statement in compliance with the Privacy Act.

When Congress enacted FOIA Exemption 5 and protected "inter-agency or intra-agency memorandums or letters that would not be available" in litigation with an agency, 5 U.S.C.

§ 552(b)(5), it had the deliberative process privilege "specifically in mind." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).   The privilege "protect[s] the 'decision making processes of government agencies'" by withholding "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"   *Id.*   The privilege is intended to "encourage frank and candid debate."   *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 464 (D.C. Cir. 2014).   "[P]rivileges that are intended to facilitate candid communication, such as the deliberative process privilege, generally do not have an expiration date" because "the speaker or writer must have some strong assurance at the time of the communication that the communication will remain confidential."   *Id.*

To fall within the scope of the privilege, records must be predecisional and deliberative. "'Documents are predecisional if they are generated before the adoption of an agency policy, and deliberative if they reflect the give-and-take of the consultative process.'"   *Machado Amadis v. Dep't of State,* 971 F.3d 364, 370 (D.C. Cir. 2020) (citations omitted).   To be predecisional, the communication "must have occurred before any final agency decision on the relevant matter." *Nat'l Sec. Archive*, 752 F.3d at 463.   To qualify as deliberative, the communication must be "intended to facilitate or assist development of the agency's final position on the relevant issue." *Id.*   "In practice, these requirements 'tend to merge.'"   *Hall & Assocs. v. EPA,* 2021 WL 1226668, at 5 (D.D.C. 2021) (citing *Access Rep. v. Dep't of Just.*, 926 F.2d 1192, 1195 (D.C. Cir. 1991)).

Application of the requirements recognize that "Exemption 5 was intended to protect not simply deliberative *material,* but also the deliberative *process* of agencies."   *ViroPharma Inc. v. Dep't of Health & Hum. Servs*., 839 F. Supp. 2d 184, 193 (D.D.C. 2012) (citing *Montrose Chemical Corp. v. Train,* 491 F.2d 63, 71 (D.C. Cir. 1974)) (emphasis in original).

Courts "'focus less on the nature of the materials sought and more on the effect of the materials' release: the key question in [such] cases [is] whether the disclosure

of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."

*Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 330 F. Supp. 3d 373, 382 (D.D.C. 2018) (citing *Dudman Commc'ns v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).  Indeed, the privilege "'protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency.'"  *Reinhard v. Dep't of Homeland Sec.*, 2019 WL 3037827, at 6 (D.D.C. 2019) (citing *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1539 (D.C. Cir. 1993) (stating that privilege "serves to protect the deliberative process itself, not merely documents containing deliberative material")); *see also, e.g., Goodrich Corp. v. EPA*, 593 F. Supp. 2d 184, 189-90 (D.D.C. 2009) (concluding that a draft groundwater flow model was protected because it reflected "evolving iterations of the Model's inputs and calibration reflect the opinions of the staff" even though the data plugged into the model itself was purely factual and noting that "the selection and calibration of data is part of the deliberative process to which Exemption 5 applies."); *Reliant Energy Power Generation, Inc. v. FERC,* 520 F. Supp. 2d 194, 204 (D.D.C. 2007) (concluding that spreadsheets reflecting data were protected because they were used by agency employees in writing reports, rendering them part of the deliberative process, even though the spreadsheets alone were factual rather than deliberative); *Kempthorne*, 2007 WL 915211, at *14 (stating that "the drafting process is itself deliberative in nature, [as] the disclosure of draft documents could 'expose to public view the deliberative process of an agency'").

Here, Ms. Castorina, her staff, and internal clients engaged in on-going discussions concerning compliance with the Privacy Act.  2d Supp. Castorina Decl. ¶ 4.  The communications at issue reflect the resulting drafts of the Privacy Act Statement which pre-date and differ from the final version which appeared on the COVID-19 test kit webpage.  *Id.* ¶ 6.  The deliberative material

