UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICANS FOR FAIR TREATMENT,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE,<br><br>Defendant. | Civil Action No. 22-1183 (RCL) |

## **SUPPLEMENTAL DECLARATION OF JANINE CASTORINA**

I, Janine Castorina, make the following Supplemental Declaration in lieu of affidavit in accordance with the provisions of 28 U.S.C. § 1746.  I understand that my declaration may be introduced into the record of the above captioned action, or any other grievance, administrative proceeding, or suit pending in a court of law.

1.     I am over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration.

2.     This declaration supplements the declarations I provided in the above-captioned matter.

### **Adequacy of the Search**

3.     As to the search for item #1 of the FOIA request, my office did not use a date range and instead, to maximize the scope of the search, we used the email addresses for myself, Christopher Lind, Christopher Gillespie, Kimberly Workinger, Christopher Karpenko, Heather Dyer, and the search term "Privacy Statement," and the full Privacy Statement itself, that was referenced in the request, through the Postal Service's Information Catalog Program ("CP").  The Postal Service's ICP is the group that has access to the email repository and that conducts the email searches for all requests.  That search returned no records.  The Privacy and Records Management personnel

searched their own email archives and found some documents. Those documents contained the terms "810" and/or "Privacy Statement." As a result, each of the aforementioned individuals were directed to search their individual Outlook inboxes using the search terms "810" or "Privacy Statement." That search revealed the nine pages of responsive records, that were originally produced to Plaintiff and are at issue in this litigation.

4.     As to item #2, Ray Donohue, Managing Counsel of Labor Law, who oversees all legal matters concerning labor organizations for the Postal Service, conducted a search through his own files, emails and digital files. Mr. Donohue does not keep paper files. Mr. Donohue also assisted the search by contacting Labor Relations and requesting that they search their own files. Labor Relations is the Postal Service's department with direct union contact, for union management and responses to union inquiries. Labor Relation is split into four sections. There is one section for each of the labor unions: the American Postal Workers Union ("APWU"), the National Association of Letter Carriers ("NALC"), the National Postal Mail Handlers Union ("NPMHU"), and the National Rural Letter Carrier's Association ("NRLCA"). Each union has a different department head who tracks union requests. That individual logs each union request and ensures that the requests are responded to, as required by law. The individuals maintain spreadsheets for their respective unions to track the union requests for information. All four department heads searched their respective spreadsheets to determine if their respective unions requested test-kit information. The search was conducted looking at all union requests for the year. This search revealed no responsive records.

5.   Pursuant to the Court order, my office conducted a search for responsive records as it relates to Christopher Karpenko, Heather Dyer and Kimberly Workinger. We used the search terms from the Privacy Act Statement that Plaintiff's cited without reference to a date range. We

also searched our email archives using the term "Privacy Act Statement," to cull through the variety of statements drafted in order to isolate the one at issue. We then used the records that we located as the base for a new ICP search of the same custodians. We located an additional 14 pages of responsive material. We applied the appropriate redactions to the documents and provided them to the Department of Justice for production.

6.    Shortly after the Court order, my office conducted and additional search for any records related to a revision of the Privacy Act Statement.   We used the search terms "Privacy Concern" and "Test Kit Web Info" in conjunction with the respective email addresses for myself, Christopher Lind, Christopher Gillespie, Kimberly Workinger, Christopher Karpenko, Heather Dyer, Thomas Marshall, Peter Pastre, and Jeffrey Adams.  We decided on the search terms in the same was as our other search. The Privacy and Records Management Office personnel searched their own emails for responsive emails. After locating the responsive emails, we used those emails as the base for the search terms. The search terms used are broad and specific enough to capture any responsive records that related to a revision of the Privacy Act Statement and reflected a term used in email subject lines, from responsive records we located.  The email addresses used were targeted to capture individuals at the Postal Service who would be involved with any revision to the Privacy Act Statement.  Janine Castorina, Chris Lind and Christopher Gillespie all work for the Privacy and Records Management Office and would be involved in the revision because that is the office that governs the Privacy Act Statements.  Kimberly Workinger, Christopher Karpenko and Heather Dyer all jointly have control over the test-kit website and would therefore be involved in the revision, at least to the extent that they would be provided the revision to post on the website. Jeffrey Adams is the Vice President of Corporate Communications and would be involved in the revision to the extent that it was the result of outside comments and concerns.  Peter Pastre is the

Vice President of Government Relations and would be involved in the revision for the same reasons as Jeffrey Adamas. Thomas Marshall is the General Counsel. The Privacy and Records Management Office falls within the Law Department and therefore, the General Counsel would be copied on revisions, given the visibility of the test-kit initiative. The search criteria used for this search differs from the prior searches because the discussion concerning the revision occurred separately from the creation of the Privacy Act Statement and occurred during a different timeframe. Twenty-seven responsive records were located. Those records were properly redacted and provided toe the Department of Justice for production to the Plaintiff.

