## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICANS FOR FAIR TREATMENT,

　　　　　　*Plaintiff*,

　　　v.

UNITED STATES POSTAL SERVICE, *et al.*,

　　　　　　*Defendants*.

Civil Action No. 22-1183 (RCL)

## ERRATA - DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendants the United States Postal Service (the "Postal Service" or the "Agency"), Postmaster General Louis DeJoy, and General Counsel Thomas Marshall (collectively, the "Postal Service") respectfully move for summary judgment as to Plaintiff's remaining claims. This Motion is accompanied by a Memorandum of Law, the Second Supplemental Declaration of Janine Castorina, the exhibits attached thereto, a Second Statement of Undisputed Material Facts, and a proposed Order.

Dated: July 31, 2024
Washington, D.C.

Respectfully submitted

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: ＿＿/s/ Patricia K. McBride＿＿＿
　　PATRICIA K. McBRIDE
　　Assistant United States Attorney
　　601 D Street NW
　　Washington, D.C. 20530
　　(202) 252-7123

*Attorneys on behalf of the United States of America*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AMERICANS FOR FAIR TREATMENT,

    *Plaintiff*,

      v.

UNITED STATES POSTAL SERVICE, *et al.*,

    *Defendants*.

Civil Action No. 22-1183 (RCL)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
<u>RENEWED MOTION FOR SUMMARY JUDGMENT</u>**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

PATRICIA KING McBRIDE
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 252-7123
Patricia.McBride@usdoj.gov

*Attorneys on behalf of the United States of America*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND AND FACTS ............................................................................................ 2

I.      The Postal Service COVID-19 Rapid Test Webform ............................................. 2

II.     Plaintiff's FOIA Request and the Postal Service's Response ................................. 3

III.    District Court Litigation ......................................................................................... 4

LEGAL STANDARDS ....................................................................................................... 6

I.      Summary Judgment Under Rule 56 ....................................................................... 6

II.     Summary Judgment Standard in FOIA Cases ....................................................... 7

ARGUMENT ..................................................................................................................... 8

I.      Defendant Performed Reasonable Searches ......................................................... 8

        A.      The Agency's Searches ............................................................................. 9

                1.      Item No. 1 ..................................................................................... 9

                2.      Item No. 2 ................................................................................... 12

                3.      The Postal Service's Searches Were Adequate Under the FOIA ............. 12

II.     Defendant Properly Applied FOIA Exemptions ................................................. 13

        A.      The Postal Service Appropriately Applied the Attorney-Client Privilege ............ 14

        B.      The Postal Service Appropriately Applied the Deliberative Process Privilege .... 16

        C.      The Postal Service Complied with FOIA's Foreseeable Harm Requirement ....... 20

III.    Defendant Complied with FOIA's Segregability Requirement ........................... 22

CONCLUSION ................................................................................................................. 24

# TABLE OF AUTHORITIES

## Cases

*Access Rep. v. Dep't of Just.*, 926 F.2d 1192 (D.C. Cir. 1991) ...................................................... 18

*Alexander v. FBI*, 186 F.R.D. 154 (D.D.C. 1999) ........................................................................... 16

*Alexander v. FBI*, 198 F.R.D. 306 (D.D.C. 2000) ........................................................................... 16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 6, 7

*Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.,* 370 F. Supp. 3d 116 (D.D.C. 2019) ......................................................................................................................................................... 16

*Armstrong v. Exec. Off. of the President*, 97 F.3d 575 (D.C. Cir. 1996) ...................................... 23

*Baldridge v. Shapiro*, 455 U.S. 345 (1982) ................................................................................... 13

*Campaign Legal Ctr. v. Dep't of Just.*, 34 F.4th 14 (D.C. Cir. 2022) ........................................... 19

*Canning v. Dep't of Just.*, 567 F. Supp. 2d 104 (D.D.C. 2008) ..................................................... 23

*Cause of Action Inst. v. Dep't of Just.*, 330 F. Supp. 3d 336 (D.D.C. 2018) ............................... 16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 6, 7

*Citizens for Resp. & Ethics in Wash. v. Dep't of Educ.,* 905 F. Supp. 2d 161 (D.D.C. 2012) ....... 20

*Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 161 F. Supp. 3d 120 (D.D.C. 2016) .... 20, 24

*Customs & Int'l Trade Newsletter v. Customs & Border Prot.*, 588 F. Supp. 2d 51 (D.D.C. 2008)7

*De Sousa v. CIA*, 239 F. Supp. 3d 179 (D.D.C. 2017) ................................................................... 23

*Dudman Commc'ns v. Dep't of Air Force*, 815 F.2d 1565 (D.C. Cir. 1987) .................... 18, 19, 21

*Elec. Priv. Info. Ctr. v. Dep't of Just.*, 511 F. Supp. 2d 56 (D.D.C. 2007) .................................... 16

*FBI v. Abramsom,* 456 U.S. 615 (1982) ........................................................................................ 14

*Fisher v. United States*, 425 U.S. 391 (1976) ............................................................................... 15

*Gellman v. Dep't of Homeland Sec.*, 525 F. Supp. 3d 1 (D.D.C. 2021) ........................................ 19

*Goodrich Corp. v. EPA*, 593 F. Supp. 2d 184 (D.D.C. 2009) ....................................................... 18

*Hall & Assocs. v. EPA,* 956 F.3d 621 (D.C. Cir. 2020) ................................................................. 14

*Hall & Assocs. v. EPA*, No. 18-cv-1749, 2021 WL 1226668 (D.D.C. 2021) ............................... 18

*In re Lindsey*, 148 F.3d 1100 (D.C. Cir. 1998) ............................................................................. 15

*In re Sealed Case*, 737 F.2d 94 (D.C. Cir. 1984) ......................................................................... 15

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146 (1989) .......................................................... 14

*Johnson v. Exec. Off. for U.S. Attys.*, 310 F.3d 771 (D.C. Cir. 2002) .......................................... 24

*Jud. Watch, Inc. v. Dep't of State*, 557 F. Supp. 3d 52 (D.D.C. 2021) ......................................... 21

