UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICANS FOR FAIR TREATMENT,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE, *et al.*,<br><br>*Defendants*. | Civil Action No. 22-1183 (RCL) |

### SECOND SUPPLEMENTAL DECLARATION OF JANINE CASTORINA

I, Janine Castorina, make the following Second Supplemental Declaration in lieu of affidavit in accordance with the provisions of 28 U.S.C. § 1746. I understand that my declaration may be introduced into the record of the above captioned action, or any other grievance, administrative proceeding, or suit pending in a court of law.

1. I am over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration.

2. This declaration supplements the declarations I provided in the above-captioned matter. *See* ECF Nos. 14-2, 22-1.

### Adequacy of Searches

3. *Item No. 1*: Before the Office of the General Counsel issued its decision on Plaintiff's administrative appeal in this matter, the Postal Service searched for records responsive to Item No. 1 of the FOIA request in several steps. The Postal Service's Information Catalog Program ("ICP"), the component with access to the Postal Service's email repository for the purposes of conducting email searches, performed the first step of the search. In response to Item No. 1, the Privacy and Records Management Office, which I lead, requested that ICP search the

1

email accounts of six Postal Service employees for (1) the term "Privacy Statement" or (2) the full text of the Privacy Act Statement ultimately used on the COVID-19 rapid test webform (*i.e.*, the full Privacy Act Statement enclosed in quotation marks). The six email addresses included three belonging to employees in the Privacy and Records Management Office—myself, Privacy and Records Compliance Specialist Christopher Gillespie, and Privacy and Records Manager Christopher Lind. The other three email addresses belonged to internal clients—Heather Dyer, Vice President of the Corporate Information Security Office (Chief Information Security Officer); Christopher Karpenko, Executive Director of Brand Marketing; and Kimberly Workinger, Digital Brand Marketing Manager. ICP searched these six email accounts because of the involvement of these individuals in preparing the COVID-19 rapid test webform and the accompanying Privacy Act Statement, which I described in my prior Supplemental Declaration. *See* ECF No. 22-1 ¶¶ 2-6. ICP did not use a date range for this search. However, the search returned no records.

4.  Because I was personally involved in preparing the Privacy Act Statement for the COVID-19 rapid test webform, I recalled exchanging email communications about the Privacy Act Statement. Accordingly, the Privacy and Records Management personnel involved in this matter—Mr. Gillespie, Mr. Lind, and I—browsed our own email archives and determined that the terms "Privacy Act Statement" and "810" (the identifier corresponding to the Privacy Act System of Records for USPS.com registration information) might return responsive records. The same three individuals therefore used these terms to search our individual Outlook inboxes. This search returned the nine pages of responsive records that were originally produced to Plaintiff. *See* Ex. 1 (newly processed versions of USPS_1–USPS_9, reflecting adjustments to the Postal Service's assertion of FOIA Exemption 5 and the removal of any reliance on FOIA Exemption

3).

5.      *Item No. 2*: Ray Donahue, Managing Counsel of Labor Law, conducted the Postal Service's search for records responsive to Item No. 2 of the FOIA request. Mr. Donahue oversees all of the Postal Service's legal matters concerning labor organizations. Accordingly, Mr. Donahue reviewed his team's shared drive for materials concerning a disclosure to a labor organization by browsing the team's files related to information disclosures. Mr. Donahue does not keep paper files. Mr. Donahue's search did not return any responsive records.

6.      Separately, the Postal Service's Labor Relations department directly communicates with union management and responds to union inquiries. Labor Relations is divided into four sections, with one section for each of the labor unions—the American Postal Workers Union ("APWU"), the National Association of Letter Carriers ("NALC"), the National Postal Mail Handlers Union ("NPMHU"), and the National Rural Letter Carrier's Association ("NRLCA"). Each section has a department head who tracks union requests, logging each union request and ensuring that the requests are responded to, as required by law. The individuals maintain spreadsheets documenting requests from their respective unions. At Mr. Donahue's request, all four department heads reviewed all union requests for the period between January 2022 and the date of the request to determine whether their respective unions requested test-kit information. During this process, the relevant individuals reviewed all union information requests without search terms. However, the searches revealed no responsive records. In other words, no union requested information gathered on the COVID-19 test kit webpage, and the Postal Service provided no such information to any labor union.

