**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AMERICANS FOR FAIR TREATMENT,

Plaintiff,

v.

UNITED STATES POSTAL SERVICE,

Defendant.

**No. 1:22-cv-01183-RCL**

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S RENEWED CROSS-MOTION FOR SUMMARY JUDGMENT**

David R. Dorey
D.C. Bar No. 1015586
LIFF, WALSH & SIMMONS
181 Harry S. Truman Parkway
Suite 200
Annapolis, MD 21401
Email: ddorey@liffwalsh.com
Telephone: (410) 266-9500
Facsimile: (410) 266-7699

*Counsel for Americans for Fair Treatment*

## TABLE OF CONTENTS

Table of Authorities........................................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT..............................................1

LEGAL STANDARD..............................................................................................2

ARGUMENT............................................................................................................4

I. USPS Withheld Non-Exempt Information and Did Not Meet Its Segregability Burden............................................................................................................5

II. USPS Failed to Demonstrate Foreseeable Harm...............................................7

A. Deliberative Process Privilege.........................................................................8

B. Attorney-Client Privilege...............................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 3

*Armstrong v. Exec. Office of the President*,
97 F.3d 575 (D.C. Cir. 1996) .......... 6

**Blade v. DOL*,
No. 20-2591 U.S. Dist. LEXIS 200241, (D.D.C. Nov. 4, 2024) .......... 13, 14

*Campbell v. DOJ*,
164 F.3d 20 (D.C. Cir. 1998) .......... 4

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 3

*Ctr. Investigative Reporting v. CBP*,
436 F. Supp. 3d 90 (D.D.C. 2019) .......... 7

*Dep't of State v. Ray*,
502 U.S. 164 (1991) .......... 3

*Emuwa v. Dep't of Homeland Sec.*,
113 F.4th 1009 (D.C. Cir. 2024 .......... 11

*Energy Policy Advocates v. Dep't of State*,
No. 1:19-cv-03307, 2023 U.S. Dist. LEXIS 110781 (D.D.C. June 27, 2023) .......... 13

*Gold Anti-Trust Action Comm., Inc. v. Bd. Governors Fed. Reserve Sys.*,
762 F. Supp. 2d 123 (D.D.C. 2011) .......... 3

*Jud. Watch, Inc. v. DOC*,
375 F. Supp. 3d 93 (D.D.C. 2019) .......... 7

*Judicial Watch, Inc. v. Dep't of State*,
344 F. Supp. 3d 77 (D.D.C. 2018) .......... 12

*Keeping Gov't Beholden, Inc. v. Dep't of Just.*,
No. 17-1569, 2021 WL 5918627 (D.D.C. Dec. 13, 2021)........................................ 11

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ........................................................................................ 3

*Mead Data Cent., Inc. v. Air Force*,
566 F.2d 242 (D.C. Cir. 1977) ........................................................................ 6

*Petroleum Info. Corp. v. DOI*,
976 F.2d 1429 (D.C. Cir. 1992). ..................................................................... 4

*Public Employees for Environmental Responsibility v. DHS*,
575 F. Supp. 3d 34 (D.D.C. 2021). ................................................................. 12

*Reporters Comm. for Freedom of the Press v. CBP*,
567 F. Supp. 3d 97 (D.D.C. 2021) .............................................................. 9, 14

**Reps. Comm. Freedom Press v. FBI*,
3 F.4th 350 (D.C. Cir. 2021)....................................................... 7, 8, 9, 11

*Sai v. TSA*,
315 F. Supp. 3d 218 (D.D.C. 2018) (Moss, J.) ................................................. 3

*Shteynlyuger v. CMS*,
698 F. Supp. 3d 82 (D.D.C. 2023) .................................................................. 14

*Students Against Genocide v. Dep't of State*,
257 F.3d 828 (D.C. Cir. 2001) ........................................................................ 4

*Sussman v. U.S. Marshals Serv.*,
494 F.3d 1106 (D.C. Cir. 2007) ...................................................................... 6

*Weisberg v. DOJ*,
705 F.2d 1344 (D.C. Cir. 1983) ...................................................................... 3

**Statutes**

5 U.S.C. § 552(a)(4)(B) ....................................................................................... 6
5 U.S.C. § 552(a)(8)(A)(i) ........................................................................... 6, 9, 15

