UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICANS FOR FAIR TREATMENT,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE, et al.,<br><br>Defendants. | Civil Action No. 22-1183 (RCL) |

**COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

ERIKA K. OBLEA, D.C. Bar #1034393
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 252-2567
erika.oblea@usdoj.gov

*Attorneys for the United States of America*

Dated: February 12, 2025

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 1

I.      Plaintiff Concedes Individual Defendants Are Not Appropriate Defendants in this FOIA Matter and the Postal Service Performed Reasonable Searches Pursuant to the Court's Order. ................................................................................................................................. 1

II.     The Postal Service Complied with FOIA's Segregability Requirement ............................ 2

III.    The Postal Service Complied with FOIA's Foreseeable Harm Requirement..................... 6

      A.      The Deliberative Process Privilege .......................................................................... 6

      B.      The Attorney-Client Privilege................................................................................ 12

CONCLUSION............................................................................................................................ 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abramyan v. Dep't of Homeland Sec.*,
  6 F. Supp. 3d 57 (D.D.C. 2013) .................................................................................................. 4

*Am. First Legal Found. v. FBI*,
  Civ. A. No. 23-2172, 2024 WL 4607496 (D.D.C. Oct. 29, 2024) ............................................. 3

\* *Ancient Coin Collectors Guild v. Dep't of State*,
  641 F.3d 504 (D.C. Cir. 2011) ................................................................................................ 4, 5

\* *Armstrong v. Exec. Off. of the President*,
  97 F.3d 575 (D.C. Cir. 1996) .................................................................................................... 2

*Avila v. Dep't of State*, Civ. A.,
  Civ. A. No. 17-2685 (RC), 2022 WL 2104483 (D.D.C. June 10, 2022) ................................. 13

*Boyd v. Crim. Div. of Dep't of Just.*,
  475 F.3d 381 (D.C. Cir. 2007) ................................................................................................... 2

\* *Cayuga Nation v. Dep't of Interior*,
  Civ. A. No. 20-2642 (ABJ), 2022 WL 888178 (D.D.C. Mar. 25, 2022) ................................. 12

*Ecological Rts. Found. v. EPA*,
  Civ. A. No. 19-0980(BAH), 2021 WL 535725 (D.D.C. Feb. 13, 2021) ................................. 12

*Energy Policy Advocates v. EPA*,
  Civ. A. No. 22-0298(TJK), 2023 WL 6388879 (D.D.C. Sept. 29, 2023).................................. 9

*Fischer v. Dep't of Just.*,
  596 F. Supp. 2d 34 (D.D.C. 2009) ............................................................................................. 6

*Jordan v. Dep't of Just.*,
  591 F.2d 753 (D.C. Cir. 1978) ................................................................................................. 10

*Jud. Watch, Inc. v. Dep't of,*
  *Com.*, 375 F. Supp. 3d 93 (D.D.C. 2019) ................................................................................. 8

*Jud. Watch, Inc. v. Dep't of,*
  *Def.*, 847 F.3d 735 (D.C. Cir. 2017) ....................................................................................... 10

*Jud. Watch, Inc. v. Dep't of Just.*,
  Civ. A. No. 17-0832, 2019 WL 4644029 (D.D.C. Sept. 24, 2019) ........................................... 8

\*  *Juul Labs, Inc. v. FDA*,
    731 F. Supp. 3d 46 (D.D.C. 2024) .................................................................... 10, 11, 12

*Machado Amadis v. Dep't of State*,
    971 F.3d 364 (D.C. Cir. 2020) ................................................................................. 6, 7

*Mapother v. Dep't of Just.*,
    3 F.3d 1533 (D.C. Cir. 1993) ...................................................................................... 4

*McGehee v. CIA*,
    697 F.2d 1095 (D.C. Cir. 1983) .................................................................................. 7

*Mead Data Cent., Inc. v. Dep't of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) .................................................................................... 4

*Military Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) .................................................................................... 6

*Pavement Coatings Tech. Council v. U.S. Geological Survey*,
    995 F.3d (D.C. Cir. 2021) ......................................................................................... 10

