UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICANS FOR FAIR TREATMENT,

    *Plaintiff*,

v.

UNITED STATES POSTAL SERVICE, *et al.*,

    *Defendants*.

Case No. 1:22-cv-01183-RCL

**MEMORANDUM OPINION**

    This case concerns a Freedom of Information Act ("FOIA") request by Plaintiff Americans for Fair Treatment ("AFFT"), a non-profit organization focused on government employees' unioin rights, for information from Defendant United States Postal Service ("USPS" or "Postal Service"). Specifically, the plaintiff requests information about a website USPS created to distribute free COVID-19 tests. Before the Court are USPS's Motion [ECF No. 83] for Summary Judgment ("Defs.' Mot.") and AFFT's renewed Cross-Motion [ECF No. 85] for Summary Judgment ("Pl.'s Mot."). For the reasons that follow, the Court will **DENY WITHOUT PREJUDICE** USPS's motion for summary judgment and **GRANT IN PART** AFFT's cross-motion for summary judgment.

**I.    FACTUAL BACKGROUND**

    Most of the relevant factual background in this case was recounted in this Court's prior Memorandum Opinion, issued in March 2023. *See Ams. for Fair Treatment v. U.S. Postal Serv.*, 663 F. Supp. 3d 39, 47–48 (D.D.C. 2023) (Lamberth, J.). To briefly recount, on February 7, 2022, AFFT requested the following records from USPS:

> 1. All records concerning the "Privacy Act Statement" contained on USPS's webform through which members of the public may order rapid antigen COVID-19 tests (https://special.usps.com/testkits). The records requested include, but are not limited to, those that reflect USPS's decision to depart from using its default "Privacy Act notice' that is "for personal information collected online" (which is published at https://about.usps.com/who/legal/privacy-policy/full-privacypolicy.htm) and instead to use a "Privacy Act Statement" that says USPS may, without consent, disclose information it obtains about the public through the COVID-19 test webform to "labor organizations as required by applicable law."
>
> 2. All records concerning USPS's disclosure to any labor organization of information it obtained through the COVID-19 test webform.

FOIA Request at 1, Ex. A to Compl., ECF No. 1-1.[1]  USPS initially deemed the request "broad in scope" and informed AFFT that it would take "no further action and incur no chargeable costs . . . unless [they] hear[d] back" with a reformulated request, limited to a "specific department or geographic area of interest or to a particular timeframe." Initial FOIA Decision Letter at 17, Ex. 4 to First Decl. of Elisabeth Kines Messenger, ECF No. 18-2.  AFFT thereafter exchanged communications with Janine Castorina, Chief Privacy and Records Management Officer for USPS, between February 8 and February 11, 2022, in which the parties discussed the scope of the FOIA request.  Decl. of Janine Castorina ¶ 6, ECF No. 14-2 ("First Castorina Decl.").

After these communications, USPS reached an initial decision on February 25, 2022, and informed AFFT that there were no responsive records as to either Item #1 or Item #2. *Id.* ¶ 7. USPS explained that Item #1 "appears to compare the Privacy Act Statement, contained on the Postal Service's website for ordering COVID-19 tests with the Postal Service's general Privacy Policy contained on its website," and explained that "Privacy Act Statements and Privacy Policies are separate and distinct with different purposes," and therefore "[t]here was no decision to

---

[1] USPS refers to the two paragraphs of AFFT's request as "Item #1" and "Item #2," respectively, and the Court will do the same.

substitute one for the other." Second FOIA Decision Letter at 1, Ex. D to Compl., ECF No. 1-4. With respect to Item #2, the letter stated that "[USPS's] Labor Relations [Department] was contacted to locate [responsive] records" and that "[a]fter the search was completed it was determined no records have been released to any labor organizations," and thus "there are no records responsive to your request." *Id.*

