**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICANS FOR FAIR TREATMENT, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES POSTAL SERVICE, *et al.*, <br><br> *Defendants*. | **Civil Action No. 22-1183 (RCL)** |

**FOURTH SUPPLEMENTAL DECLARATION OF JANINE CASTORINA**

I, Janine Castorina, make the following Fourth Supplemental Declaration in lieu of affidavit in accordance with the provisions of 28 U.S.C. § 1746. I understand that my declaration may be introduced into the record of the above captioned action, or any other grievance, administrative proceeding, or suit pending in a court of law.

1. I am over the age of 18, am competent to testify, and have personal knowledge of the facts and information set forth in this declaration.

2. I currently hold the position of Chief Privacy and Records Management Officer for the United States Postal Service. Prior to holding my current position, I was an Attorney in the Postal Service's Commercial and Appellate Litigation section from October 2011 to March 2016.

3. In my official capacity as Chief Privacy and Records Management Officer, I am responsible for establishing Postal Service policies relating to information disclosure, privacy, and records management; ensuring compliance with privacy and records statutes, regulations, and policies; and providing oversight and supervision of the Postal Service Privacy and Records Management Office ("PRMO"), which, *inter alia*, receives, tracks, and advises postal officials on how to respond to Freedom of Information Act ("FOIA") requests. My responsibilities also include

1

managing and coordinating the Postal Service's response to certain litigation arising under the FOIA including the present complaint.

4.    As the Chief Privacy and Records Management Officer, it is my responsibility, and that of my group within the Postal Service, to assist internal stakeholders with responses to FOIA requests and to help those stakeholders understand and navigate the FOIA exemptions.

5.    This declaration supplements the declarations I provided in the above-captioned matter. *See* ECF Nos. 14-2, 22-1, 83-3.

## USPS_7 to USPS_9

6.    As described in the Postal Service's most recent *Vaughn* Index, the documents marked USPS_7 to USPS_9 comprise two email chains with the subject line "Re: Privacy Statement Updated." ECF 83-4 at 5-8. Pursuant to FOIA Exemption 6, the Postal Service redacted the employee email addresses and cell phone numbers appearing in these emails. *Id.* In addition, the Postal Service redacted one sentence (appearing twice in this page range) pursuant to Exemption 5, which the Postal Service asserted in connection with the deliberative process privilege and the attorney-client privilege. *Id.*; *see also* ECF 83 at 17 (referring to the Postal Service's assertion of the attorney-client privilege as to USPS_7 to UPS_9).

## USPS_516 to USPS_519

7.    As described in the Postal Service's most recent *Vaughn* Index, the documents marked USPS_516 to USPS_519 comprise three email chains between the Postal Service Privacy Office and members of the public. ECF No. 83-4 at 128. Each of these documents contains redactions to private citizens' names and contact information pursuant to Exemption 6. *Id.* No redactions were made on USPS_516 to USPS_519 pursuant to Exemption 5.

2

**USPS_192 to USPS_196**

8.    As described in the Postal Service's most recent *Vaughn* Index, the documents marked USPS_192 to USPS_196 comprise two emails with the subject line "RE: here you go," between myself and then-Chief Counsel of Ethics and Legal Compliance Ruth Stevenson. ECF 83-4 at 46-47. The Postal Service had redacted these five pages in full pursuant to Exemption 5 (pursuant to the deliberative process privilege and the attorney-client privilege) and Exemption 6. *Id.*

9.    Pursuant to the Court's August 11, 2025, Memorandum Opinion and Order, the Postal Service has reviewed whether any other information on USPS_192 to USPS_196 can be segregated for release.

10.    On September 8, 2025, the Postal Service made supplemental releases of information in USPS_192, USPS_194, and USPS_195. The Postal Service has continued to withhold certain information on these pages pursuant to Exemption 5's attorney-client privilege, as well as Exemption 6. The Postal Service continues to withhold USPS_193 and USPS_196 in full.

