## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICANS FOR FAIR TREATMENT,

      Plaintiff,

v.

UNITED STATES POSTAL SERVICE,

      Defendant.

**No.  1:22-cv-1183-RCL**

**MOTION FOR
ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF ARGUMENT................................... 1

II.  FACTS ......................................................................................................... 3

    A.   AFFT Filed this Suit After USPS Failed to Produce Responsive Records
Consistent with its FOIA Obligations ......................................................... 3

    B.   AFFT Obtained Judicial Relief and Records in this Litigation .................... 3

III. ARGUMENT ............................................................................................... 4

    A.   AFFT is Eligible to Recover Attorneys' Fees and Costs ........................... 4

    B.   AFFT is Entitled to Recover Attorneys' Fees and Costs.............................. 5

       1.   The Records AFFT Requested Benefit the Public .......................................... 5

       2.   AFFT Does Not Have a Commercial Interest in the Records....................... 8

       3.   USPS's Withholding of Records From AFFT Was Not Reasonable .............. 9

    C.   AFFT's Proposed Attorneys' Fees and Costs Are Reasonable .................... 10

    D.   The Court Should Award AFFT "Fees-on-Fees" ......................................... 13

IV.  CONCLUSION............................................................................................ 14

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Americans for Fair Treatment ("AFFT") brought this Freedom of Information Act ("FOIA") suit when Defendant United States Postal Service ("USPS") failed to produce requested records regarding the COVID-19 test kit program made available to the American people through its website.  As a result of AFFT's claims and this Court's orders, USPS has now released 519 pages of documents in full or in part, including dozens of documents that demonstrate that USPS had a massive operation to implement, consider, and revise the Privacy Act Statement on the COVID-19 test kit webform that involved the Postmaster General, USPS's General Counsel, political staff at the White House, a United States Senator, and members of the public.  Without this FOIA suit, these documents would have never been disclosed to the public, and how USPS intended to and did use the American people's sensitive personal data would have remained hidden from public view and scrutiny.

After months of efforts commencing in November 2025, the parties failed to reach a mutually satisfactory agreement on AFFT's claims for attorneys' fees and costs. AFFT now moves to recover attorneys' fees and costs under FOIA. 5 U.S.C. § 552(a)(4)(E).

AFFT is eligible for reasonable attorneys' fees and costs because it substantially prevailed in this litigation.  It has obtained multiple judicial orders requiring USPS to properly search for and release non-exempt documents consistent with its FOIA obligations.  AFFT's claims prompted USPS to release hundreds of pages of documents. 5 U.S.C. § 552(a)(4)(E)(ii).

AFFT is entitled to recover attorneys' fees and litigation costs because the relevant factors weigh in its favor: AFFT's FOIA suit has provided an important public benefit by shedding light on how USPS said it would use the American public's sensitive information related to labor unions and other purposes, and who was involved in making those choices. AFFT is a non-profit entity with an interest in shedding light on government behavior as it pertains to the use of Americans' sensitive personal information, particularly in the context of labor unions; it has no commercial interest in the information requested. The subject matter of this lawsuit has resulted in multiple (inter)national news articles and scrutiny from Congress. And USPS had no reasonable basis for withholding the requested records from AFFT.

And AFFT's fee request is reasonable. AFFT requests $364,565.79 in litigation-phase attorneys' fees across 669 hours (an average of $544.94 per hour), and $551.80 in costs. This request is reasonable in light of the number of hours worked, the accepted billing rates under the Fitzpatrick Matrix, and reasonable billing judgment. AFFT has reduced its request from the lodestar of $405,073.10 by 10% to reflect that reasonable billing judgment. AFFT also reasonably requests $15,058.50 in "fees-on-fees" for time spent negotiating and litigating attorneys' fees, which amount shall increase based on time spent on its reply brief here. The current sum total is $380,176.09.

## II.    FACTS

### A.    AFFT Filed this Suit After USPS Failed to Produce Responsive Records Consistent with its FOIA Obligations

When this FOIA matter began more than four years ago, USPS told AFFT that it had no records responsive to AFFT's request about the Privacy Act Statement USPS used for the COVID-19 test kit program housed on its website.  ECF No. 83-2 ¶ 2. So AFFT filed an administrative appeal, and in response USPS produced nine pages of responsive records. *Id.* ¶¶ 3–4. Observing that USPS's response was still wholly inadequate, including because the documents USPS produced themselves disclosed the existence of other documents, AFFT sued USPS in this Court on April 28, 2022.  ECF No. 1.