shows edits and revisions made by Ms. Castorina and her staff.  Castorina Decl. (ECF No. 14-1) ¶ 18.  The communications are part and parcel of the process by which the Postal Service crated its Privacy Act Statement for the COVID-19 test kit webpage.  Castorina Suppl. Decl. (ECF No. 22-1) ¶¶ 4-6.  Such material is protected as reflecting an agency's deliberations.  *See Dudman Commnc'ns*, 815 F.2d at 1568 (instructing that the deliberative process privilege protects against "the disclosure of editorial judgments—for example, decisions to insert or delete material or to change a draft's focus or emphasis"); *Campaign Legal Ctr. v. Dep't of Just.*, 34 F.4th 14, 24 (D.C. Cir. 2022) (holding that a draft letter and related email communications were deliberative because 'they reflect the give-and-take of the consultative process' underlying the formulation of the letter and its proposed policy justifications."); *Gellman v. Dep't of Homeland Sec.*, 525 F. Supp. 3d 1, 7 (D.D.C. 2021) (concluding that two sentences in an email were properly redacted as "those two sentences are deliberative (because they made a recommendation as part of internal agency deliberations about filling a personnel need) and predecisional (because they were written by a junior staffer before the agency made any decision on the matter)."); *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 161 F. Supp. 3d 120, 131 (D.D.C. 2016), *modified*, 185 F. Supp. 3d 26 (D.D.C. 2016) (concluding that the agency met its burden by identifying the staff who commented and reviewed drafts about application and interpretation of agency guidelines).  The redacted emails are also necessarily pre-decisional because they are between subordinates and a superior discussing draft material and took place prior to the Postal Service's approval of the final version of the Privacy Act Statement that would appear on the COVID-19 test kit webpage.  Castorina Suppl. Decl. (ECF No. 22-1)  ¶¶ 4-6; *see Machado Amadis*, 971 F.3d at 370 (holding that recommendations from subordinates to superiors "lie at the core of the deliberative-process privilege"); *Citizens for Resp. & Ethics in Wash. v. Dep't of Educ.*, 905 F. Supp. 2d 161, 173

(D.D.C. 2012) (concluding that records that predated final regulations "were thus predecisional in the plainest sense of the word.").

Under these circumstances, the Postal Service properly withheld information pursuant to the deliberative process privilege.

### C.      The Postal Service Complied with FOIA's Foreseeable Harm Requirement.

The Postal Service satisfied FOIA's requirement that, for each withholding, it "reasonably foresees that disclosure would harm an interest protected by [the] exemption."   5 U.S.C. § 552(a)(8)(A)(i)(I); *Machado Amadis*, 971 F.3d at 370-71.   The Postal Service's declarations explain that, with respect to each withholding, it was reasonably foreseeable that disclosure of the withheld information would harm an interest protected by the exemption relied upon.

With respect to the information withheld pursuant to the deliberative process privilege, disclosure of such information would hamper the day-to-day discussions amongst staff who could not freely share their ideas and proposals as they would be inhibited from effectively communicating with one another.   Castorina Decl. (ECF No. 14-1) ¶ 19.   Disclosing internal agency deliberations would lower the overall quality of the Postal Service's decision-making process by exposing preliminary discussions and drafts concerning the appropriate language to be used in the Privacy Act Statement.   *Id.*   Disclosure would further chill communications amongst employees and officials because their discussions about draft materials would be released. Castorina Suppl. Decl. (ECF No. 22-1) ¶¶ 8-10.   They would not candidly speak their minds and express their opinions and thoughts because disclosing draft materials could reveal changes in position or statements that are not public.   *Id.*   They may be embarrassed or otherwise resistant to freely express their thoughts and opinions if it were known that such information would be made public.   *Id.*   This would harm the Postal Service's ability to elicit full, honest, and objective insight, comment and advice from its employees.   *Id.*   Moreover, disclosure would also confuse the public

because draft versions of the Privacy Act Statement do not reflect the Privacy Act Statement that was published on the COVID-19 test kit webpage.   Castorina Decl. (ECF No. 14-1) ¶ 19. Accordingly, the Postal Service satisfied the foreseeable harm requirement regarding these withholdings concerning drafts of the Privacy Act Statement.   *See also Dudman Commc'ns*, 815 F.2d at 1569 ("The disclosure of editorial judgments—for example, decisions to insert or delete material or to change a draft's focus or emphasis—would stifle the creative thinking and candid exchange of ideas necessary to produce good historical work."); *Jud. Watch, Inc. v. Dep't of State*, 557 F. Supp. 3d 52, 62 (D.D.C. 2021) (concluding that an agency's foreseeable harm reasoning was appropriate where the agency stated that disclosure would cause officials "believe that every edit or comment they propose in a draft document may be released to the public, thus curbing the candid exchange of ideas between Department officials and curtailing creativity in the compilation and explanation of Department policy.").