7. By way of background, the creation and associated discussion of the Privacy Act Statement occurred between January 10, 2022, and January 11, 2022. On January 18, 2022, the COVID-19 test kit webpage, which included the original Privacy Act Statement, went live to the general public. On January 19, 2022, a staffer for U.S. Senator Ron Wyden emailed a postal employee concerning two issues, one of which concerned immigration and enforcement by U.S. Immigration and Customs Enforcement ("ICE"). This communication eventually made its way to Jeffrey Adams, Vice President of Corporate Communications, who then contacted the White House on January 25, 2022. Thereafter, the White House expressed concerns with the Privacy Act Statement as it related to the concerns raised by Senator Wyden's office. Following this, internal discussions concerning any revision to the Privacy Act Statement were limited in time to January 26, 2022, to January 27, 2022. On January 28, 2022, the revised Privacy Act Statement went live on the COVID-19 test-kit webpage. Because we knew the exact timing the revision was put on the webpage, we were able to go back through our emails to locate several emails that involved in the discussion surrounding the revision to the Privacy Act Statement. The discussion was one long

email conversation and so we isolated the appropriate terms and requested that ICP conduct a search using those terms.

**<u>Exemption 5</u>**

8.      *<u>Deliberative Process Privilege:</u>* Exemption 5 permits the Postal Service to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." 5 U.S.C. § 552(b)(5). Courts have found Exemption 5 to "exempt those documents, and only those documents, that are normally privileged in the civil discovery context," including the deliberative process privilege, the attorney-client privilege, and the attorney work-product privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see also Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987). The deliberative process privilege of Exemption 5 protects from disclosure records that reflect opinions, advice, recommendations, and other deliberations comprising part of a process by which federal governmental decisions and policies are formulated. *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).

9.      As to the additional responsive records produced, pages USPS_11 – USPS_36, the bodies of certain emails were redacted to protect internal communications amongst the Postal Service's legal counsel and internal clients, including myself; Louis DeJoy, Postmaster General; Thomas Marshall, Executive Vice President and General Counsel; Peter Pastre, Vice President of Government Relations, Jeffrey Adams, Vice President of Corporate Communications, Kimberly Workinger, Manager of Digital Marketing, Heather Dyer, Chief Information and Security Officer and Vice President, Gary Barksdale, Chief Postal Inspector,

as well as numerous contractors.  The communications reflect on-going discussions about external concerns about immigration and the Privacy Act Statement and its impact on the COVID-19 test kit webpage.  There were various discussions about internal concerns and potential revisions to the Privacy Act Statement.  The redacted communications are pre-decisional because they occurred before any final actions were taken relating to any revision of the Privacy Act Statement.  The communications are also deliberative because they consist of internal discussions about external concerns about the Statement and various drafts reflecting revisions thereto.  These on-going discussions and revisions reflect the Postal Service's attempts to respond to and address external and legal concerns with any changes to the Statement.  The final statement is reflected on the website.

10.     _Attorney Client Privilege_: The attorney-client privilege covers "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice."  *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).  This privilege protects "communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'"  *Tax Analysts v. IRS,* 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984).  Courts may infer confidentiality where communications suggest that "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980); *see also Tax Analysts*, 117 F.3d at 618 ("In the government context, the 'client' may be the agency and the attorney may be an agency lawyer.").

11.     The privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege."  *Fisher v. United States*, 425

U.S. 391, 403 (1976).  As to the responsive records labeled USPS-1, USPS-2, and USPS-3, the communications are properly protected by the attorney-client privilege because the communications incorporate confidential information from internal clients including Kimberly Workinger and Heather Dyer.  A Privacy Act Statement is tailored to the nature of the information that is being used, collected, and maintained.  Ms. Workinger and Ms. Dyer disclosed, through various phone calls with me, the nature of the information that was to be used, collected, and maintained through the COVID-19 test kit webpage as well as their concerns as to the applicability of the Privacy Act.  The communications amongst myself, Christopher Gillespie, and Christopher Lind, reflect the information and concerns disclosed to me, and the various drafts exchanged with my staff reflect different attempts to craft a Privacy Act Statement that would resolve any internal client concerns and ensure compliance with the Privacy Act.