*Loving v. Dep't of Def.*, 550 F.3d 32 (D.C. Cir. 2008) ................................................................. 23

*Machado Amadis v. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020) ........................................ 17, 20

*Mapother v. Dep't of Just.*, 3 F.3d 1533 (D.C. Cir. 1993) ........................................................... 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..................................... 7

*McGehee v. CIA*, 697 F.2d 1095 (D.C. Cir. 1983) ......................................................................... 8

*Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977) .............................. 23

*Muhammad v. Customs & Border Prot.*, 559 F. Supp. 2d 5 (D.D.C. 2008) .................................. 14

*Nat'l Sec. Archive v. CIA*, 752 F.3d 460 (D.C. Cir. 2014) ............................................................ 17

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) .................................................................. 17

*Oglesby v. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990 ................................................................. 9

*Perry v. Block*, 684 F.2d 121 (D.C. Cir. 1982) ................................................................ 14

*Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 330 F. Supp. 3d 373 (D.D.C. 2018)........... 18

*Pub. Emps. for Env't Resp. v. EPA*, 211 F. Supp. 3d 227 (D.D.C. 2016) ...................................... 15

*Reinhard v. Dep't of Homeland Sec.*, No. 18-cv-1449, 2019 WL 3037827 (D.D.C. 2019).......... 18

*Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194 (D.D.C. 2007) .............. 18

*Reps. Comm. for Freedom of the Press v. Customs & Border Prot.*, 567 F. Supp. 3d 97 (D.D.C. 2021)........................................................................................................................ 22, 23

*Russell v. Dep't of Air Force*, 682 F.2d 1045 (D.C. Cir. 1982) .................................................... 18

*Russell v. FBI*, No. 03-0611, 2004 WL 5574164 (D.D.C. Jan. 9, 2004)........................................ 7

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991) ..................................................... 9

*Skull Valley Band of Goshute Indians v. Kempthorne,* No. 04-cv-339, 2007 WL 915211 (D.D.C. 2007)............................................................................................................................... 16

*Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106 (D.C. Cir. 2007) ............................................ 24

*Sweats Fashion Inc. v. Pannill Knitting Co.,* 833 F.2d 1560 (Fed. Cir. 1987).............................. 7

*Tao v. Freeh*, 27 F.3d 635 (D.C. Cir. 1994)................................................................................. 6

*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ............................................................ 15

*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) ......................................................................... 8

*ViroPharma Inc. v. Dep't of Health & Hum. Servs.*, 839 F. Supp. 2d 184 (D.D.C. 2012)........... 18

*Weisberg v. Dep't of Just.*, 627 F.2d 365 (D.C. Cir. 1980) .......................................................... 8

*Weisberg v. Dep't of Just.*, 745 F.2d 1476 (D.C. Cir. 1985) ........................................................ 9

*Wheeler v. Dep't of Just.*, 403 F. Supp. 2d 1 (D.D.C. 2005) ..................................................... 7, 8

## Statutes

39 U.S.C. § 410(c)(2).................................................................................................................. 4

5 U.S.C. § 552(a) ...................................................................................................................... 20

5 U.S.C. § 552(b) ................................................................................................................. 13, 23

5 U.S.C. § 552(b)(5) .................................................................................................................. 17

## Rules

Fed. R. Civ. P. 56(a) .............................................................................................................. 8, 10

Defendants the United States Postal Service (the "Postal Service" or the "Agency"), Postmaster General Louis DeJoy, and General Counsel Thomas Marshall[1] submit this memorandum in support of their Renewed Motion for Summary Judgment. Summary judgment should be entered in Defendants' favor on all remaining claims pursuant to Federal Rule of Civil Procedure ("Rule") 56.

## INTRODUCTION

This case involves Plaintiff's Freedom of Information Act ("FOIA") claims based on requests for Postal Service records pertaining to a Privacy Act Statement posted on the Agency's website for COVID-19 tests delivered through the Postal Service. Plaintiff's claims are meritless and appear to be based on mistaken understandings of the nature of statements required under the Privacy Act and the inclusion of "routine uses" in such statements.

The Postal Service is entitled to summary judgment with respect to Plaintiff's FOIA claims. The Agency conducted reasonable searches in the locations where responsive records were likely to be found as to both components of this request. Prior to this litigation, the Postal Service produced nine pages of emails and withheld segregable attorney-client communications, deliberative material, and contact information of Postal Service employees. During the course of this litigation, the Postal Service conducted additional searches in compliance with the Order of this Court, resulting in the production of 41 additional pages of emails, subject to similar redactions under the FOIA. The Agency's reliance on these exemptions was appropriate.

For these reasons, and as discussed more fully below, the Court should grant this motion and enter summary judgment in favor of Defendants as to Plaintiff's remaining claims.

---

[1] As the individual Defendants have been sued in their official capacities and for the same claims as the Postal Service, this motion refers to all three Defendants together as the "Postal Service."

## BACKGROUND AND FACTS

### I.  <u>The Postal Service COVID-19 Rapid Test Webform</u>

In January 2022, the U.S. Postal Service began to develop a webpage through which members of the American public could request COVID-19 rapid antigen tests. *See, e.g.*, Supplemental Declaration of Janine Castorina, ECF No. 22-1 ("Castorina Supp. Decl.") ¶ 4. In the first week of January 2022, Postal Service employees Heather Dyer, Vice President of the Corporate Information Security Office (Chief Information Security Officer); Chrstopher Karpenko, Executive Director of Brand Marketing; and Kimberly Workinger, Digital Brand Marketing Manager, called Chief Privacy and Records Management Officer Janine Castorina to request legal advice to ensure that the COVID-19 rapid test webform was compliant with the Privacy Act, 5 U.S.C. § 552a. Castorina Supp. Decl. ¶ 4.  After discussing the webform with Ms. Dyer, Mr. Karpenko, and Ms. Workinger, Ms. Castorina spoke with Privacy and Records Compliance Specialist Christopher Gillespie and Privacy and Records Manager Christopher Lind to discuss the need for a Privacy Act Statement to display on the site.  Castorina Supp. Decl. ¶ 4. Following these discussions, Ms. Castorina, Mr. Gillespie, and Mr. Lind drafted a Privacy Act Statement for the COVID-19 rapid test webform.  *Id*.  Drafts of the Privacy Act Statement were circulated exclusively via email by the three staff members.  Declaration of Janine Castorina, ECF No. 14-2 ("Castorina Decl.") ¶ 16.  The COVID-19 rapid test webform was first published at https://special.usps.com/testkits on January 18, 2022.  *See* Second Supplemental Declaration of Janine Castorina ("Castorina 2d Supp. Decl.") ¶ 9 (full text of original Privacy Act Statement).