7.      *Additional Searches*: On March 23, 2023, the Court ordered the Postal Service to conduct an additional search for responsive records, including the records of Mr. Karpenko, Ms.

Workinger, and Ms. Dyer. ECF No. 31 at 2. Pursuant to this Order, my office requested that ICP search these three individuals' email accounts for the same search terms as resulted in the identification of the first nine pages of responsive records—"Privacy Act Statement" and "810." This search resulted in the identification of 14 additional pages of responsive records. We applied the appropriate redactions to the documents and provided them to the Department of Justice for production.

8. The Court also directed the Postal Service to conduct a supplemental search for records relating to a revision to the Privacy Act Statement appearing on the COVID-19 rapid test webpage. Plaintiff's description of this revision appears to be based on the false premise that the Privacy Act Statement was revised between the date of the original FOIA search (February 7, 2022) and the date of the administrative appeal (March 15, 2022).

9. The original Privacy Act Statement was published to the COVID-19 rapid test webform at https://special.usps.com/testkits on January 18, 2022, in the following form:

> Privacy Act Statement
>
> Your information will be used to provide COVID-19 Testing Kits to the address you provided, and to provide company and product fulfillment information about that testing kit to a federal executive agency. Collection is authorized by 39 U.S.C. 401, 403, 404, and 411. Supplying your information is voluntary, but if not provided, we may not be able to fulfill your request for a COVID-19 Testing Kit. We do not disclose your information to third parties without your consent, except to act on your behalf or request, or as legally required. This includes the following limited circumstances: to a congressional office on your behalf; to agencies and entities to facilitate or resolve financial transactions; to a U.S. Postal Service auditor; for law enforcement purposes, to labor organizations as required by applicable law; incident to legal proceedings involving the Postal Service; to government agencies in connection with decisions as necessary; to agents or contractors when necessary to fulfill a business function or provide products and services to customers; for customer service purposes; and to other federal executive agencies pursuant to 39 U.S.C § 411. For more information regarding our privacy policies visit www.usps.com/privacypolicy.

*See* U.S. Postal Service, "Place Your Order for Free At-Home COVID-19 Tests" (as visible on Jan. 18, 2022), archived at https://web.archive.org/web/20220119195236/https://special.usps.com/testkits.

    10.    Although the Postal Service did revise the Privacy Act Statement appearing on the relevant webpage, it did so on January 28, 2022—before Plaintiff submitted its FOIA request. Members of the public can view the COVID-19 test kit webpage as it appeared before and after that date by searching for the page's URL—https://special.usps.com/testkits—on the Internet Archive's Wayback Machine at https://web.archive.org/. For example, the Wayback Machine allows users to view the webpage as it existed at 10:45 p.m. on January 28, 2022,[1] and the text of the Privacy Act Statement was unchanged when Plaintiff submitted its administrative appeal to the Postal Service on March 15, 2022. *See* ECF No. 18-2 at 25. Specifically, the text of the revised Privacy Act Statement appeared as follows:

> Privacy Act Statement
>
> Your information will be used to provide COVID-19 Testing Kits to the address you provided, and to provide *product fulfillment* information about that testing kit to a federal executive agency. Collection is authorized by 39 U.S.C. 401, 403, 404, and 411. Supplying your information is voluntary, but if not provided, we may not be able to fulfill your request for a COVID-19 Testing Kit. We do not disclose your information to third parties without your consent, except to act on your behalf or request, or as legally required. This includes the following limited circumstances: to a congressional office on your behalf; to agencies and entities to facilitate or resolve financial transactions; to a U.S. Postal Service auditor; *for law enforcement purposes involving crimes or fraud against the Postal Service*; to labor organizations as required by applicable law; incident to legal proceedings involving the Postal Service; to government agencies in connection with decisions as necessary; to agents or contractors when necessary to fulfill a business function or provide products and services to customers; for customer service purposes; and to other federal executive

---

[1] U.S. Postal Service, "Place Your Order for Free At-Home COVID-19 Tests" (as visible on Jan. 28, 2022), archived at
https://web.archive.org/web/20220128224545/https://special.usps.com/testkits.