**Other Authorities**

Barack Obama, Memorandum on the Freedom of Information Act, 74 Fed. Reg. 4683, 4683 (Jan. 21, 2009) .......... 7, 12

COMMITTEE ON EDUCATION & WORKFORCE, Press Release., *Foxx Questions USPS About Sharing Customer's Personal Info with Unions* (Dec. 14, 2023),.......... 12

Covington & Burling, *The Impact of the 2024 Election on the Data Privacy Landscape*, (Nov. 4, 2024) .......... 10

Jennifer Kates, *Comparing Trump and Biden on COVID-19*, KFF (Sep. 11, 2020) .10

## INTRODUCTION AND SUMMARY OF ARGUMENT

When this Freedom of Information Act ("FOIA") matter began nearly three years ago, Defendant United States Postal Service ("USPS") told Plaintiff Americans for Fair Treatment ("AFFT") that it had no records responsive to AFFT's request about the Privacy Act Statement USPS used for the COVID-19 test kit program housed on its website. USPS's Statement of Material Facts, ECF No. 83-2 ¶ 2. So AFFT filed an administrative appeal, and in response USPS produced nine pages of responsive records. *Id.* ¶¶ 3–4. Observing that USPS's response was still wholly inadequate, AFFT sued USPS in this Court. After full summary judgment briefing and an order from this Court, USPS performed a supplemental search and produced forty-one more pages of records—for a total of fifty. Memorandum of Law in Support of Defendant's Renewed Motion for Summary Judgment ("USPS Mem."), ECF No. 83-1 at 8. Based on that supplemental search, USPS then moved for summary judgment again. ECF No. 75.

AFFT told USPS that its supplemental search discussed in its new summary judgment papers was still clearly inadequate. USPS Mem. at 9. USPS then performed a second supplemental search, which turned up an additional four hundred sixty-five pages of records. *Id.* And after further discussion, USPS conducted a third supplemental search and produced four more pages. *Id.* at 11. In sum, it has taken nearly three years to get USPS to produce the complete responsive record set of ***five hundred nineteen pages*** (*id.* at 12)—approximately fifty-eight times the number of responsive records USPS told AFFT it had in response to AFFT's

administrative appeal. And that now complete record set tells a very different story from what little was initially disclosed: USPS had a massive operation to implement, consider, and revise the Privacy Act Statement on the COVID-19 test kit webform that involved the Postmaster General, USPS's General Counsel, political staff at the White House, a United States Senator, and members of the public. AFFT's Statement of Undisputed Material Facts ¶ 1 (citing "*Vaughn* Index," ECF No. 83-4).

USPS has recently done significant work to adequately search for, identify, and produce those responsive records and to justify its underlying invocations of FOIA exemptions. And for that reason AFFT does not now dispute the adequacy of USPS's searches or its redactions of information covered by FOIA Exemptions 3 and 6. However, USPS has still failed to meet its burden with respect to Exemption 5 in two material ways: 1) USPS has redacted information pursuant to the deliberative process privilege that it admits is not deliberative and it has not met its segregability burden of showing how the withheld non-exempt information is "inextricably intertwined" with exempt information; and 2) USPS has not adequately demonstrated that there would be foreseeable harm from the disclosure of any information it redacted pursuant to Exemption 5. AFFT therefore moves for summary judgment as to those two issues and opposes USPS's motion for summary judgment as to the same.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(a). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A "genuine issue" means a factual dispute can affect the substantive outcome of the case and is supported by admissible evidence that a reasonable trier of fact could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The burden on the moving party may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

FOIA is "designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (cleaned up). FOIA cases are typically and appropriately decided on motions for summary judgment. *Gold Anti-Trust Action Comm., Inc. v. Bd. Governors Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C. 2011) (Huvelle, J.). In a FOIA action, summary judgment may not be entered in favor of the government unless the agency "shows[s] that there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requester." *Weisberg v. DOJ*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). To meet its burden, the agency must establish that it has fully met its statutory obligations, including that it conducted an adequate search, that any information it withheld is proper under one or more of FOIA's enumerated exemptions, and that disclosure of the withheld information would harm an exemption-protected interest. *Sai v. TSA*, 315 F. Supp. 3d 218, 241 (D.D.C. 2018)

(Moss, J.); *Campbell v. DOJ*, 164 F.3d 20, 30 (D.C. Cir. 1998); 5 U.S.C. § 552(a)(4)(B), (8)(A)(i)(I).