*Plunkett v. Dep't of Just.*,
    Civ.A. No. 11-0341 (RDM), 2015 WL 5159489 (D.D.C. Sept. 1, 2015) .................. 5

*Protect Democracy Project, Inc. v. Dep't of Health & Hum. Servs.*,
    569 F. Supp. 3d 25 (D.D.C. 2021) ............................................................................. 2

*Reps. Comm. for Freedom of the Press v. Customs & Border Prot.*,
    567 F. Supp. 3d 97 (D.D.C. 2021) ..................................................................... 12, 13

*Reps. Comm. for Freedom of the Press v. FBI*,
    3 F.4th 350 (D.C. Cir. 2021) ........................................................................ 6, 7, 8, 10

*Russell v. Dep't of the Air Force*,
    682 F.2d 1045 (D.C. Cir. 1982) ................................................................................ 10

*Soto v. Dep't of State*,
    118 F. Supp. 3d 355 (D.D.C. 2015) ............................................................................ 5

*Spataro v. Dep't of Just.*,
    Civ.A. No. 14-198 (RDM), 2019 WL 356901 (D.D.C. Jan. 29, 2019) ...................... 5

\*  *Sussman v. U.S. Marshal Service*,
    494 F.3d 1106 (D.C. Cir. 2007) .................................................................................. 2

*Tobias v. Dep't of Interior*,
    Civ. A. No. 18-1368 (CJN), 2021 WL 4262488 (D.D.C. Sept. 20, 2021) ............... 13

*United States v. Philip Morris*,
  314 F.3d 612 (D.C. Cir. 2003) .................................................................................................. 12

*Vaughn v. Rosen*,
  484 F.2d 820 (D.C. Cir. 1973) .................................................................................................... 7

*Wheeler v. Dep't of Just.*,
  403 F. Supp. 2d 1 (D.D.C. 2005) ................................................................................................ 7

**Statutes**

5 U.S.C. § 552 .............................................................................................................................. 2, 3

**Rules**

Federal Rule of Civil Procedure 56 ......................................................................................... 15, 16

Defendants the United States Postal Service, Postmaster General, and General Counsel Thomas Marshall (the "Postal Service" or the "Agency") respectfully submit this combined memorandum in opposition to Plaintiff's Cross-Motion for Summary Judgment (ECF No. 85) and reply in further support of Defendants' Motion for Summary Judgment (ECF No. 83).

## INTRODUCTION

This case arises from Plaintiff's February 7, 2022, request to the Postal Service under the Freedom of Information Act ("FOIA") for records related to the Privacy Act statement appearing on the Postal Service's COVID-19 test kit webform and to the disclosure to labor unions of any information gathered on that form. *See* Compl. ¶ 19, ECF No. 1. The only issues left for this Court's resolution are the Postal Service's (1) fulfillment of its segregability obligations; and (2) foreseeable harm analysis as to its withholdings under Exemption 5.

Summary judgment is appropriate for the Postal Service on these two remaining issues. First, the Postal Service has satisfied its obligations to segregate out non-exempt information, and Plaintiff has failed to point to a "quantum of evidence," let alone any evidence, demonstrating otherwise. Second, the Postal Service has sufficiently described the foreseeable harm that would result from the disclosure of the records protected under the deliberative process privilege and the attorney-client privilege. For these reasons, the Court should grant the Postal Service's Renewed Motion for Summary Judgment and deny Plaintiff's cross-motion.

## ARGUMENT

**I.    Plaintiff Concedes Individual Defendants Are Not Appropriate Defendants in this FOIA Matter and the Postal Service Performed Reasonable Searches Pursuant to the Court's Order.**

First, Plaintiff asserts that none of the remaining FOIA claims are directed towards the individual Defendants. Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl. Opp'n") at 9 n.1, ECF

No. 84;[1] Mem. in Supp. of Pl.'s Mem. in Supp. of Cross Mot. for Summ. J. ("Pl.'s Br.") at 9 n.1, ECF No. 85-1. For this reason, to the extent that any of the individual Defendants remain in this litigation, they should be dismissed. Second, Plaintiff does not contest the reasonableness of the Postal Service's search. Pl.'s Br. at 7. Therefore, for the reasons stated in Defendants' Motion, the Court should grant summary judgment to Defendants on the issue of the reasonableness of its search. *See* Defs.' Br. at 16-20, 23-24, ECF No. 83-1.