Under the procedures established by the FOIA, AFFT administratively appealed USPS's initial decision to USPS's general counsel, who affirmed in part and reversed in part. *Ams. for Fair Treatment*, 663 F. Supp. 3d at 47; *see also* 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa). USPS's general counsel ruled that USPS's initial search with respect to Item #1 was inadequate because the "request was not only limited to a purported decision to depart from the Privacy Act Notice Language." *Id.* at 47–48. However, the general counsel also determined that "USPS *did* conduct an adequate search with respect to Item #2." *Id.* at 47–48 (emphasis added). USPS, pursuant to the general counsel's decision, conducted an additional search with respect to Item #1 and produced nine pages of responsive records, comprising five email chains. *Id.* at 48. The documents, however, were heavily redacted. *Id.* USPS justified the redactions by invoking the deliberative process and attorney-client privileges under FOIA Exemption 5. *Id.* AFFT brought this litigation to challenge the redactions. *Id.*

## II.  PROCEDURAL BACKGROUND

On April 28, 2022, AFFT sued USPS, as well as then-Postmaster General Louis DeJoy[2] and General Counsel Thomas Marshall in their official capacities (collectively, "USPS"). *See generally* Compl., ECF No. 1. The Complaint asserted four counts: (1) withholding non-exempt, non-excluded responsive records in violation of FOIA, *id.* ¶¶ 54–60; (2) failing to conduct an

---

[2] Under Fed. R. Civ. Pr. 25(d), Postmaster General David P. Steiner is "automatically substituted as a party" as the successor for previous Postmaster General Louis DeJoy.

3

adequate search for responsive records in violation of FOIA, *id.* ¶¶ 61–68; (3) arbitrary and capricious or contrary-to-law action in violation of the Administrative Procedure Act ("APA") by not allowing an appeal to the head of the agency, *id.* ¶¶ 69–75; and (4) *ultra vires* action on the same ground, *id.* ¶¶ 76–80.

The parties litigated a previous round of cross-motions for summary judgment in 2022. *See* First Mot. for Summ. J., ECF No. 14; Pl.'s Cross-Mot. for Summ. J., ECF No. 18. The parties motions for summary judgment were each granted in part and denied in part, and the Court ordered USPS (1) to conduct an additional search in a manner consistent with the instructions in the Memorandum Opinion and (2) to file a new *Vaughn* index and supporting affidavit explaining the propriety of its Exemption 5 withholdings. *Ams. For Fair Treatment*, 663 F. Supp. 3d at 63. Additionally, the Court dismissed Counts III and IV of the Complaint, the APA and *ultra vires* counts, respectively. *Id.* at 62. After the first round of summary judgment briefing, then, the only remaining claims were AFFT's FOIA claims.

USPS conducted three supplemental searches and filed an updated *Vaughn* index and a Third Supplemental Declaration by Janine Castorina on December 12, 2024, ultimately producing 519 pages of responsive records. *See* Third Supp. Decl. of Janine Castorina at 1, Pl.'s Mot., ECF No. 83-3 ("Third Supp. Castorina Decl."); *Vaughn* Index, Ex. 1 to Mot. for Summ. J. by U.S. Postal Serv., ECF No. 83-4. In the Third Supplemental Castorina Declaration, USPS invoked the deliberative process privilege, pursuant to FOIA Exemption 5, over the contents of emails between USPS internal clients concerning the Privacy Act Statement in the initial production of emails (pages "USPS_1" through "USPS_9") and the supplemental productions (pages "USPS_10" through "USPS_519"). Third Supp. Castorina Decl. ¶ 54. USPS also invoked the attorney-client privilege under Exemption 5 over portions of USPS_1 through USPS_6 and USPS_10 through

USPS_515. *Id.* ¶ 60. In the *Vaughn* Index, USPS also claimed the deliberative process privilege and attorney-client privilege with respect to pages USPS_192, USPS_193, USPS_194, and USPS_196, stating that those pages "do not feature meaningful segregable information." *Vaughn* Index at 46–48. USPS also represents that it conducted a "line-by-line review" of the records to identify information that was exempt from disclosure, and that it found that "all non-exempt information was segregated and any non-exempt portions were released." Third Supp. Castorina Decl. ¶ 76.