11.    On USPS_192, USPS_194, USPS_195, the Postal Service released information in these email communications in the From, To, Subject, Date, and Attachment lines, except for the employees' email addresses; this information was previously disclosed in the most recent *Vaughn* Index. The Postal Service has also released information in the email sender's signature line, except for the email sender's phone numbers, along with additional text in the body of the email messages.

12.    On USPS_192, USPS_194, and USPS_195, the Postal Service continues to withhold only text from the bodies of the email communications between myself and then-Chief Counsel of Ethics and Legal Compliance Ruth Stevenson pursuant to Exemption 5's attorney-

3

client privilege. In these withheld email communications, Ms. Stevenson and I are discussing edits and changes that should be made to a draft response to the Congressional staff member's inquiry regarding the Privacy Act Statement appearing on the COVID-19 test kit webpage. The draft response was drafted by Government counsel and was circulated between me and Ms. Stevenson for our review and input. Ms. Stevenson and I were discussing edits to the draft response to ensure that the Postal Service was accurately conveying its position regarding its compliance with the Privacy Act with respect to the Postal Service's efforts in sending out COVID-19 test kits to the American public via the COVID-19 test kit webpage.

13.    Any factual information Ms. Stevenson and I included in the withheld information was inextricably intertwined with our recommendations or advice being proffered about how the response to the Congressional staffer should be written. In particular, any factual information in the withheld information was inextricably intertwined with our recommendation or advice on what changes should be made to the draft response such that the draft response accurately conveyed the Postal Service's compliance with the Privacy Act with respect to the Postal Service's Privacy Act Statement on the COVID-19 test kit web page.

14.    The communications withheld between Ms. Stevenson and I do not reflect the final determination of the Postal Service. These materials pre-decisional and deliberative because Ms. Stevenson and I were still in the process of developing the Postal Service's official response to the Congressional staff member's inquiry regarding the Privacy Act Statement on the COVID-19 test kit webpage.

15.    On USPS_192, USPS_194, and USPS_195, the Postal Service continues to withhold the email addresses and phone numbers of myself and Ms. Stevenson pursuant to Exemption 6. Employee email addresses and phone numbers constitute similar files. Employees

like myself and Ms. Stevenson have a privacy interest in their postal email addresses and mobile phone numbers because disclosure would subject us to unwarranted harassment such as unwanted phone calls and emails from the public while employees are on and off duty. Employees would also be subjected to phishing schemes and spam messages. There is no significant public interest in disclosure. Employee email addresses and mobile phone numbers do not shed light on the operations and activities of the Postal Service.

16.    The Postal Service continues to withhold USPS_193 and USPS_195 in full. USPS_193 and USPS_195 are the attachments to the emails in USPS_192, USPS_194, and USPS_195. These attachments are the draft responses to the Congressional staff member's inquiry regarding the Privacy Act Statement that Ms. Stevenson and I were discussing. As noted above, these responses were drafted by Government counsel, and I circulated it to Ms. Stevenson for further input concerning the Postal Service's obligations under the Privacy Act. The draft responses were not the final versions that were ultimately sent to the Congressional staff in response to her inquiry. The draft responses moreover contain proposed edits and changes in track mode from both me and Ms. Stevenson.

17.    There would be foreseeable harm in the release of the information withheld on USPS_192 to USPS_196.

18.    As to the deliberative process privilege invoked, certain of the records disclosed to Plaintiff make clear that community members and leaders are concerned about unnecessary or improper disclosures of consumer information. In part, the Privacy Act serves to protect against these types of disclosures; however, because other laws require the Postal Service to disclose information in certain contexts, Privacy Act compliance—including as to the preparation of an appropriate Privacy Act Statement—often requires substantial deliberation. Correctly evaluating

the Privacy Act is critical in ensuring that the Postal Service can gather the necessary information to provide its services—here, providing free COVID-19 test kits to the American public to help curb the spread of the infectious disease— and perform its functions while apprising the relevant parties of the ways their information might be used and ensuring that information is disclosed only to the extent allowed under the law. The Postal Service is especially exacting as to Privacy Act compliance in part because of the organization's role in serving the whole American public. Revealing recommendations, strategies, and legal opinions would discourage candid discussion of Privacy Act compliance issues, which would result in less rigorous legal analysis and conclusions. Incorrect evaluation of the Privacy Act would cause not only incorrect Privacy Act Statements but also improper disclosure of information.