### B.    AFFT Obtained Judicial Relief and Records in this Litigation

After full briefing on cross-motions for summary judgment and an order from this Court granting in part summary judgment for AFFT (ECF No. 31), USPS performed a supplemental search and produced forty-one more pages of records—for a total of fifty. ECF No. 83-1 at 8. Based on that supplemental search, USPS then moved for summary judgment again. ECF No. 75.

AFFT told USPS that its supplemental search discussed in that second summary judgment motion was still clearly inadequate. ECF No. 75 at 9. USPS then performed a second supplemental search, which turned up an additional ***four hundred sixty-five pages*** of records.  *Id.*  And after further discussion with AFFT, USPS conducted a third supplemental search and produced four more pages of responsive records. *Id.* at 11.  That resulted in the final set of five hundred nineteen

pages of responsive records—approximately fifty-eight times the number of responsive records USPS told AFFT it had in response to AFFT's administrative appeal.

USPS then filed modified summary judgment papers defending the substantial redactions it made to the now-complete record set. ECF No. 83. Upon review of that and AFFT's opposition (ECF Nos. 85, 88), the Court again awarded summary judgment in part to AFFT. ECF No. 90. Based on review of the Court's order and reasoning supplied in its accompanying memorandum opinion AFFT and USPS conferred, and on October 3, 2025, USPS produced to AFFT an updated and complete record set that now contained as un-redacted scores of things previously held back from the public. ECF No. 95 at 2; *see also* n.1, *infra* (containing a public link to USPS's final production). It was only at that point, nearly three and a half years after this litigation began, that USPS finally complied with its FOIA obligations.

### III.    ARGUMENT

### A.    AFFT is Eligible to Recover Attorneys' Fees and Costs

Under FOIA, a court "may" award attorneys' fees and costs to any plaintiff that has "substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A plaintiff has "substantially prevailed" if it "obtained relief through either— (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). AFFT has "substantially prevailed" under both prongs of the analysis.

4

As to the first, AFFT obtained a judicial order directing USPS to conduct FOIA compliant searches and adequately explain the positions it was taking.  ECF No. 31. That, and discussions between the parties based on it, moved the record set from nine pages to five hundred nineteen pages.  AFFT then obtained another judicial order telling USPS to adequately explain its positions or un-redact certain information from that record set.  ECF No. 90.

As to the second, after reviewing the reasoning of the Court's second order and conferring with AFFT, USPS voluntarily disclosed substantial information in the record set that it previously redacted and as to which USPS had previously asserted the deliberative process privilege.

### B.    AFFT is Entitled to Recover Attorneys' Fees and Costs

To obtain fees, AFFT must also demonstrate that it is "entitled" to them. *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 371 (D.C. Cir. 2008). "Four non-exclusive factors typically govern the entitlement inquiry: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding" of the requested documents. *McKinley v. FHFA*, 739 F.3d 707, 711 (D.C. Cir. 2014).  All factors here weigh in AFFT's favor.

### 1.    The Records AFFT Requested Benefit the Public

The public benefit factor weighs in favor of a fee award when (1) "[a]t least one of the requested documents was not previously available to the public," (2) the released documents provide "important new information bearing" on "an event of national importance," and (3) "[n]othing in the record indicates that" the requester

"would have received the information without filing suit[.]" *Davy v. CIA*, 550 F.3d 1155, 1159–60 (D.C. Cir. 2008) (*Davy II*).

*First*, AFFT sought records related to the design and purpose of the Privacy Act Statement on USPS's COVID-19 test kit webform that were not available to the public. AFFT's request resulted in over five hundred pages of USPS records, including email records that highlight the reasoning behind the Statement and changes made to it, and that a significant number of high-level officials across the government were involved. AFFT has made these previously unavailable records available to the public at no cost and summarized them in an accessible memorandum.[1] That memorandum describes, for example, how the redactions USPS finally removed from the records in late 2025 showed how the Biden White House exercised direction and control over the USPS COVID-19 test kit program (repeatedly referencing "White House policy" and discussing how the program "followed the structure the White House established"); that its funding sources were concealed ("USPS officials confirmed they were 'fully reimbursed,' but were told to direct inquiries about funding sources back to the White House); that the program had political sensitivities that USPS staff were directed to not discuss with the public; and that scrutiny of the program from the United States Congress caused unease within USPS.[2] AFFT's "dissemination of the

---

[1] AMERICANS FOR FAIR TREATMENT, *AFFT v. USPS – Re-Processed Documents* (Nov. 4, 2025), https://americansforfairtreatment.org/afft-v-usps-re-processed-documents/.