The Postal Service previously addressed the foreseeable harm requirement only in relation to the deliberative process privilege, but foreseeable harm also exists in disclosing records protected by the attorney-client privilege.   Outside of the deliberative process privilege, "an agency's burden under the foreseeable harm requirement may be more easily met when invoking other privileges and exemptions for which the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated."   *Reps. Comm. for Freedom of the Press v. Customs & Border Prot.,* 567 F. Supp. 3d 97, 119–20 (D.D.C. 2021).   This applies to the attorney-client privilege.   *Id*.   "Release of attorney-client communications would undoubtedly undermine our legal culture. Agencies would lose an important tool in their decisionmaking process— employees' ability to confidentially consult agency lawyers."   *Id*.   Otherwise, the "observance of law" promoted by the privilege would be hampered.   *Id*.   "Thus, the law already acknowledges

and guards against the risk of harm that would come from disclosing attorney-client communications." *Id.*

The information withheld here reflects the product of confidential legal discussions among Ms. Castorina, her staff, and internal clients to ensure compliance with the laws. Castorina Suppl. Decl. (ECF No. 22-1) ¶¶ 4-6. Disclosing the information withheld would prevent Postal Service officials, employees, and attorneys from speaking candidly amongst each other and would otherwise discourage its employees from seeking legal advice. *Id.* ¶ 8. This would harm the Postal Service's ability to ensure that the requirements of the Privacy Act and other laws are met. *Id.* ¶ 9. Disclosing the information withheld would cause officials to be reticent to share information and facts concerning actions being undertaken or potentially to taken because the information they provide would be made public. *Id.* ¶¶ 9-10. Full and honest discussions are imperative when issuing legal advice in general, and in this instance the Privacy Act, to ensure proper use, collection, and maintenance of information the Postal Service obtains from private individuals. *See, e.g., Reps. Comm.*, 567 F. Supp. 3d at 120 (concluding that it was enough for an agency to state: "Routine disclosure of information protected by attorney-client and/or attorney work product privilege would shake the very foundation of the legal profession, as clients would not feel comfortable asking for advice and attorneys would not feel comfortable providing it.").

Thus, there is foreseeable harm in releasing the information withheld.

## III.   **Defendant Complied with FOIA's Segregability Requirement**

The Postal Service complied with its partial disclosure obligations. Under the FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information subject to FOIA must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b). Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242,

260 (D.C. Cir. 1977).  To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated.  *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008).  "It is by now firmly engrained that an agency may provide sufficient justification by describing the materials withheld, the exemption under which they were withheld, and an affidavit attesting that 'it released all segregable material.'"  *De Sousa v. CIA*, 239 F. Supp. 3d 179, 202–03 (D.D.C. 2017) (citing *Loving v. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008) (stating that "the description of the document set forth in the *Vaughn* index and the agency's declaration that it released all segregable material" are "sufficient for [the segregability] determination"); *Johnson v. Exec. Off. for U.S. Attys.*, 310 F.3d 771, 776 (D.C. Cir. 2002)).  An "agency is not required to provide so much detail that the exempt material would be effectively disclosed."  *Johnson*, 310 F.3d at 776 (citation omitted). Moreover, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

The Postal Service conducted a line-by-line review of the responsive records to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.  Castorina Suppl. Decl. (ECF No. 22 1) ¶ 11.  Based on the line-by-line review, all non-exempt information was segregated, and non-exempt portions were released.  *Id.*  Indeed, the redacted information at issue involves different drafts of the Privacy Act Statement.  Any "effort to segregate the 'factual' portions of the drafts, as distinct from their 'deliberative' portions, would run the risk of revealing 'editorial judgments—for example, decisions to insert or delete material

or to change a draft's focus or emphasis.' Such differences easily could be discerned by comparing the final letter with an earlier version." *Competitive Enter. Inst.,* 161 F. Supp. 3d at 132.  Thus, the Postal Service compiled with its partial disclosure obligations.

## CONCLUSION

Defendant has met its obligations under FOIA and established that there are no genuine issues as to any material fact in this case.  Specifically, Defendant has established that the searches conducted were reasonable and that the records withheld were withheld pursuant to applicable FOIA exemptions.  Accordingly, for the reasons set forth above, Defendant respectfully requests that this Court grant summary judgment in Defendant's favor.

Dated: March 8, 2024
      Washington, DC

<div style="margin-left: 40%;">

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar. #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:       */s/ Patricia King McBride*
     PATRICIA KING MCBRIDE
     Assistant United States Attorney
     601 D Street, NW
     Washington, DC 20530
     (202) 252-7123

*Attorneys for the United States of America*

</div>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICANS FOR FAIR TREATMENT,

Plaintiff,

v.

UNITED STATES POSTAL SERVICE,

Defendant.

Civil Action No. 22-1183 (RCL)

## **[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' renewed motion for summary judgment, and the entire record herein, it is hereby

ORDERED that Defendant's renewed motion is GRANTED; it is further

ORDERED that summary judgment is entered for Defendant.

SO ORDERED.

Date: _____          _____

United States District Judge