12.     As to the responsive records related to a revision of the Privacy Act Statement, the deliberative process privilege and attorney-client privilege aptly applies to certain information redacted, as explained below, and as specified in the accompanying *Vaughn* index.

13.     As to the additional responsive records, the bodies of certain email communications have been redacted to protect confidential communications between internal clients and postal attorneys and those communications incorporating attorney recommendations.  These emails arise from internal client requests for legal advice as to responding to external concerns about the Privacy Statement and immigration.  This is detailed below and identified by page number and date-stamped email correspondence.

    a.  USPS_14, date-stamped January 27, 2022, at 4:24 p.m.:  The substance of the relevant communication reflect a recommendation from Christopher Gillespie, who is a Privacy Analyst and attorney of the Privacy and Records Management Office.  The recommendation reflects Mr. Gillespie's analysis of the Privacy Act as it

implicated a revision of the Statement. That recommendation was a result of a request for legal advice from internal clients including Ms. Workinger, Ms. Dyer, and Mr. Karpenko as it related to external concerns as to the interplay of immigration issues and the Privacy Statement.

b. USPS_17, date-stamped January 27, 2022, at 4:05 p.m.: It is an email communication from Thomas Marshall, General Counsel, to internal clients, such as Postmaster General Louis DeJoy and myself. The communication reflects his legal advice as to the revision of the Statement as it related to the aforementioned external concerns.

c. USPS_17 and USPS_35, date-stamped January 27, 2022, at 2:57 p.m.: It is an email communication from Jeffrey Adams, Vice President of Corporate Communications, reflecting internal discussions concerning legal advice on the revision to the Statement and its impact on public concerns. The communication was made to Postmaster General Louis DeJoy among others such as myself.

d. USPS_18 – USPS_19 and USPS_25 – USPS_26, date-stamped January 26, 2022, at 8:38 p.m.: It is an email communication from Jeffrey Adams, Vice President of Corporate Communications, reflecting internal discussions concerning legal advice on the revision to the Statement and its impact on public concerns. The communication was made to Postmaster General Louis DeJoy among others such as myself.

e. USPS_20 and USPS_27 – USPS_28, date-stamped January 26, 2022, at 4:33 p.m.: It is an email from Thomas Marshall, General Counsel, concerning his legal advice about revisions to the Statement.

f. USPS_20 and USPS_28, date-stamped January 26, 2022, at 4:27 p.m.: It is an email from myself relaying my legal advice about revisions to the Privacy Statement.

g. USPS_21 and USPS_28 – USPS_29, date-stamped January 26, 2022, at 3:57 p.m.: It is an email where Thomas Marshall, General Counsel, is requesting my recommendation about the revisions to the Statement and conveying his particular concerns about it.

h. USPS_21 and USPS_29, date-stamped January 26, 2022, at 3:37 p.m.: It is an email from Jeffrey Adams, Vice President of Corporate Communications, conveying confidential information about his impressions about external concerns about the Statement and immigration and requesting corresponding legal advice related thereto.

i. USPS_25, date-stamped January 27, 2022, at 7:46 a.m.: It is an email from myself in response to a legal question raised by Peter Pastre, Vice President of Government Relations, in regard to the Statement. I responded with legal advice and recommendations.

j.   USPS_25, date-stamped January 26, 2022, at 10:31 p.m.:  It is an email from Peter Pastre, Vice President of Government Relations, in regard to the Statement and his concerns and raised a related legal question.

k.   USPS_25, date-stamped January 26, 2022, at 8:47 p.m.:  It is an email from Thomas Marshall, General Counsel, relaying his legal advice regarding the revisions to the Statement.

### Exemption 6

14.   As to the responsive records concerning the revision of the Privacy Act Statement, mobile phone numbers and postal email addresses were redacted under Exemption (b)(6) because the information pertained to specific individuals and disclosure of this information would constitute an unwarranted invasion of personal privacy.