On January 19, 2022, a staff member for the office of U.S. Senator Ron Wyden emailed the Privacy and Records Management Office's email address, privacy@usps.gov, inquiring whether the Privacy Act Statement, which permitted information disclosure "for law enforcement

purposes," could result in personal information being shared with U.S. government immigration agencies. *Id.* ¶ 11; *see also* USPS_23. Postal Service Vice President of Corporate Communications Jeffery Adams then emailed with Subhan Cheema of the White House's COVID-19 Response Team regarding the Privacy Act Statement. Castorina 2d Supp. Decl. ¶ 11; *see also* USPS_22. On January 26 and 27, 2022, several Postal Service employees, including Ms. Castorina and General Counsel Thomas Marshall, met and corresponded regarding revisions to the Privacy Act Statement. Castorina 2d Supp. Decl. ¶ 11; *see also* USPS_10–USPS_21.

On January 28, 2022, the COVID-19 rapid test webform was updated to include a revised Privacy Act Statement. Castorina 2d Supp. Decl. ¶ 10 (full text of revised Privacy Act Statement). The Postal Service did not revise the Privacy Act Statement appearing on the COVID-19 rapid test webform at any time after January 28, 2022. *Id.*

## II.   <u>Plaintiff's FOIA Request and the Postal Service's Response</u>

By letter dated February 7, 2022, Plaintiff Americans for Fair Treatment ("Plaintiff") submitted a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for the following:

> 1.   All records concerning the "Privacy Act Statement" contained on USPS's webform through which members of the public may order rapid antigen COVID-19 tests (https://special.usps.com/testkits). The records requested include, but are not limited to, those that reflect USPS's decision to depart from using its default "Privacy Act notice" that is "for personal information collected online"   (which is   published   at   https://about.usps.com/who/legal/privacypolicy/full-privacy-policy.htm) and instead to use a "Privacy Act Statement" that says the Postal Service may, without consent, disclose information it obtains about the public through the COVID-19 test webform to "labor organizations as required by applicable law."

> 2.   All records concerning the Postal Service's disclosure to any labor organization of information it obtained through the COVID-19 test webform.

ECF No. 1 ("Compl."), Ex. A.

The Postal Service conducted initial searches for records responsive to both parts of the FOIA request, as described in greater detail below. Castorina 2d Supp. Decl. ¶¶ 3-4.  With respect to the first portion of Plaintiff's request ("Item No. 1"), the Postal Service's Privacy and Records Management Office conducted searches for responsive records and produced nine pages of emails with redactions based on Exemption 3 (along with 39 U.S.C. § 410(c)(2)) (on which the Postal Service no longer relies), Exemption 5, and Exemption 6. *See id.* ¶ 4; *see also* USPS_1-USPS_9. With respect to the second portion of Plaintiff's request ("Item No. 2"), the offices within the Postal Service in which any responsive records were likely to be found— including in the Labor Law component of the Office of the General Counsel and the Labor Relations department—conducted searches for responsive records. Castorina 2d Supp. Decl. ¶¶ 5-6.  No responsive records were identified based on these searches, and Chief Privacy and Records Management Officer Janine Castorina, who is familiar with the Agency and its records, attests that no other places are likely to contain responsive records. *Id.*

## III.   <u>District Court Litigation</u>

Plaintiff filed suit in this Court on April 28, 2022, against the Postal Service, as well as the Postmaster General and the Postal Service's General Counsel in their official capacities (together, the "Postal Service"). *See* Compl., ECF No. 1. The complaint asserted four counts: (1) violation of FOIA by withholding responsive, non-exempt records, *id.* at 54-60; (2) violation of FOIA by failing to conduct an adequate search, *id.* at 61-68; (3) arbitrary and capricious or contrary-to-law action in violation of the APA by failing to allow an appeal to the head of the agency himself, *id.* at 69-75; and (4) *ultra vires* action by failing to allow an appeal to the head of the agency himself, *id.* at 76-80.

After briefing, the Court dismissed Counts III and IV of the Complaint pursuant to Defendant's motion to dismiss. *See* ECF No. 30 ("Mem. Op.") at 11.  The Court also granted in part and denied in part the Postal Service's motion for summary judgment. Specifically, the Court determined that the Postal Service did not adequately explain its search, as the Agency did not address three details required under applicable case law. *Id.* at 11-16.  First, the Court determined that the Postal Service's supporting affidavits did not adequately identify its search terms as to both items of the request or "the type of search performed" as to Item No. 2. *Id.* at 12-13, 16.  Second, the Court concluded that the Postal Service should have searched the records of three employees "who had some interaction about the Privacy Act Statement with the attorneys who were drafting it"—namely, Ms. Dyer, Mr. Karpenko, and Ms. Workinger. *Id.* at 13-14, 16. Third, the Court found that the Postal Service did not adequately explain why it did not search for documents related to a revision of the Privacy Act Statement that occurred before the Postal Service conducted a new search at the administrative appeal stage. *Id* at 14-16.  The Court further held that the Postal Service did not adequately explain its Exemption 5 withholdings, regarding attorney-client privilege in part, and did not carry its foreseeable-harm burden with respect to any of its Exemption 5 withholdings in that the agency failed to delineate its deliberative process privilege withholdings from its attorney-client privilege withholdings. *Id* at 17-26. The Court did not consider segregability.  *Id*. at 17.