>agencies pursuant to 39 U.S.C § 411. For more information regarding our privacy policies visit www.usps.com/privacypolicy.

U.S. Postal Service, "Place Your Order for Free At-Home COVID-19 Tests" (as visible on Jan. 18, 2022), archived at https://web.archive.org/web/20220128224545/https://special.usps.com/testkits (emphasis added).

11. Nevertheless, in response to the Court's order, the Postal Service performed a supplemental search for records regarding this prior revision to the Privacy Act Statement in question. By way of background, the creation and associated discussion of the Privacy Act Statement occurred between January 10, 2022, and January 11, 2022. On January 18, 2022, the COVID-19 test kit webpage, which included the original Privacy Act Statement, went live to the general public. On January 19, 2022, a staffer for U.S. Senator Ron Wyden emailed a postal employee concerning two issues, one of which concerned immigration and enforcement by U.S. Immigration and Customs Enforcement ("ICE"). This communication was forwarded to Jeffery Adams, Vice President of Corporate Communications, who then contacted the White House on January 25, 2022. Thereafter, the White House expressed concerns with the Privacy Act Statement as it related to the concerns raised by Senator Wyden's office. Following this, internal discussions concerning any revision to the Privacy Act Statement were limited in time to January 26, 2022, to January 27, 2022. On January 28, 2022, the revised Privacy Act Statement went live on the COVID-19 test-kit webpage.

12. Recalling the timing of this revision, Mr. Gillespie, Mr. Lind, and I browsed our email archives for relevant email traffic during this period. Based on this review, we identified the terms "Privacy Concern" and "Test Kit Web Info," which would be both broad enough and specific enough to capture any records that related to a revision of the Privacy Act Statement. ICP used these search terms in the email archives of myself, Mr. Lind, Mr. Gillespie, Ms. Dyer, Mr.

Karpenko, and Ms. Workinger, along with Mr. Adams, Vice President of Government Relations Peter Pastre, and General Counsel Thomas Marshall (who appeared on the emails we identified through our initial search). The email addresses used were targeted to capture individuals at the Postal Service involved with any revision to the Privacy Act Statement. To reiterate, Mr. Gillespie, Mr. Lind, and I all work for the Privacy and Records Management Office and were involved in the revision because our office governs Privacy Act Statements. Ms. Workinger, Mr. Karpenko, and Ms. Dyer all jointly had control over the test-kit website and might have been involved in the revision to the extent that they would be provided text to post on the website. Mr. Adams is the Vice President of Corporate Communications and was involved in the revision to the extent that it resulted from outside comments and concerns.  Mr. Pastre is the Vice President of Government Relations and was involved in the revision for the same reasons as Mr. Adams. Mr. Marshall is the General Counsel.  The Privacy and Records Management Office falls within the Law Department and, therefore, the General Counsel would be copied on revisions, given the visibility of the test-kit initiative. The search criteria used for this search differed from the prior searches because the discussion concerning the revision occurred separately from the creation of the Privacy Act Statement and occurred during a different timeframe. Following this search, we located 27 pages of responsive records. Those records were properly redacted and provided to the Department of Justice for production to the Plaintiff.

### **Exemption 5**

13.     *Deliberative Process Privilege*: In its Order dated March 23, 2023, the Court concluded that the Postal Service has adequately shown that the deliberative process privilege applies to the material redacted from pages USPS_1–USPS_9 pursuant to FOIA Exemption 5. ECF No. 30 at 18-19. The Court instructed the Postal Service to clarify, in its

assertions of Exemption 5, whether that Exemption applies due to the deliberative process privilege or the attorney-client privilege, or both. *Id.* at 17-18.