"When an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption, summary judgment in favor of the FOIA plaintiff is appropriate." *Petroleum Info. Corp. v. DOI*, 976 F.2d 1429, 1433 (D.C. Cir. 1992).

**ARGUMENT**

USPS has the burden of showing that every record that is responsive to AFFT's FOIA request either has been produced, is unidentifiable, or is exempt from disclosure. *See Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001). USPS has not done this—and it cannot—because it is still improperly relying on FOIA Exemption 5 to withhold voluminous information that it is required to disclose. ***First***, USPS has withheld information on the basis of the deliberative process privilege that it admits is not privileged, and it has not met its segregability burden to demonstrate how non-exempt information is inextricably intertwined with exempt information. ***Second***, USPS has failed to show that any information it redacted basis on Exemption 5 would cause foreseeable harm.[1] Accordingly AFFT is entitled to summary judgment on these two issues and USPS is not.

[1] USPS argues that summary judgment should be granted for the individual defendants as to Counts I and II. USPS Mem. at 14–15. But AFFT did not assert Counts I and II as to these defendants, so summary judgment as to them is unnecessary. *See* Complaint, ECF No. 1 at 13 (Count One – "Only as to Defendant USPS"); *id.* at 14 (Count Two – "Only as to Defendant USPS").

## I. USPS WITHHELD NON-EXEMPT INFORMATION AND DID NOT MEET ITS SEGREGABILITY BURDEN.

USPS admits that it has redacted information from responsive records pursuant to the deliberative process privilege (Exemption 5) even though that information is not in fact subject to the deliberative process privilege. USPS Mem at 24, 31; Third Supplemental Declaration of Janine Castorina ("3d. Castorina Decl."), ECF No. 83-3 at ¶ 70 ("In particular, disclosing portions of the emails that are ***not specifically deliberative in nature***, but which are inextricably intertwined with the deliberative portions, would also cause harm.") (emphasis added). USPS's apparent basis for this is a thrice repeated boilerplate conclusion—generalized across potentially hundreds of pages of records—that non-exempt factual information is "inextricably intertwined" with "recommendations," "recommendations or advice," or "legal advice or recommendations." 3d. Castorina Decl ¶¶ 57–59. And it is contradicted by USPS's simultaneous position that it conducted a "line-by-line review of the records" and "determined that all non-exempt information was segregated and any non-exempt portions were released." 3d. Castorina Decl ¶ 76. USPS cannot have it both ways. Either it released all non-exempt portions of the records or did not release some non-exempt portions because they are "inextricably intertwined" with exempt information. That contradiction alone should be enough to prevent summary judgment for USPS on this point.

Additionally, accepting USPS's statement that it has redacted non-deliberative information, USPS's bare conclusions that the non-deliberative information is "inextricably intertwined" with deliberative information runs headlong into D.C.

Circuit precedent, which requires a "detailed justification" and not "conclusory statements." *Mead Data Cent., Inc. v. Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). "[U]nless the segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts." *Id.* USPS must "show with reasonable specificity ***why*** the documents cannot be further segregated." *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996) (cleaned up, emphasis added).

USPS has not approached compliance with this standard. The *Vaughn* index does not contain the words "inextricably" or "intertwined." For the two documents where the *Vaughn* index uses the word "segregable," USPS supplies only the boilerplate that the "pages do not feature meaningful segregable information." *Vaughn* Index at pp. 46–48. USPS has thus offered only categorical and conclusory statements—not a "detailed justification" for "why" the documents cannot be further segregated. USPS has given the Court none of the information it needs to "make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.,* 494 F.3d 1106, 1116 (D.C. Cir. 2007); *see also id.* ("If the district court approves withholding without such a finding, remand is required even if the requester did not raise the issue of segregability before the court."). The Court should accordingly deny USPS's motion for summary judgment on this point, grant AFFT's motion, and require USPS to un-redact all non-exempt information from the records.