## II.     The Postal Service Complied with FOIA's Segregability Requirement

Plaintiff fails to demonstrate that the Postal Service did not comply with its segregability obligations. "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshal Service*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) (citing *Boyd v. Crim. Div. of Dep't of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007)). As a result, for a requester to overcome this presumption, Plaintiff must present some "quantum of evidence." *Id.* Plaintiff fails to present any such evidence here.

First, Plaintiff merely argues that the Postal Service's description of how it fulfilled its segregability obligations is vague. *See* Pl.'s Br. at 10-11. Plaintiff is mistaken. The standard for assessing an agency's explanation of segregability is "reasonable specificity." *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996). In assessing reasonableness in this context, courts consider both written explanations (in *Vaughn* indices and agency affidavits) and "the portions of the records that the [agency] has not redacted." *Protect Democracy Project, Inc. v. Dep't of Health & Hum. Servs.*, 569 F. Supp. 3d 25, 36 (D.D.C. 2021); 5 U.S.C. § 552(a)(8) (requiring the agency to merely "take reasonable steps necessary to segregate and release nonexempt information."); *id.* § 552(b) ("Any reasonably segregable portion of a record shall be

---

[1]     All citations are to the ECF-generated page numbers.

2

provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

Here, the Postal Service fully explained the basis for its Exemption 5 withholdings in both its *Vaughn* Index and the Third Castorina Declaration, which Plaintiff does not dispute, *see* Def. App'x. 2 at 2, ECF No. 83-5; Pl.'s Br. at 12. This is because Plaintiff cannot do so. The Postal Service's *Vaughn* Index identifies in detail the participants, timing, and subject of each conversation in the records at issue as information that was not redacted from the records, and both the *Vaughn* Index and Third Castorina Declaration provide detailed descriptions of the Postal Service's withholdings under Exemption 5. *See* 3d Supp. Castorina Decl. ¶¶ 53-74, ECF No. 83-3; *id.* Ex. 1, *Vaughn* Index, ECF No. 83-4; *Am. First Legal Found. v. FBI*, Civ. A. No. 23-2172, 2024 WL 4607496, at *15 (D.D.C. Oct. 29, 2024) (citing disclosures of segregable information as evidence of compliance with FOIA's segregation requirement). And for what little information that was not released, the Postal Service presented the Third Castorina Declaration that declares the Postal Service conducted a "a line-by-line review of the records identified to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied" and "determined that all non-exempt information was segregated and any non-exempt portions were released." 3d Supp. Castorina Decl. ¶ 76, ECF No. 83-3.

Second, Plaintiff provides no evidence to overcome the presumption of good faith afforded to agencies as to the fulfillment of their segregability obligations. Plaintiff argues that it is inconsistent for the Postal Service to claim it did a line-by-line review if it also declares that there

3

was factual information "inextricably intertwined" with deliberative information. *See* Pl.'s Br. at 10. But Plaintiff is again mistaken.

Even where some information is not covered by an exemption, it can be withheld if it is "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *see also Abramyan v. Dep't of Homeland Sec.*, 6 F. Supp. 3d 57, 64 (D.D.C. 2013). For example, purely factual information can be exempt if it would reveal agency deliberations by "reflect[ing] an 'exercise of discretion and judgment calls,'" *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (quoting *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1539 (D.C. Cir. 1993)). Here, the Postal Service explained that any factual input or information "was inextricably intertwined with the employees' recommendations for inclusion in the Privacy Act Statement," or advice that was being proffered with respect to the issue at stake. 3d Supp. Castorina Decl. ¶¶ 57-59, 70, ECF No. 83-3.