USPS renewed its Motion for Summary Judgment on December 12, 2024. ECF No. 83. AFFT cross-moved for summary judgment on January 14, 2025. ECF Nos. 84, 85. USPS filed its opposition and reply on February 12, 2025. Combined Mem. in Opp'n to Pl.'s Cross-Mot. for Summ. J. and Reply in Further Support of Defs.' Mot. for Summ. J., ECF No. 86 ("Defs.' Reply"). AFFT filed its reply on February 21, 2025. Pl.'s Reply in Supp. of Renewed Cross-Mot. for Summ. J., ECF No. 88 ("Pl.'s Reply"). AFFT no longer contests the adequacy of USPS's search, and the only two issues before the Court at this stage relate to USPS's invocation of FOIA Exemption 5. Specifically at issue is (i) whether USPS fulfilled its segregability requirements and (ii) whether it successfully demonstrated foreseeable harm. Defs.' Reply at 1.

### III.  LEGAL STANDARD

#### A.  The Freedom of Information Act

The FOIA requires agencies to make certain information available to the public upon request. 5 U.S.C. § 552. Congress enacted the FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 357 (D.C. Cir. 2021) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Generally, the FOIA mandates a strong presumption in favor

of agency disclosure. *Am. Civ. Liberties Union v. U.S. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011). Agencies may only withhold information that falls within one of FOIA's nine enumerated exemptions from disclosure. 5 U.S.C. § 552(b); *see also Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 845 (D.C. Cir. 2010). "These exemptions are explicitly made exclusive . . . and must be narrowly construed." *Rose*, 425 U.S. at 361 (internal quotation marks and citations omitted). And in 2016, Congress enacted the FOIA Improvement Act, which mandated that agencies may only withhold information under an exemption if an agency "reasonably foresees that disclosure would harm an interest protected by an exemption" or if "disclosure is prohibited by law." *Reps. Comm.*, 3 F.4th at 357–58 (quoting 5 U.S.C. § 552(a)(8)(A)(i)).

### B. Summary Judgment Under Rule 56(a) in FOIA Disputes

Granting summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Most FOIA cases are decided on motions for summary judgment. *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). To prevail on a motion for summary judgment, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Hunton & Williams LLP v. U.S. Env't Prot. Agency*, 248 F. Supp. 3d 220, 234 (D.D.C. 2017) (citing *Weisberg v. U.S. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980)) (internal quotation marks omitted). To meet this requirement, "a defendant may rely on declarations that are reasonably detailed and non-conclusory." *Id.* These declarations receive a presumption of good faith, which cannot be rebutted with purely speculative claims about the existence and discoverability of other documents. *Safecard Serv., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Courts may "rely on government affidavits to support the

withholding of documents under FOIA exemptions." *Ctr. for Nat. Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918, 926 (D.C. Cir. 2003). Agencies that prevail on summary judgment typically do so by providing "*Vaughn* indices describing the withheld documents and explaining why the withheld information fell under the claimed exemptions." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009). A *Vaughn* index itemizes a document into manageable parts so that a district court judge "may examine and rule on each element of the itemized list." *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

## IV. DISCUSSION

USPS withheld records under FOIA Exemption 5, which exempts from disclosure any "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). To qualify for Exemption 5, a document must satisfy two conditions: First, it must be from a government agency, and second, "it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8 (2001). One such privilege is the "deliberative process privilege," which protects an agency from disclosing documents reflecting intermediate deliberations of its policy covering what the law is. *Id.* at 2. This privilege protects *intermediate* deliberations, including advisory opinions, recommendations, and deliberations comprising the process by which governmental decisions and policies are formed. *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). However, it does not protect from disclosure final "'opinions and interpretations' which embody the agency's effective law and policy" because allowing an agency to withhold these documents would allow the agency to promulgate "secret (agency) law" internally. *Id.* at 153.