19.    Moreover, in the context of the withheld email communications, disclosure would reveal internal counsel's deliberations concerning statutory compliance with the Privacy Act. Revealing these communications would impair the Postal Service's ability to make sound agency decisions because legal counsel would be reticent to share their thoughts amongst one another. Disclosure would particularly chill communications among Postal Service attorneys, because their discussions about draft materials as well as legal, business, and media strategies would be revealed. Revealing internal policymaking and legal discussions would generally hinder postal officials from contacting postal attorneys for their advice and recommendations and, accordingly, prevent postal officials from making appropriate judgments on behalf of the Postal Service.

20.    Disclosure would also allow confidential discussions to be misconstrued by the public. Without the benefit of context, certain opinions, recommendations, and strategies would be misappropriated and misstated. In particular, disclosing portions of the emails that are not specifically deliberative in nature, but which are inextricably intertwined with the deliberative

6

portions, would also cause harm. The Postal Service is one of many governmental entities that collect personal information and, accordingly, must comply with the Privacy Act. In part, the statute explicitly requires agencies to craft explanations of how personal information can be used, *see* 5 U.S.C. §§ 552a(e)(3)-(4), a process that inherently requires coordination among internal clients and attorneys. If disclosed, portions of these conversations might be misconstrued, whether mistakenly or purposely, in a manner that suggests the Postal Service is misusing customer information, and the American public will erroneously mistrust the Postal Service and the Federal Government and, as a result, decline in the future to request the publicly available resources from the Federal Government that are designed to address any future emergency, in addition to mistrusting the Postal Service as a general matter. This would also place postal employees, officials, and attorneys in the position of having to defend against public confusion and distortions related to the Postal Service's information management, including as to the COVID-19 test kit webform.

21.    As to the attorney-client privilege invoked, revealing nascent attorney impressions about external concerns from the public would negatively impact the Postal Service's ability to appropriately respond to legal issues and public concerns. Exposing such communications to public scrutiny would interfere with the attorney-client relationship between postal attorneys and internal clients by impeding the sharing of candid advice that is critical to an attorney's ability to render legal advice

22.    Disclosing such information would also reveal confidential information transmitted by internal clients and reveal the Postal Service's assessment of various legal issues implicating the Privacy Act Statement, along with its broader consideration of information disclosure obligations in relation to the Privacy Act.

23.    Disclosure in this context would also raise concerns for the candid discussion of legal matters across the spectrum, as the Law Department provided advice in this context in the same manner as it does in relation to the voluminous requests for legal advice that it receives from across an organization of more than 600,000 employees. The Law Department's Ad Review and preparation of the Privacy Act Statement stemmed from typical requests for legal advice, any disclosure here would suggest that numerous other legal conversations would also be subject to disclosure. This would broadly undermine the ability of internal clients and attorneys to discuss legal questions and to reach conclusions capable of withstanding the appropriate scrutiny.

24.    A line-by-line review of the email communications on USPS_192 to USPS_196 was performed, and it has been determined that no other information can be released without otherwise revealing information protected under Exemption 5's deliberative process privilege or attorney-client privilege. The Postal Service determined that all non-exempt information was segregated and any non-exempt portions were released.

*    *    *

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing declaration is true and correct. Executed in Washington, D.C., on September 8, 2024.

Janine Castorina
Digitally signed by Janine Castorina
Date: 2025.09.08 21:28:51 -04'00'

_____
Janine Castorina
Chief Privacy and Records Officer
United States Postal Service