[2] *Id.*

material" shows that its request was "fairly within the public interest." *EPIC v. FBI*, 72 F. Supp. 3d 338, 346 (D.D.C. 2014).

**Second**, AFFT's request was aimed at providing new information on an issue of national public importance.  ***Tens of millions*** American households ordered test kits through USPS's COVID-19 program.[3]  AFFT wanted to learn what was truly going on with this program, who was really in charge, and especially why USPS wanted to give so many Americans' sensitive personal data to labor unions and others.  The five hundred nineteen pages of records now obtained tell that story.  Consistent with the national public importance of it, this case and the records at issue in it have attracted (inter)national media attention.[4]  "In deciding whether released documents are of import or irrelevance to the public, courts often look to whether the . . . released information has inspired media coverage." *STS Energy Partners LP v. FERC*, 214 F. Supp. 3d 66, 69 (D.D.C. 2016). And USPS has been scrutinized by

---

[3] USPS, *U.S. Postal Service Has Delivered More than 270 Million COVID-19 Test Kits to American Households* (Mar. 2, 2022), https://about.usps.com/newsroom/national-releases/2022/0302-usps-delivered-more-than-270million-covid-19-test-kits.htm.

[4] UK DAILY MAIL, *EXCLUSIVE: US Postal Service is accused of sharing private information from 68 million households that applied for free Covid-19 tests with labor unions that could potentially be used for their political campaigns* (Feb 3, 2023), https://www.dailymail.com/news/article-11710841/USPS-accused-sharing-private-information-68-million-households.html; Andrew Fowler, *Did USPS Share the Private Info of 70 Million Americans with Labor Unions?*, NATIONAL REVIEW (July 1, 2023), https://www.nationalreview.com/2023/07/did-usps-share-the-private-info-of-70-million-americans-with-labor-unions/.

Members of Congress for its conduct that is at issue in and was brought into the light by this suit.[5]

*Third*, the litigation history more than indicates that the records here would never have been made available without AFFT's FOIA request and lawsuit. USPS consistently stonewalled AFFT for years. It only ever conducted FOIA-compliant searches, adequately explained its choices, and released non-exempt records in direct response to this Court's orders.

### 2.    AFFT Does Not Have a Commercial Interest in the Records

The second and third factors, the commercial benefit to the plaintiff and the nature of the plaintiff's interest in the requested documents, "are often considered together" to assess whether a plaintiff "has sufficient private incentive to seek disclosure' without attorney's fees." *Davy II*, 550 F.3d at 1160 (cleaned up). Whether considered together or separately, these factors weigh in AFFT's favor.

AFFT is "a nonprofit organization focused on public-sector employees and their rights surrounding union membership[.]" ECF No. 30 at 1. The information sought and received through the FOIA request here is of public concern and of no commercial utility to AFFT. AFFT stood to receive no "private gain" from the information sought; it sought the information only "for public informational purposes"—the "kind of endeavor for which a public subsidy makes some sense[.]" *Davy II*, 550 F.3d at 1160. AFFT's interest in exposing USPS's and others' true purpose in promulgating the

---

[5] HOUSE EDUCATION AND WORKFORCE COMMITTEE, Press Release: Foxx Questions USPS About Sharing Customer's Personal Info with Unions (Dec. 14, 2023), https://edworkforce.house.gov/news/documentsingle.aspx?DocumentID=409906.

COVID-19 test kit program is the kind of "journalistic, or public interest oriented" objective favored by FOIA. *See EPIC v. DHS*, 811 F. Supp. 2d 216, 235 (D.D.C. 2011). AFFT did not commercially benefit from the information it sought. Its sole interest was to promote public knowledge and protect public welfare. And it was successful.

### 3.    USPS's Withholding of Records From AFFT Was Not Reasonable

The final factor is the reasonableness of USPS's withholding of records and information form AFFT. To prevail on this factor, USPS must show "that it had any colorable or reasonable basis for not disclosing the material until after [Plaintiff] filed suit." *Davy II*, 550 F.3d at 1163. This USPS cannot do!