15.   Under Exemption 6, the Postal Service may withhold "personnel files and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  This exemption covers all records and information about an individual and is not limited to intimate details or highly personal information.  *DOS v. Wash. Post Co.*, 456 U.S. 595, 600-602 (1982).  The personal privacy interests protected under Exemption 6 include, but are not limited to, an individual's interest in avoiding embarrassment, harassment, retaliation, annoyance or other adverse effect that would result from the public disclosure of the information pertaining to the individual.  *Judicial Watch, Inc. v. DOS*, 875 F. Supp. 2d 37, 46 (D.D.C. 2012) (collecting cases).  Records revealing work email addresses and work cell phone numbers qualify as personnel records under Exemption 6.  *Id*. at 47; *see also Smith v. Dep't of Treasury*, 2020 WL 376641, at *4 (D.D.C. 2020) ("Disclosing the numbers for work cell phones, which employees maintain in their homes and on their person, could subject them to the type of harassment exemption 6 was designed to prevent, and therefore the court finds that the Treasury employees maintain a privacy interest in protecting their work cell phone numbers."); *Competitive Enter. Inst. v. EPA*, 12 F. Supp. 3d 100, 123 (D.D.C. 2014) (noting that Federal

employees "have a powerful privacy interest in their work email addresses while they are employed"). This applies with equal measure to personal emails and mobile numbers. *See, e.g., Shurtleff v. United States v. EPA*, 991 F. Supp. 2d 1, 18 (D.D.C. 2013) (finding it proper under Exemption 6 to redact cell phone numbers, home phone numbers, home addresses, and personal email addresses).

16. Under Exemption 6, a requester may overcome an individual's privacy interest only if the requester shows that the requester seeks to advance a public interest and disclosure of the records will advance that public interest. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). The only public interest cognizable under Exemption 6 is the extent to which public disclosure of the record or information would significantly contribute to public understanding of the federal government's operations or activities. *Id*. Under Exemption 6, even a very slight privacy interest by an individual may be enough "to outweigh a negligible or nonexistent public interest." *DOD v. FLRA*, 510 U.S. 487, 497, 500 (1994).

17. Personal and Government employee email addresses mobile phone numbers fall within the scope of Exemption 6 as information that identifies specific individuals. The Postal Service balanced the privacy interests of the individuals implicated in the responsive information against any public interest in disclosure. These individuals have privacy interests in their work and personal email addresses and mobile phone numbers. Disclosure of this information could subject these individuals to unwarranted harassment. Notably, Government employees would be subjected to unwanted phone calls while on and off duty. Mobile phones, unlike an office line, travels to and from an employee's home. Similarly, disclosing employee email addresses would subject them to unsolicited emails that have nothing to do with their daily responsibilities such as phishing schemes and spam messages. Revealing this information would not serve the core

purpose of FOIA by shedding light on the operations or activities of the Postal Service.  Thus, the privacy interests at stake far outweigh any *de minimis* public interest in disclosure.

**Foreseeable Harm**

18.     As to all responsive records in the instant matter, foreseeable harm exists in disclosing the information withheld.

19.     *Deliberative Process Privilege*: Disclosing substantive email communications would prevent Postal Service officials, employees, and attorneys from speaking candidly amongst each other and would otherwise discourage its employees from seeking legal advice.  This would harm the Postal Service's ability to ensure that the requirements of the Privacy Act met and preserving the ability for internal clients to freely communicate questions and concerns.  Officials to be reticent to share information and facts concerning actions being undertaken or potentially to taken because the information they provide would be made public.  Full and honest discussions are imperative when issuing legal advice in general, and in this instance the Privacy Act, to ensure proper use, collection, and maintenance of information the Postal Service obtains from private individuals.  For instance, disclosure would reveal internal discussions about executives' and attorneys' opinions and impressions of the legal impact of certain turns of phrases in the Privacy Act Statement.

20.     Disclosure could also reveal recommendations, strategies, and legal opinions involving public concern about the Statement.  For instance, it could reveal the thoughts, impressions, discussions about postal strategy and proposed responses to public and governmental concerns. As noted above, various records reveal public concern about immigration and other postal issues as well as concerns from the White House.  The what, when, and how the Postal Service responded to such was deliberated by high ranking postal executives, including the Postmaster General.

Revealing their communications would impair the Postal Service's ability to make sound agency decisions because executives would be reticent to share their thoughts amongst one another and their legal counsel.