Accordingly, the Court ordered the Postal Service (1) to conduct an additional search and give an adequate justification for that search in a manner consistent with its Memorandum Opinion; and (2) to file a new *Vaughn* Index and supporting affidavit explaining the propriety of its Exemption 5 withholdings. ECF No. 31 at 2-3.

Consistent with the Court's Memorandum Opinion and Order, the Postal Service has conducted an additional, adequate search for responsive records and as detailed in the Second Supplemental Declaration of Janine Castorina, it has explained the propriety of its Exemption 5 withholdings. The Postal Service therefore respectfully requests that the Court enter summary judgment in its favor for the reasons explained below.

## LEGAL STANDARDS

### I.   <u>Summary Judgment Under Rule 56</u>

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248. A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson*, 477 U.S. 242, 247-48 (emphasis in original). The moving party may discharge this burden by "'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Sweats Fashion Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1563 (Fed.

Cir. 1987); *see also Celotex*, 477 U.S. at 332. Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings and must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Anderson*, 477 U.S. at 252. Summary judgment is thus due if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [nonmovant]." *Id.*

## II.   **Summary Judgment Standard in FOIA Cases**

Courts generally and appropriately resolve FOIA cases on motions for summary judgment. *Customs & Int'l Trade Newsletter v. Customs & Border Prot.*, 588 F. Supp. 2d 51, 54 (D.D.C. 2008); *Russell v. FBI*, No. 03-0611, 2004 WL 5574164, at *2 (D.D.C. Jan. 9, 2004); *see also Wheeler v. Dep't of Just.*, 403 F. Supp. 2d 1, 5 (D.D.C. 2005) ("Summary judgment is the routine vehicle by which most FOIA actions are resolved."). Summary judgment should be granted when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any fact that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248.

An agency is entitled to summary judgment in a FOIA case if it demonstrates: (1) that it has conducted an adequate search for responsive records and (2) each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure. *See Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973); *Wheeler*, 403 F. Supp. 2d at 6.

**ARGUMENT**

Defendant is entitled to summary judgment because it has performed adequate searches reasonably designed to return responsive records and produced to Plaintiff any responsive, non-exempt records. Defendant has withheld from its productions only exempt information the release of which would foreseeably harm an interest protected by the FOIA. Finally, Defendant has satisfied FOIA's segregability requirement.

At this stage, Defendant has met each of the Court's prior requirements by (1) conducting the supplemental search ordered by the Court, (2) explaining in greater detail the search terms and the nature of the search performed in response to both items of Plaintiff's FOIA request, and (3) supplying additional information concerning the application of attorney-client privilege, the deliberative-process privilege, and the foreseeability of harm in relation to Defendant's withholdings under FOIA Exemption 5.

Accordingly, summary judgment in Defendant's favor is appropriate.

## I.   <u>Defendant Performed Reasonable Searches</u>

FOIA requires a responding agency to show that it has conducted a search reasonably devised to uncover the responsive records. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Where the agency has submitted reasonably detailed, nonconclusory affidavits, describing the scope of the search and why it was calculated to uncover all relevant documents, it has discharged its obligation under the FOIA. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Notably, the agency is not required to conduct a perfect search, but only one that is "adequate." *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1985).

As the Court indicated in its Memorandum Opinion dated March 23, 2024, the Postal Service's prior motion for summary judgment failed to explain the adequacy of its search "in

three ways and three ways only." Mem. Op. at 16. First, the supporting affidavits did not "set[] forth the search terms" used for either item of the request or "the type of search performed" with respect to the second item in Plaintiff's request. *Id*. (citing *Oglesby,* 920 F.2d at 68). Second, the Postal Service did not search the records of three employees who had some interaction about the Privacy Act Statement with the attorneys who were drafting it. *Id*. Third, the Postal Service did explain why it did not search for certain records that might have existed at the time of its search. *Id*. As described below, the Postal Service has now performed adequate searches in response to Plaintiff's FOIA request and supplied a detailed, nonconclusory affidavit describing its searches.

### A.    The Agency's Searches

The Postal Service, in the Second Supplemental Declaration of Janine Castorina submitted herewith ("Castorina 2d Supp. Decl.") and in the discussion below, has cured the deficiencies noted by the Court's Memorandum Opinion, by setting forth the search terms for the original search and delineating the type of search performed in the Postal Service's initial disclosure to Plaintiffs. *See* Mem. Op. at 16.

#### 1.    Item No. 1

The Postal Service's initial response to Plaintiff's FOIA request indicated that the Postal Service had no records responsive to Item No. 1 of the request. Castorina 2d Supp. Dec. ¶ 3. This determination was based on the Agency's interpretation of Item No. 1 as seeking records concerning the relationship between the Privacy Act Statement published on the COVID-19 rapid test webform and the Privacy Statement published on the site linked in Item No. 1. Castorina Decl., Ex. 1.

At the administrative appeal stage, the Postal Service, via the Office of the General Counsel,  interpreted Item No. 1 as seeking a broader scope of records concerning the COVID-

19 rapid test webform's Privacy Act Statement. *Id.* Accordingly, the Postal Service conducted a search from among the records of the individuals who participated in discussing and drafting the Privacy Act Statement in question—Ms. Castorina, Mr. Gillespie, and Mr. Lind of the Privacy and Records Management Office, along with Ms. Dyer, Mr. Karpenko, and Ms. Workinger. Castorina 2d Supp. Decl. ¶¶ 3-4. The first part of the search was performed via the Postal Service's Information Catalog Program ("ICP"), the office with access to the Postal Service's email repository for the purposes of conducting email searches. *Id.* Specifically, ICP conducted its search using (1) the term "Privacy Statement" and (2) the full text of the Privacy Act Statement used on the COVID-19 webform, enclosed in quotation marks. *Id.*

When that search returned no records, the Privacy and Records Management Office personnel—Ms. Castorina, Mr. Lind, and Mr. Gillespie—browsed their email archives and determined that the search terms "Privacy Act Statement" and "810" (the identifier corresponding to the Privacy Act System of Records for USPS.com registration information) might return responsive records. *Id.*  That search revealed nine pages of responsive records, which (after proper review and redaction, as discussed below) were produced to Plaintiff. *Id.*