14. The deliberative process privilege applies in each instance where the Postal Service has asserted Exemption 5, in both the initial production (USPS_1–USPS_9) and the supplemental production (USPS_10–USPS_50). The bodies of certain produced emails have been redacted under Exemption 5 pursuant to both the deliberative process privilege and the attorney-client privilege; to the extent these redactions depend on the deliberative process privilege, they protect internal communications amongst the Postal Service's legal counsel and internal clients, including myself; Thomas Marshall, Executive Vice President and General Counsel; Peter Pastre, Vice President of Government Relations; Jeffery Adams, Vice President of Corporate Communications; Kimberly Workinger, Manager of Digital Marketing; Heather Dyer, Chief Information and Security Officer and Vice President; Gary Barksdale, Chief Postal Inspector; and numerous contractors. All communications were pre-decisional because they occurred before any final actions were taken relating to any revision of the Privacy Act Statement. The communications are also deliberative because they consist of internal discussions about external concerns about Privacy Act compliance and the preparation and revision of the Privacy Act Statement at issue. These ongoing discussions and revisions reflect the Postal Service's attempts to respond to and address external and legal concerns with any changes to the Statement. The final statement is reflected on the website.

15. *Attorney- Client Privilege*: In its March 2023 Order, the Court concluded that the Postal Service had adequately shown that the attorney-client privilege applies to certain of the emails already produced to Plaintiff—namely, USPS_7–USPS_9. ECF No. 30 at 20. However, the Court determined that the Postal Service had not adequately shown that the attorney-client

privilege applies to USPS_1–USPS_6. That privilege applies to portions of each of these pages, in addition to portions of USPS_10 – USPS_50 (as described in greater detail in the enclosed *Vaughn* Index, Ex. 2).

16. First, portions of USPS_1–USPS_6 have been redacted to protect confidential communications between internal clients and postal attorneys and those communications incorporating attorney recommendations. These emails constitute conversations among attorneys in the Privacy and Records Management Office, which advises on the Privacy Act, including with respect to Privacy Act Statement requirements. The Court noted in its Order that the Postal Service previously referred to these emails as "aris[ing] from" communications with internal clients and that "[a]rising from a request for legal advice is not the same thing as resting on a confidential communication. For example, an abstract discussion of the Privacy Act's requirements would not necessarily reveal client communications." ECF No. 30 at 21. In this context, the emails between my staff and myself rest on confidential communications because they occurred in direct response to client requests. Specifically, these emails are discussions within the Postal Service Law Department concerning text to place on the COVID-19 rapid test webform in order to comply with the Privacy Act. In this sense, the discussion was not abstract; rather, it concerned the Law Department's response to a concrete client request.

17. As to the additional responsive records, the bodies of certain email communications have been redacted to protect confidential communications between internal clients and postal attorneys and those communications incorporating attorney recommendations. These emails rest on internal client requests for legal advice concerning the Privacy Act Statement and its potential revision. The following list describes the contents of each email, identified by page number and timestamp:

      a.      USPS_14, date-stamped January 27, 2022, at 4:24 p.m.: The substance of the relevant communication reflects a recommendation from Christopher Gillespie, who is a Privacy Analyst and attorney of the Privacy and Records Management Office. The recommendation reflects Mr. Gillespie's analysis of the Privacy Act as it implicated a revision of the Statement. That recommendation was a result of a request for legal advice from internal clients including Ms. Workinger, Ms. Dyer, and Mr. Karpenko as it related to external concerns as to the interplay of immigration issues and the Privacy Statement.

      b.      USPS_17, date-stamped January 27, 2022, at 4:05 p.m.: This is an email communication from Thomas Marshall, General Counsel, to internal clients, such as Postmaster General Louis DeJoy and myself. The communication reflects his legal advice as to the revision of the Statement as it related to the aforementioned external concerns.

      c.      USPS_17 and USPS_35, date-stamped January 27, 2022, at 2:57 p.m.: This is an email communication from Jeffery Adams, Vice President of Corporate Communications, reflecting internal discussions concerning legal advice on the revision to the Statement and its impact on public concerns. The communication was made to Postmaster General Louis DeJoy among others such as myself.