## II.   USPS FAILED TO DEMONSTRATE FORESEEABLE HARM.

USPS cannot rely on FOIA Exemption 5 to withhold responsive from AFFT unless it meets its burden of affirmatively demonstrating that disclosing that information would reasonably harm an exemption-protected interest or is prohibited by law. *Jud. Watch, Inc. v. DOC*, 375 F. Supp. 3d 93, 97–98 (D.D.C. 2019) (Sullivan, J.); *see also* 5 U.S.C. § 552(a)(8)(A)(i). USPS has not alleged that releasing withheld information is prohibited by law; therefore the only question presented is whether USPS has demonstrated foreseeable harm. As with its first summary judgment motion, USPS has again failed to demonstrate foreseeable harm. Memorandum Opinion ("Mem. Op."), ECF No. 30 at 17, 22–26.

Congress inserted the "foreseeable harm" requirement into FOIA with the FOIA Improvement Act of 2016 to prevent agencies from overusing FOIA exemptions—especially Exemption 5—to withhold releasable information and records based on mere "speculative or abstract fears." *Ctr. Investigative Reporting v. CBP*, 436 F. Supp. 3d 90, 104–06 (D.D.C. 2019) (Howell, J.) (quoting Barack Obama, Memorandum on the Freedom of Information Act, 74 Fed. Reg. 4683, 4683 (Jan. 21, 2009)). To avoid disclosure, the agency must provide a "focused and concrete" explanation of the specific, identifiable harms to relevant protected interests that disclosure would cause and articulate "the link between the specified harm and specific information contained in the material withheld." *Reps. Comm. Freedom Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021). USPS failed to meet the standard both as to deliberative process privilege and attorney-client privilege.

### A. Deliberative Process Privilege

"In the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'—adversely affect impair internal deliberations." *Reporters Committee*, 3 F.4th at 369–70. "The foreseeable-harm requirement imposes an independent and meaningful burden on agencies." *Id.* at 369 (cleaned up). USPS cannot rely on "boilerplate and generic assertions that release of any deliberative material would necessarily chill internal discussions." *Id.* at 370. To satisfy its burden, USPS must provide a "focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.*

USPS first argues "[b]roadly" that disclosure of responsive information subject to the deliberative process privilege "would prevent Postal Service officials, employees, and attorneys from speaking candidly amongst each other regarding new initiatives and policy developments" and "chill communications."[2] USPS Mem. at 27; 3d. Castorina Decl ¶ 66. This Court rejected that argument when USPS made it previously. Mem. Op. at 22–24. USPS's justification again has the "fatal flaw" that it is "essentially a restatement of the generic rationale for the deliberative process privilege itself." *Id.* at 24 (cleaned up). "An agency cannot carry its burden simply

[2] USPS also argues that revealing "internal policymaking and legal discussions would generally hinder postal officials from contacting postal attorneys for their advice and recommendations . . . ." USPS Mem. at 27–28. This appears to be an argument aimed at the attorney-client privilege rather than the deliberative process privilege and in any event is "general[]" not specific.

by turning that generic rationale into a game of Mad Libs and filling in the blanks with the name of the agency and the things that it does, as USPS attempts to do here." *Id.* (cleaned up); *compare* USPS Mem. at 28 ("Correctly evaluating the Privacy Act is critical in ensuring that the Postal Service can gather the necessary information to provide its services . . . and perform its functions . . . .").

USPS also argues that disclosure "would result in less rigorous legal analysis and conclusions" and result in executives being "reticent to share their thoughts[.]" USPS Mem. at 28–29. These are non-specific, speculative, and conclusory statements that this Court has likewise previously rejected. Mem. Op. at 23–24 ("That justification is insufficiently specific to carry USPS's burden under the FOIA Improvement Act. It is virtually indistinguishable from similarly boilerplate justifications this Court has found insufficient in two recent cases."); *see also id.* at 24

> Disclosure of [material containing or prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policies, proposals, conclusions, or recommendations] would have an inhibiting effect upon agency decisionmaking and the development of policy because it would chill full and frank discussions between agency personnel and decision makers regarding a decision. If agency personnel know that their preliminary impressions, opinions, evaluations, or comments would be released to the general public, they would be less candid and more circumspect in expressing their thoughts, which would impede the fulsome discussion of issues necessary to reach a well-reasoned decision.