The Postal Service also explained the basis for this assessment with reasonable specificity. The Postal Service explained that those portions of the communications that were redacted "reflected the input of various members of the Law Department in working out the proper language to comply with the Privacy Act (and appropriately inform users of the matters set forth under the Privacy Act, including concerning the 'routine uses' applicable to the COVID-19 test kit webform)," 3d Supp. Castorina Decl. ¶ 57, ECF No. 83-3; "recommendations and contributions from several members of Postal Service management" that "ultimately traveled up the chain of command to the Postmaster General" and "helped the Postal Service to clearly explain its Privacy Act compliance efforts, a particularly important issue given the large volume of test kit requests the Postal Service expected to receive," *id.* ¶ 58; and "the Law Department's thinking in the process of clarifying the Postal Service's policy as a matter of Privacy Act compliance,"

4

particularly "the Law Department's thinking with respect to the specific inquiries at issue—namely, contexts in which disclosures to law enforcement authorities (and, specifically, ICE) might be required," *id.* ¶ 59. These explanations more than reasonably show how such factual information that is intertwined with such recommendations or advice are protected by Exemption 5's deliberative process because they "reflect[] an 'exercise of discretion and judgment calls.'" *Ancient Coin Collectors,* 641 F.3d at 513.

Courts have found that similar explanations satisfy the agency's segregability obligations. *See, e.g.*, *Soto v. Dep't of State*, 118 F. Supp. 3d 355, 370 (D.D.C. 2015) (finding agency satisfied segregability requirements with declaration explaining agency "conducted a line-by-line segregability analysis" for each document and concluded that no other information could be segregated or that the withheld information was "inextricably intertwined" with exempt information); *Plunkett v. Dep't of Just.*, Civ. A. No. 11-0341 (RDM), 2015 WL 5159489, at *11 (D.D.C. Sept. 1, 2015) (finding agency satisfied segregability requirements with declaration asserting "each document was 'evaluated to determine if any information could be segregated and released" and that the "documents withheld in their entirety contained no meaningful portions that could be released without destroying the integrity of the document or without identifying a third party individual or confidential informant," and accompanying *Vaughn* Index describing specific information withheld); *Spataro v. Dep't of Just.*, Civ. A. No. 14-198 (RDM), 2019 WL 356901, at *3 (D.D.C. Jan. 29, 2019) (finding agency satisfied segregability requirements with declaration stating "the FBI conducted a line by line review of all the information in the responsive material

and released as much as possible without disclosing information protected by the cited Exemptions" and accompanying *Vaughn* declaration explaining each exemption invoked).

And contrary to Plaintiff's suggestion otherwise (Pl.'s Br. at 11), this Court may rely largely on the Third Castorina Declaration to find that the Postal Service satisfied its segregability obligations. *See Fischer v. Dep't of Just.*, 596 F. Supp. 2d 34, 42 (D.D.C. 2009) ("The Court may award summary judgment based solely on the information provided in affidavits or declarations[.]" (quoting *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981)).

In sum, the Department fulfilled its segregability obligations under the FOIA and Plaintiff fails to put forth any evidence, let alone a "quantum of evidence," to suggest otherwise.

### III. The Postal Service Complied with FOIA's Foreseeable Harm Requirement

The Postal Service also satisfied FOIA's requirement that, for each withholding, it "reasonably foresees that disclosure would harm an interest protected by [the] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I); *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370-71 (D.C. Cir. 2020).

#### A. The Deliberative Process Privilege

Foreseeable harm would result from disclosure of the records shielded by Exemption 5. As the D.C. Circuit has explained, the foreseeable harm standard requires Defendants to make "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 370 (D.C. Cir. 2021).

First, Plaintiff erroneously contends that the Department's declarations and *Vaughn* index contain boilerplate language. Pl.'s Br. at 13-14. For all records at issue, the Postal Service

6

explained that disclosure of the withheld information "would prevent Postal Service officials, employees, and attorneys from speaking candidly amongst each other regarding new initiatives and policy developments;" "would impair the Postal Service's ability to make sound agency decisions because executives would be reticent to share their thoughts amongst one another and their legal counsel;" "would also impair the Postal Service's relationship with other government entities, such as the White House" by inhibiting frank discussion between the Postal Service and the White House; and "would also allow confidential discussions to be misconstrued by the public." 3d Supp. Castorina Decl. ¶¶ 66, 68-70; ECF No. 83-3.