Second, attorney-client privilege can also extend to government agencies under this section of FOIA, treating the "client" as the agency and the attorney as an agency lawyer. *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 620 (D.C. Cir. 1997). USPS invoked attorney-client privilege and the deliberative process privilege to justify its Exemption 5 withholdings.[3] As explained below, the Court finds that USPS has failed to properly support its Exemption 5 withholdings under the deliberative process privilege but has properly supported its withholdings under the attorney-client privilege. However, because USPS has further failed to meet its segregability burden, the Court will deny USPS's motion for summary judgment.

### A. Individual Defendants

The plaintiff, in addition to USPS, named Postmaster General Louis DeJoy and Thomas J. Marshall, General Counsel of the USPS, as individual defendants. Compl. ¶¶ 8–9. But "[i]ndividual federal officials are not proper defendants in a FOIA action because it is the agency's responsibility to produce records." *Jefferson v. Reno*, 123 F. Supp. 2d 1, 3 (D.D.C. 2000). Accordingly, the Court will dismiss Counts 1 and 2 against the individual defendants and only assess the FOIA claims against USPS.

### B. The Deliberative Process Privilege

The deliberative process privilege allows a government agency to withhold or redact documents under FOIA Exemption 5 when the records' contents reflect an advisory opinion, recommendation, or deliberation comprising the process by which an agency forms its decisions or policies. *Klamath*, 532 U.S. at 8. To determine whether a document falls under one of these

---

[3] Exemption 5 permits an agency to invoke work-product privilege, protecting government attorneys' work-product during litigation. *Sears*, 421 U.S. at 154. This Exemption incorporates Federal Rule of Civil Procedure 26(b)(3), which defines work-product privilege as a barrier for a party to obtain documents that are prepared in anticipation of litigation unless a party shows it has substantial need for the material and cannot obtain the equivalent information by other means. Fed. R. Civ. P. 26(b)(3). USPS has not invoked that privilege here.

categories, a court first looks to whether the document was predecisional, meaning it was "generated before the adoption of an agency policy." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Next, a court determines whether the document was deliberative, meaning it reflected "the give-and-take of the consultative process." *Id.* Because the Court has already determined that the withholdings are both pre-decisional and deliberative, *see Ams. For Fair Treatment*, 663 F. Supp. 3d at 57, it will begin and end its discussion of the deliberative process privilege with the overarching "foreseeable harm" requirement imposed by the FOIA Improvement Act of 2016.

  i. *USPS Failed to Demonstrate Foreseeable Harm*

Since 2016, the FOIA has allowed agencies to withhold information under an exemption only if an agency "reasonably foresees that disclosure would harm an interest protected by an exemption" or if "disclosure is prohibited by law." *Reps. Comm.*, 3 F.4th at 357–58 (quoting 5 U.S.C. § 552(a)(8)(A)(i)). For withholdings made under the deliberative process privilege, "the foreseeability requirement means that agencies must concretely explain how disclosure 'would'— not 'could'—adversely impair internal deliberations." *Id.* at 369–70. "[B]oilerplate and generic assertions that release of any deliberative material would necessarily chill internal discussions," for example, cannot carry the day. *Ams. for Fair Treatment*, 663 F. Supp. 3d at 59. Rather, to demonstrate foreseeable harm, the agency must provide a "focused and concrete demonstration of why disclosure of the particular type of material at issue" will impede similar agency deliberations going forward. *Reps. Comm.*, 3 F.4th at 370.

Here, USPS has failed to adequately establish a reasonably foreseeable harm. First, USPS claims that disclosure would cause harm because disclosing the records at issue, USPS_1 through USPS_519, "would prevent [USPS] officials, employees, and attorneys from speaking candidly

9

amongst each other regarding new initiatives and policy developments." Defs.' Reply at 7. This language is far too speculative and does not explain a particular harm that the agency would suffer. The FOIA specifically requires a *concrete* explanation of why preventing officials from speaking candidly amongst each other would harm the agency. *Reps. Comm.*, 3 F.4th at 369. The language here fails that requirement, and this Court in the past has held similar language to be impermissible boilerplate. *See, e.g., Nat'l Pub. Radio v. U.S. Dep't of Homeland Sec.*, No. 20-cv-2468-RCL, 2022 WL 4534730, at *7–8 (D.D.C. Sept. 28, 2022) (Lamberth, J.) (holding that similar language in both the agency's declaration and its *Vaughn* index was "a generic, boilerplate justification").[4]