USPS unjustifiably withheld even the ***existence*** of hundreds of pages of responsive records from AFFT for years, failing repeatedly to perform an adequate records search. And when it finally completed that search (after multiple attempts) in response to this Court's order, it inappropriately redacted scores of lines of information from those records under the deliberative process privilege. Only after multiple rounds of summary judgment briefing and related orders did USPS finally do what FOIA requires—disclosing the complete, substantially less redacted set of records on in October 2025, almost three years after this litigation began. That is USPS's obligation with every single FOIA request it receives. USPS failed to provide any colorable basis in law for its delays and for the withholdings on which AFFT prevailed.

### C.    AFFT's Proposed Attorneys' Fees and Costs Are Reasonable

AFFT seeks an award of $380,176.09 in attorneys' fees and costs in this matter, including $364,565.79 of litigation-phase fees, $551.80 of costs, and $15,058.50 of fees-on-fees (so far[6]).  This fee request is reasonable given the 691.3 hours worked and applicable billing rates over the *five* years that this case has been pending in this Court. AFFT's request is limited to "work that led to" USPS's "production of responsive documents," including any work that "was related and reasonably calculated to achieve the goal of production" and any work "necessitated by" USPS's delays. *EPIC*, 218 F. Supp.3d at 46.

To determine whether the requested fees are reasonable, the Court must consider (1) whether the attorneys charged a reasonable hourly rate and (2) whether the time attorneys logged on the case was reasonable. *Judicial Watch, Inc. v. DOJ*, 774 F. Supp. 2d 225, 232 (D.D.C. 2011). Attorneys' fees are calculated based on the "lodestar," which is the number of hours the lawyers reasonably spent on the case multiplied by the lawyers' hourly rates. *Id.*

AFFT's hourly rates are reasonable.  AFFT has chosen to adopt the Fitzpatrick Matrix for this request, rather than relying on the Laffey Matrix—which immediately reduces the hourly rates requested substantially.[7]  The United States Attorney's

---

[6] AFFT will update this number in its reply brief reflecting time responding to USPS's brief.

[7] Undersigned counsel is fourteen years out of law school.  Dorey Decl. ¶ 6.  Under the Laffey Matrix for the year ending May 31, 2026, his hourly rate is $1,019. LAFFEY MATRIX, *available at* http://www.laffeymatrix.com/see.html.  Under the Fitzpatrick Matrix for year FY2025, undersigned counsel's hourly rate is $780.  FITZPATRICK

Office for the District of Columbia ("USAODC") "will not request that a prevailing party offer the additional evidence that the law otherwise requires" when it "agrees to payment pursuant" to the Fitzpatrick Matrix.[8]  USAODC agrees that the Fitzpatrick Matrix is appropriate in FOIA cases.[9]  "DOJ does not question the use of the Fitzpatrick Matrix rates here [in this FOIA case], so neither does this Court." *Leopold v. DOJ*, No. 1:20-CV-03651 (TNM), 2026 WL 1074234, at *2 (D.D.C. Apr. 21, 2026).[10]

The applicable, relevant Fitzpatrick Matrix rates are:

| Years Experience/Billing Yr. | FY 2025 |
| --- | --- |
| 14 | 780 |
| 13 | 768 |
| 12 | 754 |
| 11 | 738 |
| 10 | 723 |
| 3 | 602 |
| 2 | 581 |
| 1 | 561 |
| Paralegal/Law Clerk | 255 |

MATRIX, *available at* https://www.justice.gov/usao-dc/media/1395096/dl?inline.  That is roughly a 23.5% reduction off the top.

[8] FITZPATRICK MATRIX at 2 ¶ 3.

[9] *Id.* at 2 ¶ 2.

[10] In any event, the Court should consider this FOIA case to be complex and use the Fitzpatrick Matrix given the significant number of complicated legal and factual issues in dispute that were made more complicated by USPS's repeated obfuscation. *Compare with Louise Trauma Ctr. LLC v. DHS*, No. 1:20-CV-01128 (TNM), 2023 WL 3478479, at *4 (D.D.C. May 16, 2023) ("This was not an unusual FOIA case. It was not a class action on behalf of a large number of plaintiffs; it did not involve particularly voluminous or complicated factual and legal issues; it did not require plaintiff to conduct extensive investigation and discovery; and it required no specialized non-legal knowledge. Indeed, this case was resolved on a motion for summary judgment involving straightforward issues.") (cleaned up).