21.    Indeed, disclosure would chill communications amongst Postal Service employees, officials, and attorneys because their discussions about draft materials as well as legal, business, and media strategies would be revealed.  Revealing internal policy-making and legal discussions would also hinder postal officials from contacting postal attorneys for their advice and recommendation and thereby, prevent postal officials from making appropriate judgments on behalf of the Postal Service.  Disclosure would also impair the Postal Service's relationship with other government entities, such as the White House.  The redacted communications include those between postal employees and a White House employee as well as those between postal employees discussing, and thereby incorporating, concerns raised by the White House.   If such communications revealed, the White House would be unlikely to engage in full and frank communications with the Postal Service.  Such communications are necessary as government entities make proposals and share strategies amongst one another to serve the public.  Disclosure would impair the Postal Service's ability to coordinate with the White House in the present and future.  Such coordination is essential to serving the public, as the COVID-19 test kit program itself demonstrates.   Ultimately, revealing such communications would harm the Federal Government's ability to function within itself.

22.    Disclosure would also allow confidential discussions to be misconstrued by the public.  Without the benefit of context, opinions, recommendations, and strategies could be misappropriated and misstated.  This would place postal employes, officials, and attorneys in the

position of having to defend against public confusion and distortions related to the COVID-19 test kit webpage and the Postal Service's application and use of its Privacy Statement.

23.     Disclosing portions of the emails that are not specifically deliberative in nature, but which are inextricably intertwined with the deliberative portions, would also cause harm. Releasing inextricably intertwined information would cause undue confusion and potential speculation as to the nature and content of the deliberative portions and reveal legal advice and recommendations from postal attorneys.  This is evidenced by the communications themselves which were part and parcel of the on-going discussions concerning the language to be used in the Privacy Act Statement including potential revisions thereto.  These communications reflect a snapshot of these on-going deliberations.  As such, the redacted information was properly withheld under the deliberative process privilege.

24.     *Attorney-client privilege:* Certain identified communications consist of email communications between postal attorneys and internal clients and amongst such attorneys while other communications incorporate legal advice rendered to internal clients and confidential client information conveyed for the purposes of obtaining legal advice about the language of the Privacy Act Statement and the Postal Service's strategies and discussions with regard to public and White House concerns about that Statement and the COVID-19 Test Kit webpage.  Revealing nascent attorney and internal client impressions about various iterations of the Privacy Statement, potential revisions thereto, and external concerns from the public and the White House would negatively impact the Postal Service's ability to appropriately respond to legal issues and public concerns. Exposing such communications to public scrutiny would interfere with the attorney-client relationship between postal attorneys and internal clients by impeding the sharing of candid advice that is critical to an attorney's ability to render legal advice.  Disclosing such information would

also reveal confidential information transmitted by internal clients and reveal the Postal Service's assessment of various legal issues implicating the Privacy Statement.   Thus, the redacted information was properly withheld under the attorney-client privilege.

25.     *Exemption 6:* As noted above, disclosure of work mobile phone numbers and email addresses of the various individuals implicated the relevant records could subject these individuals to unwarranted harassment.   Government employees would be subjected to unwanted phone calls while on and off duty.   Similarly, disclosing employee email addresses would subject them to unsolicited emails that have nothing to do with their daily responsibilities.   Accordingly, the redacted information is appropriately withheld under Exemption 6.

## Segregation of Non-Exempt Information

26.     The Postal Service carefully reviewed the 27 pages of responsive records produced as a result of its search for records related to a revision of the Privacy Statement and only withheld from disclosure information that was exempt under Exemptions 5 and 6.   A line-by-line review of the records showed that some non-exempt information such as email subject lines, dates, employee names, titles, and office addresses could be released.

27. The Postal Service also carefully reviewed the 14 pages of responsive records produced as a result of the additional search of the email records of Christopher Karpenko, Heather Dyer and Kimberly Workinger with regard to the original Privacy Act Statement. The Postal Service only withheld from disclosure information that was exempt under Exemptions 5 and 6.   A line-by-line review of the records showed that some non-exempt information such as email subject lines, dates, employee names, titles, and office addresses could be released.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing declaration is true and correct.  Executed in Washington, D.C., on March 7, 2024.


_____
Janine Castorina
Chief Privacy and Records Officer
United States Postal Service