The Court's March 2023 Order directed the Postal Service to conduct additional searches in relation to Item No. 1. Mem. Op. at 13-15.  Specifically, the Court ordered the Postal Service to search the records of Ms. Dyer, Ms. Workinger, and Mr. Karpenko and to search for records related to a revision of the Privacy Act Statement that occurred between the date of Plaintiff's FOIA request and the date of the Postal Service's search at the administrative appeal stage. *Id.*

First, the Postal Service performed a supplemental search of the records of Ms. Dyer, Mr. Karpenko, and Ms. Workinger. Castorina 2d Supp. Decl. ¶ 7.  Through ICP, the Postal Service searched each of these individuals' email archives using the same search terms as returned the

initial nine pages of responsive records—"Privacy Act Statement" and "810." *Id.* The Postal Service located 14 additional pages of responsive records. *Id.* Those records were properly reviewed and redacted and produced to Plaintiff. *Id.*

Next, the Postal Service conducted an additional search for any records related to a revision of the Privacy Act Statement. *See* Castorina 2d Supp. Decl. ¶¶ 8-12. The Postal Service did not revise the Privacy Act Statement at any time after Plaintiff submitted its FOIA request. *Id.* ¶ 10. However, an earlier revision had occurred, as described above. *Id.*

In order to locate records relevant to this revision, the Privacy and Records Management Office personnel reviewed their email archives for the date range in which discussions concerning this revision occurred. *Id.* ¶ 12. Accordingly, the Postal Service conducted an ICP search using the search terms "Privacy Concern" and "Test Kit Web Info"—terms appearing in relevant emails—in the email archives of Ms. Castorina, Mr. Lind, Mr. Gillespie, Ms. Dyer, Mr. Karpenko, and Ms. Workinger, along with Mr. Marshall, Peter Pastre (Vice President of Government Relations), and Jeffery Adams (Vice President of Corporate Communications), who also appeared on these emails. *Id.* The two search terms used were both broad enough and specific enough to capture any responsive records that related to the revision of the Privacy Act Statement. *Id.* And the email addresses used were targeted to capture individuals at the Postal Service who would be involved with any revision to the Privacy Act Statement. *Id.* The search criteria used for this search differed from the prior searches because the discussion concerning the revision occurred separately from the creation of the Privacy Act Statement and occurred during a different timeframe. *Id.* This search resulted in the location of 27 pages of responsive records, which were properly reviewed and redacted and produced to Plaintiff. *Id.*

2.      Item No. 2

As to Item No. 2, Ray Donahue, Managing Counsel of Labor Law, conducted the Postal Service's search for responsive records. *Id.* ¶ 5. Mr. Donahue oversees the Postal Service's legal matters concerning labor organizations. *Id.*  Accordingly, Mr. Donahue reviewed his team's shared drive for materials concerning a disclosure to a labor organization by browsing the team's files related to information disclosures. *Id.*  Mr. Donahue does not keep paper files. *Id.*  Mr. Donahue's search did not return any responsive records. *Id.*

Separately, the Postal Service's Labor Relations department directly communicates with union management and responds to union inquiries. *Id.* ¶ 6.  Labor Relations is divided into four sections, with one section for each postal labor union. *Id.*  Each section has a department head who tracks union requests, logging each union request and ensuring that the requests are responded to, as required by law. *Id.*  The individuals maintain spreadsheets documenting requests from their respective unions. *Id.*  At Mr. Donahue's request, all four department heads reviewed all union requests for the period between January 2022 and the date of the request to determine whether their respective unions requested test-kit information. *Id.*  During this process, the relevant individuals reviewed all union information requests without search terms. *Id.*  These searches revealed no responsive records. *Id.*  In other words, no union requested information gathered on the COVID-19 test kit webpage, and the Postal Service provided no such information to any labor union. *Id.*

3.      The Postal Service's Searches Were Adequate Under the FOIA

The Postal Service has established that its initial searches and its two additional searches were reasonably calculated to identify each of the categories of documents requested by Plaintiff. The  Postal  Service's  search  methods  were  reasonably  expected  to  produce  the  requested

12

information, and in fact did so, resulting in the disclosure of 50 pages of responsive records. The Postal Service also searched for records in the locations where those records would be most likely be located, including the email repositories of the employees involved in the drafting and subsequent revision of the Privacy Act Statement (for Item No. 1) and in the records of the Chief of Labor Law and the Labor Relations department (for Item No. 2). As a result, the Postal Service is entitled to summary judgment with respect to the reasonableness of its searches.

## II.   **Defendant Properly Applied FOIA Exemptions**

As explained below and as detailed in the accompanying Second Supplemental Declaration of Janine Castorina, the Postal Service properly relied on FOIA Exemptions 5 and 6 to withhold certain information in response to Plaintiff's request.

FOIA "expressly recognizes . . . that public disclosure is not always in the public interest and consequently provides that agency records may be withheld from disclosure under any one of the nine exemptions defined in 5 U.S.C. § 552(b)." *Baldridge v. Shapiro*, 455 U.S. 345, 352 (1982). The inclusion of these exemptions in the FOIA reflects Congress's intention to achieve "a workable balance between the right of the public to know and the need of the Government of keep information in confidence." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. 89 - 1497, 89th Cong., 2d Sess. 6 (1966)). While these exemptions are to be "narrowly construed," *FBI v. Abramsom,* 456 U.S. 615, 630 (1982), courts must not fail to give "meaningful reach and application." *John Doe Agency*, 493 U.S. at 152.

The locations of the withheld information in this case are identified on a new *Vaughn* index by Bates number, document description, material withheld, and justification. Castorina 2d Supp. Decl., Ex. 1 (*Vaughn* Index). Once the Court determines that the agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA

claim is moot. *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *Muhammad v. Customs & Border Prot.*, 559 F. Supp. 2d 5, 7-8 (D.D.C. 2008).  Such is the case here.