      d.      USPS_18 – USPS_19 and USPS_25 – USPS_26, date-stamped January 26, 2022, at 8:38 p.m.: This is an email communication from Jeffery Adams, Vice President of Corporate Communications, reflecting internal discussions concerning legal advice on the revision to the Statement and its impact on public concerns. The communication was made to Postmaster General Louis DeJoy among others such as myself.

      e.      USPS_20 and USPS_27 – USPS_28, date-stamped January 26, 2022, at 4:33 p.m.: This is an email from Thomas Marshall, General Counsel, concerning his legal advice about revisions to the Statement.

      f.      USPS_20 and USPS_28, date-stamped January 26, 2022, at 4:27 p.m.: This is an email from myself relaying my legal advice about revisions to the Privacy Statement.

      g.      USPS_21 and USPS_28 – USPS_29, date-stamped January 26, 2022, at 3:57 p.m.: This is an email where Thomas Marshall, General Counsel, is requesting my recommendation about the revisions to the Statement and conveying his particular concerns about it.

      h.      USPS_21 and USPS_29, date-stamped January 26, 2022, at 3:37 p.m.: This is an email from Jeffery Adams, Vice President of Corporate Communications, conveying confidential information about his impressions about external concerns about the Statement and immigration and requesting corresponding legal advice related thereto.

      i.      USPS_25, date-stamped January 27, 2022, at 7:46 a.m.: This is an email

from myself in response to a legal question raised by Peter Pastre, Vice President of Government Relations, in regard to the Statement. I responded with legal advice and recommendations.

  j. USPS_25, date-stamped January 26, 2022, at 10:31 p.m.: This is an email from Peter Pastre, Vice President of Government Relations, in regard to the Statement and his concerns and raised a related legal question.

  k. USPS_25, date-stamped January 26, 2022, at 8:47 p.m.: This is an email from Thomas Marshall, General Counsel, relaying his legal advice regarding the revisions to the Statement.

18. In each instance, these emails represent communications among Postal Service attorneys resting on client requests for legal advice—specifically, the appropriate manner for revising the Privacy Act Statement in compliance with the statute.

### **Exemption 6**

19. As to the additional responsive records, mobile phone numbers and postal email addresses were redacted under Exemption (b)(6) because the information pertained to specific individuals and disclosure of this information would constitute an unwarranted invasion of personal privacy.

20. Personal and Government employee email addresses mobile phone numbers fall within the scope of Exemption 6 as information that identifies specific individuals. The Postal Service balanced the privacy interests of the individuals implicated in the responsive information against any public interest in disclosure. These individuals have privacy interests in their work and personal email addresses and mobile phone numbers. Disclosure of this information could subject these individuals to unwarranted harassment. Notably, Government employees would be subjected to unwanted phone calls while on and off duty. Mobile phones, unlike an office line, travels to and from an employee's home. Similarly, disclosing employee email addresses would subject them to unsolicited emails that have nothing to do with their daily responsibilities such as

11

phishing schemes and spam messages. Revealing this information would not serve the core purpose of FOIA by shedding light on the operations or activities of the Postal Service. Thus, the privacy interests at stake far outweigh any *de minimis* public interest in disclosure.

### **Foreseeable Harm**

21. As to all responsive records in the instant matter, foreseeable harm exists in disclosing the information withheld.

22. *Deliberative Process Privilege*: Disclosing substantive email communications would prevent Postal Service officials, employees, and attorneys from speaking candidly amongst each other and would otherwise discourage its employees from seeking legal advice. This would harm the Postal Service's ability to ensure that the requirements of the Privacy Act are met and internal clients' ability to freely communicate questions and concerns. Furthermore, officials would be reticent to share information and facts concerning actions being undertaken— or under consideration—because the information they provide would be made public. Full and honest discussions are imperative when issuing legal advice in general; in this instance, Postal Service attorneys and internal clients must be able to assess and discuss the requirements of the Privacy Act to ensure the proper use, collection, and maintenance of information the Postal Service obtains from private individuals. Here, disclosure would result in harm by revealing executives' and attorneys' opinions and impressions of the legal impact of the Privacy Act Statement's language.