(quoting *Reporters Comm.*, 3 F.4th at 370); *see also Reporters Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 115 (D.D.C. 2021) (McFadden, J.) ("The harm that CBP identifies—the risk that agency officials might not seek guidance or share

their views—undergirds the privilege in every case. . . . The materials . . . must therefore be disclosed.”).

USPS also creatively argues that disclosure of certain deliberative information would “impair” its relationship with “the White House” “regardless of the Presidential administration at any given time.” USPS Mem. at 29. Releasing the information would allegedly “harm the Federal Government’s ability to function within itself.” *Id.* This appears to be an attempt at carving a categorical exemption to FOIA’s foreseeable harm requirement: if White House officials are involved in records then their release would harm the whole government. No such categorical exemption to FOIA exists. It is also exceptionally speculative insofar as the entire political White House staff is turning over on January 20, 2025, and USPS has not explained how revealing discussions with staff of the current Administration would harm relationships with new staff of the incoming Administration. And on the merits, certainly the current Administration has shown significant differences from the (prior and incoming) Trump Administration in its approaches to data privacy and the government’s response to COVID-19, which are implicated here.[3]

“Based on those explanations” USPS says that it “has provided the necessary link as to why the release of the redacted information ***might*** cause a chilling effect

[3] *E.g.*, Jennifer Kates, *Comparing Trump and Biden on COVID-19*, KFF (Sep. 11, 2020), https://www.kff.org/coronavirus-covid-19/issue-brief/comparing-trump-and-biden-on-covid-19/; Covington & Burling, *The Impact of the 2024 Election on the Data Privacy Landscape*, (Nov. 4, 2024) https://www.cov.com/en/news-and-insights/insights/2024/11/the-impact-of-the-2024-election-on-the-data-privacy-landscape.

on those individuals providing advice, recommendations, or input." USPS Mem. at 29 (emphasis added). That admission should be the end of the matter—"might" is not "will." *See Reporters Committee*, 3 F.4th at 369-70 ("In the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations."). And the cases USPS cites well support that its argument is speculative at best: those cases discuss the "sensitive nature of asylum adjudications and the specific concern about facilitating asylum fraud,"[4] the FBI Director's "preliminary views regarding the Trump investigation,"[5] and the "unique sensitivity of discussions among" the FBI Director and staff about an "ongoing crisis" that would threaten "covert Bureau operational tactics."[6] Those cases are not only quite concrete but show significant, palpable harm that ***would*** result from disclosure. USPS Mem. at 29–30. Comparing these cases to deliberations over a privacy act statement—something USPS says it does routinely (*e.g.*, USPS Mem. at 2, 31)—is a bridge too far.

USPS continues by claiming that disclosure would result in a "***risk*** of public confusion" because "confidential discussions" "***might*** be misconstrued" by the public "in a manner that suggests" USPS "is misusing customer information." USPS Mem. at 30–31 (emphases added). Again, "might" is not "will" or "would." And the case

---

[4] *Emuwa v. Dep't of Homeland Sec.*, 113 F.4th 1009, 1015–16 (D.C. Cir. 2024).

[5] *Keeping Gov't Beholden, Inc. v. Dep't of Just.*, No. 17-1569, 2021 WL 5918627, at *10 (D.D.C. Dec. 13, 2021).

[6] *Reps. Comm.*, 3 F.4th at 372.

USPS cites in support again well demonstrates the difference: disclosure there "would harm" the agency by "prematurely revealing threats and hazards . . . and may result in members of the public taking action on potential threats and hazards where no action is warranted . . . ."[7] There the risk was non-speculative ("would") and in the context of actual public harm related to "threats and hazards." A privacy act statement is not the same.

Additionally, USPS's concern that the information it redacted might show the public that it is "misusing customer information" was exactly the reason for AFFT's FOIA request; AFFT reasonably believes that USPS ***was or is*** misusing the public's sensitive personal information. *E.g.*, Compl. ¶¶ 1–2, 17. So does the former Chairwoman of the Education & Workforce Committee of the U.S. House of Representatives.[8] Disclosure of that information might be embarrassing to USPS, but there is no "embarrassing" exception to disclosing agency action under FOIA. "The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears." *Judicial Watch, Inc. v. Dep't of State*, 344 F. Supp. 3d 77, 78 (D.D.C. 2018) (Lamberth, J.) (quoting Barack Obama,

[7] *Public Employees for Environmental Responsibility v. DHS*, 575 F. Supp. 3d 34, 51 (D.D.C. 2021).