By using the language "would," the Postal Service did not claim that the foreseeable harm would be hypothetical. *Id.*; *see Reps. Comm.*, 3 F.4th at 369–70 ("In the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations."); *Machado Amadis*, 971 F.3d at 371 (concluding an assertion that disclosure "'would' chill future internal discussions" is sufficient to meet the FOIA's "governing legal requirement"). Moreover, contrary to Plaintiff's arguments otherwise (Pl.'s Br. at 15-16), Defendants' brief's use of the word "might" was an error that is not dispositive. The declarations and *Vaughn* Index provided by the Postal Service are ultimately what is dispositive to the Court's inquiry. *Cf. McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973); *Wheeler v. Dep't of Just.*, 403 F. Supp. 2d 1, 6 (D.D.C. 2005). And the Third Castorina Declaration here is unequivocal that the foreseeable harm the Postal Service identified from release "would" occur, not "could" occur. *See* 3d Supp. Castorina Decl. ¶¶ 66, 68-70, ECF No. 83-3.

Second, Plaintiff erroneously contends that the Postal Service only relied on the "chilling effect" of disclosure to justify the foreseeable harm from release. Pl.'s Br. at 13-14. The Postal Service did not do so. Rather, the Third Castorina Declaration explained the "unique sensitivity" of the discussions at stake, such that a Court can reasonably infer that release of such discussions would, not could, chill future candid decision-making. *See Reps. Comm.*, 3 F.4th at 372 (finding foreseeable harm satisfied where "the record establishes the unique sensitivity of discussions among Director Comey and high-ranking FBI officials about how to respond to an ongoing crisis that threatened existing covert Bureau operational tactics").

That "unique sensitivity" is the fact that the withheld information concerned the Postal Service's deliberations on devising a Privacy Act statement on the part of its website where it was obtaining information from the American public in order to "facilitate the distribution of millions of COVID-19 test kits more than a year before the end of the Public Health Emergency in the United States." 3d Supp. Castorina Decl. ¶ 65, ECF No. 83-3. In this light, the Postal Service was not merely engaging in a run-of-the-mill discussion on the Privacy Act statement as Plaintiff contends. *See* Pl.'s Br. at 16. Rather, in discussing the propriety of that Privacy Act statement, the Postal Service was balancing the public's concerns about "unnecessary or improper disclosures of consumer information," with the reality that "other laws require the Postal Service to disclose information in certain contexts," all within the context of the COVID-pandemic, a public health emergency that required the Postal Service to "gather the necessary information to provide its services—here, providing free COVID-19 test kits to the American public to help curb the spread of the infectious disease." *Id.* ¶ 67. Such an explanation more than satisfies the Postal Service's burden to articulate "the link between this harm and the specific information contained in the material." *Jud. Watch, Inc. v. Dep't of Com.*, 375 F. Supp. 3d 93, 101 (D.D.C. 2019); *see also Jud.*

8

*Watch, Inc. v. Dep't of Just.*, Civ. A. No. 17-0832, 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019) (explaining that an agency can demonstrate the requisite connection between the alleged harm and the records at issue by "providing context or insight into the specific decision-making processes or deliberations at issue").

Third, the Postal Service adequately explained the foreseeable harm from release of those deliberative discussions between the Postal Service and the White House. For instance, the Court in *Energy Policy Advocates v. EPA*, Civ. A. No. 22-0298 (TJK), 2023 WL 6388879, at *7 (D.D.C. Sept. 29, 2023), found the agency satisfied its burden to show foreseeable harm when it "predicts" that release "will chill the free exchange of ideas between Agency employees and White House officials considering and evaluating potential regulatory strategies for regulating power plants and environmental contaminants in the future." (cleaned up). Likewise, the Third Castorina Declaration explains that the redacted information contains concerns shared by the White House regarding the Postal Service's Privacy Act statement for its website to gather information to send COVID-19 tests, and that if the discussions were released, "the White House would be unlikely to engage in full and frank communications with the Postal Service." 3d Supp. Castorina Decl. ¶ 69, ECF No. 83-3.