Second, USPS argues that it faces foreseeable harm because disclosure would chill USPS employees from communicating with the White House regarding the Privacy Act Statement. *See* Pl.'s Mot. at 10. It further claims that encouraging frank discussion with the White House will be necessary as the new Administration's shifting priorities on data privacy only amplify the "unique sensitivity" of the Privacy Act Statement. *Id.* at 10–11. To support its argument, USPS cites the Third Supplemental Castorina Declaration, which states that disclosure would impair the White House's ability to coordinate with government agencies like the Postal Service when responding to a crisis like the COVID-19 pandemic. *See* Third Supp. Castorina Decl. ¶ 69.

Castorina attempts to explain why disclosure would be particularly harmful to USPS by stating that critically evaluating the Privacy Act without fear of disclosure is essential to ensuring

---

[4] AFFT also contends that when USPS said in its summary judgment briefing that disclosure "*might* cause a chilling effect" within the agency, it only explained how release "could" harm the agency by adversely impairing internal agency deliberations—not, as *Reporters Committee* requires, how it "would" do so. Mem. Of Law in Opp'n to Defs.' Renewed Mot. for Summ. J. and in Supp. of Pl.'s Renewed Cross-Mot. for Summ. J. at 10–11, ECF No. 84 (quoting Defs.' Mot. at 29) (emphasis added). USPS responds that its use of the word "might" in that earlier motion was an error and that the harm USPS states it would face in the *Vaughn* Index and Third Castorina Declaration, mainly that disclosure would impair its internal clients' ability to seek legal guidance and counsel over concerns regarding the Privacy Act, is foreseeable. *Id.*; *see also, e.g., Vaughn* Index at 2. This dispute is ultimately immaterial because the language in the *Vaughn* Index is still boilerplate and fails to establish a reasonably foreseeable harm.

10

that the USPS can gather necessary information about providing free COVID-19 test kits to the American public. Third Supp. Castorina Decl. ¶ 67. Withholding the documents would allow USPS to evaluate Privacy Act compliance issues and provide rigorous legal analysis to properly deliver the free COVID-19 test kits to the American public. *Id.* However, this assertion is fundamentally conclusory; it only speculates about a harm that *could* happen, not one that *would* happen. *See Reps. Comm.*, 3 F.4th 350 at 369–70. The *Vaughn* Index provides no more clarity as it regularly repeats this explanation for foreseeable harm.[5]

Additionally, the Court is unpersuaded that disclosure of communications between USPS and the White House would cause a foreseeable harm. The *Vaughn* Index contains only boilerplate language, stating that release of information would "hinder internal clients' ability to seek legal guidance, and without the benefit of context, disclosure could result in the public's misunderstanding or misstatement of internal deliberations." *E.g.*, *Vaughn* Index at 83–84. This surface-level language appears throughout the Index and does not do enough to explain what harm would result from disclosure of communications between the White House and USPS. Merely stating that harm would result from disclosing communications about USPS's response to inquiries regarding the Privacy Act statement is the exact type of "Mad Libs" statement that this Court previously held to be impermissibly vague. *See Nat'l Pub. Radio v. U.S. Dep't of Homeland Sec.*, No. 20-cv-2468-RCL, 2022 WL 4534730, at *8 (D.D.C. Sept. 28, 2022) (Lamberth, J.). It is not enough to provide a generalized statement; USPS must explain *why* harm would result to provide a concrete demonstration that harm would result from disclosure. The conclusory language in the

---

[5] USPS claims that "[r]elease would harm its ability to ensure that the requirements of the Privacy Act are met and would undermine internal clients' ability to freely communicate questions and concerns, along with counsel's ability to communicate with one another. Furthermore, revealing internal policy-making and legal discussions would hinder internal clients' ability to seek legal guidance, and without the benefit of context, disclosure could result in the public's misunderstanding or misstatement of internal deliberations, including with respect to the Privacy Act Statement, the final version of which is not included in these passages." Ex. 1 at 2–7, ECF No. 83-4.