11

Only the FY2025 rate should apply because this award is requested in FY2025. "The standard approach is to award payment at a matrix's current rates, which approximates the appropriate adjustment for inflation and thereby simulates what the attorney would have earned had she been promptly paid at the time she performed the work." *Brackett v. Mayorkas*, No. CV 17-988 (JEB), 2023 WL 5094872, at \*6 (D.D.C. Aug. 9, 2023) (cleaned up). AFFT has used the Fitzpatrick Matrix's FY2025 rates to calculate the lodestar amount here and has done so based on the relevant attorney's level of experience at the time the hours were worked. Declaration of David R. Dorey ("Dorey Decl."), hereto, ¶¶ 6–7, 10; *see Brackett*, 2023 WL 5094872, at \*7 ("Fees will be awarded at the 2022 Fitzpatrick rate corresponding to an attorney's level of experience at the time the work was performed."). It has also applied the FY2025 rate of $255 to all time entries made by law clerks and a paralegal. Dorey Decl. ¶¶ 8–10.

And AFFT's hours are reasonable. AFFT has provided detailed, standardized billing records, which accurately reflects the contemporaneously recorded work done by each attorney, law clerk, and paralegal. Dorey Decl. ¶¶ 4–5. The records reflect the date and nature of each activity and include details about the specific task performed. Dorey Decl. **Ex. A**. Each entry is clearly labeled with hours of work performed on the activity, a description of the activity, and the total amount charged for the activity based on Microsoft Excel formulas applying the appropriate Fitzpatrick Matrix rate. Dorey Decl. ¶¶ 6–10 & **Ex A**. AFFT has therefore provided satisfactory billing records and evidence.

12

Based on the 669 hours worked by AFFT's attorneys in litigation on this matter and the applicable rates, the total lodestar amount for litigation-phase work is $405,073.10. Dorey Decl. ¶ 11. But AFFT has adjusted this amount based on reasonable billing judgment, reducing the asked-for amount by an additional 10%—for a total of $364,565.79.  Dorey Decl. ¶ 12.  It is true that AFFT did not prevail on all issues it advanced in this litigation, but that shouldn't matter.  "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Elec. Priv. Info. Ctr. v. DHS*, 999 F. Supp. 2d 61, 76 (D.D.C. 2013) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) as applied in the FOIA context).

AFFT also requests $551.80 in costs including the filing fee, service fees, and the *pro hac vice* fee for Attorney Shurr. Dorey Decl. ¶¶ 14–15 & **Ex. B**.  AFFT therefore asks the Court to award $365,117.59 in litigation-phase attorneys' fees and costs in this matter.  "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."  *Fox v. Vice*, 563 U.S. 826, 838 (2011).

### D.    The Court Should Award AFFT "Fees-on-Fees"

AFFT is also entitled to recover fees for its attorneys' work to obtain fees in this matter. It is "settled in this circuit" that "[h]ours reasonably devoted to a request for fees are compensable." *Judicial Watch v. DOJ*, 878 F. Supp. 2d 225, 240 (D.D.C. 2012) (cleaned up). Based on the 22.3 hours that AFFT's counsel dedicated to

obtaining fees in this matter so far and the relevant Fitzpatrick Matrix rates, the total lodestar amount for fees-on-fees is $15,058.80. Dorey Decl. ¶ 13 & **Ex. A**. AFFT will update this calculation based on time spent on its fee reply brief.  Dorey Decl. ¶ 16. The Court should accordingly award AFFT $15,058.50 in fees-on-fees plus the same for its reply brief.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant AFFT's motion and award $380,176.09 in attorneys' fees and costs plus fees for time spent on the reply brief in this fee phase.

Dated: June 3, 2026                          **/s/ David R. Dorey**
                                             David R. Dorey
                                             D.C. Bar No. 1015586
                                             FISHER & PHILLIPS LLP
                                             1401 New York Avenue NW
                                             Suite 400
                                             Washington, DC 20005
                                             Email: drdorey@fisherphillips.com
                                             Telephone: (202) 978-9655
                                             Facsimile: (202) 978-3788

                                             *Counsel for Plaintiff AFFT*

14