### A.     The Postal Service Appropriately Applied the Attorney-Client Privilege

Privileged attorney-client communications were appropriately withheld.  The communications at issue relate to Ms. Castorina and her staff's legal advice concerning the COVID-19 test kit webpage's compliance under the Privacy Act.  Contrary to Plaintiff's assertions such communications are protected.

Matters subject to the attorney-client privilege are protected under Exemption 5. *Hall & Assocs. v. EPA,* 956 F.3d 621, 624 (D.C. Cir. 2020). The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Fisher v. United States*, 425 U.S. 391, 403 (1976); *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984).  The privilege applies to communications between agency counsel and agency officials and employees who are their clients. *See, e.g.*, *In re Lindsey*, 148 F.3d 1100, 1104-05 (D.C. Cir. 1998) (*per curiam*).  "Without protections for attorney-client communications, agency officials might not share information with their counsel in the first place, and would consequently be deprived of sound legal advice," and "[t]his very policy concern grounds FOIA's Exemption 5." *Pub. Emps. for Env't Resp. v. EPA*, 211 F. Supp. 3d 227, 230 (D.D.C. 2016).  "Exemption 5 is intended to protect the quality of agency decision-making by preventing the disclosure requirement of the FOIA from cutting off the flow of information to agency decision- makers." *Id*. at 231.

The Postal Service withheld portions of eight email chains pursuant to the attorney-client privilege under FOIA Exemption 5.  The communications at issue are between the Postal

Service's Chief Privacy and Records Management Officer, Ms. Janine Castorina, an attorney in the Postal Service's Law Department, with her subordinates relating to compliance with the Privacy Act of 1974 ("Privacy Act") including requirements for the content of Privacy Act Statements and their location on the webpage. Castorina 2d Supp. Decl. ¶ 28. Ms. Castorina provides legal advice on Privacy Act matters including drafting and approving Privacy Act Statements. Castorina Supp. Dec. ¶ 4. Internal clients reached out to Ms. Castorina for legal advice relating to compliance with the Privacy Act, with regard to the COVID-19 test kit webpage. *Id*. ¶ 16. In doing so, Ms. Castorina and her staff held verbal discussions with their internal clients to discuss any concerns and the nature of the request as it involved the Privacy Act's requirements including an appropriate Privacy Act Statement. *Id*. ¶ 14. These discussions informed the process by which Ms. Castorina and her staff formulated the Privacy Act Statement for the COVID-19 test kit webpage. *Id*. Each draft reflects the substance and outcome of various verbal discussions between Ms. Castorina, Mr. Lind, and Mr. Gillespie, as well as their internal clients, to craft an appropriate Privacy Act Statement for the COVID-19 test kit website. *See* Castorina 2d Supp. Decl. ¶¶ 16-18. The Postal Service treats these communications as confidential, and the communications have not been released to individuals outside the Law Department. *Id*.

Notably, the responsive emails also contain draft Privacy Act Statements. Drafts made at the instigation of a client who sought legal advice can be protected. *See Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.,* 370 F. Supp. 3d 116, 135 (D.D.C. 2019) (concluding that the attorney-client privilege applied to a draft memorandum because it was made at the request of an internal agency client who sought legal advice); *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 511 F. Supp. 2d 56, 70 (D.D.C. 2007) (concluding, in part, that drafts from the Office of Legal

Counsel were protected by the attorney-client privilege); *Skull Valley Band of Goshute Indians v. Kempthorne,* No. 04-cv-339, 2007 WL 915211, at 14 n.8 (D.D.C. 2007) (concluding that the agency properly withheld drafts under the attorney-client privilege); *see also Cause of Action Inst. v. Dep't of Just.*, 330 F. Supp. 3d 336, 350 (D.D.C. 2018) (stating that "'correspondence' and other documents that grow out of the attorney-client relationship are protected if they 'reveal the motive of the client in seeking representation.'"); *Alexander v. FBI*, 186 F.R.D. 154, 162 (D.D.C. 1999); *Alexander v. FBI*, 198 F.R.D. 306, 312 (D.D.C. 2000) ("Drafts of documents that are prepared with the assistance of counsel for release to a third party are protected under attorney-client privilege.")).

Thus, the Postal Service appropriately applied the attorney-client privilege.

### B.    The Postal Service Appropriately Applied the Deliberative Process Privilege

The Postal Service appropriately withheld deliberative and pre-decisional information. The information withheld reflects the give-and-take process amongst Ms. Castorina and her staff in crafting a Privacy Act Statement in compliance with the Privacy Act.

When Congress enacted FOIA Exemption 5 and protected "inter-agency or intra-agency memorandums or letters that would not be available" in litigation with an agency, 5 U.S.C. § 552(b)(5), it had the deliberative process privilege "specifically in mind." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). The privilege "protect[s] the 'decision making processes of government agencies'" by withholding "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Id.*  The privilege is intended to "encourage frank and candid debate." *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 464 (D.C. Cir. 2014). "[P]rivileges that are intended to facilitate candid communication, such as the deliberative process privilege,

generally do not have an expiration date" because "the speaker or writer must have some strong assurance at the time of the communication that the communication will remain confidential." *Id*.

To fall within the scope of the privilege, records must be predecisional and deliberative. "'Documents are predecisional if they are generated before the adoption of an agency policy, and deliberative if they reflect the give-and-take of the consultative process.'" *Machado Amadis v. Dep't of State,* 971 F.3d 364, 370 (D.C. Cir. 2020) (citations omitted).  To be predecisional, the communication "must have occurred before any final agency decision on the relevant matter." *Nat'l Sec. Archive*, 752 F.3d at 463.  To qualify as deliberative, the communication must be "intended to facilitate or assist development of the agency's final position on the relevant issue." *Id*. "In practice, these requirements 'tend to merge.'" *Hall & Assocs. v. EPA,* No. 18-cv-1749, 2021 WL 1226668, at 5 (D.D.C. 2021) (citing *Access Rep. v. Dep't of Just.*, 926 F.2d 1192, 1195 (D.C. Cir. 1991)).