23. Disclosure could also reveal recommendations, strategies, and legal opinions involving public and governmental concern over the Privacy Act Statement. As noted above, various records reveal public concern about the potential for interaction between federal immigration agencies and the Postal Service. The Postal Service's response to such concern

emerged from deliberations among high-ranking postal executives, including the Postmaster General and the General Counsel. Revealing their communications would impair the Postal Service's ability to make sound agency decisions because executives would be reticent to share their thoughts amongst one another and their legal counsel.

24. Disclosure would also chill communications amongst Postal Service employees, officials, and attorneys because their discussions about draft materials as well as legal, business, and media strategies would be revealed. Revealing internal policy-making and legal discussions would also hinder postal officials from contacting postal attorneys for their advice and recommendations and, accordingly, prevent postal officials from making appropriate judgments on behalf of the Postal Service.

25. Disclosure would also impair the Postal Service's relationship with other government entities, such as the White House. The redacted communications include those between postal employees and a White House employee, as well as those between postal employees discussing, and thereby incorporating, concerns raised by the White House. If such communications revealed, the White House would be unlikely to engage in full and frank communications with the Postal Service. Such communications are necessary, as government entities make proposals and share strategies with one another to best serve the public. The COVID-19 rapid test program itself demonstrates the importance of this coordination. Ultimately, revealing such communications would harm the Federal Government's ability to function within itself.

26. Disclosure would also allow confidential discussions to be misconstrued by the public. Without the benefit of context, certain opinions, recommendations, and strategies could be misappropriated and misstated. This would place postal employees, officials, and attorneys

in the position of having to defend against public confusion and distortions related to the COVID-19 test kit webpage and the Postal Service's application and use of its Privacy Statement.

27. Disclosing portions of the emails that are not specifically deliberative in nature, but which are inextricably intertwined with the deliberative portions, would also cause harm. Releasing inextricably intertwined information would cause undue confusion and potential speculation as to the nature and content of the deliberative portions and reveal legal advice and recommendations from postal attorneys. This is evidenced by the communications themselves which were part and parcel of the ongoing discussions concerning the language to be used in the Privacy Act Statement including potential revisions thereto. These communications reflect a snapshot of these ongoing deliberations. As such, the redacted information was properly withheld under the deliberative process privilege.

28. *Attorney-Client Privilege*: Certain identified communications consist of email communications (1) between postal attorneys and internal clients or (2) among postal attorneys, while other communications incorporate legal advice rendered to internal clients and confidential client information conveyed for the purposes of obtaining legal advice about the language of the Privacy Act Statement and the Postal Service's strategies and discussions with regard to public and White House concerns about that Statement and the COVID-19 rapid test webpage. Revealing nascent attorney and internal client impressions about various iterations of the Privacy Statement, potential revisions thereto, and external concerns from the public and the White House would negatively impact the Postal Service's ability to appropriately respond to legal issues and public concerns. Exposing such communications to public scrutiny would interfere with the attorney-client relationship between postal attorneys and internal clients by impeding the sharing of candid advice that is critical to an attorney's ability to render legal

advice. Disclosing such information would also reveal confidential information transmitted by internal clients and reveal the Postal Service's assessment of various legal issues implicating the Privacy Act Statement. Thus, the redacted information was properly withheld under the attorney-client privilege.

29.  *Exemption 6*: As noted above, disclosure of work mobile phone numbers and email addresses of the various individuals implicated the relevant records could subject these individuals to unwarranted harassment. Government employees would be subjected to unwanted phone calls while on and off duty. Similarly, disclosing employee email addresses would subject them to unsolicited emails that have nothing to do with their daily responsibilities. Accordingly, the redacted information is appropriately withheld under Exemption 6.

### Segregation of Non-Exempt Information

30.  The Postal Service has carefully reviewed the 50 pages of responsive records produced as a result of its searches for records responsive to Plaintiff's FOIA request, including those conducted in compliance with the Court's March 2023 Order. A line-by-line review of the records identified non-exempt information required to be released under the FOIA.

\* \* \*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing declaration is true and correct. Executed in Washington, D.C., on July 31, 2024.

_____
Janine Castorina
Chief Privacy and Records Officer
United States Postal Service