[8] COMMITTEE ON EDUCATION & WORKFORCE, Press Release., *Foxx Questions USPS About Sharing Customer's Personal Info with Unions* (Dec. 14, 2023), https://edworkforce.house.gov/news/documentsingle.aspx?DocumentID=409906("In the letter, Foxx writes: 'I am astonished by such a potential breach of personal information, and I seek information about USPS's collection of information that it could disseminate to labor unions.'").

Memorandum on the Freedom of Information Act, 74 Fed. Reg. 4683, 4683 (Jan. 21, 2009)); *Reporters Comm.*, 3 F.4th at 369 ("Agencies cannot rely on mere speculative or abstract fears, or fear of embarrassment to withhold information."). The deliberative process privileged information in USPS's records should be ordered disclosed.

### B. Attorney-Client Privilege

USPS essentially argues that the Court should adopt a categorical exemption to FOIA's foreseeable harm requirement for information that is attorney-client privileged. USPS Mem. at 32–34. No such exemption exists. *Energy Policy Advocates v. Dep't of State*, No. 1:19-cv-03307, 2023 U.S. Dist. LEXIS 110781, at *19 (D.D.C. June 27, 2023) (McFadden, J.) ("To date, the D.C. Circuit has applied this [foreseeable harm] requirement only to the deliberative process privilege, but the text is not so limited."); 5 U.S.C. § 552(a)(8)(A)(i)(I).

USPS generically says that disclosure of such privileged information would "undermine our legal culture" and hamper the "observance of law" leading to "especially deleterious effects." USPS Mem. at 32–33; 3d Castorina Decl. ¶ 71. This is so, USPS says, even as applied here to a "typical request[] for legal advice." USPS Mem. at 33. As with the deliberative process privilege, USPS's position is simply a restatement of the privilege itself rather than an application to the specific information and why its disclosure would be particularly harmful compared to any other attorney-client privileged interaction. USPS's "assertion is, of course, boilerplate: it could be offered in support of any assertion of the attorney-client privilege." *Blade v. DOL*, No. 20-2591, 2024 U.S. Dist. LEXIS 200241, at *111–12

(D.D.C. Nov. 4, 2024) (Moss, J.); *see Reporters Comm.*, 567 F. Supp. 3d at 124 ("But an agency must still provide a non-generalized explanation on the foreseeable harm that would result from disclosure of attorney-client communications.").

And this is the case even though this was USPS's "second chance" to give an "appropriate explanation" of foreseeable harm in the context of attorney-client privilege withholdings. Mem. Op. at 26. If attorney-client privileged information was categorically exempt from the foreseeable harm requirement, the Court would have had no need to offer USPS a second chance. *See Blade*, 2024 U.S. Dist. LEXIS 200241, at *108 ("But it is equally clear that merely establishing that the agency has properly asserted the attorney-client privilege will not, standing alone, satisfy the foreseeable-harm requirement. If that were so, the requirement would not impose an independent and meaningful burden on agencies.") (cleaned up). Having failed in that chance, the attorney-client privileged information should be ordered disclosed. *Shteynlyuger v. CMS*, 698 F. Supp. 3d 82, 135 (D.D.C. 2023) (Moss, J.) ("FOIA does not permit an agency to make a half-hearted effort with the expectation that, if unconvincing, it can simply 'do it over'—again and again, until the Court is satisfied.") (citation omitted).

*  *  *

For the foregoing reasons AFFT's motion for summary judgment should be granted and USPS's denied. USPS should be ordered to disclose all non-exempt information and that which it redacted pursuant to FOIA Exemption 5.

                                                Respectfully submitted,

Dated: January 14, 2025

**/s/ David R. Dorey**
David R. Dorey
D.C. Bar No. 1015586
LIFF, WALSH & SIMMONS
181 Harry S. Truman Parkway
Suite 200
Annapolis, MD 21401
Email: ddorey@liffwalsh.com
Telephone: (410) 266-9500
Facsimile: (410) 266-7699

*Counsel for Americans for Fair Treatment*