Contrary to Plaintiff's suggestion otherwise (Pl.'s Br. at 84), the fact that there is a new Administration since those discussions in the redacted records occurred is immaterial. The Third Castorina Declaration explains that the foreseeable harm that would result is irrespective of the Presidential Administration since encouraging frank discussion with the White House will also be necessary as "new developments continually introduce challenges for the Federal Government, and government entities (including the Postal Service) must be positioned to communicate frankly in order to assess the needs of the public and craft appropriate interventions." 3d Supp. Castorina

¶ 69, ECF No. 83-3. Indeed, Plaintiff's suggestion that the new Administration may have "significant differences," on data privacy and the COVID-19 response from the previous Administration, Pl.'s Br. at 15, only further amplifies the "unique sensitivity" of the Privacy Act statement discussed in the records and the foreseeable harmful chilling effect that would result from release of such deliberative information.

      Finally, Plaintiff's suggestion that the Postal Service relies on "embarrassment" as a basis for foreseeable harm is a red herring. *See* Pl.'s Br. at 17-18. The Third Castorina Declaration never relied on agency embarrassment as a basis for foreseeable harm. Rather, the Third Castorina Declaration explained that release of the information would lead to "public confusion" since the information that was redacted involved discussions involving "coordination among internal clients and attorneys," which "might be construed" and in turn, the "American public will erroneously mistrust the Public Service and the Federal Government, and as a result, decline in the future to request the publicly available resources from the Federal Government that are designed to address any future public health emergency" and would then place the Postal Service in a position of having to "defend against public confusion and distortions." 3d Supp. Castorina Decl. ¶ 70, ECF No. 83-3. "[A] consistent line of D.C. Circuit precedent from the 1970s to the present recognizes that the deliberative process privilege serves multiple purposes, including protecting the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon." *Juul Labs, Inc. v. FDA*, 731 F. Supp. 3d 46, 72 (D.D.C. 2024) (citing *Jordan v. Dep't of Just.*, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (en banc), *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982), *Jud. Watch, Inc. v. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017), *Pavement Coatings Tech. Council v. U.S. Geological Survey*, 995 F.3d at 1014, 1022 (D.C. Cir. 2021), and *Reps. Comm.*, 3 F.4th at 361).

The fact that the Postal Service indicated that the information "might be misconstrued" by the public does not diminish the foreseeable harm from release. *See* Pl.'s Br. at 16-17. In *Juul Labs*, 731 F. Supp. 3d at 71-72, the relevant agency had also explained that the public is "likely to be confused and misled" or that the release of "unfinished Agency deliberations" "would likely give the public the wrong impression" to nonetheless satisfy the Agency's burden to demonstrate foreseeable harm. The Court found that the agency satisfied its foreseeable harm burden because the agency had explained that the potential public confusion "may make nonusers of tobacco products, including youth, more like to use a tobacco product—and also make existing users of tobacco products more likely to continue their consumption—and incur health risks as a result" or "could result in serious health harms." *Id.*

Similarly, the Postal Service explains how public confusion about whether the Postal Service was improperly releasing private information obtained from their website, even if potential, could nonetheless later discourage the public from providing their information to the Postal Service to obtain necessary resources, such as testing kits to curb a future public health emergency. 3d Supp. Castorina Decl. ¶ 70, ECF No. 83-3. Because many different stakeholders at the Postal Service were involved in the redacted discussions, including those in the Legal Department, Business and Finance Law Section, Government Relations, Corporate Communications, Digital Marketing, and Information and Security Office, among others, *id.* at ¶ 54, it is reasonable that the views of these employees with different perspectives "would likely be lost on many members of the public" such that "[m]embers of the public would likely conclude that the [agency] had rendered a series of decisions that, in fact, the agency has not rendered—and that it is still considering." *Juul Labs*, 731 F. Supp. 3d at 73. As a result, like in *Juul Labs*, the Postal Service has "specifically explained why the information contained in the withheld [records]

11

would confuse the public in such a way to undermine the agency's internal processes," here, the Postal Service's frank deliberations about the Privacy Act statement needed to comply with its statutory obligations while still encouraging Americans to obtain the public health resources needed to curb a worldwide pandemic. *Id.* at 74.