11

*Vaughn* Index does not establish foreseeable harm, so USPS needs to provide non-speculative factual evidence to demonstrate why the internal clients would be harmed by mandated disclosure.[6] *See, e.g.*, *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (holding that agency successfully established foreseeable harm because its forms focused on "the information at issue" instead of providing a generalized statement).

### C. Attorney-Client Privilege

For the reasons explained below, USPS successfully invokes the attorney-client privilege on USPS_1 through USPS_6 and USPS_10 through USPS_519. The attorney-client privilege covers "confidential communications between an attorney and [their] client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977). In FOIA cases, the attorney-client privilege treats the agency as the "client" and the agency lawyer as the "attorney." *Tax Analysts*, 117 F.3d at 620. "[A] fundamental prerequisite to assertion of the privilege" is "confidentiality both at the time of the communication and maintained since." *Coastal States*, 617 F.2d at 863. "The burden is on the agency to demonstrate that confidentiality was expected in the handling of these communications, and that it was reasonably careful to keep this confidential information protected from general disclosure." *Id.* To satisfy this burden, the government must provide "'detailed and specific information' that the withheld information falls within the attorney-client privilege." *Transgender L. Ctr. v. U.S. Immigr. & Customs Enf't*, No. 21-cv-2153-RCL, 2025 WL 604949, at

---

[6] USPS additionally claims that harm could result from disclosure because the public might misconstrue the conversations taking place in the emails and erroneously assume that USPS is misusing customer information, creating public distrust. Defs.' Mot. at 31. However, the statement in the *Vaughn* Index that the public would misunderstand the internal deliberations is speculative and does not provide enough detail to establish that harm would result, so USPS needs to provide a stronger factual basis for why the public would misunderstand the deliberations here and how that would actionably harm the agency.

12

*8 (D.D.C. Feb. 25, 2025) (Lamberth, J.) (quoting *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 30 (D.C. Cir. 1998)).

Here, USPS provides a satisfactory explanation for why the attorney-client privilege applies to the emails at issue. In the *Vaughn* Index, USPS explains that the email correspondence concerns the agency-clients' requests for legal advice concerning the application of the Privacy Act while the agency crafted its Privacy Act statement for the COVID-19 test kit webpage. *See Vaughn Index* at 4. The index also identifies the specific employees involved in the communications: Janine Castorina, and Christopher Gillespie and Christopher Lind, employees who acted and communicated at the direction of Janine Castorina. *Id.* Because USPS identifies the specific employees involved and shows that legal advice was sought, requiring confidentiality, USPS has successfully met its burden to provide "detailed and specific information" that the withheld emails fall within the attorney-client privilege.

As for foreseeable harm, the *Vaughn* Index explains that disclosure would prevent USPS attorneys from supplying "candid guidance concerning compliance, including as to the Privacy Act, and would be unable to candidly discuss internal clients' compliance concerns." *Id.* at 6. USPS claims that the harm of disclosure in the attorney-client privilege context is therefore "virtually self-evident." Pl.'s Mot. at 17 (citing *United States v. Philip Morris*, 314 F.3d 612, 622 (D.C. Cir. 2003)). USPS states that the Third Supplemental Castorina Declaration adequately explains the foreseeable harm USPS would face if information about its internal discussions in relation to the Privacy Statement were disclosed, asserting that "[e]xposing such communications to public scrutiny would interfere with the attorney-client relationship between postal attorneys and internal clients by impeding the sharing of candid advice that is critical to an attorney's ability to render legal advice." Third Supp. Castorina Decl. ¶¶ 72–74.