Application of the requirements recognize that "Exemption 5 was intended to protect not simply deliberative *material,* but also the deliberative *process* of agencies." *ViroPharma Inc. v. Dep't of Health & Hum. Servs*., 839 F. Supp. 2d 184, 193 (D.D.C. 2012) (citing *Montrose Chemical Corp. v. Train,* 491 F.2d 63, 71 (D.C. Cir. 1974)) (emphasis in original).

> Courts "'focus less on the nature of the materials sought and more on the effect of the materials' release: the key question in [such] cases [is] whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."

*Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 330 F. Supp. 3d 373, 382 (D.D.C. 2018) (citing *Dudman Commc'ns v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).  Indeed, the privilege "'protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process

of an agency.'" *Reinhard v. Dep't of Homeland Sec.*, No. 18-cv-1449, 2019 WL 3037827, at 6 (D.D.C. 2019) (citing *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1539 (D.C. Cir. 1993) (stating that privilege "serves to protect the deliberative process itself, not merely documents containing deliberative material")); *see also, e.g., Goodrich Corp. v. EPA*, 593 F. Supp. 2d 184, 189-90 (D.D.C. 2009) (concluding that a draft groundwater flow model was protected because it reflected "evolving iterations of the Model's inputs and calibration reflect the opinions of the staff" even though the data plugged into the model itself was purely factual and noting that "the selection and calibration of data is part of the deliberative process to which Exemption 5 applies."); *Reliant Energy Power Generation, Inc. v. FERC,* 520 F. Supp. 2d 194, 204 (D.D.C. 2007) (concluding that spreadsheets reflecting data were protected because they were used by agency employees in writing reports, rendering them part of the deliberative process, even though the spreadsheets alone were factual rather than deliberative); *Kempthorne*, 2007 WL 915211, at *14 (stating that "the drafting process is itself deliberative in nature, [as] the disclosure of draft documents could 'expose to public view the deliberative process of an agency").

Here, Ms. Castorina, her staff, and internal clients engaged in ongoing discussions concerning compliance with the Privacy Act.   Castorina 2d Supp. Decl. ¶¶ 13-14.   The communications at issue reflect the resulting drafts of the Privacy Act Statement which pre-date and differ from the final version which appeared on the COVID-19 test kit webpage. *Id*.   The deliberative material shows edits and revisions made by Ms. Castorina and her staff.   ECF No. 14-1 - Castorina Decl. ¶ 18.   The communications are part and parcel of the process by which the Postal Service crated its Privacy Act Statement for the COVID-19 test kit webpage.   ECF No. 22-1 - Castorina Suppl. Decl. ¶¶ 4-6.   Such material is protected as reflecting an agency's

deliberations. *See Dudman Commnc'ns*, 815 F.2d at 1568 (instructing that the deliberative process privilege protects against "the disclosure of editorial judgments—for example, decisions to insert or delete material or to change a draft's focus or emphasis"); *Campaign Legal Ctr. v. Dep't of Just.*, 34 F.4th 14, 24 (D.C. Cir. 2022) (holding that a draft letter and related email communications were deliberative because 'they reflect the give-and-take of the consultative process' underlying the formulation of the letter and its proposed policy justifications."); *Gellman v. Dep't of Homeland Sec.*, 525 F. Supp. 3d 1, 7 (D.D.C. 2021) (concluding that two sentences in an email were properly redacted as "those two sentences are deliberative (because they made a recommendation as part of internal agency deliberations about filling a personnel need) and predecisional (because they were written by a junior staffer before the agency made any decision on the matter)."); *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 161 F. Supp. 3d 120, 131 (D.D.C. 2016), *modified*, 185 F. Supp. 3d 26 (D.D.C. 2016) (concluding that the agency met its burden by identifying the staff who commented and reviewed drafts about application and interpretation of agency guidelines).  The redacted emails are also necessarily pre-decisional because they are between subordinates and a superior discussing draft material and took place prior to the Postal Service's approval of the final version of the Privacy Act Statement that would appear on the COVID-19 test kit webpage.  ECF No. 22-1 - Castorina Suppl. Decl. ¶¶ 4-6; *see Machado Amadis*, 971 F.3d at 370 (holding that recommendations from subordinates to superiors "lie at the core of the deliberative-process privilege"); *Citizens for Resp. & Ethics in Wash. v. Dep't of Educ.,* 905 F. Supp. 2d 161, 173 (D.D.C. 2012) (concluding that records that predated final regulations "were thus predecisional in the plainest sense of the word.").

19

Under these circumstances, the Postal Service properly withheld information pursuant to the deliberative process privilege.

### C.     The Postal Service Complied with FOIA's Foreseeable Harm Requirement

The Postal Service satisfied FOIA's requirement that, for each withholding, it "reasonably foresees that disclosure would harm an interest protected by [the] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I); *Machado Amadis*, 971 F.3d at 370-71. The Postal Service's declarations explain that, with respect to each withholding, it was reasonably foreseeable that disclosure of the withheld information would harm an interest protected by the exemption relied upon.

With respect to the information withheld pursuant to the deliberative process privilege, disclosure of such information would hamper the day-to-day discussions amongst staff who could not freely share their ideas and proposals as they would be inhibited from effectively communicating with one another.   ECF No. 14-1 - Castorina Decl. ¶ 19; Castorina 2d Supp. Decl. ¶¶ 21-29.  Disclosing internal agency deliberations would lower the overall quality of the Postal Service's decision-making process by exposing preliminary discussions and drafts concerning the appropriate language to be used in the Privacy Act Statement. *Id*.  Disclosure would further chill communications amongst employees and officials because their discussions about draft materials would be released.  ECF No. 22-1 - Castorina Suppl. Decl. ¶¶ 8-10.  They would not candidly speak their minds and express their opinions and thoughts because disclosing draft materials could reveal changes in position or statements that are not public. *Id*.  They may be embarrassed or otherwise resistant to freely express their thoughts and opinions if it were known that such information would be made public. *Id*.  This would harm the Postal Service's ability to elicit full, honest, and objective insight, comment and advice from its employees. *Id*. Moreover, disclosure would also confuse the public because draft versions of the Privacy Act