### B. The Attorney-Client Privilege

The Postal Service also met its burden to demonstrate the foreseeable harm from the release of information withheld under the attorney-client privilege. Plaintiff merely argues that the Postal Service's explanation is generic and is a "restatement of the privilege itself." Pl.'s Br. at 19-20. Plaintiff, however, misunderstands the burden that the Postal Service must demonstrate to establish foreseeable harm regarding the attorney-client privilege.

When an agency invokes the attorney-client privilege, the "disclosure of privileged information is a harm in and of itself." *Cayuga Nation v. Dep't of Interior*, Civ. A. No. 20-2642 (ABJ), 2022 WL 888178, at *9 (D.D.C. Mar. 25, 2022); *see also Ecological Rts. Found. v. EPA*, Civ. A. No. 19-0980 (BAH), 2021 WL 535725, at *32 (D.D.C. Feb. 13, 2021) ("When invoking the attorney-client privilege, [ ] an agency likely does not need to reach far beyond the fact of disclosure to show foreseeable harm," as "disclosure of privileged information is a harm in and of itself"). Indeed, in the attorney-client privilege context, the harm of disclosure is virtually self-evident. *See United States v. Philip Morris*, 314 F.3d 612, 622 (D.C. Cir. 2003) ("the general injury caused by the breach of the attorney-client privilege . . . is clear enough"); *Reps. Comm. for Freedom of the Press v. Customs & Border Prot.*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021) ("[A]n agency's burden under the foreseeable harm requirement" is "more easily met" under attorney-client than deliberative process privilege, given the former's "prominent and sacrosanct role in the law," and "the risk of harm through disclosure is more self-evident and the potential for agency

12

overuse is attenuated . . . . Release of attorney-client communications would undoubtably undermine our legal culture," as "the observance of law otherwise promoted by the privilege would be hampered during agency decisionmaking" (quotation marks omitted)); *Avila v. Dep't of State*, Civ. A. No. 17-2685 (RC), 2022 WL 2104483, at *12 (D.D.C. June 10, 2022) (breach "would jeopardize agency officials' ability to freely give and receive legal advice in its operations"); *Tobias v. Dep't of Interior*, Civ. A. No. 18-1368 (CJN), 2021 WL 4262488, at *2 (D.D.C. Sept. 20, 2021) ("So long as the agency specifically focused on the information at issue under review, and it concluded that disclosure of that information would chill future internal discussions, the court can conclude that the agency correctly understood the governing legal requirement and explained why it was met" (cleaned up)).

Here, the Postal Service explained that release of attorney and internal client communications would "negatively impact the Postal Service's ability to appropriately respond to legal issues and public concerns," "interfere with the attorney-client relationship between postal attorneys and internal clients by impeding the sharing of candid advice that is critical to an attorney's ability to render legal advice," "reveal confidential information transmitted by internal clients and reveal the Postal Service's assessment of various legal issues implicating the Privacy Act Statement, along with its broader consideration of information disclosure obligations in relation to the Privacy Act," "raise concerns for the candid discussion of legal matters across the spectrum," and "undermine the ability of internal clients and attorneys to discuss legal questions and to reach conclusions capable of withstanding the appropriate scrutiny." 3d Supp. Castorina Decl. ¶¶ 71-74, ECF No. 83-3. These explanations more than satisfy the Postal Service's burden. *See Tobias*, 2021 WL 4262488, at *2; *Avila*, 2022 WL 2104483, at *12; *Reps. Comm.*, 567 F. Supp. 3d at 120.

In sum, the Postal Service has identified several forms of harm that would occur as a result of disclosure of these records and that meet the foreseeable harm requirement of Exemption 5.

## CONCLUSION

For the reasons set forth above and in Defendants' Motion, the Court should grant summary judgment for Defendants and deny summary judgment for Plaintiff.

Dated: February 12, 2025              Respectfully submitted

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: ___/s/ Erika K. Oblea___
ERIKA K. OBLEA, D.C. Bar #1034393
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 252-2567
erika.oblea@usdoj.gov

*Attorneys for the United States of America*