AFFT counters that this language would create a "categorical exemption" to the foreseeable harm requirement, citing broadly to *Blade v. U.S. Department of Labor*, No. 20-2591, 2024 WL 4664453 (D.D.C. Nov. 4, 2024). Pl.'s Reply. at 8. In *Blade*, the court held that the Department of Labor ("DOL") failed to satisfy the foreseeable harm test because it attempted to withhold *all* legal advice, regardless of whether it addressed the issue at hand, and because it did not identify the specific employees who received the communications. *Blade*, 2024 WL 4664453 at *34. DOL's explanation of harm stated that release of the documents would undermine its ability to "utilize its legal counsel for assistance in resolving complex problems if such information was routinely disclosed to the public." *Id.* The court deemed that language too broad to establish foreseeable harm.

Here, USPS avoids the issues DOL faced in *Blade* by (1) stating that the legal advice at issue was directly related to the Privacy Act issue, (2) identifying the specific employees involved, and (3) linking the disclosure harm to USPS's ability to disseminate candid legal guidance to employees concerning Privacy Act compliance. *Vaughn* Index at 3. This language, albeit broad in a generic sense, addresses the deliberations that occurred when crafting the Privacy Act statement because it contains specific detail indicating the legal advice was sought regarding the Postal Service's compliance with the Privacy Act. It is therefore enough to pass the standard for foreseeable harm under attorney-client privilege, and USPS is entitled to attorney-client privilege over USPS_1 through USPS_6 and USPS_10 through USPS_515. However, the analysis does not stop here, as USPS must also prove it met its segregability burden to win on summary judgment. As the Court will now explain, USPS has failed to do so.

## D. USPS Failed to Meet Its Segregability Burden

The FOIA requires that "any reasonably segregable portion of a record shall be provided to any person requesting such record after the deletion of the portions which are exempt." 5 U.S.C. § 552(b). The D.C. Circuit has long held that "non-exempt portions of a document must be disclosed unless they are *inextricably intertwined* with exempt portions." *Mead Data Cent.*, 566 F.2d at 260 (emphasis added). Agencies are generally entitled to a presumption that they complied with the obligation to disclose reasonably segregable material, but they must explain the grounds for their conclusions regarding segregability with "reasonable specificity." *Khatchadourian v. Def. Intel. Agency*, 453 F. Supp. 3d 54, 81 (D.D.C. 2020) (Lamberth, J.). To satisfy the "reasonable specificity" standard, agencies must provide detailed justifications that they properly segregated non-exempt material; mere conclusory statements are not enough. *Ctr. for Pub. Integrity v. U.S. Dep't of Com.*, 401 F. Supp. 3d 108, 116 (D.D.C. 2019). In the context of a *Vaughn* index, an agency attempting to withhold segregable information "must provide a particularized explanation of non-segregability for *each* document." *Ctr. for Biological Diversity v. U.S. Env't Prot. Agency*, 279 F. Supp. 3d 121, 152 (D.D.C. 2017). Plaintiffs can rebut the government's presumption by providing a "quantum of evidence" to show that the agency did not comply with its obligation to disclose reasonably segregable material. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, the only documents in question are a one-page email and one-page attachment at pages USPS_192 and USPS_193, and a two-page email and one-page attachment at pages USPS_194 through USPS_196. *See Vaughn* Index at 46–48. AFFT claims that USPS has failed to "show with reasonable specificity why the documents cannot be further segregated." Pl.'s Reply at 1 (internal quotation marks omitted). AFFT further alleges that USPS relied on boilerplate

15

language when it stated in the Third Supplemental Castorina Declaration that it conducted a "line-by-line review" of the records to determine what information would be exempt from disclosure. *Id.* at 2. To rebut the presumption that USPS complied with the obligation to disclose reasonably segregable material, AFFT alleges that USPS submitted contradictory statements about segregability, simultaneously saying "that it (1) withheld 'inextricably intertwined' non-exempt information, yet (2) segregated 'all non-exempt information' and released 'any non-exempt portion.'" *Id.* at 3.

The Court finds this argument unpersuasive. For one thing, a document can have both segregable information and inextricably intertwined information; the two are not mutually exclusive. AFFT appears to be providing circular reasoning to explain an alleged contradiction, for there is nothing preventing USPS from withholding information that is inextricably intertwined while also segregating non-exempt information that is not inextricably intertwined. And in any event, the plaintiff does not explain why this alleged contradiction violates *Mead Data Center*.