Statement do not reflect the Privacy Act Statement that was published on the COVID-19 test kit webpage.  ECF No. 14-1 - Castorina Decl. ¶ 19.  Accordingly, the Postal Service satisfied the foreseeable harm requirement regarding these withholdings concerning drafts of the Privacy Act Statement. *See also Dudman Commc'ns*, 815 F.2d at 1569 ("The disclosure of editorial judgments—for example, decisions to insert or delete material or to change a draft's focus or emphasis—would stifle the creative thinking and candid exchange of ideas necessary to produce good historical work."); *Jud. Watch, Inc. v. Dep't of State*, 557 F. Supp. 3d 52, 62 (D.D.C. 2021) (concluding that an agency's foreseeable harm reasoning was appropriate where the agency stated that disclosure would cause officials "believe that every edit or comment they propose in a draft document may be released to the public, thus curbing the candid exchange of ideas between Department officials and curtailing creativity in the compilation and explanation of Department policy.").

The Postal Service previously addressed the foreseeable harm requirement only in relation to the deliberative process privilege, but foreseeable harm also exists in disclosing records protected by the attorney-client privilege. Outside of the deliberative process privilege, "an agency's burden under the foreseeable harm requirement may be more easily met when invoking other privileges and exemptions for which the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated." *Reps. Comm. for Freedom of the Press v. Customs & Border Prot.,* 567 F. Supp. 3d 97, 119–20 (D.D.C. 2021). This applies to the attorney- client privilege. *Id*.  "Release of attorney-client communications would undoubtably undermine our legal culture. Agencies would lose an important tool in their decisionmaking process— employees' ability to confidentially consult agency lawyers." *Id*.  Otherwise, the "observance of law" promoted by the privilege would be hampered. *Id*.  "Thus, the law already

acknowledges and guards against the risk of harm that would come from disclosing attorney-client communications." *Id*.

The information withheld here reflects the product of confidential legal discussions among Ms. Castorina, her staff, and internal clients to ensure compliance with the laws.  ECF No. 22-1 - Castorina Suppl. Decl. ¶¶ 4-6. Disclosing the information withheld would prevent Postal Service officials, employees, and attorneys from speaking candidly amongst each other and would otherwise discourage its employees from seeking legal advice. *Id*. ¶ 8.  This would harm the Postal Service's ability to ensure that the requirements of the Privacy Act and other laws are met. *Id*. ¶ 9.  Disclosing the information withheld would cause officials to be reticent to share information and facts concerning actions being undertaken or potentially to taken because the information they provide would be made public. *Id*. ¶¶ 9-10.  Full and honest discussions are imperative when issuing legal advice in general, and in this instance the Privacy Act, to ensure proper use, collection, and maintenance of information the Postal Service obtains from private individuals. *See, e.g., Reps. Comm.*, 567 F. Supp. 3d at 120 (concluding that it was enough for an agency to state: "Routine disclosure of information protected by attorney-client and/or attorney work product privilege would shake the very foundation of the legal profession, as clients would not feel comfortable asking for advice and attorneys would not feel comfortable providing it.").

Thus, there is foreseeable harm in releasing the information withheld.

## III.   <u>Defendant Complied with FOIA's Segregability Requirement</u>

The Postal Service complied with its partial disclosure obligations. Under the FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information subject to FOIA must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b).  Non-exempt portions of records need not be disclosed if they are "inextricably

intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "It is by now firmly engrained that an agency may provide sufficient justification by describing the materials withheld, the exemption under which they were withheld, and an affidavit attesting that 'it released all segregable material.'" *De Sousa v. CIA*, 239 F. Supp. 3d 179, 202–03 (D.D.C. 2017) (citing *Loving v. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008) (stating that "the description of the document set forth in the *Vaughn* index and the agency's declaration that it released all segregable material" are "sufficient for [the segregability] determination"); *Johnson v. Exec. Off. for U.S. Attys.*, 310 F.3d 771, 776 (D.C. Cir. 2002)). An "agency is not required to provide so much detail that the exempt material would be effectively disclosed." *Johnson*, 310 F.3d at 776 (citation omitted). Moreover, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

The Postal Service conducted a line-by-line review of the responsive records to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied. ECF No. 22-1 - Castorina Suppl. Decl. ¶ 11. Based on the line-by-line review, all non-exempt information was segregated, and non-exempt portions were released. *Id.* Indeed, the redacted information at issue involves different drafts of the Privacy Act Statement. Any "effort to segregate the 'factual' portions of the drafts, as distinct from their 'deliberative' portions,

would run the risk of revealing 'editorial judgments—for example, decisions to insert or delete material or to change a draft's focus or emphasis.' Such differences easily could be discerned by comparing the final letter with an earlier version." *Competitive Enter. Inst.,* 161 F. Supp. 3d at 132.

Thus, the Postal Service compiled with its partial disclosure obligations.

## CONCLUSION

Defendant has met its obligations under FOIA and established that there are no genuine issues as to any material fact in this case. Specifically, Defendant has established that the searches conducted were reasonable and that the records withheld were withheld pursuant to applicable FOIA exemptions. Accordingly, for the reasons set forth above, Defendant respectfully requests that this Court grant summary judgment in Defendant's favor.

Dated: July 31, 2024
Washington, D.C.

Respectfully submitted

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: _____/s/ Patricia King McBride_____
PATRICIA KING McBRIDE
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 252-7123

*Attorneys on behalf of the United States of America*

24

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICANS FOR FAIR TREATMENT, | |
| *Plaintiff*, | |
| v. | Civ. A. No. 22-01183 (RCL) |
| UNITED STATES POSTAL SERVICE, *et al*., | |
| *Defendants*. | |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' renewed motion for summary judgment, and the entire record herein, it is hereby

ORDERED that Defendant's renewed motion is GRANTED; it is further

ORDERED that summary judgment is entered for Defendant.

SO ORDERED.


Date: _____          _____
                                            United States District Judge