Nonetheless, because USPS fails to explain with reasonable specificity why the documents should be non-exempt and segregated, it fails to meet its segregability burden. When analyzing the defendant's renewed motion for summary judgment, the Court must consider whether the defendant made non-conclusory statements in its *Vaughn* Index. *See Ctr. for Pub. Integrity*, 401 F. Supp. 3d at 116. A closer examination of the *Vaughn* Index reveals that USPS made only conclusory statements and fails to satisfy the *Khatchadourian* standard of "reasonable specificity" required for segregability. To show USPS properly segregated exempt material from non-exempt material in these emails, it states that "these pages do not feature meaningful segregable information" when explaining in the index why certain email chains meet the segregability requirement. *Id.* Additionally, the Third Supplemental Castorina Declaration states that a line-by-

16

line review of the records was conducted, and that all non-exempt information was segregated. Third Supp. Castorina Decl. ¶ 76. AFFT in its reply emphasizes that the *Vaughn* Index gives no indication how USPS conducted its segregability analysis, and that the Castorina Declaration gives no information why a line-by-line review, without more, would satisfy the *Khatchadourian* test. Pl.'s Reply at 2.

The Court agrees with AFFT. Neither the *Vaughn* Index nor the Third Supplemental Castorina Declaration provides enough information to conclude USPS properly segregated information with "reasonable specificity." The Court in *Khatchadourian* held that a line-by-line analysis is necessary *but not sufficient* to satisfy the "reasonable specificity" test. *Khatchadourian*, 453 F. Supp. 3d at 83. Indeed, the court held that the agency's proffer was insufficient despite its line-by-line analysis. *Id.* Here, without any supplemental information explaining why a line-by-line review was sufficient in either Castorina's Declaration or the *Vaughn* index, USPS cannot pass the "reasonable specificity" test. USPS needs to provide more information about which information was exempt and which information was inextricably intertwined such that it could not be segregated. *See, e.g.*, *Johnson v. Exec. Off. For U.S. Atty's*, 310 F.3d 771, 776 (D.C. Cir. 2002) (holding that agency's *Vaughn* index described each document withheld with sufficient detail but not so much detail that the exempt material would be effectively disclosed). USPS can provide an updated *Vaughn* index to explain its segregability analysis in greater detail, providing specific findings of which material is segregable.

## V.   CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** AFFT's cross-motion for summary judgment and **DENY WITHOUT PREJUDICE** USPS's motion for summary judgment. In sum, with respect to attorney-client privilege, USPS has met its burden for the

17

foreseeable harm requirement. Because the attorney-client privilege applies to pages USPS_1 through USPS_6 and USPS_10 through USPS_515, the Court will **GRANT** summary judgment for USPS as to those documents. However, USPS failed to demonstrate with reasonable specificity the bases for its conclusions regarding segregability, so the Court will **DENY** summary judgment for USPS as to documents USPS_192 through USPS_196.

Further, USPS failed to demonstrate a concrete foreseeable harm under the deliberative process privilege, so the Court will **DENY** USPS's cross-motion for summary judgment as to documents USPS_7 through USPS_9 and USPS_516 through USPS_519. The Court will **ORDER** that USPS either :

(1) Provide a concrete explanation as to how its disclosure of documents USPS_7–USPS_9 and USPS_516–USPS_519 would prevent its officials from speaking candidly or chill employees from communicating with the White House regarding the Privacy Act Statement, and (2) Provide a reasonably specific basis for its conclusions regarding segregability for documents USPS_192 through USPS_196;

- OR disclose documents USPS_7 through USPS_9, USPS_516 through USPS_519, USPS_192, USPS_193, and USPS_194 through USPS_196 in their entirety to AFFT.

An Order consistent with this Memorandum Opinion will follow.

Date: August  11  2025

Royce C. Lamberth
United States District Judge